# EXHIBIT 3

**DECLARATION OF FRANK FIGGERS**

I, Frank Figgers hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. I am a resident of Jackson. I was born, raised and have lived my entire life here.

2. I am a registered voter in Mississippi and vote regularly in all elections. I have voted in and plan to continue voting in judicial elections in Hinds County, including for the Seventh Circuit Court.

3. I am a member of the NAACP and a lifelong community activist. In these roles, I have routinely fought to ensure that marginalized communities in Jackson are fairly treated by our government and have open and equal access to political institutions. I am fully aware of the importance of having judges who treat those who come before them fairly and equally regardless of their race.

4. Democratically electing judges, allows Hinds County voters to ensure that our courts operate fairly. Electing judges guarantees that it is our peers who are on the court—that whoever is on the ballot is known to us, the community they represent and whose cases they hear. As a voter, I know a candidate's positions and policies and can vote for judges to build a court that reflects my priorities. And, if a judge does not live up to promises made during the campaign, we can vote that judge out of office.

5. A judgeship is a privilege and honor earned through service to one's community, and it comes with a responsibility to the judge's constituency. A judgeship is not something owed or to be given out by politicians as spoils.

6. By campaigning, Circuit Court candidates also learn just as much about the communities they represent as they are able to teach voters about themselves. Campaigning allows

them to hear directly from voters about their needs and problems and to understand the various communities that make up Hinds County.

7. Our judges and the judicial candidates who vie to be judges are well-integrated into the communities they represent. They attend our churches and celebrations. They come to our social events and civic club meetings. They are from our neighborhoods and are part of the lifeblood of our community. For example, when I was sworn in as a member of the Jackson School Board of Trustees, the three Seventh Circuit Court judges who attended my swearing-in had all graduated from the same high school in my district. They had been raised here and continued to dedicate themselves to making sure that our city and county is safer, more prosperous, and more equitable.

8. I have personally found these direct interactions with judicial candidates—at church services and social or civic club meetings—to be crucial in determining which candidates I can support. These close connections with candidates ensure that I know where candidates stand and can trust them to serve our community well while on the bench.

9. In Hinds County, we voters get to elect our Circuit Court judges to safeguard local control over our courts and ensure that the judiciary is just and equitable. We want to be sure of the temperament of our judges and know that they understand the particular nature of Hinds County and the problems we all face. We want to know that we can be treated fairly and that we will not face stigma or discrimination in the courtroom because of our race. And, in light of the long history of racism in the Mississippi, my vote is the best means I have to ensure that the judges who sit over me and my community members will treat me fairly and equally.

10. I have in the past voted for white judges, and the fact that I have known them through their residency in Hinds County and their campaigning has made it possible for me to put

my trust in them such as L. Breland Hilburn. This is not possible to with appointed judges who I either do not as well or know at all. And the fact that they are appointed by the Chief Justice, with whom I have many policy disagreements, presents a further reason why I cannot trust appointed judges.

11. By requiring Chief Justice Michael Randolph to appoint fully half of all Seventh Circuit Court judges, who are not required to be residents of Hinds County, House Bill 1020 destroys the connection between judges and the communities to which they dispense justice. Like the Chief Justice himself, his appointees may not be from Hinds County or Jackson; they will be unknown and unaccountable to residents. Because of H.B. 1020, as a resident of Hinds County, I cannot be assured that the appointed judges share my priorities or understanding of the world.

12. Even if Justice Randolph's appointees were from Hinds County, it's the Chief Justice who chooses them—not us. And the Chief Justice is not accountable to Hinds County voters. He doesn't need my vote, and, as far as I can tell, he has made no attempt to understand my community. He does not attend community events in Hinds County. But the State Legislature has deemed him worthy of deciding telling Hinds County and only Hinds County who our judges should be.

13. The dangers H.B. 1020's system poses to Hinds County's residents are apparent. Black Mississippians already face overly high rates of incarceration and are more routinely subject to criminal penalties and fees. Hinds County voters currently elect judges and other officials to mediate these harms, but H.B. 1020 takes this out of our hands and instead subjects us to the will of the Chief Justice, who has been vocal in his support of increased criminal penalties and harsher sentencing.

14. As a result of H.B. 1020, Hinds County residents will be forced to appear in court in front of judges who do not understand our struggles and who are beholden to politicians who are not elected from Hinds County and who have no need to account to us. I believe that these appointed judges will come down more harshly on these individuals than would an elected Circuit judge. And I know that I'll have no way of using my vote or the threat of my vote to push back against any practices these appointed judges adopt.

15. This seizure of control from Hinds County's voters is unnecessary. Whatever backlog might exist in the Seventh Circuit could just as easily have been addressed by providing the court with more resources or expanding the number of judgeships. Indeed, the Circuit Court *just* went through redistricting and reapportionment, which would have been a perfect opportunity to expand the court. The Legislature did not do so then. And now, they are trying to control Hinds County's judicial system.

16. Through H.B. 1020, the State is subjugating the Black-elected and Black-led institutions of Hinds County to state control. No other city or county has been targeted in this way and it is people like me, the Black residents of Hinds County, who are forced to face the brunt of the State's actions. This is a harm directed at Hinds County's Black voters because of their race.

17. We want our courts to treat us fairly and to be responsive to our needs as a county and a broad community. H.B. 1020, instead, grants State officials the controlling voice in our—and only our—local judiciary.

I DECLARE THAT, TO THE BEST OF MY KNOWLEDGE, THE FOREGOING IS TRUE AND CORRECT.

Executed this 28 day of April, 2023.

*frank figgers* (Apr 28, 2023 15:19 CDT)

Frank Figgers

4