IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

National Association for the
Advancement of Colored People,
Mississippi State Conference of
The National Association for the
Advancement of Colored People;
Jackson City Branch of the NAACP;
Derrick Johnson; Frank Figgers;
Charles Taylor; Markyel Pittman;
Charles Jones; and Nsombi
Lambright-Haynes                                                            Plaintiffs

vs.                                        Case No. 3:23-cv-272-HTW-LGI

Tate Reeves, in his official capacity
as Governor of the State of Mississippi;
Sean Tisdell, in his official capacity
as Commissioner of Public Safety;
Bo Luckey, in his official capacity
as Chief of the Mississippi Department
of Public Safety Office of Capitol Police;
Michael K. Randolph, in his official
capacity as Chief Justice of the
Mississippi Supreme Court; and
Lynn Fitch, in her official capacity
as Attorney General of the State
of Mississippi                                                              Defendants

**Memorandum in Support of Motion to Dismiss on behalf of
Defendant Michael K. Randolph, in his official capacity as
<u>Chief Justice of the Mississippi Supreme Court</u>**

Defendant, Michael K. Randolph, in his official capacity as Chief Justice of the Mississippi Supreme Court (the "Chief Justice"), submits this Memorandum in Support of his Motion to Dismiss.[1]

**(1)** *The State Court has assumed jurisdiction and issued rulings such that the District Court should defer to the State Court.*

As a matter of comity and abstention, the U.S. District Court should defer to the State Court[2] that has assumed jurisdiction over these claims The State Court ordered on May 4, 2023, that the effectiveness of HB 1020 be stayed. Issue has been joined in the State Court addressing the Constitutionality of HB 1020. The Chancellor has set a hearing for Wednesday, May 10, 2023. The State Court ordered that the Chief Justice's Motion to Dismiss based on judicial immunity be heard first on May 10, 2023. So, the Federal Plaintiffs' Motion for TRO is moot since relief has been granted in the State Court staying the effectiveness of HB 1020. Therefore, this U.S. District Court should not proceed further at this time.

**(2)** *There is no "case or controversy" with respect to the immune Chief Justice, as he lacks a sufficient interest to be deemed an adverse litigant in this matter.*

The Chief Justice is immune from the claims made in the Complaint. *See* ***Vinson v. Prather***, 879 So. 2d 1053, 1057 (Miss. Ct. App. 2004) (a judicial

---

[1] Nothing herein should be construed as any comment on the merit, *vel non*, of any claims or defenses in this case. The Chief Justice's ethical obligations also limit his ability to respond to the Plaintiffs' Complaint and to raise substantive defenses if dismissal is not granted *instanter*, as any such response could be construed as an advisory opinion. The Chief Justice reserves the right to make additional arguments if this Motion to Dismiss is not granted.

[2] The Fifth Chancery Court District for Hinds County, Cause No. 25CH1:23-cv-0021, Chancellor J. Dewayne Thomas presiding.

appointment by the Chief Justice pursuant to Mississippi Code Section 9-1-105 determined to be "a judicial act[,]" and the plaintiffs' "attempt to label the appointment as administrative or non-adjudicative is without merit."). Yet, the Plaintiffs' civil action fails to implicate the requisite interest that would render the Chief Justice a proper defendant. The Chief Justice in this matter is purely neutral and his fidelity lies strictly with the rule of law, including the Constitution of the State of Mississippi and the U.S. Constitution

In *Chancery Clerk of Chickasaw County, Mississippi v. Wallace*, 646 F. 2d 151 (5th Cir. 1981), the Fifth Circuit addressed a 42 U.S.C. § 1983 "class action challenging the constitutionality of Mississippi's [statutory] procedures for the involuntary commitment of adults to state mental institutions." *Id*. at 153. The Court addressed the following issue raised —"whether plaintiffs chose 'the real parties in interest' in suing as the defendants' class the **chancery judges** and clerks of the State of Mississippi" (*i.e.*, "the Mississippi county judicial officials responsible for processing civil commitments"). *Id*. The Court held that:

> **[b]ecause of the judicial nature of their responsibility, the . . . [State Court] judges do not have a sufficiently "personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues** on which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691, 703, 7 L. Ed. 2d 663 (1962). Cf. *Mendez v. Heller*, 530 F. 2d 457 (2d Cir. 1976) (**state court judges** and clerks joined **as defendants** in a suit challenging New York's durational residence requirement for divorce found to **lack the requisite interest in defending the allegedly unconstitutional statutes**). On remand, plaintiffs will have the opportunity to correct this error by substituting as defendants the

> Mississippi officials with executive responsibility for defending the challenged civil commitment procedures.3

***Wallace***, 646 F. 2d at 160 (emphasis added). The Court further held that "[i]t is well to note that the Attorney General of the state has been representing the interests of the state throughout. He has been free to present and has presented contentions and argument on behalf of the state and its officials at every step. . . ." ***Id***. at 160-61.

The Fifth Circuit's reasoning in ***Wallace*** compels the conclusion that there is no "case or controversy" with respect to the Chief Justice, an immune party. *See, e.g.,* ***Campaign for Southern Equality v. Mississippi Dep't of Human Servs.***, 175 F. Supp. 3d 691, 698 (S.D. Miss. 2016) (quoting ***Contender Farms, L.L.P. v. U.S. Dep't of Agric.***, 779 F. 3d 258, 264 (5th Cir. 2015)) ("standing is a threshold matter to the justiciability of claims in federal court under Article III of the Constitution. Indeed, it is a 'basic proposition that the Constitution limits our jurisdiction to 'Cases' and 'Controversies'"").

First, what exactly is the Chief Justice's "personal stake" regarding "the outcome of the controversy" which would "assure" that he has the requisite "concrete adverseness" here? ***Wallace***, 646 F. 2d at 160 (quoting ***Baker***, 369 U.S. at 204). *See also* ***Whole Women's Health v. Jackson***, 142 S. Ct. 522, 532, 211 L. Ed. 2d 316 (2021) (quoting ***Muskrat v. United States***, 219 U.S. 346, 361, (1911);

---

3

*See also* ***In re Justices of Supreme Court of Puerto Rico***, 695 F. 2d 17, 21 (1st Cir. 1982) (citing ***Mendez***, 530 F. 2d at 457. (emphasis added).

*Pulliam v. Allen*, 466 U.S. 522, 538 n.18 (1984)) ("Article III of the Constitution affords federal courts the power to resolve only 'actual controversies arising between adverse litigants.' . . . **Judges exist to resolve controversies** about a law's meaning or its conformance to the Federal and State Constitutions, **not to wage battle as contestants in the parties' litigation**. As this Court has explained, '**no case or controversy' exists 'between a judge** who adjudicates claims under a statute **and a litigant who attacks the constitutionality of the statute**.'") (emphasis added);4 *In re Justices of Supreme Court of Puerto Rico*, 695 F. 2d at 21 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41, 57 S. Ct. 461, 463-64, 81 L. Ed. 617 (1937)) ("It is fundamental that to be heard in a federal court, a 'controversy' between litigants must be 'definite and concrete, touching the legal relationships of the parties having adverse legal interests.'").

Appointments pursuant to HB 1020 are stayed. And, no action can be taken thereunder so there is "personal stake" in the "outcome" of the subject litigation any "adverse legal interests" to the Plaintiffs. *In re Justices of Supreme Court of Puerto Rico*, 695 F. 2d at 21 (quoting *Haworth*, 300 U.S. at 240-41).

---

4

While there was disagreement on other aspects at issue in *Whole Women's Health*, the United States Supreme Court unanimously "agree[d] that state-court judges are not proper defendants in this lawsuit because they are 'in no sense adverse' to the parties whose cases they decide." *Whole Women's Health*, 142 S. Ct. at 533.

The Chief Justice's participation is not necessary as the dispute already involves the "Mississippi officials with executive responsibility for defending the challenged" laws. *Wallace*, 646 F. 2d at 160. The Mississippi Attorney General has not only been noticed, but is a party to this action and is positioned to represen[t] the interests of the state in this forum. *Id*. at 160. She is the state officer "given the sole power to bring or defend a lawsuit on behalf of a state agency, the subject matter of which is of statewide interest[,]" as well as to "argue the constitutionality of any statute when notified of a challenge thereto . . . ." Miss. Code Ann. § 7-5-1. For these collective reasons, the Chief Justice should be dismissed from this action.

*(3)* *The Chief Justice is entitled to immunity.*

*(A)* *Judicial immunity.*

"Judges enjoy **absolute immunity from liability for judicial or adjudicatory acts**." *Bauer v. Texas*, 341 F. 3d 352, 357 (5th Cir. 2003) (citing *Forrester v. White*, 484 U.S. 219 (1988)) (emphasis added). *See also* ***Weill v. Bailey***, 227 So. 3d 931, 935-36 (Miss. 2017) (quoting ***Stump v. Sparkman***, 435 U.S. 349, 355-56) ("judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly"); ***In re Justices of Supreme Court of Puerto Rico***, 695 F. 2d at 22 (citations omitted) ("§ 1983 does not provide relief against judges acting purely in their adjudicative capacity, any more than, say, a typical state's libel law imposes liability on a postal carrier or telephone company for simply conveying a libelous message").

The doctrine serves the "best interests of the people and public order[,]" ensuring that a judge has "the power to make decisions without having to worry about being held liable for his actions." *Weill*, 227 So. 3d at 935 (quoting *Loyacono v. Ellis*, 571 So. 2d 237, 238 (Miss. 1990)). Immunity applies to "judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Loyacono*, 571 So. 2d at 238 (quoting *Stump*, 435 U.S. at 355-56).

In *Vinson*, the Mississippi Court of Appeals unanimously affirmed the dismissal of an action against the Chief Justice of Mississippi for actions related to a judicial appointment under Section 9-1-105 on grounds of "judicial immunity." *Vinson*, 879 So. 2d at 1054, 1057. Within its analysis, the Court characterized the "act itself" (*i.e.*, "an appointment [of a Judge] pursuant to [Section] 9-1-105") to be "a **judicial** act[;]" and that the plaintiffs' "attempt to label the appointment as administrative or non-adjudicative is without merit." *Id*. at 1057 (emphasis added).

The Plaintiffs now seek injunctive relief against the Chief Justice based on allegations under 42 U.S.C. §1983. A chancellor's decree renders the current Motion for TRO moot. The Chief Justice has not violated the Bench Decree. There is, therefore, no basis for relief in the U.S. District Court under section 183. Yet, Section 1983 provides, in pertinent part,5 that "in any action brought against a

---

5
    The Ninth Circuit stated: "In 1996, Congress amended 42 U.S.C. § 1983 to limit the circumstances in which injunctive relief may be granted against judges. As a statutory matter, Congress expanded the scope of judicial immunity by providing that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Federal Courts Improvement Act of 1996 (FCIA), Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (codified at 42 U.S.C. § 1983). Section 1983 (as amended by the FCIA) therefore provides judicial

judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. *See also* **Roth v. King**, 449 F. 3d 1272, 1286-87 (D.C. Cir. 2006) (absent applicability of the "statutory limitation[s]" provided in the 1996 amendment to Section 1983, **judicial officers acting in a judicial capacity "are immune from suits for injunctive relief" thereunder**) (emphasis added).

And such immunity extends to prospective injunctions. *See* **Roth**, 449 F. 3d at 1281-83. **Roth** involved claims against the Superior Court Judges in the District Cout of the District of Columbia. The District Court held that judicial immunity only applied to claims for damages. The Circuit Court reversed, finding that prospective injunctive relief was barred since the Judges had judicial immunity for their actions in appointing counsel. *See **Id**.* at 1287. The Circuit Court of Appeals held:

> We agree with Superior Court appellants that the District Court erred in holding that appellees might be able to obtain injunctive relief, 42 U.S.C. **§1983, as amended in 1996** by the Federal Court Improvement Act, **explicitly immunizes judicial officers against suits for injunctive relief**. The statute states that, "**in any action brought against a judicial officer for an act or omission** taken in such officer's judicial capacity, **injunctive relief shall not be granted** unless a declaratory decree was violated or declaratory relief was unavailable."

**Roth**, 449 F.3d at 1287, (citing, Federal Courts Improvement Act of 1996, codified at 42 U.S.C. §1983). **Roth** is compelling and the only appeals court

---

officers immunity from injunctive relief even when the common law would not." **Moore v. Urquhart,** 899 F.3d 1094, 1104 (9th Cir. 2018).

case that counsel has found dealing directly with the 1996 amendments to section 1983, that concerns a prospective injunction.

Since the appointment of judges is a "judicial act" under Mississippi law, no declaratory decree has been violated, and the Plaintiffs have not alleged that declaratory relief is unavailable, then the Chief Justice is entitled to dismissal on grounds of judicial immunity.

*(B)    Sovereign immunity.*

In its 2021 decision in ***Whole Women's Health***, the United States Supreme Court considered pre-enforcement Section 1983 lawsuits that sought to, *inter alia*, enjoin a state-court judge from hearing cases related to a recently-enacted state abortion statute (the Texas Heartbeat Act). *See **Whole Women's Health***, 142 S. Ct. at 529-32. At the outset, the Court addressed the "difficulty" faced by the petitioners due to the doctrine of sovereign immunity. *Id*. at 531-32. According to the Court:

> [g]enerally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity. *See, e.g., **Alden v. Maine***, 527 U.S. 706, 713, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999). To be sure, in ***Ex parte Young***, this Court recognized a **narrow exception** grounded in **traditional equity practice**—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law.[6] 209 U.S. 123, 159-160, 28 S. Ct. 441, 52 L. Ed. 714 (1908). But as ***Ex parte Young*** explained, **this traditional exception does not normally permit federal courts**

---

6

The requisite "connection" to enforcement of the challenged state law "is not 'merely the general duty to see that the laws of the state are implemented,' but 'the particular duty to enforce the statute in question **and a demonstrated willingness** to exercise that duty.'" ***Campaign for Southern Equality***, 175 F. Supp. 3d at 708 (quoting ***Morris v. Livingston***, 739 F. 3d 740, 746 (5th Cir. 2014)) (emphasis in original).

> **to issue injunctions against state-court judges** or clerks. Usually, those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties. If a state court errs in its rulings, too, the traditional remedy has been some form of appeal, including to this Court, not the entry of an *ex ante* injunction preventing the state court from hearing cases. As ***Ex parte Young*** put it, "**an injunction against a state court**" or its "**machinery**" "**would be a violation of the whole scheme of our Government**." *Id*. at 163, 28 S. Ct. 441.

*Id.* at 532 (emphasis added). The inapplicability of any exceptions to the doctrine of sovereign immunity likewise compels dismissal of the Chief Justice from this action.

***(4)   The Chief Justice should be dismissed from this action based on compelling public-policy considerations, underlying immunity and "case or controversy" requirements.***

The lack of a "case or controversy" with respect to the Chief Justice and the applicable immunity doctrines are based on numerous troubling implications arising from the Chief Justice being named as a defendant in this type of action. Thus, dismissal is clearly warranted.

In his official capacity, the Chief Justice is expressly not an advocate or partisan. *See* Miss. Const. art. 6, § 155 (oath of office provides "I will faithfully and impartially discharge and perform all duties incumbent upon me"); Miss. Code Jud. Conduct - Preamble ("Our legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us. . . . The judge is an arbiter of facts and law for the resolution of disputes and a highly visible symbol of government under the rule of law"). Forcing him to participate in this action unquestionably risks the public perception of partiality in direct contravention of the aforementioned precepts. As one federal court of appeals

explained in an analogous scenario (in an Opinion authored by Former Supreme Court Justice, Stephen Breyer, then a Circuit Judge):

> [t]o **require the Justices unnecessarily to assume the role of advocates or partisans** on these issues would tend to **undermine their role as judges**. To encourage or **even force them to participate as defendants in a federal suit** attacking Commonwealth laws would be to **require them to abandon their neutrality and defend as constitutional the very laws that the plaintiffs insist are unconstitutional**—laws as to which their judicial responsibilities place them in a **neutral posture**. Indeed a public perception of partiality might well remain even were the Justices to take no active part in the litigation. The result risks harm to the court's stance of **institutional neutrality**—a harm that appeal would come too late to repair. . . .

*In re Justices of Supreme Court of Puerto Rico*, 695 F. 2d at 25 (emphasis added). Moreover, requiring the Chief Justice to participate in this litigation unquestionably interferes with the efficient administration of justice as it impairs his ability to perform the actual duties of his office. Since first notice of this action and a similar lawsuit in State Court, the Chief Justice has labored hours just seeking his dismissal.

Accordingly, compelling public-policy considerations support the Chief Justice's prompt dismissal from this action.

      Respectfully submitted, this the 4th day of May, 2023.

      Respectfully submitted,

      Michael K. Randolph, in his
      official capacity as Chief Justice
      of the Mississippi Supreme Court

      ***/s/ Ned A. Nelson***

By:_____<br>
Ned A. Nelson, MB #105712

Of Counsel:

Mark A. Nelson, MB #3808
Ned A. Nelson, MB #105712
Nelson Law PLLC
7 Woodstone Plaza, Ste. 7
Hattiesburg, MS  39402
Telephone:  601.602.6031
Facsimile:  601.602.3251
mark@nelsonfirm.law
ned@nelsonfirm.law

## Certificate of Service

I, Ned A. Nelson, hereby certify that on this the 4th day of May, 2023, I electronically filed the foregoing with Clerk of the Court using the ECF system which will provide notice to all counsel of record.

*/s/ Ned A. Nelson*
_____
Ned A. Nelson