IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE;
MISSISSIPPI STATE CONFERENCE OF
THE NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE;
JACKSON CITY BRANCH OF THE
NAACP; DERRICK JOHNSON; FRANK
FIGGERS; CHARLES TAYLOR;
MARKYEL PITTMAN; CHARLES JONES;
and NSOMBI LAMBRIGHT-HAYNES,

                  *Plaintiffs*,

v.

TATE REEVES, in his official capacity
as Governor of the State of Mississippi;
SEAN TINDELL, in his official capacity
as Commissioner of Public Safety; BO
LUCKEY, in his official capacity as
Chief of the Mississippi Department of
Public Safety Office of Capitol Police;
MICHAEL K. RANDOLPH, in his
official capacity as Chief Justice of the
Mississippi Supreme Court; and LYNN
FITCH, in her official capacity as
Attorney General of the State of
Mississippi,

                  *Defendants*.

Case No. 3:23-cv-272-HTW-LGI

**PLAINTIFFS' OPPOSITION TO
MOTION TO DISMISS ON
BEHALF OF DEFENDANT
MICHAEL K. RANDOLPH, IN HIS
OFFICIAL CAPACITY AS CHIEF
JUSTICE OF THE MISSISSIPPI
SUPREME COURT**

## INTRODUCTION

      The Motion to Dismiss on behalf of Chief Justice Randolph asserts that: (1) the

Chancery Court of Hinds County has "assumed jurisdiction" over Plaintiffs' federal

claims; (2) there is no case or controversy because (a) under Mississippi law, Defendant

1

is immune from suit, and (b) he is "purely neutral" with respect to H.B. 1020's requirement that he appoint four Hinds County Circuit Court judges and has no stake in this dispute; (3) Defendant Randolph's appointment of special judges to nearly four-year terms is a "judicial or adjudicatory act[]" shielded by judicial immunity; and (4) Defendant should be dismissed due to "public-policy considerations."

Each of these arguments fails:

1. Defendant's first argument is now moot, because the Chancery Court has dismissed Defendant Randolph from the state court case with prejudice. Moreover, that case is considering **State-law challenges** to H.B. 1020 under the Mississippi Constitution, and it did not—and cannot—assume jurisdiction over Plaintiffs' **federal claims** under the Fourteenth Amendment to the U.S. Constitution that are pending only before this Court.

2. There is a case or controversy because (a) there is a live dispute whether Defendant has immunity (which in this § 1983 case is governed by federal not state law); and (b) despite Defendant Randolph's claim of neutrality in the controversy, he is a necessary party because he is the State official charged by H.B. 1020 with appointing special judges.

3. Under federal case law, the appointment of judges for multi-year terms—outside of the context of any particular adjudication—is an administrative task, not a judicial one.

4. No public policy considerations distinguish this case from others in which state court judges sued for non-judicial administrative actions have been subject to federal court jurisdiction.

For these reasons, Defendant Randolph's Motion should be denied.

## I.     This Court Has Jurisdiction Over Plaintiffs' Federal Claims.

Even before Defendant Randolph was dismissed from the state case, that case did not present any impediment to this Court's jurisdiction.  Contrary to the Motion's suggestion (Mot. at 2), it is well settled that "the pendency of an action in [a] state court

2

is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737 (5th Cir. 1999) (citation omitted). There is no dispute that this Court has jurisdiction over Plaintiffs' § 1983 claims, and federal courts have a "virtual unflagging obligation . . . to exercise the jurisdiction given them." *Id.* (citation omitted).

There also are no comity concerns here because Plaintiffs are not asking this Court to take any action in conflict with the Chancery Court. Although in certain "exceptional circumstances" a federal court may abstain from deciding a case "where the state and federal proceedings are parallel," this case and the Chancery Court case "are not parallel, because they do not involve the same parties and the same issues." *Cope v. Smith*, No. 1:11cv192 LG-RHW, 2011 WL 4527414, at *1 (S.D. Miss. Sept. 23, 2011); *see American Guarantee & Liability Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251 (5th Cir. 2005) ("[D]iscretion to stay is available only where the state and federal proceedings are parallel—i.e., where the two suits involve the same parties and the same issues."). No Plaintiff is a party to the Chancery Court case, the Chief Justice has been dismissed from the Chancery Court case, and none of Plaintiffs' claims in this case, which are based on the Equal Protection Clause of the U.S. Constitution, are raised in that lawsuit, where the plaintiffs' claims are based solely on the Mississippi Constitution.

## II.     Defendant's Case or Controversy Arguments Fail.

Defendant Randolph puts the cart before the horse by summarily asserting that "[t]here is no 'case or controversy' with respect to the immune Chief Justice." Mot. at 2 (heading (2)). Defendant's assumption that he is immune is mistaken, because "whether

3

there is a case or controversy depends on whether [a judicial defendant] acted outside of his adjudicatory capacity" such that he is not immune. *Bauer v. Texas*, 341 F.3d 352, 360-61 (5th Cir. 2003). As explained below, the acts at issue are outside of the Chief Justice's adjudicatory capacity, defeating judicial immunity and thus making him an adverse litigant. *See* pp. 6-11, *infra*. Whether the Chief Justice is immune is a genuine controversy for this Court to decide; it is not an issue for Defendant to resolve with his own *ipse dixit*. Even the President of the United States has had to litigate his claim to absolute immunity and could not summarily invoke immunity to extinguish a lawsuit against him. *See Nixon v. Fitzgerald*, 457 U.S. 731 (1982).

Assuming *arguendo* that the Chancery Court decision dismissing Defendant Randolph from that case (ECF No. 23-1) is correct as a matter of Mississippi law, it is not a correct statement of federal law, which controls Plaintiffs' federal claim. *See* pp. 6-11, *infra*. As this Court has explained, "Inasmuch as § 1983 is a federal statute, which creates a federal cause of action for constitutional violations committed under color of state law, the immunities enjoyed by state officials sued under § 1983 are governed by federal law." *Duncan v. Mississippi Bd. of Nursing*, 982 F. Supp. 425, 434 (S.D. Miss.) (Wingate, J.) (citing *Briggs v. Goodwin*, 569 F.2d 10, 18 n.8 (D.C. Cir. 1977)), *aff'd*, 129 F.3d 611 (5th Cir. 1997).

Next, the Motion contends that there is no case or controversy here because the Chief Justice is "purely neutral" and lacks any "personal stake" in the outcome of this challenge to H.B. 1020's appointment provision. Mot. at 3, 5. H.B. 1020, however,

makes the Chief Justice the key actor in this dispute by assigning the appointment task to him alone. The Chief Justice may disclaim any personal interest in this dispute over whether H.B. 1020 violates the Equal Protection Clause—though he did testify in support of his appointment authority. Compl. ¶ 101. But only an injunction can stop him from complying with H.B. 1020 and filling the new judgeships in violation of Plaintiffs' constitutional rights. *See In re Justs. of Supreme Ct. of Puerto Rico*, 695 F.2d 17, 27 (1st Cir. 1982) (holding that even though Puerto Rico Supreme Court justices were "purely nominal parties," their "administrative responsibilities" made them "a proper party for purposes of 'case or controversy'" (citation omitted)).

As a result, this case is nothing like *Chancery Clerk of Chickasaw County v. Wallace*, 646 F.2d 151 (5th Cir. 1981). Unlike Plaintiffs' challenge to the Chief Justice's administrative task, *Chickasaw County* involved a challenge to "the constitutionality of Mississippi's procedures for the involuntary commitment of adults to state mental institutions," which the judges there were responsible for processing. *Id.* at 153. The judges did not assert immunity, but only that they were not proper parties because they were not the government officials responsible for correcting the deficiencies in Mississippi's civil commitment system. *Id.* at 159. Here Defendant clearly is the State official who is designated by statute to take the action Plaintiffs challenge. And as explained below, under ***federal law***, judges are not entitled to immunity when they perform such mandatory nonjudicial, administrative tasks. *See* pp. 6-11, *infra*.

5

Defendant also argues that his participation in this case is not necessary because the Mississippi Attorney General can defend the State's interests with respect to H.B. 1020. *See* Mot. at 6. He has not, however, identified any way in which the Attorney General could prevent the Chief Justice from complying with the duty the statute imposes on him to make the appointments that Plaintiffs claim violate their constitutions rights. Indeed, the Attorney General recently informed the Chancery Court that she "does not have the authority or ability to command the Chief Justice . . . to do, or not to do, anything at all with respect to Section[] 1 . . . of H.B. 1020," so she is "not a proper defendant" with respect to this provision. State of Mississippi *Ex Rel.* Attorney General Lynn Fitch's Response in Opposition to Plaintiffs' Motion for Leave to Amend Complaint and Add Additional Parties, *Saunders v. Mississippi*, No. 25CH1:23-cv-00421, Dkt. #45 at 8-9 (Hinds Cnty. Ch. Ct. May 9, 2023) (Ex. A). Accordingly, only an injunction against the Chief Justice can provide Plaintiffs relief.

### III. Judicial Immunity Does Not Shield the Chief Justice's Appointment of Hinds County Circuit Court Judges for Multi-Year Terms.

The Motion concedes, as it must, that judges enjoy immunity only for "judicial or adjudicatory acts." Mot. at 6 (quoting *Bauer v. Texas*, 341 F. 3d 352, 357 (5th Cir. 2003)). But the Motion fails to carry its burden of showing that making a multi-year appointment is an inherently judicial act. *See Wearry v. Foster*, 33 F.4th 260, 265 (5th Cir. 2022) ("[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." (citation omitted)). Nor is the Motion saved by the Chancery Court decision finding that Defendant Randolph has

6

judicial immunity, which does not address whether appointment of special judges under H.B. 1020 is a judicial or adjudicatory function under federal law. ECF No. 23-1. It is not, as demonstrated below.

In *Davis v. Tarrant Cnty.*, 565 F.3d 214 (5th Cir. 2009), the Fifth Circuit explained—following Supreme Court precedents—that judicial immunity does not cover "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Id.* at 221 (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). In other words, judicial immunity does not apply to anything that "simply happen[s] to have been done by judges." *Forrester v. White*, 484 U.S. 219, 227 (1988). That is because the "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Davis*, 565 F.3d at 224 (quoting *Forrester*, 484 U.S. at 227) (emphasis in original)). The doctrine thus draws a "distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." *Id.* at 221 (quoting *Forrester*, 484 U.S. at 227). "[T]he relevant inquiry is the 'nature' and 'function' of the act," particularly in "relation to a general function normally performed by a judge." *Id.* at 222 (quoting *Mireles*, 502 U.S. at 12).

Courts in the Fifth Circuit often consider four factors in determining whether an action is "judicial in nature." *Daves v. Dallas Cnty.*, 22 F.4th 522, 539 (5th Cir. 2022) (en banc) (quoting *Davis*, 565 F.3d at 222). Those factors include: (1) whether the act at issue is a "normal judicial function"; (2) whether the act occurred "in or adjacent to a court room"; (3) whether the controversy "involve[s] a pending case"; and (4) whether

7

the act arose "directly out of a visit to the judge in his official capacity." *Id.* (quoting *Davis*, 565 F.3d at 222).

Defendant fails to mention, let alone carry his burden of satisfying, any of these four factors. That by itself warrants rejection of his affirmative defense. *See Garrett v. Commonwealth Mortg. Corp. of Am.*, 938 F.2d 591, 594 (5th Cir. 1991) (defendant must show "an affirmative defense or other bar to relief appears on the face of the complaint"). Regardless, the factors reveal that the appointments at issue must be filled in Chief Justice's administrative, not judicial, capacity.

The positions created by H.B. 1020 are nearly four-year appointments to the Hinds County Circuit Court with "[n]o limitation whatsoever" on their "powers and duties." ECF No. 12-1 §§ 1(1). The multi-year appointments come with a salary, support staff, a budget related to "the office of judge," and authority to hear future cases that have not yet arisen or been filed. *See id.* §§ 1(1), 1(3)(b), 15; *id.* § 1(3)(a) (citing Miss. Code § 9-1-36, as amended by H.B. 1216 (2023)). Federal courts regularly deny judicial immunity for appointments like those at issue here that are for extended terms and are not "intimately connected to a judge's adjudicatory role" in presiding over a specific pending case. *Davis*, 565 F.3d at 227.

Most importantly, the selection of Mississippi judges to serve multi-year terms with unlimited powers is not a "normal judicial function," *Daves*, 22 F.4th at 539 (quoting *Davis*, 565 F.3d at 222), but rather a function ordinarily performed by voters. The Fifth Circuit in *Davis* recognized that "[a]lthough administrative decisions 'may be

essential to the very functioning of the courts,' such decisions have not been regarded as judicial acts." 565 F.3d at 222.  In one of the cases cited by the *Davis* court, *id.* at 222 n.3, "the senior resident Superior Court judge" appointed magistrate judges for two-year terms.  *Lewis v. Blackburn*, 555 F. Supp. 713, 715  (W.D.N.C. 1983), *rev'd on other grounds*, 759 F.2d 1171 (4th Cir. 1985).  As that court explained:

> Appointment of magistrates and other judges is ministerial; it is not required to be done by judges; it is a power to *select* that in [the state] is vested variously in governors, district bar organizations, judges, local governing boards, local officials, and the electorate.  The act of appointing to office is not a *judicial* duty.  Judicial duties are primarily acts necessary in the hearing and decision of cases or controversies.

*Id.* at 723 (emphasis in original).

The same is true here.  The Mississippi Constitution has long provided for the selection of judges for four-year terms by the electorate, and allowed the Governor to appoint a replacement judge in the event of disability or disqualification.  Miss. Const. art. 6, §§ 153, 165.  The role played by the electorate and the Governor in the selection of judges shows that it is not a normal judicial function.  Rather, it is "a task that might as well have been committed to a private person as to one holding the office of a judge." *Davis*, 565 F.3d at 225 (quoting *Ex parte Virginia*, 100 U.S. 339, 348 (1879)).  And in Mississippi, it is a task typically committed to voters.

The *Davis* court also approvingly cited *Richardson v. Koshiba*, 693 F.2d 911 (9th Cir. 1982), which it described as holding that "screening decisions by [a] judicial selection panel comprised of judges involve[d] 'executive' acts." 565 F.3d at 222 n.3. *Richardson* easily rejected an argument for judicial immunity because the selection of a

9

candidate for judicial office "bear[s] little resemblance to the characteristic of the judicial process that gave rise to the recognition of absolute immunity for judicial officers: the adjudication of controversies between adversaries."  693 F.2d at 914.  The same is true here, further indicating that the task assigned by H.B. 1020 is nonjudicial in nature.  *Id.*

Citing *Davis*, a Georgia federal court likewise held that the four-year appointment of a magistrate judge "is not entitled to judicial immunity because the appointment of associate magistrates is an administrative, not a judicial, function."  *Watts v. Bibb Cnty.*, No. 5:08-CV-413 (CAR), 2010 WL 3937397, at *12–13 (M.D. Ga. Sept. 30, 2010).  The court concluded that even though "the chief magistrate is charged under Georgia law with appointing associate magistrates, and such appointments are essential to the efficiency of the magistrate court, this is an administrative function, not an act taken in the judge's judicial capacity."  *Id.*  Again, so too here.

Indeed, the Attorney General recently told the Chancery Court that the state-law challenges to the Chief Justice's appointment authority relate exclusively to the Mississippi judicial system's "administrative functions."  State of Mississippi *Ex Rel.* Attorney General Lynn Fitch's Response in Opposition to Plaintiffs' Motion for Preliminary Injunction and Supporting Memorandum [Dkt. #10], *Saunders v. Mississippi*, No. 25CH1:23-cv-00421, Dkt. #29 at 2 (Hinds Cnty. Ch. Ct. May 3, 2023) (Ex. B).  The Court can deny Defendant Randolph's bid for absolute judicial immunity based solely on his failure to show that the multi-year appointment of a judge with unlimited powers over

future cases is a "normal judicial function." *See Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993) (rejecting judicial immunity based on absence of first factor alone).

In any event, with respect to the remaining factors, the issuance of an appointment order need not occur "in or adjacent to a court room" or involve "a visit to the judge in his official capacity," because the appointments do not "involve a pending case" with parties who might appear in a courtroom or conduct such a visit. *Daves*, 22 F.4th at 539 (citation omitted).[1] Instead, the appointments at issue are not to specific cases. That further distinguishes this suit from the Mississippi Court of Appeals decision under Mississippi law in *Vinson v. Prather*, 879 So. 2d 1053 (Miss. Ct. App. 2004), where the Chief Justice appointed "a special chancellor to hear outstanding matters regarding two underlying cases" that were already pending. 879 So. 2d at 1054.[2]

Contrary to Defendant's arguments (Mot. at 7-8), § 1983's judicial immunity exclusion does not apply to administrative actions by judges. Instead, the text incorporates the analysis above, generally excluding from certain § 1983 claims any "act

---

[1] The Chief Justice may, of course, choose to make the judicial appointments from a courtroom or his chambers. But that incidental, unnecessary connection to a courthouse does not outweigh all of the factors that weigh heavily against judicial immunity here. *See, e.g.*, *Thomas v. State*, 294 F. Supp. 3d 576, 603 (N.D. Tex. 2018), *report and recommendation adopted,* No. 3:17-CV-0348-N-BH, 2018 WL 1254926 (N.D. Tex. Mar. 12, 2018) (concluding that an alleged meeting with a judge "in his chambers" did not warrant judicial immunity based on remainder of four-factor test).

[2] The special judges' unlimited powers for a fixed term likewise distinguishes this case from *Kemp ex rel. Kemp v. Perkins*, 324 F. App'x 409 (5th Cir. 2009), in which the "appointment of a special judge for a pending case" qualified for judicial immunity because it "pertain[ed] to the judicial function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Id.* at 412 (citation omitted).

11

or omission taken in [a judicial] officer's ***judicial capacity***." 42 U.S.C. § 1983 (emphasis added).³ Indeed, courts routinely conduct the judicial immunity analysis in § 1983 cases without mentioning this language, which is rarely relevant.⁴ As described above, because the appointment of Hinds County Circuit Court judges for nearly four-year terms is not an act taken in the Chief Justice's "judicial capacity," § 1983 does not provide immunity.

Finally, the Motion's quotation from *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021), is self-defeating. *See* Mot. at 9-10. Although *Ex parte Young* does not "normally" allow injunctions against state-court judges, "[u]sually, those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties." *Id.* (quoting *Whole Woman's Health*, 142 S. Ct. at 532). Here, by contrast, the Chief Justice was assigned the task of filling four new judgeships, which is a nonjudicial function, as explained above. *See, e.g.*, *Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 911–13 (8th Cir. 2022) (distinguishing *Whole Woman's Health* because the injunction against court officials there "will not prevent *any* . . . court from 'acting' or 'exercis[ing] jurisdiction' in *any* case" (citation omitted)).

---

³ This language was added by a statutory amendment in 1996 that narrowly served to overrule the Supreme Court's decision in *Pulliam v. Allen*, 466 U.S. 522 (1984), which held that a judge acting in his or her "judicial capacity" was not immune from a § 1983 action seeking prospective injunctive relief. *Id.* at 528; *see, e.g.*, *Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 763 (8th Cir. 2019); *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197–98 (3d Cir. 2000). Unsurprisingly, the amendment was not intended to—and does not—have any bearing on cases like this in which a judge is ***not*** acting in his or her judicial capacity.

⁴ *See, e.g.*, *Davis*, 565 F.3d at 227 (holding that lawyer bringing § 1983 claim seeking felony court appointments to specific cases failed to state claim because "defendant judges acted in their judicial capacities," without discussing text of § 1983).

\* \* \*

As the Supreme Court has noted, "[a]bsolute immunity . . . is 'strong medicine'" that is justified to "protect[] the finality of judgments" and "insulat[e] judges from vexatious actions prosecuted by disgruntled litigants." *Forrester*, 484 U.S. at 225, 230 (citation omitted). But the protection of an immunity should be "extended no further than its justification would warrant." *Harlow v. Fitzgerald*, 457 U.S. 800, 811 (1982). This is not a suit brought by disgruntled litigants, nor is the finality of any judgment challenged. This suit is brought by citizens who assert that H.B. 1020 discriminates against the 70% Black population of Hinds County by packing their Circuit Court and depriving them of elected judges who are residents of the county—benefits that are afforded to the citizens of every other county of Mississippi. Chief Justice Randolph is a defendant not because he created or endorsed this scheme, but because the statute requires him to take the actions to effectuate the scheme. Plaintiffs' Equal Protection claim implicates none of the concerns that justify absolute judicial immunity.

### IV.   "Public-Policy Considerations" Are Not a Basis for Dismissal.

Finally, the Chief Justice laments that this lawsuit requires him to take a litigation position and may take time away from his other important matters. *See* Mot. at 10-11. Whatever their merit, these public policy concerns do not support dismissal. In *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719 (1980), the U.S. Supreme Court held that Virginia Supreme Court justices were proper defendants in a lawsuit claiming that the justices' ban on attorney advertising violated the plaintiffs' constitutional rights. *See id.* at 725, 739. Notwithstanding any policy concerns to the

contrary, the Court concluded that "relief was properly awarded against the chief justice in his official capacity." *Id.* at 737 n.16. Indeed, in *Magnolia Bar Ass'n, Inc. v. Lee*, 793 F. Supp. 1386 (S.D. Miss. 1992), *aff'd*, 994 F.2d 1143 (5th Cir. 1993), the Court held a trial and reached the merits of a challenge in which "[d]efendants [were] the justices of the Supreme Court of the State of Mississippi." *Id.* at 1390. Neither this Court's nor the Fifth Circuit's opinion mentioned judicial immunity. *See generally id.*; 994 F.2d 1143.[5]

The Motion is also mistaken in claiming that an "analogous scenario" was presented in *In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17 (1st Cir. 1982). Mot. at 11. Plaintiffs made two sets of claims in that case. *See id.* at 21-25 (the "Membership and Dues Claims"); *id.* at 25-27 (the "Forensic and Notarial Stamp Claims"). The court ruled that dismissal of the first set was warranted because the Justices served as "neutral adjudicators rather than as administrators" with respect to those claims. *Id.* at 21.[6] But the court expressly allowed the claims based on the Justices' "administrative responsibilities" to proceed. *Id.* at 27; *see also id.* at 25 ("[H]ere the Justices, and particularly the Chief Justice, may occupy a special administrative position."). Here, Plaintiffs' claim concerns only the Chief Justice's administrative duty to appoint new judges, and the *Supreme Court of Puerto Rico* case squarely holds that performance of such duties is not entitled to judicial immunity.

---

[5] Contrary to the representations of counsel for the Chief Justice at the May 1 status conference, none of the Mississippi Supreme Court justices were dismissed in *Magnolia Bar* on the basis of judicial immunity. Ex. C at 10:9-15.

[6] The court cited public policy concerns not to dismiss those claims, but to grant mandamus "to bring about the dismissal." *Id.* at 25. That ruling has no relevance here.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant Randolph's motion to dismiss.

Respectfully submitted this 11th day of May, 2023.

/s/ *Eric H. Holder, Jr.*
Eric H. Holder, Jr.,† DC Bar # 303115
Carol M. Browner,† DC Bar # 90004293
Megan A. Crowley,* DC Bar # 1049027
Gary S. Guzy,* DC Bar # 375977
Mark H. Lynch,* DC Bar # 193110
Brenden J. Cline,* DC Bar # 1021317
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-6000
Fax: (202) 662-6291
eholder@cov.com
cbrowner@cov.com
mcrowley@cov.com
gguzy@cov.com
mlynch@cov.com
bcline@cov.com

*Counsel for NAACP*

**Pro Hac Vice*
†*Pro Hac Vice* Applications to be Filed

/s/ *Carroll Rhodes*
Carroll Rhodes, Esq. MS Bar, # 5314
**LAW OFFICES OF CARROLL RHODES**
POST OFFICE BOX 588
HAZLEHURST, MS 39083
Telephone: (601) 894-4323
Fax: (601) 894-1464
crhode@bellsouth.net

Janette Louard,† OH Bar # 066257
Anthony Ashton,† MD Bar # 9712160021
Joe R. Schottenfeld,* DC Bar # 1735796
**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE**
4805 Mt. Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
Fax: (410) 358-9350
jlouard@naacpnet.org
aashton@naacpnet.org
jschottenfeld@naacpnet.org

*Counsel for All Plaintiffs*

**Pro Hac Vice*
†*Pro Hac Vice* Applications to be Filed

15

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2023, I electronically filed the foregoing Plaintiffs' Opposition to Motion to Dismiss on Behalf of Defendant Michael K. Randolph, in His Official Capacity as Chief Justice of the Mississippi Supreme Court with the Clerk of the Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Mark H. Lynch
Mark H. Lynch