# **<u>EXHIBIT B</u>**

**IN THE CHANCERY COURT OF HINDS COUNTY, MISSISSIPPI**
**FIRST JUDICIAL DISTRICT**

ANN SAUNDERS; SABREEN SHARRIEF;
and DOROTHY TRIPLETT                                                     **PLAINTIFFS**

VS.                                                               **CIVIL ACTION NO. 23-cv-00421**

HONORABLE MICHAEL K. RANDOLPH, in his official
capacity as Chief Justice of the Mississippi Supreme Court;
ZACK WALLACE, in his official capacity as Circuit Clerk of the
Circuit Court of Hinds County, Mississippi; and GREG SNOWDEN,
in his official capacity as Director of the Administrative Office
of Courts                                                              **DEFENDANTS**

---

**STATE OF MISSISSIPPI *EX REL.* ATTORNEY GENERAL LYNN FITCH'S
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION AND SUPPORTING MEMORANDUM [DKT. #10]**

---

### INTRODUCTION

The Court should deny Plaintiffs' motion for preliminary injunction [Dkt. #10] because this Court lacks subject matter jurisdiction.  Alternatively, the Court should deny the motion because (1) Plaintiffs' claims fail on the merits; (2) Plaintiffs have shown no irreparable harm; (3) the harm to the State in granting an injunction substantially outweighs any purported harm to Plaintiffs; and (4) an injunction would most assuredly disserve the public interest.

This matter arises out of the much-publicized recent enactment of 2023 H.B. 1020. Plaintiffs seek to have this Court invalidate the Legislature's lawful enactment of measures designed to enhance public safety and alleviate the ongoing strain on Hinds County's overburdened criminal court system.  Plaintiffs contend that H.B. 1020's provisions requiring the appointment of temporary special circuit judges and the creation of a new inferior court in Hinds County violate the Mississippi Constitution.  They further claim that a decades-old statute, MISS.

1

CODE ANN. § 9-1-105(2), likewise violates the state constitution to the extent it provides for the appointment of temporary special circuit judges.

Plaintiffs have neither shown nor alleged that they have suffered, or will suffer, any purported harm or injury that is different from that experienced by the general public—to the extent it is harmed at all, which is at best highly doubtful. Having shown no requisite adverse effect, Plaintiffs lack standing under controlling case law, and this Court lacks subject matter jurisdiction. Jurisdiction is further lacking to the extent Plaintiffs seek to have this Court enjoin the operation of judicial appointment orders issued by the Mississippi Supreme Court—relief this Court is powerless to provide.

Even if this Court determines that it has jurisdiction, Plaintiffs have failed to satisfy the standard for preliminary injunctive relief. Nothing in the Mississippi Constitution prohibits the Legislature from authorizing the Chief Justice of the Mississippi Supreme Court to appoint temporary special circuit judges. Nor does the state constitution in any way prohibit the creation of inferior courts. To the contrary—it expressly contemplates the creation of such courts, and state law provides the appellate mechanism that Plaintiffs erroneously claim is lacking. Plaintiffs cannot show beyond all reasonable doubt that the challenged laws are unconstitutional.

Finally, Plaintiffs cannot show that they stand to suffer any threatened legal or practical injury as a result of judicial appointments or the creation of an additional inferior court. The challenged laws do not bear on individual liberties or personal freedoms; rather, they relate exclusively to administrative functions of the judicial system. Plaintiffs' vague notions of constitutional injury are substantially outweighed by the public interest in enhancing public safety and promoting the efficient operation of Hinds County's overcrowded criminal court system. For

all these reasons, Plaintiffs fail to make the requisite showing for preliminary injunctive relief, and their motion should be denied.

## STATEMENT OF FACTS

**Legal Background.**  This action purports to implicate three sections of the Mississippi Constitution appearing in Article 6 governing the state judiciary.  Section 153 provides that "The judges of the circuit . . . courts shall be elected by the people in a manner and at a time to be provided by the legislature and the judges shall hold their office for a term of four years."  Miss. Const. art. VI, § 153.

Section 165 provides that "[w]henever any judge of . . . any district . . . shall, for any reason, be unable or disqualified to preside at any term of court, or in any case where the attorneys engaged therein shall not agree upon a member of the bar to preside in his place, the Governor may commission another, or others, of law knowledge, to preside at such term or during such disability or disqualification in the place of the judge or judges so disqualified."  *Id.* § 165.

Section 172 provides that "The Legislature shall, from time to time, establish such other inferior courts as may be necessary, and abolish the same whenever deemed expedient."  *Id.* § 172.

**Factual Background.**  On April 21, 2023, Governor Tate Reeves signed into law H.B. 1020.  Among other things, H.B. 1020 requires the Chief Justice of the Mississippi Supreme Court to appoint four temporary special circuit judges for the Hinds County Circuit Court.  2023 H.B. 1020, § 1(1).  It also creates an inferior court called the Capitol Complex Improvement District court ("CCID court") to function as a municipal court within the Capitol Complex Improvement District ("CCID").  *Id.* § 4(1)(a).

With regard to judicial appointments, H.B. 1020 specifically provides that "The Chief Justice of the Supreme Court shall appoint four (4) temporary special circuit judges for the Seventh

Circuit Court District.  No limitation whatsoever shall be placed upon the powers of the judges other than those provided by the Constitution and laws of this State.  The term of the temporary special circuit judges shall expire on December 31, 2026." *Id.* § 1(1).  H.B. 1020 further provides that the aforementioned temporary special circuit judges "shall be appointed no later than fifteen (15) days after the passage of this act according to applicable state laws.  The Chief Justice of the Supreme Court may elect to reappoint circuit judges that are serving on a temporary basis as of the effective date of this act in the Seventh Circuit Court District." *Id.* § 1(2).

With regard to the creation of the CCID court, H.B. 1020 provides that "From and after January 1, 2024, there shall be created one (1) inferior court as authorized by Article 6, Section 172 of the Mississippi Constitution of 1890, to be located within the boundaries established in Section 29-5-203 for the Capitol Complex Improvement District, hereinafter referred to as 'CCID'.  The CCID inferior court shall have jurisdiction to hear and determine all preliminary matters and criminal matters authorized by law for municipal courts that accrue or occur, in whole or in part, within the boundaries of the [CCID]; and shall have the same jurisdiction as municipal courts to hear and determine all cases charging violations of the motor vehicle and traffic laws of this state, and violation of the City of Jackson's traffic ordinance or ordinances related to the disturbance of the public peace that accrue or occur, in whole or in part, within the boundaries of the [CCID]." *Id.* § 4(1)(a).  "The Chief Justice of the Mississippi Supreme Court shall appoint the CCID inferior court judge authorized by [H.B. 1020, § 4]." *Id.* § 4(2).

Except as otherwise provided in H.B. 1020, its provisions "shall take effect and be in force from and after July 1, 2023." *Id.* § 18.

H.B. 1020 is not the only legislative enactment to address the appointment of temporary special circuit judges.  In 1989, the Legislature enacted MISS. CODE ANN. § 9-1-105.  For over 30

years, § 9-1-105 has provided for judicial appointment of special judges.  The current version of the pertinent statutory text authorizes "the Chief Justice of the Mississippi Supreme Court, with the advice and consent of a majority of the justices of the Mississippi Supreme Court . . . to appoint a special judge to serve on a temporary basis in a circuit . . . court in the event of an emergency or overcrowded docket."  MISS. CODE ANN. § 9-1-105(2).  The statute further provides that "It shall be the duty of any special judge so appointed to assist the court to which he is assigned in the disposition of causes so pending in such court for whatever period of time is designated by the Chief Justice.  The Chief Justice, in his discretion, may appoint the special judge to hear particular cases, a particular type of case, or a particular portion of the court's docket."  *Id.*

Most recently, Chief Justice Mike Randolph appointed Hon. Frank G. Vollor, Hon. Betty W. Sanders, Hon. Stephen B. Simpson, and Hon. Andrew K. Howorth as temporary special circuit court judges in Hinds County, for the purpose of presiding over more than 200 criminal cases. Dkt. #2 at 21-43.  The orders appointing these temporary special circuit judges reflect that they were appointed by Chief Justice Randolph, "with the advice and consent of a majority of the justices of the Mississippi Supreme Court," pursuant to MISS. CODE ANN. § 9-1-105(2).  *See id.*

**Procedural Background.**  On April 24, 2023, three individuals who allege to be residents of Jackson filed a *Complaint for Declaratory and Injunctive Relief* against Chief Justice Randolph, Hinds County Circuit Clerk Zack Wallace, and Director of the Administrative Office of Courts Greg Snowden, all in their official capacities.  Dkt. #2.  Plaintiffs assert that the aforementioned provisions of H.B. 1020 and MISS. CODE ANN. § 9-1-105(2) violate Sections 153, 165, and 172 of the Mississippi Constitution.  The seek a declaratory judgment that Sections 1 and 4 of H.B. 1020 and § 9-1-105(2) are unconstitutional.  *Id.* at 18-19, ¶¶ A-C.  They further seek a preliminary and permanent injunction to enjoin Chief Justice Randolph from appointing temporary special circuit

judges to the Hinds County Circuit Court pursuant to H.B. 1020 or § 9-1-105(2); to enjoin Chief Justice Randolph from appointing a judge to the CCID court; to enjoin Defendant Wallace from assigning cases to any appointed temporary special circuit judges; to enjoin the creation of the CCID court; and to enjoin Defendant Snowden from providing any funding in connection with any of the foregoing. *Id.* at 19, ¶¶ D-F, H-I. Additionally, Plaintiffs seek a preliminary and permanent injunction "requiring the termination of all judges appointed to the Hinds County Circuit Court pursuant to Miss. Code Ann. § 9-1-105(2)." *Id.* at 19, ¶ G.

On April 26, 2023, Plaintiffs filed a motion for preliminary injunction. Dkt. #10. Having thereafter intervened to argue the constitutionality of the challenged laws, the State of Mississippi *ex rel.* Attorney General Lynn Fitch ("the State") files the instant response in opposition to Plaintiffs' motion for preliminary injunction.

## **ARGUMENT**

### I. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THIS COURT LACKS SUBJECT MATTER JURISDICTION.

#### A. Plaintiffs lack standing to assert any of the claims sought to be advanced in this action; therefore, this Court lacks subject matter jurisdiction over this matter.

"Standing is a jurisdictional issue" that is particularly important where "a constitutional interpretation is sought." *Initiative Measure No. 65: Mayor Butler v. Watson*, 338 So. 3d 599, 605 (Miss. 2021) (internal quotation marks omitted). It is well settled that a "lack of standing robs the court of jurisdiction to hear the case." *BancorpSouth Bank v. Bruce Sweet Potato, Inc.*, 296 So. 3d 143, 149 (Miss. Ct. App. 2020) (quoting *Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814, 826 (Miss. 2009)) (internal quotation marks omitted).

In the pivotal standing case of *Reeves v. Gunn*, 307 So. 3d 436 (Miss. 2020), the Mississippi Supreme Court "abandoned the 'colorable interest' standard for establishing standing." *Initiative*

*Measure No. 65*, 338 So. 3d at 605.  "However, the traditional articulation of 'adverse impact' to describe when a party can assert standing to bring a suit survives." *Id.* (internal quotation marks omitted).  Under the surviving "adverse impact" standard, the plaintiff must show that it "experience[s] an adverse effect from the conduct of the defendant." *Hotboxxx, LLC v. City of Gulfport*, 154 So. 3d 21, 27 (Miss. 2015) (internal quotation marks omitted).  "[T]he adverse effect suffered by the challenger must be different than the adverse effect suffered by the general public." *Crook v. City of Madison*, 168 So. 3d 930, 935 (Miss. 2015).  *See also Araujo v. Bryant*, 283 So. 3d 73, 77 (Miss. 2019) (same).  Vague allegations of "immediate and irreparable" harm are insufficient to satisfy the "adverse impact" standard. *See Foster v. Sunflower County Consol. Sch. Dist.*, 311 So. 3d 705, 712 (Miss. Ct. App. 2021).

In the case at bar, Plaintiffs purport to be three taxpaying citizens of Jackson who are registered voters in Hinds County.  Dkt. #2 at 4, ¶ 10.  They do not claim any involvement with the judicial system.  They do not claim any past, present, or anticipated future status as a civil litigant, a criminal defendant, or any other party to any proceeding pending in Hinds County Circuit Court or the newly-created CCID court.  Plaintiffs have neither shown nor alleged that they have in fact experienced—or will experience—any adverse effects arising from the challenged judicial appointments or the creation of the CCID court.  They have certainly not shown that they have experienced—or will experience—any adverse effect that is different in kind or degree from that experienced by the general public, to the extent the public is harmed at all.  Accordingly, Plaintiffs do not meet the standing requirements articulated in *Initiative Measure No. 65*, *Reeves*, *Hotboxxx*, *Crook*, or *Araujo*, *supra*.

Instead, Plaintiffs contend that (1) standing should be presumed because they have alleged a deprivation of a "constitutionally protected right"; and (2) they have standing solely by virtue of being taxpayers.  Dkt. #10 at 17-20.  Both of these arguments must fail.

First, Plaintiffs have not alleged any deprivation of a personal right or freedom guaranteed by the Mississippi Constitution.  The constitutional provisions at issue do not speak to individual rights, freedoms, or liberties, but rather to the administrative functioning of the judicial branch of state government.  Plaintiffs have cited no authority that standing is or can be presumed in this context.

Second, Plaintiffs' attempt to invoke "taxpayer standing" fails because Plaintiffs have not shown how their asserted interests are any different than those of any other taxpayer.  "[A] taxpayer cannot rely on a claim 'that he suffers in some indefinite way in common with people generally.'" *Doss v. Claiborne County Bd. of Supervisors*, 230 So. 3d 1100, 1105 (Miss. Ct. App. 2017) (quoting, with approval, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 345 (2006)).  *See also Araujo*, 283 So. 3d at 78 (reaffirming that "taxpayer standing" can only exist where plaintiffs are "not simply general taxpayers"); *Pascagoula-Gautier Sch. Dist. v. Bd. of Supervisors of Jackson County*, 212 So. 3d 742, 749 (Miss. 2016) (reaffirming that "taxpayer standing" can only exist where plaintiffs "experience . . . an adverse effect [that] is different from that experienced by the general public").  Pursuant to H.B. 1020, the only taxpayer funds used to finance the challenged judicial appointments and CCID court are state—not local—tax revenues.  *See* H.B. 1020, §§ 1(3)(b), 4(3), 6(3).  Plaintiffs have not shown that they have experienced, or will experience, any purported adverse effect as taxpayers that is different from that experienced by any other state taxpayers in Hinds County or elsewhere in the state.  Thus, they do not qualify for so-called "taxpayer standing" under Mississippi law.

For all these reasons, Plaintiffs lack standing.  Therefore, this Court lacks subject matter jurisdiction over Plaintiffs' claims, and the complaint should be dismissed.

**B.** **This Court has is without jurisdiction to review or invalidate any order of the Mississippi Supreme Court appointing temporary special circuit judges.**

As set forth above, Plaintiffs seek to have this Court "[i]ssue a preliminary and permanent injunction requiring the termination of all judges appointed to the Hinds County Circuit Court pursuant to Miss. Code Ann. § 9-1-105(2)."  Dkt. #2 at 19, ¶ G.  All four orders appointing the most recent group of temporary special circuit judges pursuant to § 9-1-105(2) were issued by Chief Justice Randolph, "with the advice and consent of a majority of the justices" of the Mississippi Supreme Court.  Dkt. #2 at 21-43.  All four orders were entered on the docket of the Mississippi Supreme Court and bear its cause numbers.  *See id.*  Plaintiffs now ask this Court to declare the actions of the Supreme Court to be unconstitutional, and to issue an injunction invalidating the Supreme Court's aforementioned orders.  It is axiomatic that this Court has no jurisdiction to review orders of the Supreme Court or its Justices, nor does it possess the power to enjoin or invalidate the actions of the Supreme Court.  That power is vested in the Supreme Court alone.  Nor does this Court—a chancery court—have jurisdiction to issue any order that interferes with proceedings in circuit court.  *See* MISS. CONST. §§ 159-60.

Thus, to the extent the Court does not dismiss this action in its entirety for lack of subject matter jurisdiction given Plaintiffs' lack of standing, see *supra*, it should—at a minimum—dismiss Plaintiffs' claim for injunctive relief to "terminat[e] . . . all judges appointed to the Hinds County Circuit Court," *id.* at 19, ¶ G, pursuant to § 9-1-105(2).  To hold otherwise would turn the entire concept of appellate jurisdiction on its head.  Respectfully, this Court should decline to entertain such an outlandish proposition.

## II. ALTERNATIVELY, PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE NONE OF THE GOVERNING FACTORS SUPPORTS A PRELIMINARY INJUNCTION.

Motions for a preliminary injunctive relief are governed by MISS. R. CIV. P. 65 and related case law.  It is well settled that before issuing a preliminary injunction, "a trial court must find four things," as follows:  (1) that there exists a substantial likelihood that the plaintiff will prevail on the merits; (2) that the injunction is necessary to prevent irreparable harm; (3) that the threatened injury to the plaintiff outweighs the harm an injunction might do to the defendants; and (4) that granting a preliminary injunction is consistent with the public interest.  *Hinton v. Rolison*, 175 So. 3d 1252, 1259-60 (Miss. 2015).  *See also Short v. Williams*, 303 So. 3d 87, 94 (Miss. Ct. App. 2020).  The "plaintiff bears the burden of showing the need for injunctive relief."  *Hinton*, 175 So. 3d at 1260.

### A. <u>Plaintiffs cannot establish a substantial likelihood of prevailing on the merits because the challenged laws are not unconstitutional.</u>

It is well settled that laws duly enacted by the Legislature enjoy a "strong presumption of constitutionality."  *Clark v. Bryant*, 253 So. 3d 297, 300 (Miss. 2018).  The burden is on the party challenging the law's constitutionality "to prove [it] is unconstitutional beyond a reasonable doubt."  *Id.*  "[A]ll doubts are resolved in favor of a statute's validity."  *Id.*  A court "may strike down an act of the legislature only where it appears beyond all reasonable doubt that the statute violates the clear language of the constitution."  *Araujo*, 283 So. 3d at 78 (internal quotation marks omitted).  "In other words, to state that there is doubt regarding the constitutionality of an act is to essentially declare it constitutionally valid."  *Id.* at 78-79 (internal quotation marks omitted).

**1. The challenged judicial appointment provisions of H.B. 1020 and MISS. CODE ANN. § 9-1-105(2) do not violate the Mississippi Constitution.**

The Mississippi Constitution provides that permanent circuit court judges "shall be elected by the people in a manner and at a time to be provided by the legislature." MISS. CONST. art. VI, § 153. Section 153 does not apply to temporary special circuit judges, as confirmed by MISS. CONST. art. VI, § 165. Section 165 provides that "[w]henever any judge of . . . any district . . . shall, for any reason, be unable or disqualified to preside at any term of court, or in any case where the attorneys engaged therein shall not agree upon a member of the bar to preside in his place, the Governor may commission another, or others, of law knowledge, to preside at such term or during such disability or disqualification in the place of the judge or judges so disqualified." MISS. CONST. art. VI, § 165.

Plaintiffs argue that § 165 invalidates H.B. 1020 and § 9-1-105(2) because, according to Plaintiffs, the challenged laws "create *new judgeships*" as opposed to providing a means for appointing temporary special circuit judges. Dkt. #10 at 8-9 (italics in original). As discussed in greater detail below, the challenged provisions authorize temporary special judicial appointments—not permanent judgeships. Regardless, nothing in § 165 purports to curtail, or even address, the Legislature's authority to provide for additional "judgeships" within a given circuit court district. *See* MISS. CONST. art. VI, § 165. Section 152 of the Mississippi Constitution vests the Legislature with authority to determine "the number of judges" in any circuit court district upon consideration of "population, the number of cases filed and other appropriate data." *Id.* § 152. *See also* MISS. CODE ANN. § 9-7-25(1) (confirming Legislature's authority to control number of circuit judges in Hinds County). Even assuming for the sake of argument that the laws at issue "create new judgeships" as Plaintiffs contend, Plaintiffs have not pointed to any constitutional provision prohibiting the Legislature from doing as much here. But this case does not involve the

creation of additional permanent circuit judgeships; rather, its focus is limited to the appointment of temporary special circuit judges.

Plaintiffs further argue that the challenged laws are unconstitutional because they permit judicial appointments that are made (1) by the Chief Justice of the Mississippi Supreme Court and not by the Governor; (2) for periods of time that Plaintiffs do not view as "temporary"; and (3) for reasons other than disqualification or disability. Dkt. #10 at 9-11. Plaintiffs contend that all three of these purported defects violate § 165, which they read as the exclusive means of appointing temporary special circuit judges.

Plaintiffs' interpretation of § 165 fails to adhere to the longstanding principle that the "State Constitution does not grant specific legislative powers, but limits them." *Moore v. Grillis*, 39 So. 2d 505, 509 (Miss. 1949). Said differently, "the Legislature has all political power not denied it by the state or national constitutions." *Wheeler v. Shoemake*, 57 So. 2d 267, 280 (Miss. 1952). Section 165 contemplates judicial appointments of special circuit judges on a temporary basis, but nothing in that section purports to deny the Legislature the ability to provide for such appointments on different terms than those delineated in § 165. In the absence of such a limitation—and since the default is to legislative discretion, see *Moore*, *Wheeler*, *supra*—there is no constitutional prohibition of the Legislature's enactment of laws providing for temporary special circuit judges on terms that differ from those in § 165.

Not only is Plaintiffs' view of the Mississippi Constitution wrong in the general sense, but their view of § 165 is not in keeping with the construction that Mississippi appellate courts have given that specific section of the Constitution. First, the Mississippi Court of Appeals has recognized that § 165 "is not 'the exclusive mechanism for the selection of special judges'" and need not be interpreted as such. *See Vinson v. Prather*, 879 So. 2d 1053, 1056 (Miss. Ct. App.

2004) (quoting *McDonald v. McDonald*, 850 So. 2d 1182, 1187 (Miss. Ct. App. 2002)) (emphasis added). *Vinson* confirms that the Chief Justice's appointment power pursuant to Miss. Code Ann. § 9-1-105 is a permissible alternative to the gubernatorial-appointment mechanism provided for in § 165. *See Vinson*, 879 So. 2d 1053, 1056-57. That view is equally applicable to the judicial appointment mechanism provided for in H.B. 1020, § 1. Even on its face, § 165 contemplates an alternative to gubernatorial appointments—namely, that the attorneys practicing in the district may agree upon a member of the bar to serve as a temporary judge. *See* Miss. Const. art. VI, § 165.

Second, Plaintiffs' unfounded assertions to the contrary notwithstanding, neither of the challenged laws creates any permanent judgeships. H.B. 1020 authorizes the Chief Justice of the Mississippi Supreme Court to "appoint four (4) <u>temporary</u> special circuit judges for the Seventh Circuit Court District." 2023 H.B. 1020, § 1(1) (Ex. "A") (emphasis added). This appointment power automatically stands repealed on December 31, 2026. *Id.* § 1(4). Similarly, Miss. Code Ann. 9-1-105(2) "does not provide for the creation of additional permanent judgeships." *Prewitt v. Moore*, 840 F. Supp. 428, 435 (N.D. Miss. 1993). Rather, it allows for appointments of special circuit judges "to serve on a <u>temporary</u> basis . . . in the event of an emergency or overcrowded docket." Miss. Code Ann. 9-1-105(2) (emphasis added).

Third, § 165 provides that an inability—"for any reason"—of existing judges to preside over cases shall constitute a sufficient reason for appointing temporary special circuit judges. *See* Miss. Const. art. VI, § 165. Consistent with this provision, Miss. Code Ann. § 9-1-105(2) limits the appointment of temporary special circuit judges to circumstances in which elected permanent circuit court judges face "an emergency or overcrowded docket," § 9-1-105(2), and are thereby unable—as a practical matter—to preside over their entire docket. Similarly, it cannot be denied that a major purpose underlying the enactment of H.B. 1020 was to assist in alleviating

overcrowded and backlogged criminal court dockets in Hinds County, the most populous county in the state and one in which the need for an efficient criminal docket is especially pronounced given the ever-increasing crime rate.

Additionally, Plaintiffs argue that unless the challenged appointment provisions of H.B. 1020 and § 9-1-105(2) are declared unconstitutional, "[t]he Legislature could dilute the power of duly elected judges across the state." Dkt. #10 at 13-14. But the challenged provisions do not in fact "dilute" the power of any elected permanent circuit court judge. Each of the elected permanent circuit court judges in Hinds County has retained, and will continue to retain, exactly the same powers that he or she enjoyed prior to the enactment of the challenged laws. Plaintiffs have produced no evidence that the challenged laws have resulted, or will result, in any diminution or dilution of any extant judicial power. Nor have they produced any authority providing that judicial power is anything other than *qualitative*, as opposed to *quantitative*. A circuit judge has no entitlement to a docket of any particular size in terms of the number of cases over which he/she presides, nor does the judge's judicial power turn on the size of the docket over which he/she presides. For all these reasons, the challenged judicial appointment provisions of H.B. 1020 and Miss. Code Ann. § 9-1-105(2) do not "dilute" judicial power and are constitutionally permissible. Plaintiffs cannot meet their heavy burden to show otherwise.

**2. The creation of the CCID court does not violate the Mississippi Constitution.**

Plaintiffs contend that the CCID court provided for in Section 4 of H.B. 1020 violates § 172 of the Mississippi Constitution because H.B. 1020 does not expressly provide for a right of appeal, and—according to Plaintiffs—"the Court may not read into the statute a right of appeal to redeem it." Dkt. #10 at 17. Plaintiffs argument fails because state law *does* in fact provide a mechanism for appeals from the CCID court to the constitutionally-created circuit court.

Section 172 of the Mississippi Constitution provides that "[t]he Legislature shall, from time to time, establish such other inferior courts as may be necessary, and abolish the same whenever deemed expedient." MISS. CONST. art. VI, § 172. Section 172 says nothing of any requirement that an appellate mechanism need expressly appear in the court's originating statute for the court to pass constitutional muster as an "inferior court." Nor have Plaintiffs cited any controlling authority to that effect. For a court to be deemed constitutionally authorized as an "inferior court" pursuant to § 172, it is enough that the "court must be inferior in ultimate authority to the constitutionally created court which exercises the same jurisdiction. This superiority is shown by giving the constitutional court controlling authority over the legislative court, by appeal or certiorari, for example." *Marshall v. State*, 662 So. 2d 566, 570 (Miss. 1995) (emphasis added).

The CCID court is constitutional because it is established to operate on par with a municipal court. H.B. 1020 expressly grants the CCID court "jurisdiction to hear and determine all preliminary matters and criminal matters authorized by law for municipal courts." 2023 H.B. 1020, § 4(1)(a) (Ex. "A") (emphasis added). It further provides that the CCID court "shall have the same jurisdiction as municipal courts to hear and determine" certain motor vehicle, traffic, and disturbing the peace offenses. *Id.* (emphasis added). "The judge shall possess all qualifications required by law for municipal court judges." *Id.* § 4(2) (emphasis added). Furthermore, the judge's "compensation shall not be in an amount less than the compensation paid to municipal court judges and their support staff in the City of Jackson." *Id.* § 4(3) (emphasis added).

Municipal courts are creatures of statute. *See* MISS. CODE ANN. § 21-23-1. They "do not handle civil cases"—only criminal cases. *See Miss. Comm'n on Judicial Performance v. Moore*, 356 So. 3d 122, 127 n.2 (Miss. 2023). State law expressly provides that "[a]ny person adjudged guilty of a criminal offense by a . . . municipal court may appeal to county court or, if there is no

county court, to circuit court." MRCrP 29.1(a). *See also* MISS. CODE ANN. § 11-51-81 ("All appeals from . . . all municipal courts shall be to the county court under the same rules and regulations as are provided on appeals to the circuit court"). State law thus provides municipal court defendants with a right of appeal to the county court and ultimately to the circuit court, see *id.* § 11-1-59, which is a constitutionally-created court, see MISS. CONST. art. VI, § 152. Therefore, consistent with *Marshall*, *supra*, it is beyond question that inasmuch as municipal courts enjoy a degree of concurrent jurisdiction with circuit courts, "[m]unicipal courts are validly established inferior courts." *Miss. Judicial Performance Comm'n v. Thomas*, 549 So. 2d 962, 964 (Miss. 1989) (emphasis added). Because the CCID court is established to function as a municipal court, it is subject to the same appeal mechanism, and there is no "lack of appeal," Dkt. #10 at 17, as asserted by Plaintiffs.

Even if the Court were to find that no appeal right exists by virtue of the foregoing, a right of appeal is nevertheless provided by law. There can be no question that the CCID court is inferior to the circuit court. H.B. 1020 expressly states that the CCID court is an "inferior court as authorized by . . . Section 172 of the Mississippi Constitution of 1890" and equates its jurisdiction to that of a municipal court, as set forth *supra*. 2023 H.B. 1020, § 4. Accordingly, even if the CCID court were not a municipal court per se, state law nevertheless would provide an appellate mechanism that comports with *Marshall*—namely, the writ of certiorari to the circuit court. *See* MISS. CODE ANN. § 11-51-95. "Writs of certiorari are familiar tools, used by one court to review the decisions of an inferior court." *Town of Terry v. Smith*, 48 So. 3d 507, 509 (Miss. 2010). Section 11-51-95 "extends that review 'to all tribunals inferior to the circuit court.'" *Id.*

Thus, because a "constitutional court [i.e., the circuit court] [has] controlling authority over" the CCID court, "by appeal or certiorari," see *Marshall*, 662 So. 2d at 570, the CCID court

is an inferior court within the ambit of MISS. CONST. art. VI, § 172, and the challenged provisions of H.B. 1020 are constitutionally permissible.  Here again, Plaintiffs cannot meet their heavy burden to show otherwise.

Plaintiffs cannot show "beyond all reasonable doubt," *Araujo*, 283 So. 3d at 78, that the challenged provisions of H.B. 1020 or MISS. CODE ANN. § 9-1-105(2) violate the Mississippi Constitution.  As a matter of law, see *id.*, even if there were *some* doubt regarding the constitutionality of these laws—and there is not—this Court has no alternative but to uphold the laws as constitutional under the controlling standard by which a constitutional challenge is judged.

For all these reasons, Plaintiffs' claims fail on the merits, and their motion for preliminary injunction should be denied.

**B. <u>Plaintiffs cannot demonstrate irreparable harm.</u>**

As discussed above in relation to their lack of standing, Plaintiffs purport to be three taxpaying citizens of Jackson who are registered voters in Hinds County.  Dkt. #2 at 4, ¶ 10.  They do not claim any involvement with the judicial system.  They do not claim any past, present, or anticipated future status as a civil litigant, a criminal defendant, or any other party to any proceeding pending in Hinds County Circuit Court or the newly-created CCID court.  Plaintiffs have neither shown nor alleged that they have in fact experienced—or will experience—any adverse effects arising from the challenged judicial appointments or the creation of the CCID court. They have certainly not shown that they have experienced—or will experience—any adverse effect that is different in kind or degree from that conceivably experienced by the general public.

As it relates specifically to their challenge to the provisions of § 9-1-105(2), Plaintiffs ask this Court to "[i]ssue a preliminary and permanent injunction requiring the termination of all judges appointed to the Hinds County Circuit Court pursuant to Miss. Code Ann. § 9-1-105(2)."

Dkt. #2 at 19, ¶ G.  The challenged judicial appointment provisions of § 9-1-105(2) have been on the books in one form or another for over 30 years.  Plaintiffs allege that they have each been a resident of Jackson since 2009, 2010, and 1987, respectively.  Dkt. #2 at 4, ¶¶ 11-13.  Thus, it can hardly be said—at this late date decades after the original enactment of challenged judicial appointment provisions—that these provisions pose some imminent harm to Plaintiffs.  If laches does not bar this claim on the merits, then at the very least, this years-long "delay in seeking . . . emergency injunctive relief undercuts [Plaintiffs'] 'irreparable harm' assertions." *Clark v. Wesley*, 305 So. 3d 182, 193 (Miss. Ct. App. 2020).

Based on the record before this Court, there is no evidence that Plaintiffs have experienced or will experience any harm whatsoever from the appointment of temporary special circuit judges or the creation of the CCID court.  Plaintiffs allege—in conclusory fashion—that they "will suffer violations of their constitutional rights from which there is no undoing."  Dkt. #10 at 21.  But that presupposes a constitutional violation, which—as shown above—has not occurred here.  Even if it had, the constitutional violations alleged in this case relate exclusively to administrative functions of the judicial branch of State government; they have nothing to do with Plaintiffs' individual rights, freedoms, or liberties as citizens of Mississippi.  If anything, the challenged provisions will more likely confer a *benefit* to Plaintiffs, as citizens of Jackson, in the form of reduced crime and increased public safety.

There is no injury here in any legal or practical sense, and certainly no irreparable harm to these plaintiffs.

C.  **The harm to the State in granting an injunction would far exceed any purported harm to Plaintiffs.**

Weighed against the lack of any harm to Plaintiffs is the considerable harm that a preliminary injunction would work upon the State.  First, the challenged laws constitute the duly-

enacted legislation of the Mississippi Legislature—*viz.*, the people's representatives.   They inherently reflect the will of the people of the State of Mississippi.   The State is harmed any time that will is enjoined by a court on behalf of a handful of individual plaintiffs who are unhappy with the actions of the Legislature.

Second, this Court may take judicial notice of the fact that the City of Jackson—the seat of State government—is presently engulfed in a public safety emergency stemming from a significant increase in violent crime.   That crime affects all races and creeds.   Jackson is Mississippi's largest city, and the tri-county area is the largest metropolitan center in the state.   Jackson is also the home of the State Capitol, multiple hospitals and medical providers, museums, several universities, and a plethora of retail and restaurant establishments.   The City of Jackson and Hinds County have both suffered undeniable crises of leadership in recent years.   Citizens of Jackson have been forced to contend almost continuously with all manner of infrastructure and related issues, including numerous and prolonged city-wide water outages, indefinite disruption to garbage collection, ubiquitous potholes, urban blight, growing vagrancy, a dysfunctional city council, physical fights at multiple county board of supervisors meetings—and perhaps most notably, a widespread increase in violent crime.   These problems affect not only the residents of the City of Jackson and Hinds County, but also the hundreds, if not thousands, of people who commute to Jackson from surrounding areas on a daily basis to work and do business, as well as the many individuals and families who routinely travel to Jackson to visit the state capital for medical care, shopping/retail opportunities, and tourism/recreational attractions.   Consequently, Jackson/Hinds County's problems do not stop at the county lines—in a small state like Mississippi, the fallout spreads considerably further.

The challenged laws are thus part and parcel of a broader legislative effort to address this ongoing public safety crisis with the objective of creating a safer capital city for all Jacksonians and all Mississippians.  H.B. 1020 provides additional judicial resources designed to further this effort by, in part, temporarily increasing the efficiency and effectiveness of the criminal court system in Hinds County.  The harm in enjoining the challenged provisions of H.B. 1020 far exceeds any purported harm that has been or could be experienced by Plaintiffs as a result of the challenged provisions.

Third, this Court may likewise take judicial notice of the fact that the Hinds County Circuit Court has in recent years been plagued by a backlog of criminal cases created in large part by overcrowded dockets.  This may in part be an organic feature of Hinds County's status as the state's most populous county.  Undoubtedly, the COVID-19 pandemic exacerbated this problem. On the criminal side of the court system, the exceedingly high crime rate in the Jackson area has placed a strain on judicial resources that affects the ability of both victims and the accused alike to timely access justice through the courts.

The appointment of temporary special circuit judges has undoubtedly helped to alleviate overcrowded dockets.  In 2006, the Mississippi Supreme Court "appointed two special judges to help expedite criminal cases in Hinds County Circuit Court and relieve the criminal case backlog." 5/24/06 Miss. Supreme Court News Release (Ex. "B").  In remarking on those appointments at that time, Hinds County Circuit Judge Winston Kidd said, "I appreciate the Supreme Court's appointment of Senior Retired Circuit Judges Breland Hilburn and William Coleman.  Judge Hilburn has been a tremendous help in reducing the number of criminal cases on my docket." *Id.* Judge Kidd is not the only Hinds County Circuit Judge to have acknowledged the problem of overcrowded dockets.  Former Hinds County Circuit Senior Judge Tomie Green likewise

recognized this problem. *See, e.g., Safeco Ins. Co. of Am. v. State ex rel. Hood*, -- So. 3d --, 2019 WL 3955084, at *2 (Miss. Aug. 22, 2019) (reflecting Judge Green's intent to appoint special master, in part "on the grounds of [the court's] overcrowded civil and criminal dockets").

As crime rates have soared in Hinds County in recent years, the problem of overcrowded criminal dockets has not abated. In early 2021, Hinds County District Attorney Jody Owens reported 2,600 criminal cases on the Hinds County Circuit Court docket, with another 600 cases in which the defendant had yet to appear before a judge. *See* 3/12/21 WLBT article (Ex. "C"). Following a spike in homicides and violent crimes in 2020, D.A. Owens "said one factor contributing to the increase in crime is the lack of cases being resolved in the court system." *Id.*

H.B. 1020 and § 9-1-105(2) provide additional judicial resources designed to temporarily ease this ongoing strain on the criminal dockets of permanent circuit court judges in Hinds County. For this additional reason, the harm in enjoining the challenged provisions of these laws far exceeds any purported harm that has been or could be experienced by three plaintiffs who have shown nothing more than the fact that they pay taxes.

Finally, as noted above, Plaintiffs seek an injunction "requiring the termination of all judges appointed to the Hinds County Circuit Court pursuant to Miss. Code Ann. § 9-1-105(2)." Dkt. #2 at 19, ¶ G. Attached to Plaintiffs' complaint are orders reflecting Chief Justice Randolph's appointment, pursuant to § 9-1-105(2), of Hon. Frank G. Vollor, Hon. Betty W. Sanders, Hon. Stephen B. Simpson, and Hon. Andrew K. Howorth as temporary special circuit court judges in Hinds County. Dkt. #2 at 21-43. The aforementioned orders reflect that these special judges were directed "to preside and enter judgment" in over 200 criminal cases (collectively). *See id.* The relief Plaintiffs seek regarding these appointments is nothing short of revolutionary from a legal standpoint. It would effectively mean that three plaintiffs having no interest in prior or pending

criminal proceedings could unseat all of the sitting temporary special circuit judges in Hinds County—despite having no standing to challenge criminal convictions, pleas, or orders entered by those special judges. Furthermore, if this Court were to invalidate these and earlier such special appointments on constitutional grounds, that action may invite claims attacking the rulings of those courts. That could open the door to an onslaught of claims—meritorious or not—that would only serve to wreak further havoc on Hinds County's already overburdened court system. When these real, concrete harms are weighed against the vague notion of constitutional injury that Plaintiffs seek to advance in this case, the balance tips decidedly against any award of injunctive relief.

### D. **Granting a preliminary injunction would harm, not serve, the public interest.**

As set forth in detail immediately above, granting a preliminary injunction in this case would undermine duly-enacted legislative efforts to mitigate Jackson's ongoing public safety emergency and Hinds County's overcrowded criminal court dockets. It would also risk inviting attacks on the rulings of temporary special circuit judges in hundreds, if not thousands, of prior and pending criminal cases. These outcomes require no further discussion, other than to say— without equivocation—that they plainly disserve the public interest.

Plaintiffs contend that unless this Court enjoins the challenged provisions of H.B. 1020 and MISS. CODE ANN. § 9-1-105(2), those laws would "undermine public confidence in the Mississippi judiciary." Dkt. #10 at 24. Plaintiffs offer no evidence to support this vague and conclusory assertion. It can just as easily be said that the challenged provisions restore confidence in public order and safety. Plaintiffs further assert that the challenged provisions "pose high-profile threats to the basic democratic composition of our state's judicial system and create the perception that the composition of our judiciary is just another vehicle for partisan gamesmanship in a deeply divided Mississippi." Dkt. #10 at 25. But that is a political opinion—one not shared by all, and

maybe not even by many. Weighed in the balance against the legitimate legislative policy

considerations of law and order, public safety, and increased access to justice through the criminal

court system, Plaintiffs' claim that an injunction would serve the public interest rings hollow.

## **CONCLUSION**

For all these reasons, the Court should deny Plaintiffs' motion for preliminary injunction

in its entirety.

THIS the 3rd day of May, 2023.

Respectfully submitted,

STATE OF MISSISSIPPI *EX REL.* ATTORNEY
GENERAL LYNN FITCH, DEFENDANT-
INTERVENOR

By:     LYNN FITCH, ATTORNEY GENERAL
FOR THE STATE OF MISSISSIPPI

By:     s/Rex M. Shannon III
REX M. SHANNON III (MSB #102974)
Special Assistant Attorney General

REX M. SHANNON III (MSB #102974)
GERALD L. KUCIA (MSB #8716)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi  39205-0220
Tel.:  (601) 359-4184
Fax:  (601) 359-2003
rex.shannon@ago.ms.gov
gerald.kucia@ago.ms.gov

ATTORNEYS FOR STATE OF MISSISSIPPI
*EX REL.* ATTORNEY GENERAL LYNN FITCH,
DEFENDANT-INTERVENOR

## <u>CERTIFICATE OF SERVICE</u>

I, Rex M. Shannon III, Special Assistant Attorney General and one of the attorneys for Defendant-Intervenor State of Mississippi *ex rel.* Attorney General Lynn Fitch, do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's MEC filing system, which sent notification of such filing to all counsel of record.

THIS the 3rd day of May, 2023.

<u>s/Rex M. Shannon III</u>
REX M. SHANNON III