**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE, ET AL.**                    **PLAINTIFFS**

**VS.**                                        **CASE NO. 3:23-cv-00272-HTW-LGI**

**TATE REEVES, in his official capacity
As Governor of the State of Mississippi, ET AL.**              **DEFENDANTS**

---

## <u>MEMORANDUM OF AUTHORITIES IN SUPPORT OF DEFENDANT GOVERNOR TATE REEVES'S MOTION TO DISMISS</u>

---

### <u>INTRODUCTION</u>

Plaintiffs' claims against Defendant Tate Reeves, in his official capacity as Governor of the State of Mississippi, ("the Governor") should be dismissed for lack of subject-matter jurisdiction because (1) Plaintiffs lack standing to pursue their asserted claims against the Governor; and (2) Plaintiffs' claims against the Governor are barred by sovereign immunity.

This matter arises out of the Mississippi Legislature's much-publicized recent enactment of 2023 H.B. 1020 and 2023 S.B. 2343. Plaintiffs seek to have this Court invalidate the Legislature's lawful enactment of measures designed to enhance public safety and alleviate the ongoing strain on Hinds County's overburdened criminal court system. Specifically, Plaintiffs seek declaratory and injunctive relief designed to invalidate the following features of the aforementioned state laws: (1) the expansion of Mississippi Department of Public Safety/Capitol Police jurisdiction; (2) the appointment of temporary special circuit judges to the Hinds County Circuit Court; (3) the creation of the Capitol Complex Improvement District ("CCID") inferior court; and (4) the appointment of prosecutors for the CCID court.

Without question, the Governor has no role in enforcing any of the above-mentioned provisions—or, for that matter, <u>any</u> provision—of H.B. 1020 or S.B. 2343. He is nowhere mentioned in either bill. He thus has no causal connection to Plaintiffs' alleged injuries and no ability to redress those alleged injuries. Therefore, Plaintiffs lack Article III standing to pursue their claims against the Governor. Relatedly, no provision of H.B. 1020 or S.B. 2343 charges the Governor with the particular duty to enforce any provision of either bill. Because the Governor is not statutorily tasked with the particular duty to enforce the challenged provisions, the *Ex parte Young* doctrine does not apply, and Plaintiffs' claims against the Governor are barred by sovereign immunity.

For these reasons and those set forth herein, this Court lacks subject-matter jurisdiction as to any and all claims asserted against the Governor. Therefore, pursuant to FED. R. CIV. P. 12(b)(1), Plaintiffs' claims against the Governor should be dismissed in their entirety.

## STATEMENT OF FACTS

**Legal Background.** This motion implicates principles of Article III standing and sovereign immunity as they relate to Plaintiffs' claims against the Governor. Pursuant to settled federal law, a plaintiff lacks standing to pursue injunctive or declaratory relief against a state official where the official did not cause the alleged injuries and/or cannot redress them. *See Okpalobi v. Foster*, 244 F.3d 405, 424-29 (5th Cir. 2001). Additionally, where the state official lacks the requisite enforcement connection to the challenged law, any claims against him to prevent such enforcement are barred by sovereign immunity. *See Tex. All. For Retired Americans v. Scott*, 28 F.4th 669, 672-74 (5th Cir. 2022).

**Factual Background.** On April 21, 2023, Governor Tate Reeves signed into law H.B. 1020 and S.B. 2343. Among other things, H.B. 1020 requires the Chief Justice of the Mississippi

Supreme Court to appoint four temporary special circuit judges for the Hinds County Circuit Court. H.B. 1020, § 1(1) (Ex. "A"). "The Administrative Office of Courts shall establish personnel policies to compensate the support staff for each temporary special circuit judge." *Id.* § 1(3)(b).

H.B. 1020 further provides that "From and after January 1, 2024, there shall be created one (1) inferior court as authorized by Article 6, Section 172 of the Mississippi Constitution of 1890, to be located within the boundaries established in Section 29-5-203 for the Capitol Complex Improvement District, hereinafter referred to as 'CCID'. The CCID inferior court shall have jurisdiction to hear and determine all preliminary matters and criminal matters authorized by law for municipal courts that accrue or occur, in whole or in part, within the boundaries of the [CCID]; and shall have the same jurisdiction as municipal courts to hear and determine all cases charging violations of the motor vehicle and traffic laws of this state, and violation of the City of Jackson's traffic ordinance or ordinances related to the disturbance of the public peace that accrue or occur, in whole or in part, within the boundaries of the [CCID]." *Id.* § 4(1)(a).

Pursuant to H.B. 1020, "[t]he Chief Justice of the Mississippi Supreme Court shall appoint the CCID inferior court judge authorized by [H.B. 1020, § 4]." *Id.* § 4(2). "The Administrative Office of Courts shall provide compensation for the CCID inferior court judge and the support staff of the judge." *Id.* § 4(3). "The Attorney General shall designate two (2) attorneys to serve as prosecuting attorneys for any cause of action within the jurisdiction of the [CCID] inferior court." *Id.* § 5(1). The Administrative Office of Courts is further tasked with such responsibilities as providing a support staff for a CCID court clerk and paying the salaries of such clerk and his/her support staff. *See id.* § 6(1)-(3).

H.B. 1020 further expands the boundaries of the CCID. *Id.* § 8. Relatedly, S.B. 2343 provides that MISS. CODE ANN. § 45-1-19 shall be amended to provide that "[t]he Department of

Public Safety shall have primary jurisdiction [concurrent with the jurisdiction of the City of Jackson and that of Hinds County] . . . to enforce all laws of the State of Mississippi within the boundaries of the [CCID]," and that "such enforcement shall be its primary function." S.B. 2343, § 1 (Ex. "B"). Additionally, S.B. 2343 provides that "[t]he Department of Public Safety shall have jurisdiction relative to the enforcement of all laws of the State of Mississippi within the boundaries of the City of Jackson, Mississippi," and that such jurisdiction "shall not be primary and shall be concurrent with the jurisdiction of the City of Jackson, Mississippi, and that of Hinds County, Mississippi." *Id.* Further, the Office of the Capitol Police shall continue to have jurisdiction relative to the enforcement of all laws of the State of Mississippi within the CCID. *Id.*

**Procedural Background.**   On April 21, 2023, Plaintiffs filed their *Complaint for Declaratory and Injunctive Relief* against the Governor and other State defendants, all in their respective official capacities. Dkt. #1 at 1. Plaintiffs allege that H.B. 1020 and S.B. 2343 violate the Fourteenth Amendment by "target[ing] Jackson's majority-Black residents on the basis of race for a separate and unequal policing structure and criminal justice system to which no other residents of the State are subjected." *Id.* at 2, § 2.

Pursuant to 42 U.S.C. § 1983, Plaintiffs assert four claims alleging that the following features of H.B. 1020 and S.B. 2343 "intentionally discriminate[] against the majority-Black residents of Jackson on the basis of race in violation of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution":  (1) the expansion of Mississippi Department of Public Safety ("DPS")/Capitol Police jurisdiction ("Count I"); (2) the appointment of four temporary special circuit judges to the Hinds County Circuit Court ("Count II"); (3) the creation of the CCID court ("Count III"); and (4) the appointment of CCID prosecutors ("Count IV"). *Id.* at 46-50, ¶¶ 131-49.

Plaintiffs seek a declaratory judgment that all four of the aforementioned activities "intentionally discriminate[] against Jackson's residents on the basis of race." *Id.* at 50, ¶¶ A-D. They also seek to (1) "[p]reliminarily and permanently enjoin the Capitol Police's authority to cover all of the City of Jackson"; (2) "[p]reliminarily and permanently enjoin the appointment of any judge to the CCID court"; and (3) [p]ermanently enjoin the appointment of any prosecuting attorney for the CCID court." *Id.* at 50-51, ¶¶ E-G.

Against the Governor, Plaintiffs allege only that "he is responsible for the implementation of H.B. 1020 and S.B. 2343 and ensuring 'that the laws are faithfully executed' in the State of Mississippi," and that "[h]e is likewise responsible for appointing and supervising the State's executive officers, including the Commissioner of DPS." Dkt. #1, 10-11, ¶ 25; 16, ¶ 45.

For the reasons that follow, the Court lacks subject-matter jurisdiction over the claims asserted against the Governor, and thus he is not a proper party to this action. Accordingly, he timely files the instant FRCP 12(b)(1) pre-answer motion to dismiss Plaintiffs' claims for lack of subject-matter jurisdiction predicated on (1) lack of standing; and (2) sovereign immunity.

## STANDARD FOR DISMISSAL

Subject-matter jurisdiction fails where the plaintiff lacks Article III standing and/or where the plaintiff's claims are barred by the Eleventh Amendment. *See Stallworth v. Bryant*, 936 F.3d 224, 232 (5th Cir. 2019); *Sissom v. Univ. of Tex. High Sch.*, 927 F.3d 343, 346-49 (5th Cir. 2019). Motions to dismiss on either grounds are accordingly jurisdictional and are brought pursuant to FRCP 12(b)(1). *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017); *Sissom*, 927 F.3d at 346. In deciding a motion to dismiss for lack of subject-matter jurisdiction, the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint

Case 3:23-cv-00272-HTW-LGI   Document 32   Filed 05/17/23   Page 6 of 15

supplemented by undisputed facts plus the court's resolution of disputed facts. *Tenth Street Residential Ass'n v. City of Dallas, Tex.*, 968 F.3d 492, 498-99 (5th Cir. 2020).

**ARGUMENT**

**I.  PLAINTIFFS' CLAIMS AGAINST THE GOVERNOR SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION PREDICATED ON LACK OF STANDING.**

Federal courts are not "publicly funded forums for the ventilation of public grievances." *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982). Lest federal courts devolve "into judicial versions of college debating forums," Article III of the U.S. Constitution requires an actual case or controversy as a necessary predicate to subject-matter jurisdiction—that is, the plaintiffs must have standing. *See id.* For standing to exist, the plaintiffs must show three things: (1) an injury in fact; (2) a traceable causal connection; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In the absence of *any one* of these elements, the plaintiffs lack Article III standing, and the action must be dismissed. *See Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001).

As the Fifth Circuit recognized in *Okpalobi, supra*, the requirements for standing set forth in *Lujan, supra*—and particularly the requisite related showings of <u>causation</u> and <u>redressability</u>—"are entirely consistent with the long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." *Id.* at 426. That is, where the defendant "play[s] [no] causal role in the plaintiffs' injury," and/or the defendant has "no powers to redress the injuries alleged, the plaintiffs have no case or controversy with the[] defendant[] that will permit them to maintain [an] action in federal court," and the court lacks subject-matter jurisdiction. *See id.* at 426-27, 429. *See also McCreary v. Richardson*, 738 F.3d 651, 655 (5th

Cir. 2013) (reaffirming *Okpalobi's* holding that plaintiffs lack standing where defendant lacks authority to redress plaintiffs' alleged injuries).

The question of standing, informed by *Okpalobi's* holding regarding causation and redressability, is to be resolved as an initial consideration and "without reliance on whether the part[y] sued had Eleventh Amendment immunity." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. City of Lubbock, Tex.*, No. 5:21-CV-114-H, 2021 WL 2385110, at *1 (N.D. Tex. June 1, 2021). *See also K.P. v. LeBlanc*, 729 F.3d 427, 437-40 (5th Cir. 2013); *Bhattarai v. Fitch*, Civil Action No. 3:19-CV-560-DPJ-FKB, 2020 WL 1821253, at *2, 5, n.7 (S.D. Miss. Apr. 10, 2020).[1] Where "declaratory and injunctive relief directed to the [defendant] will not redress the [plaintiff's] injury," the plaintiff lacks Article III standing, and the court lacks subject-matter jurisdiction. *See LeBlanc*, 729 F.3d at 437. *See also Bhattarai*, 2020 WL 1821253 at *1, 6.

A. **Plaintiffs lack standing to seek injunctive relief against the Governor, who is not the cause of their alleged injuries and cannot redress their alleged injuries.**

In the case at bar, the Governor has no causal connection to Plaintiffs' alleged injuries. Nor does he have the authority to redress Plaintiffs' alleged injuries, rendering any injunctive relief against the Governor utterly meaningless if granted. *See Okpalobi*, 244 F.3d at 426. Therefore, pursuant to *Okpalobi* and its progeny, Plaintiffs lack standing to seek injunctive relief against the Governor.

---

[1] To the extent Plaintiffs would assert that *Okpalobi's* standing analysis cannot apply until it is first shown that *Ex parte Young* does not operate to overcome Eleventh Amendment immunity, see *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 159 (5th Cir. 2007), that argument is foreclosed by the Fifth Circuit's subsequent holding in *LeBlanc*, 729 F.3d at 437, 440. In *LeBlanc*, *Ex parte Young* operated to overcome the defendants' Eleventh Amendment immunity, yet the Fifth Circuit nevertheless applied *Okpalobi's* standing analysis, holding that the plaintiffs lacked standing to challenge a portion of the statute in question. *See LeBlanc*, 729 F.3d at 437, 440. *See also City of Lubbock, Tex.*, 2021 WL 2385110 at *2, 10, 12-13 (distinguishing *Abbott*, *supra*, and discussing *LeBlanc's* subsequent reaffirmation of *Okpalobi's* standing analysis as separate and distinct inquiry from defendant's Eleventh Amendment immunity status). Regardless, as set forth *infra*, *Ex parte Young* does not apply in any event relative to the claims asserted against the Governor.

**1.   The Governor has no causal connection to Plaintiffs' alleged injuries.**

Plaintiffs have not alleged any plausible facts to show that they are or will be harmed in any way by the Governor.  On the face of Plaintiffs' complaint, the sole allegations against the Governor are as follows:

- That "he is responsible for the implementation of H.B. 1020 and S.B. 2343 and ensuring 'that the laws are faithfully executed' in the State of Mississippi."  Dkt. #1 at 10-11, ¶ 25.

- That "[h]e is likewise responsible for appointing and supervising the State's executive officers, including the Commissioner of DPS."  *Id.  See also id.* at 16, ¶ 45.

Plaintiffs have alleged no facts showing that the Governor has any specific role in enforcing any of the provisions of H.B. 1020 and/or S.B. 2343.  In fact, with the exception of a single geographical reference to the "Governor's mansion," see S.B. 2343, § 1, as being within the jurisdiction of the Office of Capitol Police, the word "Governor" does not appear in either bill <u>at all</u>.  *See* H.B. 1020; S.B. 2343.  Rather, pursuant to H.B. 1020 and S.B. 2343, the provisions about which Plaintiffs complain (i.e., the expansion of DPS/Capitol Police jurisdiction, judicial appointments, the creation of the CCID court, and prosecutor appointments) are to be enforced by others who are expressly identified in the text of both bills.  *See* Part II, *infra*.

To the extent anyone may be poised to cause some alleged harm to Plaintiffs pursuant to H.B. 1020 and/or S.B. 2343—which the Governor in any event denies—suffice it to say it is <u>not</u> the Governor.  The complaint confirms as much as Plaintiffs have failed to identify any actions on the part of the Governor sufficient for purposes of Article III standing.  The Governor has no role in enforcing either of the challenged bills.  It thereupon follows that no alleged harm resulting from the implementation or operation of H.B. 1020 and/or S.B. 2343 is or can be attributable to the Governor.  *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) (plaintiffs

could not show traceable causal connection to governor in absence of "a relevant enforcement role" for governor in statutory scheme).   Thus, Plaintiffs cannot show the requisite causal connection to establish standing as it relates to the Governor.

**2.   The Governor lacks the authority to redress Plaintiffs' alleged injuries.**

Plaintiffs further lack standing as to the Governor because he has no authority to redress their alleged injuries.   Plaintiffs seek to enjoin each of the following:   (1) "the Capitol Police's authority to cover all of the city of Jackson"; (2) "the appointment of any judge to the CCID court"; and (3) "the appointment of any prosecuting attorney for the CCID court."   Dkt. #1 at 50-51, ¶¶ E-G.   The Governor has no authority to order the appointment of any judge or prosecuting attorney under H.B. 1020, nor is he vested with the authority to effectuate any expanded jurisdiction of the Capitol Police force under either bill.   Rather, the Legislature granted all of these powers to others who are expressly identified in the respective bills.   *See* Part II, *infra*.

It is an "elemental fact that a state official <u>cannot be enjoined to act in any way that is beyond his authority to act in the first place</u>."   *Okpalobi*, 244 F.3d at 427 (emphasis added).   Because the Governor is lacks authority to redress Plaintiffs' alleged injuries, Plaintiffs lack standing to pursue injunctive relief against the Governor for this additional reason.

**B.   <u>Plaintiffs also lack standing to pursue declaratory relief against the Governor.</u>**

In addition to seeking injunctive relief, Plaintiffs seek to have this Court declare that certain provisions of S.B. 2343 and H.B. 1020 "intentionally discriminate[] against Jackson's residents on the basis of race."   *See* Dkt. #1 at 50, ¶¶ A-D.   To the extent Plaintiffs would argue that a lack of standing to pursue injunctive relief against the Governor does not preclude any claim for *declaratory* relief asserted against him, that argument likewise fails as a matter of law.

Standing to seek a declaratory judgment is governed by the same requirements set forth in *Lujan*, *supra*, including the requisite elements of causation and redressability. *BroadStar Wind Sys. Group Ltd. Liab. Co. v. Stephens*, 459 Fed. Appx. 351, 356 (5th Cir. 2012); *Texas v. Travis County*, 272 F. Supp. 3d 973, 978 (W.D. Tex. 2017). It is well settled that "[u]nder the Declaratory Judgment Act, a federal court may only 'declare the rights and other legal relations' of parties in 'a case of actual controversy'" in the Article III sense. *Tex. Cent. Business Lines Corp. v. City of Midlothian*, 669 F.3d 525, 534 (5th Cir. 2012). *See also Poly-America, L.P. v. Stego Indus., L.L.C.*, 694 F. Supp. 2d 600, 604-05 (N.D. Tex. 2010). Where the defendant would be powerless to effectuate a requested injunction, "[i]t follows that declaratory and injunctive relief directed to the [defendant] will not redress the [plaintiffs'] injury," and the plaintiff lacks standing to pursue either form of relief. *See LeBlanc*, 729 F.3d at 437. *See also City of Lubbock*, 2021 WL 2385110 at *11; *Tap Pilam Coahuiltecan Nation v. Alamo Trust, Inc.*, Civil Action No. 5:19-cv-01084-OLG, 2019 WL 10945421, at *4 (W.D. Tex. Dec. 23, 2019). As set forth above, the Governor lacks authority to redress Plaintiffs' alleged injuries. Accordingly, <u>none</u> of Plaintiffs' claims for relief against the Governor withstands scrutiny under *Lujan*.

In sum, because the Governor is not the official charged with administering the implementation and/or operation of H.B. 1020 or S.B. 2343 and has no authority to enforce the laws at issue, any requested injunctive or declaratory relief against him would be "utterly meaningless" if granted. *See Okpalobi*, 244 F.3d at 426. Therefore, as a matter of law, Plaintiffs lack standing to pursue their claims against the Governor, and all of their claims against him should be dismissed for lack of subject-matter jurisdiction.

## II. PLAINTIFFS' CLAIMS AGAINST THE GOVERNOR SHOULD FURTHER BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION PREDICATED ON THE BAR OF SOVEREIGN IMMUNITY.

Absent waiver or congressional abrogation—neither of which applies here—Plaintiffs' claims against the Governor are barred by sovereign immunity unless the *Ex parte Young*[2] exception applies.  *See City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).  Because the Governor does not have the requisite enforcement connection to the challenged laws, *Ex parte Young* does not apply, and Plaintiffs' claims against the Governor are further barred by the doctrine of sovereign immunity.

The *Ex parte Young* exception to sovereign immunity "only applies when the named defendant state official[] ha[s] *some connection with the enforcement of the act*" and threatens to enforce it.  *See Okpalobi*, 244 F.3d at 416 (italics in original).  The Fifth Circuit has articulated three "guideposts" for determining whether a state official has the requisite enforcement "connection" for *Ex parte Young* to apply.  *See Tex. All. For Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022).  First, the official "must have more than the general duty to see that the laws of the state are implemented."  *Id.* (quotation marks omitted).  Second, "the official must have the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."  *Id.* (quotation marks omitted).  The statutory analysis "is provision-by-provision," and "[t]he officer must enforce the particular statutory provision that is the subject of the litigation."  *Id.* (quotation marks omitted).  That is, he must be "statutorily tasked with enforcing the challenged law."  *Abbott*, 961 F. 3d at 401 (quotation marks omitted).  Third, "enforcement" in this context "means compulsion or constraint."  *Scott*, 28 F.4th at 672 (quotation marks omitted).  "If the

---

[2] *Ex parte Young*, 209 U.S. 123 (1908).

official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation." *Id.*

In the case at bar, as confirmed by the three "guideposts" set out in *Scott, supra*, the Governor lacks the requisite enforcement connection to the challenged laws. Thus, the *Ex parte Young* exception does not apply, and Plaintiffs' claims against the Governor are barred by sovereign immunity.

First, the Governor's state-constitutional obligation to ensure "that the laws are faithfully executed," MISS. CONST. art. V, § 123, is a "general duty" that does not implicate *Ex parte Young*. *See Scott, supra. Cf. Harmony Ctr., LLC v. Jindal*, Civil Action No. 10-621-BAJ-CN, 2010 WL 4955167, at *4 (M.D. La. Nov. 30, 2010) (Louisiana Governor's state-constitutional duty to "see that the laws are faithfully executed" constitutes "general duty" that is "insufficient for the purposes of the *Young* exception" to overcome sovereign immunity); *Inclusive Cmtys. Proj., Inc. v. Abbott*, Civil Action No. 3:17-CV-0440-D, 2018 WL 2415034, at *5, 10 (N.D. Tex. May 29, 2018) (Texas Governor's "general duty to faithfully execute the laws" is "alone insufficient to establish" requisite enforcement connection to trigger *Ex parte Young* exception to sovereign immunity). Therefore, the Governor's general duty to see that the laws are faithfully executed, see Dkt. #1 at 10-11, ¶ 25, does not suffice to overcome the bar of sovereign immunity.

Second, a "provision-by-provision" analysis of H.B. 1020 and S.B. 2343 confirms that the Governor has no "particular duty to enforce" any "particular statutory provision," see *Scott, supra*, contained in either bill. In fact, he is not mentioned <u>at all</u> in either bill—neither of which "statutorily task[s]," see *Abbott, supra*, him with enforcing any of the provisions at issue. As noted above, Plaintiffs challenge four aspects of H.B. 1020 and S.B. 2343—namely, (1) the expansion of DPS/Capitol Police jurisdiction; (2) judicial appointments; (3) the creation of the CCID court;

and (4) prosecutor appointments.  The state officials/agencies that are specifically charged in H.B. 1020 and S.B. 2343 with effectuating these respective provisions are the Chief Justice of the Mississippi Supreme Court, the Administrative Office of Courts, the Attorney General, DPS, and the Office of Capitol Police.  *See* H.B. 1020, §§ 1, 4-6, 14-15; S.B. 2343, § 1.  Neither H.B. 1020 nor S.B. 2343 statutorily tasks the Governor with any enforcement responsibilities.

Because the Governor has no "specific responsibility to enforce" any of the provisions of H.B. 1020 and/or S.B. 2343, Plaintiffs' claims against him are barred by sovereign immunity.  *See Harris v. Cantu*, Civil Action No. H-14-1312, 2014 WL 6682307, at *5 (S.D. Tex. Nov. 24, 2014). *See also Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (holding that Governor of Texas was entitled to sovereign immunity where state statute at issue did not "specially task [him] with its enforcement, or suggest that he will play any role at all in its enforcement").

Third, the Governor does not have the authority to compel or constrain those individuals charged with enforcing the challenged laws.  The Governor has no authority over the Chief Justice of the Mississippi Supreme Court or the Administrative Office of Courts, both of which reside in the Judicial Branch of state government, the latter being directed by an appointee of the Mississippi Supreme Court.  *See* MISS. CONST. art. VI, § 144; MISS. CODE ANN. §§ 9-3-11, 9-21-5; *In re Fiscal Year 2010 Judicial Branch Appropriations*, 27 So. 3d 394, 396 (Miss. 2010) (reaffirming that Administrative Office of Courts is part of "Judicial Branch of government").  The Governor likewise has no authority over the Attorney General, who is an elected, independent, constitutional officer of State government.  *See* MISS. CONST. art. VI, § 173; MISS. CODE ANN. § 7-5-1 *et seq.*

Nor does the Governor direct the operations or activities of DPS or the Capitol Police.  DPS is directed by the Commissioner of Public Safety, who serves as its Executive Director.  MISS.

CODE ANN. § 45-1-2(1),(3). The Office of Capitol Police is under the authority of DPS and is managed by the Capitol Police Chief, who is appointed by the Commissioner of Public Safety and serves at his pleasure. *Id.* §§ 45-1-2(2)(i),(4); 45-1-19(1). While the Governor appoints the Commissioner of Public Safety, see *id.* § 45-1-2(3), as a matter of law, his power of appointment is not a sufficient enforcement connection for *Ex parte Young* purposes. *See Doe v. Jindal*, Civil Action No. 11-388, 2011 WL 3925042, at *1 (E.D. La. Sept. 7, 2011) (fact that governor "appoints the officials charged with enforcing the laws at issue" does not supply requisite enforcement connection as to governor for *Ex parte Young* purposes); *Harris*, 2014 WL 6682307 at *5 (fact that governor "has responsibility only for appointing" official charged with enforcing law at issue is insufficient to overcome sovereign immunity).

The Governor cannot constrain or compel the statutorily-tasked officials to take any action required by H.B. 1020 or S.B. 2343. Nor has he threatened to do so. For this additional reason, *Ex parte Young* has and can have no application here pursuant to the "guideposts" that the Fifth Circuit articulated in *Scott*, *supra*.

Pursuant to controlling Fifth Circuit precedent, the Governor lacks the requisite enforcement connection to the challenged laws to permit application of the *Ex parte Young* doctrine. Thus, Plaintiffs' claims against the Governor are barred by sovereign immunity. For this additional reason, those claims should be dismissed for lack of subject-matter jurisdiction.

## **CONCLUSION**

For all these reasons, Plaintiffs' claims against the Governor should be dismissed in their entirety for lack of subject-matter jurisdiction.

THIS the 17th day of May, 2023.

Respectfully submitted,

TATE REEVES, in his official capacity as
Governor of the State of Mississippi,
DEFENDANT

By:    LYNN FITCH, ATTORNEY GENERAL
FOR THE STATE OF MISSISSIPPI

By:    <u>s/Rex M. Shannon III</u>
REX M. SHANNON III (MSB #102974)
Special Assistant Attorney General

REX M. SHANNON III (MSB #102974)
GERALD L. KUCIA (MSB #8716)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi  39205-0220
Tel.:  (601) 359-4184
Fax:  (601) 359-2003
rex.shannon@ago.ms.gov
gerald.kucia@ago.ms.gov

ATTORNEYS FOR DEFENDANT TATE REEVES,
in his official capacity as Governor of the State of Mississippi

## CERTIFICATE OF SERVICE

I, Rex M. Shannon III, Special Assistant Attorney General and one of the attorneys for Defendant Tate Reeves, in his official capacity as Governor of the State of Mississippi, do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF filing system, which sent notification of such filing to all counsel of record.

THIS the 17th day of May, 2023.

<u>s/Rex M. Shannon III</u>
REX M. SHANNON III