# **EXHIBIT 5**

## DECLARATION OF EDWARD BLACKMON, JR.

I, Edward Blackmon, Jr., hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. I am over 18 years of age, and I make this declaration based upon my own personal knowledge.

2. I am a resident of Canton, Mississippi, where I was born.

3. I am a member of the Mississippi House of Representatives, representing the 57th District for Madison. I was first elected to the Mississippi House in 1979 to 1980, and then was re-elected in 1984 and have been serving ever since.

4. After graduating from law school in 1973, I returned to Mississippi to help reform Mississippi's election laws to help its disenfranchised Black voters. Under the Supreme Court doctrine of "one person, one vote," my colleagues and I brought lawsuits throughout Mississippi alleging that at large voting diluted Black voting strength. Throughout the 1970s and 80s my colleagues and I were able to prove that at large voting was a violation of the Voting Rights Act as well as the 14th Amendment's Equal Protection Clause. Our lawsuits resulted in electoral redistricting, which allowed for more Black representation in elected positions.

5. The hostility by Mississippi lawmakers in response to the enfranchisement of Black voters has persisted throughout the decades. During election redistricting in the early 1990s, vulgar racial slurs were used toward myself and members of the state's Black caucus when we proposed a redistricting plan after the 1990 census.

6. I am currently serving on the Congressional Redistricting Committee; Judiciary A Committee; Judiciary En Banc Committee; Legislative Reapportionment Committee; Municipalities Committee; Rules Committee; and the Ways and Means Committee.

7. In my role on the Judiciary A Committee, I worked closely on the 1993 judicial redistricting process and subsequent additions of judges and judicial redistricting. When we have added new circuit judges, it has always been at the request or with the agreement of the existing elected circuit court judges in the relevant district.

8. H.B. 1020 was publicly opposed by every sitting elected Seventh Circuit judge in a significant break from the normal course of legislation in Mississippi. None of the judges elected from Hinds County asked the legislature to add appointed judges.

9. H.B. 1020 was not considered in the ordinary course for such legislation in Mississippi. Bills are assigned to committees based on subject matter, to the committee that oversees that particular matter. If a bill covers two subject matters, it could be assigned to a secondary committee as well, called double referral.

10. The Judiciary A Committee has traditionally been the exclusive committee handling legislation involving adding judges or judicial redistricting. H.B. 1020 was never referred to Judiciary A.

11. Additionally, because H.B. 1020 was going to have a specific impact on Hinds County, and not the entire state, the bill should have been double referred to Local and Private Legislation Committee, which it was not.

12. Normally, without even blinking, legislators would refer legislation that affects only one locality in Mississippi to the Local and Private Committees for the House and Senate as well as the relevant subject matter committee. Instead, in the House, the leadership sent H.B. 1020 only to a non-subject matter committee, to the Ways and Means Committee, which deals with taxation and is chaired by Representative Lamar. It is clear to me and my colleagues that H.B. 1020 was sent to the Ways and Means Committee to ensure the bill would be taken up by the

committee chair and moved forward as quickly as possible, with little debate. The Judiciary En Banc Committee is chaired by Representative Angela Cockerham, a Black independent who was previously elected as a Democrat and who was born in Jackson. I believe that if H.B. 1020 had been referred to her committee, she would have faced tremendous pressure to kill the bill.

13. The conference process is often fast. But H.B. 1020's conference proceedings were unusual in the extent to which Black legislators from Hinds County were cut out from legislation dealing with Hinds County. Rep. Banks, who was a member of the conference committee, for example, was cut out of any discussion.

14. H.B. 1020's directly threatens the ability of Jackson's and Hinds County's Black community to advocate for itself in a state that is otherwise politically dominated by voters with interests different from voters in Hinds County. Black citizens and their representatives do not want to give up their elected system to an appointed authority. Based on my past experiences in Mississippi, Black citizens do not get treated fairly in an appointed system.

15. H.B. 1020 claims to solve a problem, by taking away the rights of the people to vote for their local leaders. Moreover, the voters who are being disenfranchised are the citizens of Jackson, a city that is 83% Black, and of Hinds County, which is over 70% Black. H.B. 1020 sidesteps the voters and strips them of their right to elected judges, a right enjoyed by every other citizen of Mississippi. I have not heard anyone from the city of Jackson, Mississippi who is an elected official, who is in favor of H.B. 1020.

16. The proponents of H.B. 1020 claim the law is to assist with fighting crime in Jackson, but when looking at the facts, it is clear that is not the case. H.B. 1020 allows the appointed judges to oversee both civil as well as criminal cases. The law offers no financial assistance to the overcrowded crime labs, which are increasingly underfunded. The crime labs are

facing budget shortfalls, lack of staff, and an overall lack of resources to operate properly. These shortages cause great delays in criminal cases, and they will not be fixed by adding appointed judges.

17. In my legal practice, I recently had a client who was sitting in jail for three years awaiting an autopsy report from the crime lab. The issue was not with the judges, but with the state's unwillingness to fund the crime labs or judges with adequate resources to process their cases.

18. During the debate of H.B. 1020, many legislators, including myself, expressed our concerns with the case backlog in Hinds County. This problem isn't new and has persisted for several years. Even before the introduction of H.B. 1020, Hinds County legislators and I have expressed the need for more elected judges to the Seventh Circuit District. However, during the debate, the supporters of H.B. 1020 rejected requests to add new elected judges to the Seventh Circuit District and increase resources for its basic operations.

19. For several decades, I have advocated that Hinds County be given more elected judgeship positions. Hinds County is the most populous county in the state, and the court handles lawsuits against the State of Mississippi. Hinds County should have the elected judges it needs and not have unelected judges imposed on the County.

I DECLARE THAT, TO THE BEST OF MY KNOWLEDGE, THE FOREGOING IS TRUE AND CORRECT.

Executed this 24th day of May, 2023.

_____
Edward Blackmon, Jr.

4