IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
(Northern Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   3:22-cv-686-HTW-LGI |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| THE CITY OF JACKSON, MISSISSIPPI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff the United States of America ("United States"), by the authority of the Attorney

General and at the request and on behalf of the Administrator of the United States Environmental

Protection Agency ("EPA"), alleges as follows:

### NATURE OF THE ACTION

1.  This is a civil action concerning the failure of the City of Jackson, Mississippi ("City"),

to provide drinking water that is reliably compliant with the Safe Drinking Water Act ("SDWA")

to the City's residents.

2.  During the week of August 29, 2022, multiple raw water intake pumps failed at one of

the City's two surface water treatment plants, impacting its ability to produce adequate quantities

of water and causing a catastrophic loss of pressure in the distribution system.  As a result of this

pressure drop, many residents had no running water and thus lost the ability to use water for

basic safety and hygiene purposes such as washing hands, showering, flushing toilets, fighting

fires, and washing dishes.  During this period of low pressure, affected residents were dependent

on bottled water and other alternative water sources supplied by the City and state and federal agencies or procured elsewhere.

3.  Even beyond this event and continuing through the present, contaminants are in or are likely to enter the City's public water system that may present an imminent and substantial endangerment within the meaning of the SDWA.  The City has also violated various specific requirements of the SDWA and administrative orders issued by EPA concerning the City's public water system.

4.  This action thus requests relief under Sections 1414 and 1431 of the SDWA, 42 U.S.C. §§ 300g-3 and 300i, including to require the City to:

    a.  perform corrective measures to protect the health of residents and consumers served by the City's public drinking water system;

    b.  achieve and maintain compliance with the SDWA, 42 U.S.C. § 300f *et seq.*, the National Primary Drinking Water Regulations, 40 C.F.R. Part 141, and the Mississippi Primary Drinking Water Regulations, promulgated pursuant to the Mississippi Safe Drinking Water Act of 1997, Miss. Code Ann § 41-26-1 *et seq.*; and

    c.  achieve and maintain compliance with administrative orders issued under the SDWA by EPA on April 2, 2020 (Emergency Administrative Order, Docket No. SDWA-04-2020-2300), as amended by Docket No. SDWA-04-2020-2300, and July 1, 2021 (Administrative Compliance Order on Consent, Docket No. SDWA-04-2020-2301) (collectively the "EPA Orders").

5.  Authority to bring this action is vested in the United States Department of Justice by 28 U.S.C. §§ 516 and 519 and by 42 U.S.C. §§ 300g-3 and 300i.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C.

§§ 1331, 1345, and 1355, and under 42 U.S.C. §§ 300g-3 and 300i.

7.  Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1395(a) and

under 42 U.S.C. §§ 300g-3(b) and 300i(b) because the events giving rise to the claims in this

action arose within this judicial district.

## STATUTORY AND REGULATORY FRAMEWORK

### EPA's Powers to Address Imminent and Substantial Endangerment to Health

8.  Under Section 1431 of the SDWA, EPA is authorized to commence a civil action and to

issue an administrative order when it receives information that a contaminant "is present in or is

likely to enter a public water system or an underground source of drinking water . . . which may

present an imminent and substantial endangerment to the health of persons," and where the

"appropriate State and local authorities have not acted to protect the health of such persons."  42

U.S.C. § 300i(a).

### National Primary Drinking Water Regulations and
### Mississippi Primary Drinking Water Regulations

9.  The SDWA was enacted to ensure that public water supply systems meet minimum

national standards for the protection of public health.  Under the authority of Section 1412 of the

SDWA, 42 U.S.C. § 300g-1, EPA has promulgated National Primary Drinking Water

Regulations ("National Regulations") at 40 C.F.R. Part 141 to establish contaminant limitations,

monitoring requirements, public notification requirements, and other requirements for regulated

drinking water systems.

10. The National Regulations apply to all public water systems, unless exempted under the

SDWA.  The SDWA and National Regulations define the term "public water system" as "a

system for the provision to the public of water for human consumption through pipes or . . . other constructed conveyances, if such system has at least fifteen service connections or regularly serves at least twenty-five individuals." 42 U.S.C. § 300f(4); 40 C.F.R. § 141.2. The term includes "any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system." 42 U.S.C. § 300f(4); 40 C.F.R. § 141.2.

11. Mississippi enacted the Mississippi Safe Drinking Water Act of 1997 ("Mississippi SDWA") at Miss. Code Ann. § 41-26-1 *et seq.* Under the authority of this statute, *see* Miss. Code Ann. § 41-26-5, Mississippi has promulgated Mississippi Primary Drinking Water Regulations ("State Regulations"), codified at Miss. Admin. Code § 15-20-72.

12. A public water system is classified as either a "community water system" or a "noncommunity water system." A community water system is a public water system that (a) serves at least 15 service connections used by year-round residents of the area served by the system or (b) regularly serves at least 25 year-round residents. 42 U.S.C. § 300f(15); 40 C.F.R. § 141.2; Miss. Code Ann. § 41-26-3(c); Miss. Admin. Code § 15-20-72-2.2.2.4.

13. A public water system that is a community water system must comply with the requirements of the National Regulations and the State Regulations. 40 C.F.R. § 141.1; 40 C.F.R. Part 141 *passim* (imposing requirements on community water systems); Miss. Code Ann. § 41-26-5(2)(a); Miss. Admin Code § 15-20-72-1.1.4.

14. Any person who owns or operates a public water system is a "supplier of water." 42 U.S.C. § 300f(5); 40 C.F.R. § 141.2; Miss. Code Ann. § 41-26-3(s) ("supplier of water" means any person who owns or controls a public water system).

15. A supplier of water must comply with the National Regulations and the State Regulations. 40 C.F.R. Part 141 *passim* (imposing requirements on suppliers of water); Miss. Code Ann. § 41-26-15(b); Miss. Admin. Code § 15-20-72 *passim* (same).

16. Under the State Regulations, a Class A system is a system "with surface water treatment, groundwater under the direct influence of surface water, lime softening, or coagulation and filtration for the removal of constituents other than iron or manganese." Miss. Admin. Code § 15-20-72.2.2.1(5). "A certified class A operator shall be onsite whenever the treatment plant for a Class A public water system treating surface water is in operation. The certified operator in responsible charge shall be available twenty-four (24) hours per day to address system needs and problems as they occur." *Id.*; *see also* Miss. Admin. Code. § 15-20-72.1.1.6.11 (compelling compliance with same requirement in Mississippi State Department of Health Public Water Supply Operations Manual).

**Enforcement of the SDWA**

17. Section 1413 of the SDWA, 42 U.S.C. § 300g-2, provides that "a State has primary enforcement responsibility for public water systems during any period for which the [EPA] Administrator determines . . . that such State" has met various requirements, including "adopt[ing] drinking water regulations that are no less stringent than the national primary drinking water regulations," "implementing adequate procedures for the enforcement of such State regulations," and keeping such records and reports "as the Administrator may require by regulation." 42 U.S.C. § 300g-2(a).

18. Under SDWA Section 1413 and the Mississippi SDWA, the State of Mississippi (the "State") has "primacy," meaning it has primary enforcement responsibility for public water systems in Mississippi. Under the Mississippi SDWA, the State Health Officer or the Health

5

Officer's designee holds the authority to "exercise general supervision over the administration and enforcement of this chapter and applicable rules and regulations," "enforce the laws, rules and regulations governing safe drinking water," and "perform all acts necessary to carry out this chapter or the federal [SDWA]." 26 Miss. Code Ann. § 41-26-7(1)(a), (h), and (k) (describing the powers and duties of the "director"); *see also* 26 Miss. Code Ann. § 41-26-3(h) (defining "director").

19. The Mississippi State Department of Health ("MSDH") is the primacy agency, meaning the state agency with primary enforcement authority under the SDWA.

20. SDWA Section 1414 authorizes EPA to issue administrative orders and bring civil actions under certain circumstances, independent of EPA's emergency powers under SDWA Section 1431 to address an imminent and substantial endangerment.

21. When the EPA Administrator finds that a public water system does not comply with any "applicable requirement" or with any schedule or other requirement imposed thereto during a period in which the state has primary enforcement authority, the EPA Administrator shall issue an administrative order under Section 1414(g) or commence a civil action under Section 1414(b) of the SDWA. 42 U.S.C. § 300g-3(a)(1).

22. Under SDWA Section 1414(b), 42 U.S.C. § 300g-3(b), the EPA Administrator may bring a civil action in the appropriate district court to require compliance with any "applicable requirement" and with any administrative order issued under Section 1414(g) if authorized under Section 1414(a) or if requested by the state primacy agency or the state's chief executive officer.

23. Under SDWA Section 1414(i), 42 U.S.C. § 300g-3(i), "applicable requirement" means:

   a.  any requirement of SDWA Sections 1412 (National Regulations),

       1414 (enforcement of drinking water regulations), 1415 (variances),

6

1416 (exemptions), 1417 (prohibition on use of lead pipes, solder and flux),

1433 (community water system risk and resilience), 1441 (assurances of

availability of adequate supplies of chemicals necessary for treatment of

water), and 1445 (records and inspections);

b.  any regulation promulgated under the sections cited above;

c.  any schedule or requirement imposed pursuant to a section cited above; and

d.  any requirement of, or permit issued under, an applicable State program for

which the EPA has made a determination that the requirements of Section

1413 of the SDWA have been satisfied, or an applicable State program

approved under Section 1414.

24. The court may enter "such judgment as protection of public health may require, taking

into consideration the time necessary to comply and the availability of alternative water

supplies." 42 U.S.C. § 300g-3(b).  The court may impose a civil penalty for each violation under

Section 1414.  *Id.*  The court may also impose a civil penalty for each violation of an EPA

administrative order issued under SDWA Section 1431(a)(1).  42 U.S.C. § 300i(b).

## FACTUAL BACKGROUND

### The City's Drinking Water System

25. The City's public drinking water system (referred to herein as the "System") consists of a

surface water system identified as Public Water System No. MS0250008, a groundwater system

identified as Public Water System No. MS0250012, and appurtenant treatment, storage, and

distribution facilities.

26. The System includes but is not limited to two surface water treatment plants—O.B. Curtis Water Treatment Plant ("O.B. Curtis") and J.H. Fewell Water Treatment Plant ("J.H. Fewell")—a series of elevated storage tanks, and a series of distribution pipes or "lines."

27. The City, through its Department of Public Works, operates and maintains the System.

28. O.B. Curtis is located at 100 O.B. Curtis Drive, Ridgeland, Madison County, Mississippi.

29. J.H. Fewell is located at 2302 Laurel Street, Jackson, Hinds County, Mississippi.

30. The System's surface water system serves drinking water to approximately 143,445 people and has approximately 71,486 service connections.

31. The System's groundwater system serves drinking water to approximately 16,555 people and has approximately 5,762 service connections.

32. Therefore, in total, the System serves drinking water to approximately 160,000 people and has approximately 77,248 service connections.

33. The surface water sources of the System are the Ross Barnett Reservoir, which serves O.B. Curtis, and the Pearl River, which serves J.H. Fewell.

34. O.B. Curtis uses both conventional filtration and membrane filtration in parallel tracks to treat water.  J.H. Fewell uses conventional filtration to treat water.

35. Conventional filtration treatment is "a series of processes including coagulation, flocculation, sedimentation, and filtration resulting in substantial particulate removal."  40 C.F.R. § 141.2.

36. Membrane filtration is a pressure- or vacuum-driven separation process in which particulate matter larger than 1 micrometer is rejected by an engineered barrier, primarily through a size-exclusion mechanism, and which has a measurable removal efficiency of a target organism that can be verified through the application of a direct integrity test.  40 C.F.R. § 141.2.

8

Membrane filtration includes microfiltration, ultrafiltration, nanofiltration, and reverse osmosis. *Id.*

37. Both treatment plants' filtration systems utilize UV disinfection treatment on each individual effluent flow to inactivate pathogens, such as viruses, *Cryptosporidium*, and *Giardia*. Finished water at both plants are also disinfected using chloramines. The treated water is then pumped to storage tanks.

38. Sufficient volumes of water are required to create enough pressure within the distribution system. When adequate water pressure is maintained in the System, the pressure exerted from within the distribution lines keeps contaminants outside the lines from entering into the System. If a plant cannot produce sufficient amounts of treated water to fill the tanks, then the System's pressure may be low.

39. When inadequate or low water pressure is present in the System, negative pressure may pull water from outside a distribution line to inside the distribution line through cracks, breaks, or joints in the distribution lines that are common in all drinking water systems. This phenomenon is sometimes referred to as "back siphonage." Back siphonage can introduce contaminants into treated, potable water inside the lines downstream of the water treatment plant, before the water is delivered to users.

**Problems with the System and EPA Enforcement Efforts**

Line Breaks and Boil Water Notices

40. The System experienced over 7,300 distribution line breaks from 2017 through 2021. These line breaks occurred at an average annual rate of 55 breaks per 100 miles of line per year. By comparison, one industry benchmark goal is no more than 15 breaks per 100 miles of line per year. The number of annual reported line breaks from 2017 to 2021 is as follows:

| Year | Line breaks |
|-------|-------------|
| 2017 | 1627 |
| 2018 | 2085 |
| 2019 | 1226 |
| 2020 | 962 |
| 2021 | 1421 |
| **Total** | **7321** |

While these line breaks occurred in every zone of the City, a spatial analysis of water line breaks conducted by EPA showed distinct areas within the City distribution systems with a high number of breaks, including the North Jackson and Seneca Street areas. These areas correspond to locations where small-diameter, pre-1910 cast iron pipe is still in use. These lines are susceptible to breakage due to their age and likelihood of corrosion.

41. Controlling for corrosion is critical for lines that are susceptible to breakage and for lines, connectors, or pipe fittings that may contain lead.

42. Since May 1, 2020, more than 320 boil-water notices ("BWNs") have been issued for the System. Attachment A to this Complaint provides a detailed summary of the BWNs issued for the System in 2020, 2021, and 2022.

43. For just the surface water portion of the System, which relies on treated water from O.B. Curtis and J.H. Fewell, nearly 280 BWNs were issued between May 1, 2020, and October 21, 2022. Based on the City's data, the City deemed 80 of these surface water BWNs "system wide." Below is an overview of the surface water BWNs by year:

10

| Time Period | Number of Surface Water BWNs | Average Number of Days to Lift | Number of Surface Water Systemwide BWNs | Percentage of Surface Water BWNs Attributable to Low- or Loss-of-Pressure Events |
|---|---|---|---|---|
| 2020 (May 1 to Dec. 31) | 83 | 3.1 | 0 | 98.8% |
| 2021 (Jan. 1 to Dec. 31) | 108 | 3.6 | 78 | 96.3% |
| 2022 (Jan. 1 to Oct. 21) | 88 | 3.9 | 2 | 97.7% |
| **OVERALL** | **279** | **3.6** | **80** | **97.6%** |

44. Either the City or MSDH may issue a BWN. Circumstances necessitating a BWN can include loss of pressure in the distribution system caused by distribution line breaks, decreased water pressures at the entry point to the distribution system, or planned service outages. In addition, BWNs can be issued as a result of water treatment failures leading to the potential for microbial contamination in the distribution system.

45. In Mississippi, MSDH may issue an immediate state-imposed BWN in certain circumstances, including (1) when a water system loses pressure or is compromised, there is a significant probability that contamination can or will enter the system, and the operator of the system has not issued an alert or (2) a catastrophic event or natural disaster occurs. *See* MSDH, Guidelines for Issuing a Boil-Water Notice (Dec. 1, 2016), *available at* https://msdh.ms.gov/ msdhsite/_static/resources/3850.pdf (accessed Sept. 15, 2022).

46. Low pressure and loss of pressure in a drinking water distribution system may cause back siphonage, as described above, which may introduce contaminants, including but not limited to total coliform bacteria and other bacteria, parasites, viruses, or pathogens, to the System.

47. Total coliforms are a group of related bacteria, some of which are harmful to humans.

48. EPA considers total coliforms an indicator of the presence of other pathogens in a drinking water system, and their presence is used to determine the adequacy of water treatment and the integrity of a distribution system. *See* Final Rule: National Primary Drinking Water Regulations: Revisions to the Total Coliform Rule, 78 Fed. Reg. 10,270, 10,271 (Feb. 13, 2013).

49. Among the pathogens that may be indicated by the presence of total coliforms are fecal contamination (*E. coli*) and waterborne pathogens (including *Cryptosporidium, Giardia, Legionella,* and certain viruses), all of which can cause diarrhea, abdominal discomfort, nausea, vomiting, cramps, headaches, or other symptoms, if ingested.  Other more severe illnesses that can be caused by exposure to such pathogens include hemolytic uremic syndrome (kidney failure), hepatitis, and bloody diarrhea.  Infection by a waterborne pathogen can also result in chronic conditions such as irritable bowel syndrome, renal impairment, hypertension, cardiovascular disease, and reactive arthritis.

50. Pathogens may pose a greater health risk for infants, young children, the elderly, and people with severely compromised immune systems.

51. Turbidity is a measure of the cloudiness or opaqueness of water and is used to indicate water quality and filtration effectiveness.  Turbidity in water may indicate the presence of pathogens because particles of matter can interfere with disinfection of water and provide a medium for microbial growth.  High levels of turbidity indicate the increased likelihood that drinking water may contain disease-causing organisms, such as total coliforms (including *E. coli*), *Cryptosporidium, Giardia, Legionella,* and other viruses, pathogens, or bacteria.

52. The National Regulations recommend that systems conduct "[p]roper maintenance of the distribution system including appropriate pipe replacement and repair procedures, main flushing programs, proper operation and maintenance of storage tanks and reservoirs, cross connection

control, and continual maintenance of positive water pressure in all parts of the distribution system." 40 C.F.R. § 141.63(e)(3).  Among other things, failure to heed these treatment techniques can result in the presence of potentially harmful bacteria, indicated by total coliform sampling.

53. The ability of the System to reliably maintain positive water pressure depends largely on the City's ability to timely complete necessary repairs and routine maintenance at O.B. Curtis and J.H. Fewell so that the plants produce adequate volumes of treated water.

54. The City has deferred critical repairs and maintenance at O.B. Curtis and J.H. Fewell and in the distribution system, impairing the System's ability to maintain sufficient pressure.

<u>Timeline of Recent Events and Compliance Efforts</u>

55. At the request of EPA Region 4 and as part of EPA's National Compliance Initiative to Reduce Noncompliance with Drinking Water Standards at Community Water Systems, EPA's National Enforcement Investigations Center conducted a SDWA compliance inspection of the System on February 3-7, 2020.  EPA's investigation report was provided to the City on March 30, 2020.  Among other observations, EPA's inspectors noted operator staffing shortages and operation and maintenance issues at O.B. Curtis, J.H. Fewell, and the groundwater system. EPA's inspectors also noted turbidity exceedances at O.B. Curtis and J.H. Fewell reported by the City in January and February 2020.

*The Emergency Order*

56. Based on EPA's observations during the February 2020 inspection and documents provided by the City—including evidence of turbidity exceedances, concerns regarding the disinfection treatment of the water, and the condition of the distribution system—EPA issued an Emergency Administrative Order ("Emergency Order") to the City under Section 1431, 42

13

U.S.C. § 300i, of the SDWA effective April 2, 2020 (Emergency Administrative Order, Docket No. SDWA-04-2020-2300).  In the Emergency Order, EPA determined that existing conditions in the System presented an imminent and substantial endangerment to persons served by the System, giving rise to the potential presence of, *inter alia*, *E. Coli*, *Cryptosporidium*, and *Giardia* in the drinking water.  The Emergency Order is attached to this Complaint as Attachment B.

57. Based on information provided by the City, information collected during EPA's February 2020 inspection, information provided by MSDH and the City, and information reported in EPA's Safe Drinking Water Information System database, EPA determined that the System was noncompliant with the SDWA, the National Regulations, and the State Regulations.  During an April 28, 2020, meeting between EPA and the City held pursuant to the Emergency Order, EPA provided the City with notice of and an opportunity to discuss the violations.  On May 11, 2020, EPA issued a Notice of Noncompliance to the City under Section 1414(a)(1)(A) of the SDWA, 42 U.S.C. § 300g-3(a)(1)(A), for the violations, which included the City's failure to have a Class A certified operator onsite at the System's treatment plants at all times.

58. During the April 28, 2020, meeting between EPA and the City, the City requested clarification regarding the implementation of the Alternative Water Source Plan required under the Emergency Order.  Following the meeting, EPA issued an amendment to the Emergency Order on May 28, 2020, replacing a paragraph of the Order with the text contained in the amendment.  The amendment is attached to this Complaint as Attachment C.

59. Under the Emergency Order, as amended, EPA required the City to take actions to address the imminent and substantial endangerment and communicate regularly with EPA, including *inter alia*:

14

    a.  provide alternative water supplies to residents following specified triggering events;

    b.  develop a Comprehensive Equipment Repair Plan ("CERP") addressing the repair and/or replacement of monitoring equipment and the maintenance of appurtenant treatment equipment;

    c.  address concerns about disinfection and pH treatment of the water;

    d.  immediately repair line breaks or any cause of low pressure/loss of pressure;

    e.  take additional coliform bacteria samples in certain circumstances, such as when a line breaks or when another low-pressure or loss-of-pressure event likely to cause contamination in the System's distribution system occurs;

    f.  submit weekly updates to EPA on the City's progress complying with the Emergency Order and submit operating report entries on a weekly basis; and

    g.  meet biweekly with EPA and MSDH.

60. In April 2020, EPA, MSDH, and the City began meeting biweekly to discuss the City's compliance with the Emergency Order, including the City's development of the CERP. Attendees typically included at least EPA Region 4's Drinking Water Enforcement Section Chief; MSDH's Director of the Bureau of Public Water Supply; the City's Public Works Director, Deputy Director of Water Operations, and Class A-certified operators; and legal and technical staff. The City timely submitted an Alternative Water Source Plan for EPA's review and approval.

61. In May 2020, EPA and the City began negotiations to resolve the City's SDWA violations through an administrative settlement agreement. The City timely submitted to EPA

the CERP required by the Emergency Order, and EPA approved an Alternative Water Source

Plan that the City had revised in response to EPA's comments.

62. In December 2020, the City submitted to EPA an updated CERP, and EPA and the City

continued meeting regularly to negotiate an administrative settlement agreement.

63. In early February 2021, the City submitted to EPA another updated CERP.

64. In mid-February 2021, back-to-back winter storms impacted the System, with freezing

temperatures causing line breaks and equipment failure due to lack of pressure. As a result, a

surface water systemwide BWN was in effect from February 16 through March 17, 2021; a

groundwater systemwide BWN was in effect from February 18 through March 10, 2021; and

tens of thousands of the City's customers (primarily in West and South Jackson) were left

without running potable water for several weeks.

65. Based on a March 31, 2021, public notice issued by the City informing the public of

violations of drinking water standards and requirements, EPA found that the System was

noncompliant with the SDWA, the National Regulations, and the State regulations. Specifically,

the System exceeded the maximum contaminant level for HAA5 (a group of five haloacetic acids

that are a type of chlorine disinfection byproduct) in the 4th Quarter of 2020 and the 1st Quarter

of 2021, and the City had failed to install optimal corrosion control treatment at J.H. Fewell by

MSDH's deadline of May 31, 2019. The City did complete installing optimal corrosion control

treatment at O.B. Curtis. On April 27, 2021, EPA issued a second Notice of Noncompliance to

the City under Section 1414(a)(1)(A) of the SDWA, 42 U.S.C. § 300g-3(a)(1)(A), for the

violations.

66. On April 30, 2021, an electrical fire damaged the electrical panel at O.B. Curtis running

all five of the plant's high-service pump lines, rendering the pumps inoperable. The loss of the

pumps caused multiple elevated tanks to be low or empty and caused certain areas of the distribution system to have sustained low pressure. As a result, the City issued a surface water systemwide BWN on April 30, 2021 that lasted through May 3, 2021.

67. On May 4, 2021, the Federal Emergency Management Agency approved a Major Emergency Declaration for Mississippi, including portions of Jackson in Hinds County, for the impacts from the winter storms.

*The Consent Order*

68. Throughout 2021, EPA and the City continued negotiating an administrative settlement agreement, culminating in the EPA and the City entering into an Administrative Compliance Order on Consent ("Consent Order") under Section 1414(g) of the SDWA, 42 U.S.C. § 300g-3(g), effective July 1, 2021 (Docket No. SDWA-04-2020-2301). The Consent Order is attached to this Complaint as Attachment D.

69. Under the Consent Order, the City agreed to *inter alia*:

    a. provide EPA with a Comprehensive Staffing Plan within 30 days (i.e., by July 31, 2021) that identified "how [the City] will ensure that a Class A operator is onsite [at O.B. Curtis and J.H. Fewell] at all times, including any backup plans in case staff are unavailable," Consent Order ¶ 39; and

    b. implement the tasks described in the City's Comprehensive Equipment Repair Plan as approved by EPA and attached as Appendix A to the Consent Order in accordance with the schedules of implementation therein, *id.* ¶ 40, including:

        i. hiring two new operators for O.B. Curtis who would both be eligible for licensure and would complete the Class A operator test within

seven months (i.e., by February 1, 2022), *see* Comprehensive

Equipment Repair Plan, task nos. 2 and 3;

    ii.  within 60 days, developing a scope of work with timeframes for

returning the filters at J.H. Fewell to fully operational and functional

status, *see id.*, task no. 6; and

    iii.  repairing and rehabilitating the conventional and membrane filtration

systems at O.B. Curtis, including completing within seven months all

repairs to the conventional filtration system so that it would be fully

functional and operational, *see id.*, task no. 13.

70. In September 2021, EPA, MSDH, and the City began meeting biweekly to discuss the City's compliance with the Consent Order and any situational changes. Attendees typically included at least EPA Region 4's Drinking Water Enforcement Section Chief; MSDH's Director of the Bureau of Public Water Supply; the City's Public Works Director, Deputy Director of Water Operations, and Class A-certified operators; and legal and technical staff.

71. On November 8, 2021, MSDH conducted its annual sanitary survey of the System and noted as a significant deficiency that the O.B. Curtis high-service pumps remained out of service following the April 2021 electrical panel fire, with no target date to return the pumps to service. *See* 40 C.F.R. § 141.2 (defining "sanitary survey" as an onsite review to evaluate the adequacy of the water sources, facilities, equipment, operation, and maintenance of a public water system for producing and distributing safe drinking water). MSDH required the City to provide MSDH with a written response identifying corrective actions and timeframes by January 14, 2022, and that the City complete the corrective actions within 120 days of receipt of the report, i.e., no later than April 14, 2022.

72. On November 13, 2021, the City shut down O.B. Curtis due to chemical feed issues with the aluminum chlorohydrate process, which then caused low water pressure and issuance of a surface water systemwide BWN that lasted from November 15 through November 19, 2021.

73. On November 15, 2021, as part of a multi-state tour to spotlight environmental justice concerns in historically marginalized communities, the EPA Administrator visited Jackson, where he *inter alia* met with the Mayor, toured O.B. Curtis, and met with administrators and students of an elementary school that was closed at the time because of low water pressure.

74. On November 23, 2021, the City Council passed pay raises for drinking water treatment plant operators and increased water utility usage rates by 20%.

75. On January 19, 2022, the Mayor and the City's Chief Financial Officer met with the EPA Administrator in Washington, D.C., to discuss *inter alia* the City's water infrastructure needs and Bipartisan Infrastructure Law funding.

76. On January 24, 2022, the EPA Administrator sent letters to the Mayor and to the Governor of Mississippi outlining EPA's prerogatives for the City's drinking water system and the State's role in assisting the City to achieve compliance.

77. On January 25, 2022, EPA issued a third Notice of Noncompliance to the City under Section 1414(a)(1)(A) of the SDWA, 42 U.S.C. § 300g-3(a)(1)(A).  EPA found that the System was noncompliant with the SDWA, the National Regulations, and the State regulations because the City had yet to repair or replace the electrical panel at O.B. Curtis to restore the pumps to service, and because the City had not provided the required written response identifying corrective actions and timeframes to do so.

78. In February 2022, EPA coordinated with the Department of Homeland Security to obtain a commitment from the manufacturer of the electrical panel to expedite delivery of a replacement panel, and in mid-April 2022, the new electrical panel was installed at O.B. Curtis.

79. During the week of March 2, 2022, EPA Region 4, EPA's Technical Support Center, EPA's contractors, and MSDH visited the City to gather information and assess the City's water distribution system.

80. On March 18, 2022, the EPA Administrator sent letters to the Mayor and to the Governor of Mississippi, noting the availability of federal infrastructure funds under the Bipartisan Infrastructure Law.

81. On April 20, 2022, a water hammer—a sudden surge of water pressure when water flow quickly changes direction or is stopped, such as when a valve suddenly closes or a pump suddenly shuts down—caused a pipe to break in the O.B. Curtis potassium permanganate room, causing the plant to shut down and the System's water pressure to fall.

82. On April 21, 2022, during a regular biweekly meeting among the City, MSDH, and EPA, the City estimated vacancies for five operators and at least a half-dozen maintenance workers across both plants. The City's timesheets indicated that two operator supervisors at both plants were working a combined average of 128 hours per week.

83. In late June 2022, the City began having difficulty producing water from O.B. Curtis because of equipment failures and inadequate maintenance related to the membrane filters, and the System became unable to fill elevated storage tanks throughout the System, thereby lowering water pressure. The City issued a water conservation advisory on June 21, 2022, to customers that they should conserve the use of water.

84. On June 24, 2022, as a result of high turbidity levels and the continued water production issues at O.B. Curtis, the City issued a Systemwide BWN for all customers of both the surface water and groundwater systems. This BWN stayed in effect for two weeks while City staff addressed production and turbidity issues. That same day, the City began providing limited quantities of bottled water on a first-come, first-served basis.

85. On June 30, 2022, due to the ongoing high turbidity levels, MSDH issued a surface water systemwide BWN, supplementing the City's June 24, 2022 notice.

86. On July 9, 2022, with the concurrence of MSDH, the City lifted the BWN.

87. In July 2022, EPA issued the report "City of Jackson Distribution System Assessment: Summary of Findings and Assessment Team Recommendations" ("July 2022 Assessment"), stemming from the March 2022 distribution system assessment and site visit conducted by EPA Region 4, EPA's Technical Support Center, EPA's contractor, and MSDH. Of particular relevance to the claims in this Complaint, the many issues with the System identified in the Assessment included:

    a. The System has an extensive history of line breaks;

    b. The City does not collect and record continuous pressure data, which could be used to identify areas in need of pressure improvements to prevent contamination in the distribution system, *id.* at 6;

    c. The City failed to consistently meet water quality parameters for pH and alkalinity, *id.* at 10;

    d. The City does not perform routine flushing of the distribution system, which can be utilized to reduce water age (i.e., the amount of time for water to travel from its source to the user) and optimize chlorine residuals, *id.* at 6;

21

e. There were infrequent cycling of storage tanks and poor mixing performance ratios, suggesting insufficient chlorine residuals in the system, *id.* at 7, and a disruption in the chloramine process control, *id.* at 10;

f. The monochloramine residual in the O.B. Curtis effluent was at times less than the optimization goal, *id.* at 10-11;

g. There were considerable staffing problems, including:

    i. the Utilities Manager position was vacant at the time of the visit, which the City explained was due to budget limitations, *id.* at 11;

    ii. there are insufficient operators to consistently staff three shifts, seven days per week; staff are unable to take time off without forcing remaining staff to work extra hours; supervisors are working shifts in addition to their managerial responsibilities; and distribution system crews are sparsely staffed and are unable to conduct preventive maintenance, *id.* at 12;

    iii. operator turnover is high, and operators indicated instances of working up to 75 hours per week without receiving overtime pay, *id.*; and

    iv. the utility does not have adequate plant and distribution system staff to perform preventative maintenance that could reduce overall operational costs of the system, *id.*; and

h. Various water billing and metering issues persist and contribute to the City's loss of water-billing revenue (32 percent decrease since 2016) and loss of large customers (i.e., hospitals and local schools), *id.* at 12-13.

88. On July 29, 2022, MSDH issued a surface water systemwide BWN.  The next day, the City issued its own surface water systemwide BWN.  According to MSDH's notice,

> [w]ater samples collected 7/28/2022 showed turbidity levels of 1.0 to 2.5 turbidity units.  This is above the standard of 0.30 turbidity units.  Due to these high levels of turbidity, there is an increased chance that the water may contain disease-causing organisms. . . . Turbidity has no health effects.  However, turbidity can interfere with disinfection and provide a medium for microbial growth.  Turbidity may indicate the presence of disease-causing organisms.  These organisms include bacteria, viruses, and parasites, which can cause symptoms such as nausea, cramps, diarrhea, and associated headaches.

89. Since EPA's initial inspection of the City's public drinking water system in February 2020, EPA has communicated regularly with the City to enforce SDWA compliance and provided assistance, including providing ongoing assistance from EPA's Compliance Advisor program; providing financial technical assistance and analysis from EPA's contractor; requesting documents and further information; and holding meetings between EPA and the City, including between EPA Region 4's Enforcement and Compliance Assurance Division Director and the Mayor.

**Complete Loss of Water Use in August and September 2022**

90. During the week of August 8, 2022, multiple raw water intake pumps failed at O.B. Curtis, impacting its ability to produce adequate quantities of water and causing a loss of pressure in the distribution system.  In mid- to late August 2022, the City experienced record rainfalls, resulting in what has been reported as the second wettest August on record for the City of Jackson.  Flooding exacerbated the pre-existing problems at O.B. Curtis by disturbing the water treatment process, clogging the filters, and preventing O.B. Curtis from producing potable water that could fill storage tanks and establish adequate water pressure in the distribution system.  As a result of the decreased water pressure, many System users had no running water

23

and thus lost the ability to use water for basic safety and hygiene purposes such as washing hands, showering, flushing toilets, fighting fires, and washing dishes.

91. During the period of low pressure, many System users were dependent on alternative water sources supplied by the City and State and federal agencies or procured from other sources.

92. On August 29, 2022, the Mayor signed a Mayoral Proclamation of Local Emergency under Section 33-15-17(d) of the Mississippi Code of 1972, as amended, which defines an emergency as "any occurrence, or threat thereof, whether natural, technological, or man-made, in war or in peace, which results or may result in substantial injury or harm to the population or substantial damage to or loss of property," Miss. Code Ann. § 33-15-5(h).

93. In proclaiming the existence of a local emergency, the Mayoral Proclamation referenced *inter alia* the March 27, 2020, SDWA Emergency Administrative Order and the July 1, 2021, SDWA Administrative Order on Consent.

94. On August 30, 2022, the Mississippi Governor issued Executive Order No. 1564 proclaiming under the State Constitution and Section 33-15-11(b)(17) of the Mississippi Code that "a State of Emergency exists in the City of Jackson, Mississippi and the surrounding areas of Hinds County that receive water from [O.B. Curtis] as a result of the total or near total loss of water pressure throughout that area" and ordering the deployment of the Mississippi National Guard to further response and recovery efforts.

95. On August 30, 2022, the President of the United States declared that an emergency exists in the State of Mississippi and ordered Federal assistance to supplement the State's response efforts due to the emergency conditions resulting from the water crisis.  The President's action authorized the Federal Emergency Management Agency (FEMA) to coordinate all disaster relief

efforts which have the purpose of alleviating the hardship and suffering caused by the emergency on the local population, and to provide appropriate assistance for required emergency measures to save lives and to protect property and public health and safety, and to lessen or avert the threat of a catastrophe in Hinds County.

96. FEMA, EPA, and the United States Army Corps of Engineers have deployed to Jackson emergency responders, drinking water infrastructure experts, and others to respond to the emergency situation on the ground.

97. The State of Mississippi has taken various actions to address the existing emergency circumstances, including issuing an emergency order from MSDH (the "MSDH Emergency Order") to the City on August 30, 2022.  By its terms, the MSDH Emergency Order is in effect for not more than 120 days (i.e., no later than December 28, 2022), subject to 30-day extensions by the State Health Officer.

98. Among other things, the MSDH Emergency Order provides:

> Notwithstanding the requirements of this Order, the City of Jackson shall continue to be responsible for compliance with the Safe Drinking Water Act [and] any U.S. EPA Emergency Administrative Orders . . . .  Compliance with this Order shall not in any way be construed to relieve the City of Jackson from its obligations to comply with all provisions of federal, state, or local law.

99. Pursuant to the emergency declarations, a Unified Command consisting of representatives from the Mississippi Emergency Management Agency, MSDH, the City, EPA, FEMA, and the U.S. Army Corps of Engineers have taken a number of actions to restore and sustain water service to the City's customers, including but not limited to:

    a.   reestablishing raw water flow at both plants;

    b.   restoring water tank levels and produced water volumes from both plants;

   c.   integrating temporary operators from other states to assist within plant operations;

   d.   granting provisional Class A licenses to two previously-licensed water operators at O.B. Curtis;

   e.   repairing or procuring critical treatment equipment;

   f.   increasing the facility maintenance capabilities at both plants in the short-term through use of mechanics, instrument technicians, electricians, and other workers from other states;

   g.   engineering and developing a liquid soda-ash feed system for corrosion control treatment at O.B. Curtis;

   h.   sourcing parts for both plants; and

   i.   evaluating the winterization needs of the System.

100. On or about September 6, 2022, water pressure within the System and water service to System users was restored.

101. The July 29, 2022, BWN remained in effect until September 15, 2022.

102. Notwithstanding the actions that the State and the City have taken or will take to address the emergency situation, an imminent and substantial endangerment to the health of persons continues to exist.

103. From September 15, 2022, and through October 21, 2022, at least 16 more BWNs have been issued for various portions of the System.

104. The City has consistently experienced a shortage of certified Class A operators, maintenance personnel, and other key System personnel who can operate and maintain the System.

26

105. While System operations are currently being supplemented by contractors working under emergency, short-term contracts, this is not a long-term solution to the City's regulatory requirement to have a certified Class A operator onsite whenever O.B. Curtis and J.H. Fewell are in operation. *See* Miss. Admin. Code § 15-20-72.2.2.1(5).

106. The emergency response does not address all of the repairs and rehabilitation needed for O.B. Curtis and J.H. Fewell to ensure long-term compliance with the SDWA, including but not limited to full repair of the O.B. Curtis conventional and membrane filters.

107. The emergency response does not address all of the repairs and rehabilitation needed for the distribution system, which requires *inter alia* repairing or replacing failing lines, developing a standard operating procedure for exercising valves and hydrants, conducting continuous pressure monitoring in the distribution system to characterize pressure loss issues, and developing and implementing a flushing program to improve water quality.

108. The emergency response is not designed to address the City's financial and technical capacity shortfalls that have long hindered the City's ability to operate the System in compliance with the law and in a manner that ensures a reliable source of drinking water for System users. Absent appropriate relief, the City will continue to experience these shortfalls and the System's users remain at risk of losing water access and dealing with boil-water notices during severe weather events and during System failures.

109. As the Mayor stated when appearing on "Amanpour & Co." on September 6, 2022:

> Until we have significant funding to deal with the challenges for the three decades' long of neglect and lack of investment in our water treatment facility, it's not a matter of if, but it's a matter of when these systems will fail again.

110. As the Mayor further stated when appearing on "Face the Nation" on September 11, 2022:

They [residents] have yet to have the boil water notice lifted, and so there are still concerns around the consumption of that water.

Right now, as many repairs and adjustments are taking place in the triage period of where we are at the water treatment facility. There's also investigatory sampling taking place. And so we believe that it's a matter of days, not weeks, before that boil water notice can be lifted.

But I would note this, that we have been here before, where we've been [able] to restore pressure. We've been able to lift boil water notices. But without the significant capital improvements to take place, it still is a matter of [when, not if] these things will happen again.

111. Therefore, while significant, the actions taken pursuant to the emergency response will not provide long-term, sustainable solutions to the City's drinking water system to a degree that will reliably protect the health of persons served by the System.

## GENERAL ALLEGATIONS

112. The City owns and operates the System.

113. The City is a "person" within the meaning of the SDWA, Mississippi SDWA, National Regulations, and State Regulations because it is a municipality. *See* 42 U.S.C. § 300f(12); 40 C.F.R. § 141.2; Miss. Code Ann. § 41-26-3(p); Miss. Admin. Code § 15-20-72-2.1.2.11.

114. The System's surface water system and groundwater system are each a "public water system" and a "community water system" within the meaning of the SDWA, Mississippi SDWA, National Regulations, and State Regulations because they each regularly serve at least 25 year-round residents. 42 U.S.C. § 300f(15); 40 C.F.R. § 141.2; Miss. Code Ann. §§ 41-26-3(c) and (q); Miss. Admin. Code §§ 15-20-72-1.1.2.10 and 15-20-72.-2.1.2.4.

115. As public water systems that are community water systems, the System's surface water system and groundwater system are each subject to the requirements of the National Regulations and the State Regulations. 40 C.F.R. § 141.1; 40 C.F.R. Part 141 *passim* (imposing requirements

28

on community water systems); Miss. Code Ann. § 41-26-5(2)(a); Miss. Admin Code § 15-20-72-1.1.4.

116. The City is a "supplier of water" within the meaning of the SDWA, Mississippi SDWA, National Regulations, and State Regulations because it owns and operates a public water system. *See* 42 U.S.C. § 300f(5); 40 C.F.R. § 141.2; Miss. Code Ann. § 41-26-3(s) ("supplier of water" means any person who owns or controls a public water system).

117. As a supplier of water, the City must comply with the National Regulations and the State Regulations. 40 C.F.R. Part 141 *passim* (imposing requirements on suppliers of water); Miss. Code Ann. § 41-26-15(b); Miss. Admin. Code § 15-20-72 *passim* (same).

118. The System's surface water system is a Class A system because it is a system with surface water treatment, groundwater under the direct influence of surface water, lime softening, or coagulation and filtration for the removal of constituents other than iron or manganese. *See* Miss. Admin. Code § 15-20-72.2.2.1(5).

119. Sediment or other matter causing significant cloudiness in water, or high turbidity, is a "contaminant" within the meaning of the SDWA because it is a physical substance or matter in water. *See* 42 U.S.C. § 300f(6).

120. HAA5 is a "contaminant" within the meaning of the SDWA because it is a chemical substance or matter in water. *See* 42 U.S.C. § 300f(6).

121. Coliforms, *E. Coli*, *Cryptosporidium*, *Giardia*, *Legionella*, and viruses, pathogens, and bacteria are "contaminants" within the meaning of the SDWA because they are biological substances or matter in water. *See* 42 U.S.C. § 300f(6).

29

122. EPA is authorized to bring this civil action because on February 28, 2020, MSDH requested that EPA take the lead in the SDWA enforcement process with the City. *See* 42 U.S.C. § 300g-3(b)(2) (authorizing civil action if requested by state primacy agency).

## FIRST CLAIM FOR RELIEF

Injunctive Relief to Abate an Imminent and Substantial Endangerment to Health
(SDWA Section 1431, 42 U.S.C. § 300i)

123. Paragraphs 1 through 122 are realleged and incorporated by reference.

124. The EPA has received information that one or more contaminants, including at least sediment or other matter causing significant cloudiness in water, HAA5, coliforms, *E. Coli*, *Cryptosporidium*, *Giardia*, *Legionella*, or other viruses, pathogens, or bacteria, is present in or is likely to enter the System, which may present an imminent and substantial endangerment to the health of persons. Such information includes:

  a. the over 320 BWNs issued over the last two years, the vast majority which are caused by loss of pressure, as set forth in Attachment A;

  b. the nearly seven-week surface water systemwide BWN running from July 29, 2022, through September 15, 2022;

  c. the excessive number of line breaks in the System, which may create back siphonage capable of contaminating water in the System with contaminants outside the System;

  d. the heightened susceptibility to breakage and corrosion of aging, pre-1910 cast iron distribution lines in the System;

  e. the City's failure to adequately staff O.B. Curtis and J.H. Fewell with certified Class A operators;

f.   the City's failure to maintain equipment to ensure appropriate operation and maintenance of O.B. Curtis, J.H Fewell, and the distribution system;

g.   the City's failure to perform routine flushing of the distribution system;

h.   the infrequent cycling of storage tanks and poor mixing performance ratios;

i.   the frequent failures to maintain appropriate pH parameters as a corrosion control method;

j.   the failure of the System that began in August 2022 resulting in local, State, and federal emergency declarations and the loss of running water for many of the System's users for over a week;

k.   the City's recurring failures to implement an Alternative Water Source Plan following specified triggering events;

l.   the City's failure to comply with the Emergency Order; and

m.   the City's failure to comply with the Consent Order.

125. EPA has consulted with the State and local authorities to confirm the correctness of the information that contaminants are present in or are likely to enter the System, and to ascertain the actions that such authorities are or will be taking.

126. State and local actions have been insufficient to prevent the threat of additional failures in the System. *See* 42 U.S.C. § 300i(a) (allowing Section 1431 claims when, *inter alia*, state and local authorities have "not acted" in a manner that "protect[s] the health of persons"). Such failures are likely to continue to occur, whether under normal working conditions or in extreme weather events.

127. Under Section 1431(a) of the SDWA, 42 U.S.C. § 300i(a), the United States seeks an injunction to abate the imminent and substantial endangerment, including such relief as the Court

31

deems necessary to ensure the permanent and reliable provision of water, in compliance with the SDWA, to the System's customers.

## SECOND CLAIM FOR RELIEF

Failure to Staff O.B. Curtis and J.H. Fewell with Class A Operators at All Times
(SDWA Section 1414, 42 U.S.C. § 300g-3; Miss. Admin. Code § 15-20-72.2.1(5))

128. Paragraphs 1 through 122 are realleged and incorporated by reference.

129. At both O.B. Curtis and J.H. Fewell, the City lacks sufficient certified Class A operators, necessitating unsustainable working conditions, supplemental coverage by non-operators who hold Class A licenses (e.g., a Deputy Director of Water Operations and an operations supervisor), and high turnover of operators.

130. Timesheets for just four months of operation this year show that, in at least 15 instances, J.H. Fewell did not have a certified Class A operator onsite while in operation:

| Date | Time |
|---|---|
| June 5-6, 2022 | 8:18 p.m. – 6:52 a.m. |
| June 6-7, 2022 | 9:19 p.m. – 7:08 a.m. |
| June 11, 2022 | 7:00 a.m. – 10:00 a.m. |
| | 2:00 p.m. – 6:56 p.m. |
| June 12-13, 2022 | 7:13 p.m. – 6:55 a.m. |
| June 17, 2022 | 4:30 p.m. – 7:04 p.m. |
| June 18, 2022 | 7:00 a.m. – 7:04 p.m. |
| June 19-20, 2022 | 7:11 p.m. – 6:53 a.m. |
| June 21, 2022 | 4:00 a.m. – 6:57 a.m. |
| June 24, 2022 | 4:59 p.m. – 7:05 p.m. |
| June 25, 2022 | 7:01 a.m. – 7:05 p.m. |
| June 26-27, 2022 | 7:00 p.m. – 6:52 a.m. |
| June 28, 2022 | 4:03 a.m. – 6:55 a.m. |
| July 1, 2022 | 4:22 p.m. – 7:00 p.m. |
| July 2, 2022 | 7:00 a.m. – 3:09 p.m. |

32

131. As documented in the July 2022 Assessment, the City has insufficient operators to, among other things, consistently staff three shifts a day, seven days per week.

132. On May 18, 2022, the City's then-Deputy Director of Water Operations emailed the then-Director of Public Works (cc-ing the Chief Administrative Officer and Chief Financial Officer), stating: "I worked 24 to 36 hours at OBC [O.B. Curtis] every Saturday and Sunday 7a-7p and Wednesday or Thursday night 7p-7a over six (6) months last year because of the Class A operator shortage. At this point, I am just worn down."

133. On November 16, 2021, the City Engineer emailed the Director of Human Resources, Chief Administrative Officer, Chief Financial Officer, and the then-Director of Public Works about the "low number of current licensed water operators." He wrote: "If we lose any additional operators at either plant a shutdown is unavoidable. We are in an emergency crisis. We are overworking our staff due to our low numbers that [sic] putting a lot of stress and strain on them. The lack of competitive pay is hindering our efforts to recruit new water operators."

134. In an October 27, 2021, memorandum from the City Engineer to the then-Director of Public Works, Chief Administrative Officer, Director of Human Resources, and a human resource officer titled "Recruitment and Retention Policy for Water Treatment Plants," the City Engineer stated:

> The Department of Health requires a Class A Operator on duty during all hours of operations. We are facing a severe situation that needs to be addressed proactively. Currently, we have six class "A" licensed operators between the two plants that are in operations twenty-four (24) hours a day, 365 days a year. Our current operators are working more than one shift and covering empty shifts due [to] the shortage of Class A operators at each plant and working more than one job just to keep up with the cost of living in Jackson that in turn puts the city's water at risk by having tired semi alert operators watching the water process. This poses a safety hazard not only to the water process but our operators as well.

135. Thus, the City has not sufficiently staffed its System with certified Class A operators onsite at all times of operation, in violation of Miss. Admin. Code § 15-20-72.2.1(5).

136. Paragraph 39 of the Consent Order required the City to submit a Comprehensive Staffing Plan within 30 days of the Consent Order's effective date, i.e., no later than July 31, 2021. The Plan was required to *inter alia* identify how the City will ensure that a Class A operator is onsite at all times, including any backup plans in case staff are unavailable.

137. The City has not provided EPA with a Comprehensive Staffing Plan, in violation of Paragraph 39 of the Consent Order.

138. Under Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), the United States is entitled to injunctive relief to remedy the violations and, as appropriate, civil penalties. Unless enjoined by an order of the Court, violations of the State Regulations and the Consent Order are likely to continue and/or recur.

## THIRD CLAIM FOR RELIEF

Failures to Implement the Alternative Water Source Plan
(SDWA Section 1431, 42 U.S.C. § 300i)

139. Paragraphs 1 through 122 are realleged and incorporated by reference.

140. EPA issued the 2020 Emergency Order to the City under Section 1431(a)(1) of the SDWA, 42 U.S.C. § 300i(a)(1).

141. As required by Paragraph 39.a of the Emergency Order, the City developed and submitted an Alternative Water Source Plan ("AWSP") to EPA for review and approval. EPA approved the City's May 21, 2020, AWSP. Among other things required by the AWSP, alternative water "must be made available at no cost to every person served by the System, as needed for drinking, cooking, maintaining oral hygiene, and dishwashing," and the City must provide "at least one gallon per day, per person to every person served in the affected area."

142. Under Paragraph 39.c.ii of the Emergency Order, the City must implement the AWSP for as long as any of the daily special purpose samples required under Paragraph 37 (CFE Turbidity Exceedance Events) or Paragraph 38 (Low Pressure/Loss of Pressure Events) of the Emergency Order receives a total coliform-positive sample result.

143. During the below seven boil-water-notice events, the System had a daily special purpose sample that was total-coliform positive, yet the City did not implement its AWSP:

| Boil Water Notice ID | Reason for Boil Water Notice | Dates of Boil Water Notice |
|---|---|---|
| 10-BWN-2020 | Pressure loss due to valve replacement | August 6-11, 2020 |
| 37-BWN-2020 | Pressure loss when contractor hit main line | August 13-19, 2020 |
| 41-BWN-2020 | Pressure loss due to break on main line | August 23-25, 2020 |
| 84-BWN-2020 | Pressure loss due to line break | December 23-30, 2020 |
| 19-BWN-2021 | Pressure loss due to break on line | January 27-February 1, 2021 |
| 48-BWN-2021 | Pressure loss due to blow out on main line | June 12-17, 2021 |
| 67-BWN-2021 | Pressure loss due to malfunctioning valve | August 20-26, 2021 |

144. Thus, the City has failed to implement the AWSP when required, in violation of Paragraph 39 of the Emergency Order.

145. Under Section 1431(a) and (b) of the SDWA, 42 U.S.C. § 300i(a) and (b), the United States is entitled to injunctive relief to remedy the violations and, as appropriate, civil penalties. Unless enjoined by an order of the Court, violations of the Emergency Order are likely to recur.

**FOURTH CLAIM FOR RELIEF**

Exceedances of Turbidity Limits
(SDWA Section 1414, 42 U.S.C. § 300g-3; 40 C.F.R. §§ 141.173(a)(2) and (a)(1);
Miss. Admin. Code § 15-20-72.1.7.4)

146. Paragraphs 1 through 122 are realleged and incorporated by reference.

147. Under Subpart P (Enhanced Filtration and Disinfection – Systems Serving 10,000 or More People) of the National Regulations and the implementing State Regulations, the turbidity

35

level of representative samples of the System's filtered water must at no time exceed 1 nephelometric unit ("NTU"). 40 C.F.R. § 141.173(a)(2) (setting forth turbidity requirements for systems using conventional filtration); Miss. Admin. Code § 15-20-72.1.7.4 (requiring compliance with 40 C.F.R. § 141.173).

148. The turbidity levels of filtered water samples from the System taken between February 18-23, 2021, exceeded 1 NTU, in violation of 40 C.F.R. § 141.173(a)(2) and Miss. Admin. Code § 15-20-72.1.7.4.

149. The turbidity levels of filtered water samples from the System taken on June 27 and 28, 2022, exceeded 1 NTU—ranging as high as 7.5 NTU—in violation of 40 C.F.R. § 141.173(a)(2) and Miss. Admin. Code § 15-20-72.1.7.4.

150. The turbidity levels of filtered water samples from the System taken on July 18, 2022, exceeded 1 NTU—ranging as high as 2.5 NTU—in violation of 40 C.F.R. § 141.173(a)(2) and Miss. Admin. Code § 15-20-72.1.7.4.

151. Under Subpart P (Enhanced Filtration and Disinfection – Systems Serving 10,000 or More People) of the National Regulations and the implementing State Regulations, the turbidity level of representative samples of the System's filtered water must be less than or equal to 0.3 NTU in at least 95% of the measurements taken each month. 40 C.F.R. § 141.173(a)(1); Miss. Admin. Code § 15-20-72-1.7.4.

152. In February 2021, the System failed to meet that standard, in violation of 40 C.F.R. § 141.173(a)(1) and Miss. Admin. Code § 15-20-72-1.7.4. Specifically:

      a.   At O.B. Curtis, only 75% of the turbidity measurements were less than or equal to 0.3 NTU; and

    b.   At J.H. Fewell, only 93% of the turbidity measurements were less than or

         equal to 0.3 NTU.

153. Under Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), the United States is entitled

to injunctive relief to remedy the violations and, as appropriate, civil penalties.  Unless enjoined

by an order of the Court, violations of the National Regulations and the State Regulations are

likely to recur.

### FIFTH CLAIM FOR RELIEF

Failure to Timely Proceed with General Filter Rehabilitation at J.H. Fewell
(SDWA Section 1414, 42 U.S.C. § 300g-3)

154. Paragraphs 1 through 122 are realleged and incorporated by reference.

155. To address turbidity exceedances at J.H. Fewell and as required by task no. 6 of the

Consent Order's CERP, the City developed an initial scope of work to rehabilitate the filters at

J.H. Fewell in order to return them to fully operational and functional status.  *See* Consent Order

at Appendix A (CERP), task no. 6.  Upon EPA approval of the scope of work, the CERP would

be updated to include the individual tasks and timeframe.  *Id.*

156. EPA approved the City's initial scope of work for the general filters on December 13,

2021, and a revised scope of work on February 4, 2022.  Under task no. 6.B of the scope of

work, the City agreed to issue a notice to proceed to begin the engineering design process within

eight months of the City's execution of Drinking Water State Revolving Fund ("DWSRF") Loan

No. 3.

157. The City and the State executed DWSRF Loan No. 3 on September 30, 2021, so the

notice to proceed to begin the engineering design process was due to be issued by May 30, 2022.

158. On April 4, 2022, the City requested an extension and proposed to start the design

process on July 1, 2023.  EPA denied this extension.

159. Thus, the City has not timely issued the notice to proceed to begin the engineering design process and has not timely begun the design process to rehabilitate the general filters at J.H. Fewell, in violation of Paragraph 40 and task no. 6 of the CERP (Appendix A) of the Consent Order.

160. Under Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), the United States is entitled to injunctive relief to remedy the violation and, as appropriate, civil penalties. Unless enjoined by an order of the Court, violations of the Consent Order are likely to continue.

## SIXTH CLAIM FOR RELIEF

Failure to Install Corrosion Control Treatment
(SDWA Section 1414, 42 U.S.C. § 300g-3; 40 C.F.R. §§ 141.80(e) and 141.83;
Miss. Admin. Code § 15-20-72.1.3.2)

161. Paragraphs 1 through 122 are realleged and incorporated by reference.

162. Under Subpart I (Control of Lead and Copper) of the National Regulations and the implementing State Regulations, the System's lead action level is exceeded if the concentration of lead in more than 10% of tap water samples collected during any monitoring period is greater than 0.015 mg/L (i.e., if the 90th percentile lead level is greater than 0.015 mg/L). 40 C.F.R. § 141.80(c); Miss. Admin Code § 15-20-72.1.3.2 (incorporating National Regulations on lead and copper).

163. When the lead action level is exceeded, the System shall implement all applicable source water treatment requirements specified by the State under 40 C.F.R. § 141.83. 40 C.F.R. § 141.80(e). Under 40 C.F.R. § 141.83, the System must complete source water monitoring and make treatment recommendations to the State within 180 days after the end of the monitoring period during which the lead action level was exceeded. 40 C.F.R. § 141.83(a)(1). The State

then makes a determination regarding source water treatment and, if necessary, may require the public water system to install and operate such treatment. 40 C.F.R. § 141.83(a)(2)-(3).

164. The System exceeded the lead action level of 0.015 mg/L for the monitoring periods of January-June 2015, January-June 2016, and July-December 2016.

165. MSDH issued a compliance plan to the City on February 12, 2016, to address the lead action level exceedances.

166. The City conducted an optimal corrosion control treatment ("OCCT") study between October 2016 and April 2017 and provided the recommended treatment technique to MSDH on June 13, 2017.

167. MSDH concurred with the recommended treatment technique and set a deadline of May 31, 2019, for the City to complete installing the treatment at J.H. Fewell. At the City's request, MSDH later extended the deadline to December 29, 2019.

168. The City has not completed installing OCCT at J.H. Fewell, in violation of the National Regulations and the State Regulations. *See* 40 C.F.R. §§ 141.80(e) and 141.83; Miss. Admin. Code § 15-20-72.1.3.2.

169. Under Section 1414(b) of the SDWA, 42 U.S.C. § § 300g-3(b), the United States is entitled to injunctive relief to remedy the violation and, as appropriate, civil penalties. Unless enjoined by an order of the Court, violations of the National Regulations and the State Regulations are likely to continue.

## SEVENTH CLAIM FOR RELIEF

Exceedances of Maximum Contaminant Level for HAA5
(SDWA Section 1414, 42 U.S.C. § 300g-3; 40 C.F.R. § 141.64(b)(2);
Miss. Admin. Code § 15-20-72.1.2.6)

170. Paragraphs 1 through 122 are realleged and incorporated by reference.

39

171. Under Subpart G (Maximum Contaminant Levels and Maximum Residual Disinfectant Levels) of the National Regulations and the implementing State Regulations, the maximum contaminant level for HAA5 is 0.060 mg/L, or 60 μg/L, determined as a locational running annual average at each monitoring location. 40 C.F.R. § 141.64(b); Miss. Admin. Code § 15-20-72.1.2.6 (applying 40 C.F.R. § 141.64 to public water systems). The "locational running annual average" is the average of sample analytical results for samples taken at a particular monitoring location during the previous four calendar quarters. 40 C.F.R. § 141.2. The maximum contaminant level for HAA5 is a health-based standard, as HAA5 may cause an increased risk of cancer when ingested long term.

172. The HAA5 locational running annual average at one monitoring site in the System's distribution system for the 4th Quarter of 2020 was 0.066 mg/L, or 66 μg/L.

173. The HAA5 locational running annual average at one monitoring site in the System's distribution system for the 1st Quarter of 2021 was 0.065 mg/L, or 65 μg/L.

174. Thus, the City exceeded the maximum contaminant level for HAA5, in violation of 40 C.F.R. § 141.64(b) and Miss. Admin. Code § 15-20-72.1.2.6.

175. Under Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), the United States is entitled to injunctive relief to remedy the violations and, as appropriate, civil penalties. Unless enjoined by an order of the Court, violations of the National Regulations and the State Regulations are likely to recur.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff the United States prays that this Court:

1. Enter an injunction requiring the City to abate any conditions of its public drinking water system that may present an imminent and substantial endangerment to human health;

2. Enter an injunction requiring the City to comply with the SDWA, including the National Regulations and the State Regulations;

3. Enter an injunction requiring the City to comply with the EPA Orders;

4. Enter a money judgment, as appropriate, for civil penalties; and

5. Grant such other relief as this Court deems just and proper.


Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


Dated: November 29, 2022          /s/ Karl Fingerhood
                                  KARL FINGERHOOD (PA Bar No. 63260)
                                  ANGELA MO (CA Bar No. 262113)
                                  STEFAN J. BACHMAN (SC Bar No. 102182)
                                  DEVON LEA FLANAGAN (VA Bar No. 87444)
                                  Attorneys
                                  Environmental Enforcement Section
                                  Environment and Natural Resources Division
                                  U.S. Department of Justice
                                  P.O. Box 7611
                                  Washington, D.C. 20044-7611
                                  Tel: (202) 514-7519
                                  Fax: (202) 616-2427
                                  Email: Karl.Fingerhood@usdoj.gov
                                         Angela.Mo@usdoj.gov
                                         Stefan.Bachman@usdoj.gov
                                         Devon.Flanagan@usdoj.gov

DARREN J. LAMARCA
United States Attorney for the
Southern District of Mississippi

ANGELA GIVENS WILLIAMS
Chief, Civil Division
Assistant United States Attorney

Dated: November 29, 2022          /s/ Jennifer Case
                                  JENNIFER CASE (MS Bar No. 104238)
                                  Assistant United States Attorney
                                  United States Attorney's Office
                                  501 East Court Street, Suite 4.430
                                  Jackson, Mississippi 39201
                                  Tel: (601) 965-4480

OF COUNSEL:

SUZANNE RUBINI
SUZANNE ARMOR
MICHELE WETHERINGTON
United States Environmental Protection Agency
Region 4
61 Forsyth Street S.W.
Atlanta, Georgia 30303

JAMES VINCH
United States Environmental Protection Agency
Office of Enforcement and Compliance Assurance
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Attachment A
Summary of Boil-Water Notices

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 2020 (Beginning with May 1) |
| 001 | 01-BWN-2020 | 5/1/2020 | 5/6/2020 | [100-299] Windsor Dr.;  39209<br>[100-199] Clinton Circle;  39209 | 40 | Loss in water pressure |
| 002 | 02-BWN-2020 | 5/1/2020 | 5/6/2020 | [100-199] Angle Dr.;  39204 | 5 | Loss in water pressure |
| 003 | 03-BWN-2020 | 5/3/2020 | 5/6/2020 | [3900-4299] Crane Blvd.;  39216 | 20 | Loss in water pressure |
| 004 | 04-BWN-2020 | 5/3/2020 | 5/6/2020 | [300-699] Lawrence Road;  39206 | 50 | Loss in water pressure |
| 005 | 05-BWN-2020 | 5/7/2020 | 5/11/2020 | [1800-1899] Russell Lane;  39213 | 5 | Loss in water pressure |
| 006 | 06-BWN-2020 | 5/11/2020 | 5/14/2020 | [200-299] East Pascagoula St.;  39201 | 5 | Loss in water pressure |
| 007 | 07-BWN-2020 | 5/11/2020 | 5/14/2020 | [100-199] Scottdale St.;  39212<br>[1-19] Rob Lane;  39212 | 50 | Loss in water pressure |
| 008 | 08-BWN-2020 | 5/12/2020 | 5/15/2020 | [3600-3799] Gammill Street;  39213 | 25 | Loss in water pressure |
| 009 | 02-BWN-2020 | 5/13/2020 | 5/15/2020 | [300-399] Ridgelea Rd.;  39272<br>[2200-2299] W. Ridge Rd.;  39272<br>[2000-2199] S. Ridge Rd.;  39272<br>[1900-1999] E. Ridge Rd.;  39272<br>[600-699] Bob White Rd.;  39272<br>[1800-1899] Turtle Rd.;  39272<br>[800-899] Meadow Lane;  39272<br>[100-199] Lure Ave.;  39272<br>[1100-1399] Lake Shore Dr.;  39272<br>[1-99] Pike Ave.;  39272<br>[1500-1599] Park Ave.;  39272<br>[1400-1499] Oak Ave.;  39272<br>[700-799] Mary Lane;  39272<br>[1600-1699] Rod St.;  39272<br>[500-599] Reel St.;  39272<br>[900-999] Hook St.;  39272<br>[1000-1099] Horse Shoe Circle;  39272<br>[400-499] Line St.;  39272<br>[1700-1799] Spinning St.;  39272 | 500 | Loss in water pressure |
| 010 | 09-BWN-2020 | 5/21/2020 | 5/26/2020 | [3100-3199] Oak Forest Dr.;  39212 | 25 | Loss in water pressure |
| 011 | 10-BWN-2020 | 5/22/2020<br>(re-issued 5/23/2020) | 5/27/2020 | [1200-1999] Petit Bois St. N.;  39211<br>[2000-2099] Petit Bois St. S.;  39211 | 40 | Loss in water pressure |
| 012 | 11-BWN-2020 | 5/23/2020 | 5/28/2020 | [1000-1199] Arbor Vista Blvd.;  39209 | 50 | Loss in water pressure |
| 013 | 12-BWN-2020 | 5/24/2020 | 5/28/2020 | [1700-1799] Cheswood Dr.;  39204 | 20 | Loss in water pressure |
| 014 | 13-BWN-2020 | 5/25/2020 | 5/27/2020 | [900-1199] Larkspur St.;  39213<br>[900-1199] Carnation St.;  39213<br>[3100-3299] Albermarle Rd.;  39213<br>[1600-1699] Ashdown St.;  39213<br>[3200-3599] Holmes Ave.;  39213 | 125 | Loss in water pressure |
| 015 | 14-BWN-2020 | 5/31/2020 | 6/2/2020 | [3600-3899] Lee Drive;  39212 | 30 | Loss in water pressure |
| 016 | 15-BWN-2020 | 5/31/2020 | 6/2/2020 | [5700-5799] Beechcrest Court;  39211 | 15 | Loss in water pressure |
| 017 | 16-BWN-2020 | 6/3/2020 | 6/5/2020 | [100-299] Colonial Circle;  39211<br>[5600-5699] Clubview Dr.;  39211<br>[100-199] Parkway Dr.;  39211<br>[100-299] South Park Dr.;  39211 | 80 | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 018 | 03-BWN-2020 | 6/10/2020 | 6/13/2020 | [2100-4299] Raymond Rd.;  39212<br>[100-2299] Maddox Rd.;  39212<br>[6000-7699] Channel 16 Way;  39212<br>[3000-3199] Forest Hill Rd.;  39212<br>[100-199] Leggett Dr.;  39212<br>[100-199] S. EnterpriseSt.;  39212<br>[100-199] Timberlawn Rd.;  39212<br>[100-299] Plummer Circle;  39212<br>[100-199] Del Ray Dr.;  39212<br>[100-199] Portwood Dr.;  39212<br>[100-199] Rebel Circle;  39212<br>[100-299] Forest Hill Dr.;  39212<br>[100-199] Waywood Dr.;  39212<br>[100-599] Cedarwood Dr.;  39212<br>[100-599] Sharon Hills Dr.;  39212<br>[100-199] Fairoaks Cove;  39212<br>[100-199] Waxwing Dr.;  39212<br>[100-399] Woodcliff Dr.;  39212<br>[300-499] Briar Vista;  39212<br>[500-599] Winnwood;  39212<br>[400-599] Greenmont Dr.;  39212<br>[300-399] Cedarmont Dr.;  39212<br>[100-299] Carriage Hills Dr.;  39212<br>[100-199] Farmington St.;  39212<br>[100-199] Yorkshire;  39212<br>[100-199] Riderwood Dr.;  39212<br>[100-199] Surrey Dr.;  39212 | 600 | Loss in water pressure |
| 019 | 04-BWN-2020 | 6/10/2020 | 6/13/2020 | [100-299] Handley Blvd.;  39272<br>[500-599] Towne Center Blvd.;  39272 | 10 | Loss in water pressure |
| 020 | 17-BWN-2020 | 6/10/2020 | 6/13/2020 | [100-199] Kolb Ave.;  39209 | 30 | Loss in water pressure |
| 021 | 18-BWN-2020 | 6/11/2020 | 6/13/2020 | [2600-3099] Coleman Ave.;  39213 | Not available | Loss in water pressure |
| 022 | 19-BWN-2020 | 6/18/2020 | 6/20/2020 | [100-299] Queen Anne Lane;  39209 | 30 | Loss in water pressure |
| 023 | 20-BWN-2020 | 6/20/2020 | 6/23/2020 | [700-799] Belhaven Street;  39202 | 10 | Loss in water pressure |
| 024 | 21-BWN-2020 | 6/20/2020 | 6/23/2020 | [1000-1399] Peachtree Street;  39202 | 5 | Loss in water pressure |
| 025 | 22-BWN-2020 | 6/29/2020 | 7/1/2020 | [1000-1099] Whitworth St;  39202 | 25 | Loss in water pressure |
| 026 | 05-BWN-2020 | 6/30/2020 | 7/4/2020 | [2200-2799] Greenway Dr.;  39209<br>[5200-5299] Greenway Dr. Extd.;  39209<br>[4800-5999] MS-18;  39209 | 50 | Loss in water pressure |
| 027 | 23-BWN-2020 | 7/2/2020 | 7/7/2020 | [1000-1799] University Blvd.;  39204<br>[800-999] West Porter St.;  39204<br>[800-1099] Winter St.;  39204<br>[800-899] Evergreen Ave.;  39204<br>[900-999] Peabody St.;  39204<br>[600-799] Cherry St.;  39204 | 100 | Loss in water pressure |
| 028 | 24-BWN-2020 | 7/8/2020 | 7/10/2020 | [100-199] Northcliff Dr.;  39211<br>[1-99] Highland Meadows;  39211<br>[1-99] Pondside Dr.;  39211 | 40 | Loss in water pressure |
| 029 | 25-BWN-2020 | 7/12/2020 | 7/15/2020 | [1800-1899] Westover Street;  39209 | 15 | Loss in water pressure |
| 030 | 26-BWN-2020 | 7/12/2020 | 7/15/2020 | [800-899] Beechwood Court;  39206 | Not available | Loss in water pressure |
| 031 | 27-BWN-2020 | 7/13/2020 | 7/16/2020 | [1500-1599] Peachtree St.;  39202 | 5 | Loss in water pressure |
| 032 | 06-BWN-2020 | 7/17/2020 | 7/24/2020 | 39170<br>39209<br>39212<br>39272<br><br>Corrected to:<br>TV Road between Maddox and Highway 18<br>Maddox Road from Highway 18 to Raymond Road<br>Brookhollow Subdivision<br>Cedar Hills Subdivision | 25 (corrected to 3,000) | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 033 | 29-BWN-2020 | 7/17/2020 | 7/22/2020 | [701-799] Ewing St.<br>[1100-1200] Lewis St.<br>[301-499] Line St. | 30 | Loss in water pressure |
| 034 | 01 CWN 2020 | 7/19/2020 | Not available | The City of Jackson in Zip Codes 39170, 39209, 39212, 39272 | All customers being served by the City of Jackson Maddox Well System | Low Flow in the City's well system |
| 035 | 30-BWN-2020 | 7/24/2020 | 7/30/2020 | [2000-2400] East Northside Dr.<br>[4600-4700] Trawick Dr. | Not available | Loss in water pressure |
| 036 | 31-BWN-2020 | 7/27/2020 (corrected 8/1/2020) | 8/5/2020 | [1700–1900] Hamilton Blvd.<br>[1700 –1900] Northwood Cr.<br>[1100–1500] Beasley Road<br>[5400-6400] Watkins Drive<br>[ 1200 -1300] Echelon Parkway<br>[ 5700 –6500] Livingston Road<br>[1300 –1700] West County Line Road<br>Lakeover Subdivision<br><br>Corrected to:<br>[1700-3899] Beasley Road; 39213<br>[5900-6599] Livingston Road; 39213<br>Lakeover Subdivision<br>Richwood Estates Subdivision<br>Richwood III Estates Subdivision | 200 (corrected to 500) | Loss in water pressure |
| 037 | 07-BWN-2020 | 7/30/2020 | 8/3/2020 | [2200-2799] Maddox Road; 39209 | 40 | Loss in water pressure |
| 038 | 32-BWN-2020 | 8/2/2020 | 8/5/2020 | [200-299] Raymond Road; 39204 | 10 | Loss in water pressure |
| 039 | 08-BWN-2020 | 8/3/2020 | 8/5/2020 | Sunkist Subdivision off Rainey Road<br>North Valley Falls Road<br>South Valley Falls Road<br>Glenstone Circle<br>Clayton Place | 100 | Loss in water pressure |
| 040 | 33-BWN-2020 | 8/6/2020 | 8/7/2020 | [1200-1899] North State Street; 39202 | 30 | Loss in water pressure |
| 041 | 35-BWN-2020 | 8/7/2020 | 8/11/2020 | [1600-1999] Lamar Street; 39202<br>[300-399] Adelle Street; 39202 | 25 | Loss in water pressure |
| 042 | 09-BWN-2020 | 8/11/2020 | 8/14/2020 | [100-499] Riverbend Dr.; 39272 | 100 | Loss in water pressure |
| 043 | 10-BWN-2020 (was 34-BWN-2020) | 8/11/2020 (originally 8/6/2020) | 8/11/2020 | 6672 Terry Road; 39170 | 1 | Loss in water pressure |
| 044 | 36-BWN-2020 | 8/12/2020 | 8/14/2020 | [400-799] Daniel Circle; 39212<br>[3100-3199] Bilgray Dr.; 39212<br>[3100-3199] Adrienne Dr.; 39212 | 120 | Loss in water pressure |
| 045 | 37-BWN-2020 | 8/13/2020 | 8/19/2020 | [5100-5299] Kaywood Dr.; 39211 | 20 | Loss in water pressure |
| 046 | 38-BWN-2020 | 8/16/2020 | 8/22/2020 | [4000-4199] Northview Dr.; 39206<br>[100-299] Triangle Dr.; 39206 | 20 | Loss in water pressure |
| 047 | 39-BWN-2020 | 8/21/2020 | 8/25/2020 | [200-299] South Canton Club Circle; 39211 | 20 | Loss in water pressure |
| 048 | 11-BWN-2020 | 8/23/2020 | 8/25/2020 | [5300-5699] Shaw Road; 39209 | 20 | Loss in water pressure |
| 049 | 40-BWN-2020 | 8/23/2020 | 8/25/2020 | [800-1099] North West Street; 39202 | 20 | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 050 | 41-BWN- 2020 | 8/23/2020 | 8/25/2020 (8/27/2020 for West Hill Drive: 39202) | [5300-5699] Clinton Blvd., [100-499] Magnolia Rd., [100-599] North Flag Chapel Rd., [100-399] Westhaven Blvd., Westwick Apts., Windsor Park Apts., Knob Hill Dr., Glen Rose Dr., Bayberry Dr., Wild Flower Dr., Melba Hill Dr., Wood Rose Terrace, Magnolia Dr., Magnolia Cir., Highwood Dr., York Dr., Delano Dr., Glenco Ave., West Hill Dr., Lowder Dr., Rich Dr., Queen Elanor Ln., Queen Christina Ln., Queen Ct., Queen Julianna Ln., Queen Theresa Ln., Queen Marie Ln., Queen Esther Ln., Queen Park Cir., Mattox St., Queen Alma Ln., Queen Andria Ln., Ginger Dr., Bonita Dr., Queen Mary Ln., Queen Anne Ln., Queen Elizabeth Ln., Queen Victoria Ln., Queen Isabella Ln., Queen Maud Ln., Queen Alexandria Ln., Queen Margaret Ln., Queen Cir., Queen Joanna Ln., Queen Josephine Ln., W. Lane Dr., Hayes Dr., Loden Pl., N. Windsor Dr., S. Windsor Dr., Wynndyke Rd., Wynndyke Cir., Ladd St., Sheronn St., Chalet Ave., Speights St., Riffle Ave. | 1000 | Loss in water pressure |
| 051 | 42-BWN-2020 | 8/24/2020 | 8/26/2020 | [2100-2399] Lake Circle; 39211 [1900-2099] Eastbourne Pl.; 39211 [3900-3999] Restbrook Pl; 39211 [3900-3999] Rhymes Pl.; 39211 | 30 | Loss in water pressure |
| 052 | 43-BWN-2020 | 8/25/2020 | 8/27/2020 | [2400-2499] Prosperity Street; 39213 | 15 | Loss in water pressure |
| 053 | 44-BWN-2020 | 8/26/2020 | 8/28/2020 | [500-599] Woodland Hills Place; 39216 | 15 | Loss in water pressure |
| 054 | 45-BWN-2020 | 8/31/2020 | 9/5/2020 | [4600-5499] I-55 North Frontage Road; 39206 | 35 | Loss in water pressure |
| 055 | 46-BWN-2020 | 9/5/2020 | 9/10/2020 | [100-299] Fredrica Ave.; 39209 [2300-2499] Clinton Ave.; 39209 | 40 | Loss in water pressure |
| 056 | 47-BWN-2020 | 9/13/2020 | 9/15/2020 | [100-199] Chatham Circle; 39206 | 30 | Loss in water pressure |
| 057 | 48-BWN-2020 | 9/17/2020 | 9/21/2020 | [5800-5899] North Commerce Plaza; 39206 [5700-5799] Gallant Dr.; 39206 | 20 | Loss in water pressure |
| 058 | 49-BWN-2020 | 9/20/2020 | 9/23/2020 | [100-299] Northside Dr.; 39206 [300-499] Northside Cir.; 39206 [3900-3999] Hanging Moss Rd.; 39206 [100-299] Triangle Dr.; 39206 [4000-4199] Northview Dr.; 39206 | 80 | Loss in water pressure |
| 059 | 12-BWN-2020 | 9/22/2020 | 9/23/2020 | [6000-6399] MS-18; 39212 [2000-2999] N. Siwell Road; 39212 [3700-4099] S. Siwell Road; 39212 [1000-1799] McCluer Road; 39212 [3000-3799] Forest Hill Road; 39212 [2500-4599] Raymond Road; 39212 [100-2699] Maddox Road; 39209 Willowood Subdivision Cedar Hills Subdivision Oak Creek Subdivision Pecan Acres Subdivision Windsor Forest Subdivision | 1000 | Loss in water pressure |
| 060 | 50-BWN-2020 | 9/22/2020 | 9/24/2020 | [900-1099] Combs St.; 39204 | 50 | Loss in water pressure |
| 061 | 51-BWN-2020 | 9/23/2020 | 9/25/2020 | [400-499] East Ridgeway Street; 39206 | 25 | Loss in water pressure |
| 062 | 52-BWN-2020 | 10/4/2020 | 10/6/2020 | [1900-2099] Eastbourne Pl.; 39211 [3900-3999] Rhymes Pl.; 39211 | 15 | Loss in water pressure |
| 063 | 53-BWN-2020 | 10/5/2020 | 10/7/2020 | [4000-4199] Northview Dr.; 39206 [100-299] Triangle Dr.; 39206 | 20 | Loss in water pressure |
| 064 | 54-BWN-2020 | 10/5/2020 | 10/7/2020 | [100-199] Louisiana Ave.; 39209 | 15 | Loss in water pressure |
| 065 | 55-BWN-2020 | 10/6/2020 | 10/8/2020 | [3900-3999] Roxbury Road; 39211 | 15 | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 066 | 56-BWN-2020 | 10/6/2020 | 10/8/2020 | [400-499] Dunbar St.; 39216 | 15 | Loss in water pressure |
| 067 | 57-BWN-2020 | 10/13/2020 | 10/15/2020 | [4100-4599] Hanging Moss Rd.; 39206<br>[200-399] Iris Ave.; 39206<br>[400-499] Meadow Moss Rd.; 39206<br>[4100-4399] Oaklawn St.; 39206 | 100 | Loss in water pressure |
| 068 | 13-BWN-2020 | 10/14/2020 | 10/17/2020 | [100-299] Carriage Hills Dr.; 39212<br>[100-199] Yorkshire; 39212<br>[100-199] Farmington St.; 39212 | 50 | Loss in water pressure |
| 069 | 58-BWN-2020 | 10/15/2020 | 10/17/2020 | [1500-1699] Myrtle St.; 39202 | 15 | Loss in water pressure |
| 070 | 59-BWN-2020 | 10/15/2020 | 10/17/2020 | [1800-1899] Linden Pl.; 39202 | 10 | Loss in water pressure |
| 071 | 60-BWN-2020 | 10/26/2020 | 10/29/2020 | [2000-2099] Petit Bois St. South; 39211 | 20 | Loss in water pressure |
| 072 | 61-BWN-2020 | 10/27/2022 | 10/29/2020 | [400-799] Benning Road; 39206 | 60 | Loss in water pressure |
| 073 | 62-BWN-2020 | 10/27/2020 | 11/7/2020 | [1900-2099] Pleasant Ave.; 39203/39213 | Not available | Loss in water pressure |
| 074 | 63-BWN-2020 | 11/16/2020 | 11/18/2020 | [100-199] Sidway Street; 39202 | 15 | Loss in water pressure |
| 075 | 64-BWN-2020 | 11/17/2020 | 11/19/2020 | [100-399] McTyere Ave.; 39202<br>[1800-1899] Wightman St.; 39202 | 40 | Loss in water pressure |
| 076 | 65-BWN-2020 | 11/17/2020 | 11/19/2020 | [400-599] East Woodrow Wilson Dr.; 39216 | 20 | Loss in water pressure |
| 077 | 14-BWN-2020 | 11/18/2020 | 11/20/2020 | [100-1999]; N. Siwell Road; 39209<br>[1000-1199] Davis Cove; 39209 | 20 | Loss in water pressure |
| 078 | 66-BWN-2020 | 11/30/2020 | 12/3/2020 | [1200-1599] Pittsburg Street; 39203 | 30 | Loss in water pressure |
| 079 | 67-BWN-2020 | 11/30/2020 | 12/3/2020 | [2400-2499] East Northside Drive; 39211<br>[4600-4699] East Cheryl Drive; 39211 | 35 | Loss in water pressure |
| 080 | 68-BWN-2020 | 12/1/2020 | 12/3/2020 | [3900-4299] Crane Blvd; 39216 | 20 | Loss in water pressure |
| 081 | 69-BWN-2020 | 12/2/2020 | 12/4/2020 | [3900-3999] Roxbury Road; 39211 | 15 | Loss in water pressure |
| 082 | 70-BWN-2020 (71-BWN-2020 was combined and rescinded) | 12/3/2020 (revised 12/3/2020) | 12/4/2020 | [2200-2399] Terry Road; 39204<br>[100-399] Shadowlawn Drive; 39204<br><br>Revised to include:<br>[2100-2399] Oakhurst Dr; 39204<br>[100-299] Alta Woods Blvd; 39204 | 80 | Loss in water pressure |
| 083 | 72-BWN-2020 | 12/4/2020 | 12/8/2020 | [2700-2999] Duane St.; 39209<br>[900-1099] Terrace Ave.; 39209<br>[900-1099] Wynwood Dr.; 39209 | 60 | Loss in water pressure |
| 084 | 73-BWN-2020 | 12/4/2020 | 12/8/2020 | [3700-3799] Hawthorn Drive; 39216 | 5 | Loss in water pressure |
| 085 | 15-BWN-2020 | 12/5/2020 | 12/8/2020 | Western Hill Subdivision; 39212<br>Western Hills Drive<br>Old Spanish Trail<br>Sundown Trail<br>Hillandale Drive | 225 | Loss in water pressure |
| 086 | 74-BWN-2020 | 12/6/2020 | 12/8/2020 | [400-499] Dunbar Street; 39216 | 20 | Loss in water pressure |
| 087 | 75-BWN-2020 | 12/9/2020 | 12/11/2020 | [1600-2099] Robinson Road; 39209 | 60 | Loss in water pressure |
| 088 | 76-BWN-2020 | 12/9/2020 | 12/11/2020 | [1000-1199] John R. Lynch Street; 39203 | 20 | Loss in water pressure |
| 089 | 77-BWN-2020 | 12/10/2020 | 12/13/2020 | [2400-2499] Courtview St.; 39213 | 20 | Loss in water pressure |
| 090 | 78-BWN-2020 | 12/10/2020 | 12/13/2020 | [3000-3399] Oxford Ave.; 39216<br>[3000-3299] Downing St.; 39216<br>[3000-3099] Windsor Ave.; 39216<br>[300-499] Hartfield St.; 39216 | 50 | Loss in water pressure |
| 091 | 79-BWN-2020 | 12/11/2020 | 12/15/2020 | [5700-5799] Bayberry Dr.; 39209 | 5 | Loss in water pressure |
| 092 | 80-BWN-2020 | 12/14/2020 | 12/16/2020 | [700-4599] Kirkley Dr.; 39206<br>[4500-4599] Kirkley Circle; 39206 | 40 | Loss in water pressure |
| 093 | 81-BWN-2020 | 12/15/2020 | 12/17/2020 | [900-999] Morningside Street; 39202 | 15 | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 094 | 82-BWN-2020 | 12/16/2020 | 12/18/2020 | [1900-1999] Petit Bois Street North; 39211 [2000-2099] Petit Bois Street South; 39211 | 40 | Loss in water pressure |
| 095 | 83-BWN-2020 | 12/18/2020 | 12/22/2020 | [800-1099] Briarfield Dr.; 39211 [5400-5599] Melwood Dr.; 39211 [900-999] Park Lane; 39211 | 75 | Loss in water pressure |
| 096 | 84-BWN-2020 | 12/23/2020 | 12/30/2020 | [4000-4399] Council Circle; 39206 | 30 | Loss in water pressure |
| 097 | 86-BWN-2020 | 12/25/2020 | 12/29/2020 | [900-1199] Wiggins Street; 39203 | 25 | Loss in water pressure |
| 098 | 87-BWN-2020 | 12/26/2020 | 12/29/2020 | [2200-2299] Sloane Street; 39204 [1300-1399] Sharon Drive; 39204 | 30 | Loss in water pressure |
| 099 | 88-BWN-2020 | 12/26/2020 | 12/29/2020 | [1400-1599] Peachtree Street; 39202 | 5 | Loss in water pressure |
| 100 | 89-BWN-2020 | 12/27/2020 | 12/29/2020 | [5000-5199] Wayneland Drive; 39211 | 10 | Loss in water pressure |
| 101 | 16-BWN-2020 (was 85-BWN-2020) | 12/28/2020 | 12/29/2020 | [200-299] Sundown Trail; 39212 [100-399] Old Spanish Trail; 39212 | 90 | Loss in water pressure |
| 102 | 90-BWN-2020 | 12/28/2020 | 12/30/2020 | [100-299] Windsor Drive; 39209 | 25 | Loss in water pressure |
| 103 | 91-BWN-2020 | 12/29/2020 | 1/6/2021 | [200-299] Gaddis Street; 39216 [3000-3199] Downing St.; 39216 | 25 | Loss in water pressure |
| 104 | 92-BWN-2020 | 12/30/2020 | 1/5/2021 | [2200-2799] St. Charles Street; 39209 | 50 | Loss in water pressure |
| 105 | 93-BWN-2020 | 12/30/2020 | 1/6/2021 | [1300-1499] Kimwood Dr.; 39211 [1500-1599] Kimwood Circle; 39211 | 50 | Loss in water pressure |
| 2021 | | | | | | |
| 106 | 01-BWN-2021 | 1/6/2021 | 1/11/2021 | [4600-4699] I-55 North Frontage Road (East Side); 39211 [100-399] Maywood Circle; 39211 [4600-4699] Kelton Drive; 39211 | 50 | Loss in water pressure |
| 107 | 02-BWN-2021 | 1/6/2021 | 1/8/2021 | [1100-1199] North Jefferson Street; 39202 [900-1199] Manship Street; 39202 [1100-1299] Kenwood Place; 39202 | 50 | Loss in water pressure |
| 108 | 03-BWN-2021 | 1/7/2021 | 1/11/2021 | [300-399] Park Lane; 39212 | 12 | Loss in water pressure |
| 109 | 04-BWN-2021 | 1/8/2021 | 1/13/2021 | [3000-4099] Country Club Dr.; 39213 | 12 | Loss in water pressure |
| 110 | 05-BWN-2021 | 1/8/2021 | 1/13/2021 | [3300-3499] Edwards Ave.; 39213 | 25 | Loss in water pressure |
| 111 | 06-BWN-2021 | 1/9/2021 | 1/13/2021 | [1400-1499] Lelia Dr.; 39216 [2500-2699] Lakeward Dr.; 39216 [2700-3399] Lakeland Terrance; 39216 [1500-1699] Lakeside Dr.; Dr. 39216 | 15 | Loss in water pressure |
| 112 | 07-BWN-2020 [sic] | 1/9/2021 | 1/13/2021 | [1300-1499] Kimwood Dr.; 39211 [1500-1599] Kimwood Circle; 39211 | 50 | Loss in water pressure |
| 113 | 08-BWN-2021 | 1/9/2021 | 1/13/2021 | [1000-1199] North Jefferson St.; 39202 [900-1199] Manship Street; 39202 [1100-1299] Kenwood Place; 39202 | 45 | Loss in water pressure |
| 114 | 09-BWN-2021 | 1/10/2021 | 1/13/2021 | [400-599] Fryant Ave.; 39209 [2400-2699] Latimer Ave.; 39209 | 25 | Loss in water pressure |
| 115 | 10-BWN-2021 | 1/11/2021 | 1/13/2021 | [1300-1399] Greymont Ave.; 39202 | 10 | Loss in water pressure |
| 116 | 11-BWN-2021 | 1/12/2021 | 1/13/2021 | [100-199] East Capitol Street; 39201 | 10 | Loss in water pressure |
| 117 | 01-BWN-2021 | 1/15/2021 | 1/20/2021 | 5610 Shaw Road; 39209 Park Springs Apartment | 1 | Loss in water pressure |
| 118 | 12-BWN-2021 | 1/16/2021 | 1/20/2021 | [400-699] West McDowell Road; 39204 [2800-3099] Greenview Dr.; 39212 | 75 | Loss in water pressure |
| 119 | 13-BWN-2021 | 1/16/2021 | 1/20/2021 | [5400-5599] Robinson Road Ext.; 39204 [100-199] Colony Square; 39204 | 60 | Loss in water pressure |
| 120 | 14-BWN-2021 | 1/18/2021 | 1/20/2021 | [4100-4299] El Paso Street; 39206 | 40 | Loss in water pressure |
| 121 | 15-BWN-2021 | 1/18/2021 | 1/20/2021 | [4300-4499] Meadow Ridge Dr.; 39206 [4300-4399] Henderson Circle; 39206 | 30 | Loss in water pressure |
| 122 | 16-BWN-2021 | 1/19/2021 | 1/21/2021 | [1200-1299] Biloxi Street; 39203 | 15 | Loss in water pressure |
| 123 | 17-BWN-2021 | 1/19/2021 | 1/21/2021 | [1000-1299] West Pascagoula Street; 39203 [1000-1199] Cleary Street; 39203 | 20 | Loss in water pressure |
| 124 | 18-BWN-2021 | 1/27/2021 | 3/17/2021 | [3375-3376] Forest Hill Road; 39212 Extended on 1/27/2021 to: [3200-3499] Forest Hill Road; 39212 | 2, extended to 25 | Loss in water pressure |
| 125 | 19-BWN-2021 | 1/27/2021 | 2/1/2021 | [3800-3899] Yarbro Street; 39204 [3900-4099] Mary Edith Street; 39204 [3800-4099] Fernley Street; 39204 | 10 | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 126 | 02 -BWN-2021 | 1/29/2021 | 2/3/2021 | [3500-5899] Old Jackson Road; 39170 | 45 | Loss in water pressure |
| 127 | 20-BWN-2021 | 2/1/2021 | 2/4/2021 | [200-299] South Prentiss Street; 39203 | 30 | Loss in water pressure |
| 128 | 21-BWN-2021 | 2/1/2021 | 2/4/2021 | [4100-4399] Oaklawn Dr.; 39206 [200-399] Essex Ave.; 39206 [100-399] Iris Ave.; 39206 [4100-4199] Plaza St.; 39206 [4100-4199] Cedar St.; 39206 [400-499] Meadow Moss Road; 39206 | 120 | Loss in water pressure |
| 129 | 22 -BWN-2021 | 2/4/2021 | 2/9/2021 | [3800-3899] Yarbro Street; 39204 [3900-4099] Mary Edith Street; 39204 [3800-4099] Fernley Street; 39204 | 10 | Loss in water pressure |
| 130 | 23 -BWN-2021 | 2/4/2021 | 2/9/2021 | [200-299] Raymond Road; 39204 [1800-1999] Wilton Street; 39204 | 6 | Loss in water pressure |
| 131 | 24-BWN-2021 | 2/7/2021 | 2/9/2021 | [2300-2599] Paden St.; 39204 | 60 | Loss in water pressure |
| 132 | 25 -BWN-2021 | 2/8/2021 | 2/11/2021 | [2400-4699] Nottingham Road; 39211 [4600-4699] Friar Circle; 39211 | 25 | Loss in water pressure |
| 133 | 26 -BWN-2021 | 2/9/2021 | 2/11/2021 | [500-699] Witsell Road; 39206 [4100-4399] Meadowlane Dr.; 39206 | 90 | Loss in water pressure |
| 134 | 27 -BWN-2021 | 2/9/2021 | 2/11/2021 | [3400-3599] Cardinal Street; 39213 | 25 | Loss in water pressure |
| 135 | 28 -BWN-2021 | 2/10/2021 | 2/12/2021 | [100-199] Richardson Drive; 39209 [1-199] Shubuta Street; 39209 | 15 | Loss in water pressure |
| 136 | 29-BWN-2021 | 2/10/2021 | 2/12/2021 | [200-499] Broadmoor Drive; 39206 | 20 | Loss in water pressure |
| 137 | 30 -BWN-2021 | 2/11/2021 | Not officially lifted due to the issuance of the citywide BWN on 2/16/2021 | [700-799] Cooper Road; 39212 | 10 | Loss in water pressure |
| 138 | 31-BWN-2021 | 2/16/2021 (revised 2/24/2021) | 3/17/2021 | City of Jackson | All Surface Water Connections (43000) | 1) Extreme cold weather and low temperatures 2) Loss in water pressure Revision: 1) Turbidity levels exceeded standard |
| 139 | 03-BWN-2021 | 2/18/2021 | 3/10/2021 (revised to be lifted for All Well Water Connections served by the Jackson-Maddox Well System in the following Zip Codes: 39170, 39212, 39154, 39209- Jackson Customers Off Maddox and Wiggins Road; 39272- Byram Customers on the West Side of I-55 South) | All Well Water Connections on the City of Jackson Drinking Water System | All Well Water Connections | 1) Extreme cold weather and low temperatures 2) Water main breaks in the groundwater system 3) Loss in water pressure |
| 140 | 32-BWN-2021 | 4/2/2021 | 4/6/2021 | [4000-4399] El Paso Street; 39206 [200-399] Pine Ridge Road; 39206 | 85 | Loss in water pressure |
| 141 | 33-BWN-2021 | 4/11/2021 | 4/13/2021 | [100-199] Evans Drive; 39272 | 6 | Loss in water pressure |
| 142 | 34-BWN-2021 | 4/11/2021 | 4/13/2021 | [4800-4999] Caroline Drive; 39209 [1400-1499] St. Francis Street; 39209 [1400-1499] Regina Street; 39209 | 20 | Loss in water pressure |
| 143 | 35-BWN-2021 | 4/12/2021 | 4/16/2021 | [900-1099] Stuart Street; 39204 | 30 | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 144 | 36 -BWN-2021 | 4/20/2021 | 4/21/2021 | [1200-2299] Breckinridge Road; 39204<br>[2100-2299] Castle Hill Dr.; 39204<br>[1200-1299] Dorgan Street; 39204<br>[2200-3299] Sloane Street; 39204 | 50 | Loss in water pressure |
| 145 | 37 -BWN-2021 | 4/26/2021 | 4/28/2021 | [1700-1899] Hillview Dr.; 39211<br>[1600-1899] Brecon Dr.; 39211<br>[1600-1799] Winchester St.; 39211<br>[1800-1899] Highland Terrace; 39211<br>[4800-4899] Ridgewood Rd.; 39211 | 120 | Loss in water pressure |
| 146 | 04-BWN-2021 | 4/27/2021 | 4/29/2021 | [100-299] Barrington Dr.; 39272<br>[300-399] Barrington Cove; 39272 | 20 | Loss in water pressure |
| 147 | 38-BWN-2021 | 4/27/2021 | 4/29/2021 | [900-1099] Martin Luther King Dr.; 39203 | 6 | Loss in water pressure |
| 148 | 40-BWN-2021 | 4/30/2021 | 5/3/2021 | All City of Jackson Surface Water Customers | 43000 (All Surface Water Connections) | 1) Plant shutdown caused by an electrical fire<br>2) Loss in water pressure |
| 149 | 0S-BWN-2020 (Should be 0S-BWN-2021) | 5/1/2021 | 5/5/2021 | [1-99] Bellewood Grove; 39272 | 10 | Loss in water pressure |
| 150 | 41-BWN-2021 | 5/12/2021 | 5/14/2021 | [100-299] Livingston Street.; 39202 | 15 | Loss in water pressure |
| 151 | 42-BWN-2021 | 5/14/2021 | 5/18/2021 | [4000-4099] Boxwood Circle; 39211 | 20 | Loss in water pressure |
| 152 | 06-BWN-2021 | 5/17/2021 | 5/27/2021 (lifted for: [2200-2299] TV Road; 39209, [100-2699] Maddox Road; 39209, [2200-4599] Raymond Road; 39212, [5700-6399] MS-18; 39212, [3700-7399] S. Siwell Road; 39212, [5800-6699] Terry Road; 39272, [9700-12799] Spingridge Road; 39170, [1000-3299] Gary Road; 39272) | [2200-2299] TV Road; 39209, [100-2699] Maddox Road; 39209, [2200-4599] Raymond Road; 39212, [5700-6399] MS-18; 39212, Jackson Ave., Harvey Dr., Channel 16 Way, Rebel Cir., Forest Hill Dr., Carriage Hills Dr., Surrey Dr., Riderwood Dr., Farmington St., Carriage Ct., Yorkshire, Del Rey Dr., Plummer Cir., Timberlawn Rd., Portwood Dr., Eden Downs Rd., Canada Way, New Market Dr., Cedar Hills Subdivision, Willowood Subdivision<br><br>Extended on 5/18/2021 to:<br>[2200-2299] TV Road; 39209, [100-2699] Maddox Road; 39209, [2200-4599] Raymond Road; 39212, [5700-6399] MS-18; 39212, [3700-7399] S. Siwell Road; 39212, [5800-6699] Terry Road; 39272, [9700-12799] Spingridge Road; 39170, [1000-3299] Gary Road; 39272 | 1000, extended to 2000 | Loss in water pressure |
| 153 | 43-BWN-2021 | 5/17/2021 | 5/18/2021 | [100-199] East Rankin Street; 39201<br>[100-399] West Rankin Street; 39201<br>[100-399] Beatty Street; 39201<br>[800-1399] South West Street; 39201 | 30 | Loss in water pressure |
| 154 | 44-BWN-2021 | 5/24/2021 | 5/25/2021 | [1000-1099] Greymont Ave.; 39202 | 10 | Loss in water pressure |
| 155 | 45-BWN-2021 | 5/24/2021 | 5/27/2021 | [4800-4999] Interstate 55 North Frontage Road; 39211<br>[4700-4899] Old Canton Road; 39211<br>[100-199] LeFleurs Square; 39211<br>[1400-1499] Old Square Road; 39211<br>[1400-1599] Jacksonian Plaza; 39211 | 30 | Loss in water pressure |
| 156 | 46-BWN-2021 | 5/25/2021 | 5/27/2021 | [3500-3599] Rita Dr.; 39213<br>[100-199] Rita Cove; 39213<br>[3500-3599] Dye Cove; 39213<br>[3400-3499] Dye Street; 39213<br>[3500-3599] Jackeye Lane; 39213 | 60 | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 157 | 07-BWN-2021 | 6/7/2021 | 6/24/2021 | [2200-2299] TV Road; 39209<br>[100-2699] Maddox Road; 39209<br>[2200-4599] Raymond Road; 39212<br>[5700-6399] MS-18; 39212<br>[3700-7399] S. Siwell Road; 39212<br>[5800-6699] Terry Road; 39272<br>[9700-12799] Spingridge Road; 39170<br>[1000-3299] Gary Road; 39272 | 2000 | Loss in water pressure |
| 158 | 47-BWN-2021 | 6/9/2021 | 6/14/2021 | [3700-3999] North Flag Chapel Road; 39213 | 5 | Loss in water pressure |
| 159 | 48-BWN-2021 | 6/12/2021 | 6/17/2021 | [5300-5399] Fairway St.; 39211 | 35 | Loss in water pressure |
| 160 | 49-BWN-2021 | 6/13/2021 | 6/15/2021 | [500-599] Woodland Hills Place; 39216 | 15 | Loss in water pressure |
| 161 | 50-BWN-2021 | 6/14/2021 | 6/17/2021 | [4700-4799] East Massena Dr.; 39216 | 10 | Loss in water pressure |
| 162 | 51-BWN-2021 | 6/30/2021 | 7/2/2021 | [1700-1899] Myrtle Street; 39202 | 30 | Loss in water pressure |
| 163 | 52-BWN-2021 | 6/30/2021 | 7/2/2021 | River Place 2; 39211 | 20 | Loss in water pressure |
| 164 | 53-BWN-2021 | 7/1/2021 | 7/6/2021 | [300-400] Greymont Street; 39202 | 10 | Loss in water pressure |
| 165 | 54-BWN-2021 | 7/3/2021 | 7/7/2021 | [3400-3499] Edwards Avenue; 39213 | 15 | Loss in water pressure |
| 166 | 55-BWN-2021 | 7/3/2021 | 7/7/2021 | [400-699] North State Street; 39201-9202 | 20 | Loss in water pressure |
| 167 | 56-BWN-2021 | 7/5/2021 | 7/7/2021 | [4800-4999] Interstate 55 North Frontage Road; 39211<br>[4700-4899] Old Canton Road; 39211<br>[100-199] LeFleurs Square; 39211<br>[1400-1599] Jacksonian Plaza; 39211<br>[1400-1499] Old Square Road; 39211 | 35 | Loss in water pressure |
| 168 | 57-BWN-2021 | 7/6/2021 (extended 7/8/2021) | 7/12/2021 | [100-179] Woodway Dr.; 39206<br>[800-899] Serville Dr.; 39206<br>[100-149] Grove Circle; 39206<br>[100-169] Grove Loop; 39206<br>[5200-5299] Ponce De Leon Place; 39206<br>[5200-5299] Diberville Place; 39206<br>[5200-5299] Bienville Place; 39206<br><br>Extended to:<br>Pebble Creek Apts. 5255 Manhattan Rd.; 39206 | 80 | Loss in water pressure |
| 169 | 58-BWN-2021 | 7/7/2021 | 7/12/2021 | [100-299] Melrose Dr.; 39211<br>[100-299] Southbrook Dr.; 39211 | 70 | Loss in water pressure |
| 170 | 59-BWN-2021 | 7/16/2021 | 7/20/2021 | [2200-2399] Morton Ave.; 39213 | 40 | Loss in water pressure |
| 171 | 60-BWN-2021 | 7/21/2021 | 7/23/2021 | [1100-1199] Craft Street; 39209<br>[3000-3199] Burch Street; 39209 | 30 | Loss in water pressure |
| 172 | 61-BWN-2021 | 7/23/2021 | 7/29/2021 | [800-1099] Briarfield Road; 39213 | 50 | Loss in water pressure |
| 173 | 62-BWN-2021 | 7/23/2021 | 7/30/2021 | [1900-1999] Petit Bois North; 39211 | Not available | Loss in water pressure |
| 174 | 63-BWN-2021 | 7/26/2021 | 7/29/2021 | [100-399] Nimitz Street; 39209 | Not available | Loss in water pressure |
| 175 | 64-BWN-2021 | 7/29/2021 (extended 7/29/2021) | 8/2/2021 | [5400-5599] Robinson Road; 39204<br><br>Extended to:<br>[100-199] Colony Square; 39204 | 10 (extended to 40) | Loss in water pressure |
| 176 | 65-BWN-2021 | 7/29/2021 | 8/2/2021 | [1400-1499] Argyle Street; 39211 | 3 | Loss in water pressure |
| 177 | 66-BWN-2021 | 8/9/2021 | 8/12/2021 | [6600-6699] George Washington Dr.; 36213<br>[6580-6699] Abraham Lincoln Dr.; 39213 | 50 | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 178 | 67-BWN-2021 | 8/20/2021 | 8/24/2021 (8/26/2021 for Franklin D. Roosevelt Dr., Overlook Cir., Trace Dr., Roosevelt Pl., Roosevelt Cir., Warren Harding Dr., [6600-6699] Presidential Dr.) | Presidential Hills Subdivision;  Jackson, 39213 | 2000 | Loss in water pressure |
| 179 | 68-BWN-2021 | 8/24/2021 | 8/26/2021 (8/31/2021 for [5300-5899] Clinton Blvd., [100-399] Westhaven Blvd., Windsor Park Apts., South Flag Chapel Rd., East Lane, North Lane, Loden Pl., Sunrise Pl., Wynndyke Rd., Wynndyke Cir., Ladd St., Sheronn St., Chalet Ave., Speights St., Riffle Ave.) | [5300-5899] Clinton Blvd.,  [100-599] Magnolia Rd.,  [100-599] North Flag Chapel Rd.,  [100-399] Westhaven Blvd.,  Westwick Apts,  Windsor Park Apts.,  Keystone Estates,  John Hopkins Rd.,  Badger Dr.,  South Flag Chapel Rd.,  East Lane, North Lane,  Knob Hill Dr.,  Glen Rose Dr.,  Bayberry Dr.,  Wild Flower Dr.,  Melba Hill Dr.,  Wood Rose Terrace,  Magnolia Dr.,  Magnolia Cir.,  Highwood Dr.,  York Dr.,  Delano Dr.,  Glenco Ave.,  West Hill Dr.,  Lowder Dr.,  Rich Dr.,  Queen Elanor Ln.,  Queen Christina Ln.,  Queen Ct.,  Queen Julianna Ln.,  Queen Theresa Ln.,  Queen Marie Ln.,  Queen Esther Ln.,  Queen Park Cir.,  Mattox St.,  Queen Alma Ln.,  Queen Andria Ln.,  Ginger Dr.,  Bonita Dr.,  Queen Mary Ln.,  Queen Anne Ln.,  Queen Elizabeth Ln.,  Queen Victoria Ln.,  Queen Isabella Ln.,  Queen Maud Ln.,  Queen Alexandria Ln.,  Queen Margaret Ln.,  Queen Cir.,  Queen Joanna Ln.,  Queen Josephine Ln.,  W. Lane Dr.,  Hayes Dr.,  Loden Pl.,  Sunrise Pl.,  N. Windsor Dr.,  S. Windsor Dr.,  Wynndyke Rd.,  Wynndyke Cir.,  Ladd St.,  Sheronn St.,  Chalet Ave.,  Speights St.,  Riffle Ave. | 2000 | Loss in water pressure |
| 180 | 69-BWN-2021 | 8/31/2021 | 9/2/2021 | John Hopkins Elementary School;  39209 | 1 | Loss in water pressure |
| 181 | 70-BWN-2021 | 9/1/2021 | 9/3/2021 | [2500-2599] Mulberry St.;  39204 | 15 | Loss in water pressure |
| 182 | 71-BWN-2021 | 9/4/2021 | 9/9/2021 | [300-499] Bounds Street [800-899] Serville Dr. [5200-5299] Clair St. [5200-5299] Ponce De Leon Pl. [5200-5299] Bienville Pl. [5200-5299] Diberville Pl. [5200-5299] Cedar Park Dr. [400-499] Marquis St. [5100-5299] Galaxie Dr. [5100-5299] Keele St. [400-499] Comet Dr. | 120 | Loss in water pressure |
| 183 | 72-BWN-2021 | 9/7/2021 | 9/9/2021 | [1600-1799] Winchester St.;  39211 [1600-1799] Wilhurst St.;  39211 | 80 | Loss in water pressure |
| 184 | 08-BWN-2021 | 9/8/2021 | 9/10/2021 | Town of Byram (Well Water Customers Only) [1100-2199] S. McRaven Road [8100-8299] MS-18 [4700-5999] Raymond Road [3700-4099] S. Siwell Road [500-4599] N. Siwell Road [1500-9499] Springridge Road | Not available | Loss in water pressure |
| 185 | 73-BWN-2021 | 9/10/2021 | 9/14/2021 | [1500-6299] Northlake Circle;  39211 [1500-1599] Sherman Ave.;  39211 | 45 | Loss in water pressure |
| 186 | 74-BWN-2021 | 9/19/2021 | 9/22/2021 | [600-799] Naples Road;  39206 [700-799] Gardner St. [4400-4599] Brook Dr. [4400-4599] Broadmeadow St. | Not available | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 187 | 75-BWN-2021 | 9/20/2021 | 9/22/2021 | [6500-6999] Franklin D. Roosevelt Dr.;  39206<br>[3500-3999] North Flag Chapel Rd.<br>[6600-6699] Presidential Dr.<br>Presidential Pl.<br>Flag Chapel Circle<br>Warren Harding Dr.<br>Roosevelt Circle<br>Roosevelt Pl.<br>Overlook Circle<br>Trace Dr.<br>Harrison Pl.<br>John Tyler Pl.<br>Zachary Taylor Circle | 350 | Loss in water pressure |
| 188 | 76-BWN-2021 | 9/20/2021 | 9/22/2021 | [2500-2599] Mulberry St.; 39204 | 15 | Loss in water pressure |
| 189 | 09-BWN-2021 | 9/24/2021 | 9/28/2021 | [4220-4299] Gunar Dr.;  Byram, 39272 (All Homes on Gunar after Blake Circle)<br>Blake Circle<br>Cliff Cove | 60 | Loss in water pressure |
| 190 | 77-BWN-2021 | 9/24/2021 | 9/28/2021 | [2200-2399] Forest Park Dr.;  39212<br>Park Circle<br>Forest Valley Dr.<br>Park Lane | 80 | Loss in water pressure |
| 191 | 78-BWN-2021 | 9/29/2021 | 10/4/2021 | [200-999] South Valley Falls Road;  39212<br>One Park Place | 20 | Loss in water pressure |
| 192 | 10-BWN-2021 | 9/30/2021 | 10/4/2021 | [2500-2599] Raymond Road;  39212<br>[3000-3045] Forest Hill Road<br>Forest Hill High School<br>2607 Raymond Road | 5 | Loss in water pressure |
| 193 | 79-BWN-2021 | 10/2/2021 | 10/5/2021 | [2500-3199] Robinson Road;  39209<br>[800-899] Primos Ave.<br>Pecan Park Cir.<br>Duane St.<br>Metairie Road<br>Gentilly Dr.<br>Wynwood Dr.<br>Gretna Green<br>Terrace Ave.<br>Glenwood St.<br>Shrewbury Ct.<br>Copperfield St. | 170 | Loss in water pressure |
| 194 | 80-BWN-2021 | 10/3/2021 | 10/5/2021 | [499-3300] Downing St.;  39216<br>[3300-3399] Oxford Ave.<br>Decelle St.<br>Dunbar St.<br>Stirling St.<br>Donald St.<br>Northview Dr. | Not available | Loss in water pressure |
| 195 | 81-BWN-2021 | 10/4/2021 | 10/6/2021 | [4600-4699] Kirkley Drive; 39206 | 30 | Loss in water pressure |
| 196 | 82-BWN-2021 | 10/6/2021 | 10/8/2021 | [2300-2599] Coronet Place; 39204 | 60 | Loss in water pressure |
| 197 | 83-BWN-2021 | 10/7/2021 | 10/12/2021 | [6500-6999] Franklin D. Roosevelt Dr.;  39206<br>[3500-3999] North Flag Chapel Rd.<br>[6600-6699] Presidential Dr.<br>Presidential Pl.<br>Flag Chapel Circle<br>Warren Harding Dr.<br>Roosevelt Circle<br>Roosevelt Pl.<br>Overlook Circle<br>Trace Dr.<br>Harrison Pl.<br>John Tyler Pl.<br>Zachary Taylor Circle<br>William McKinley Circle | 400 | Loss in water pressure |
| 198 | 84-BWN-2021 | 10/7/2021 | 10/11/2021 | Not available | Not available | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 199 | 11-BWN-2021 | 10/8/2021 | 10/12/2021 | [7100-7399] Siwell Road;  Byram<br>Willow Creek Lane<br>Byram Place<br>Hollowpine Road | 40 | Loss in water pressure |
| 200 | 85-BWN-2021 | 10/10/2021 | 10/12/2021 | [3500-3699] Downing St.;  39216<br>Stirling St. | 30 | Loss in water pressure |
| 201 | 86-BWN-2021 | 10/12/2021 | 10/14/2021 | Britt Avenue;  39209 | 6 | Loss in water pressure |
| 202 | 87-BWN-2021 | 10/21/2021 | 10/25/2021 | Texas Avenue;  39209 | 15 | Loss in water pressure |
| 203 | 88-BWN-2021 | 10/25/2021 | 10/28/2021 | Hillside Dr.;  39206 | 10 | Loss in water pressure |
| 204 | 89-BWN-2021 | 10/26/2021 | 10/28/2021 | [2840-2899] Arbor Hills;  39212 | Not available | Loss in water pressure |
| 205 | 90-BWN-2021 | 10/26/2021 | 10/29/2021 | [3500-3599] Britton Ave.;  39213 | Not available | Loss in water pressure |
| 206 | 12-BWN-2021 | 10/31/2021 | 11/2/2021 | [499-1900] North Siwell Road; 39209<br>[2200-3399] South McRaven Road[5700-6099]<br>McRaven Road<br>Davis Cove<br>North Pine Lea Drive<br>South Pine Lea Drive<br>Michelle Rae Drive | 100 | Loss in water pressure |
| 207 | 91-BWN-2021 | 10/31/2021 | 11/2/2021 | [3900-4299] Oakridge Dr.; 39216<br>[4100-4199] Robin Dr.;  39206<br>[4100-4199] Hawthrone Dr.<br>[700-799] Chickasaw Ave.<br>Brookwood Rd.<br>Hawthorne Ct. | 90 | Loss in water pressure |
| 208 | 92-BWN-2021 | 11/2/2021 | 11/3/2021 | [100-199] North Farish St.; 39201<br>[200-299] South Farish St.; 39201<br>[100-199] East Amite St.; 39201<br>[100-299] West Amite St.; 39201<br>[100-199] East Pearl St.; 39201<br>[100-299] West Pearl St.; 39201<br>[100-199] East Capitol St; 29201<br>[200-299] West Capitol St.; 39201<br>[100-199] North Roach St.; 39201<br>[100-299] South Roach St.; 39201 | 50 | Loss in water pressure |
| 209 | 93-BWN-2021 | 11/7/2021 | 11/9/2021 | [100-199] North Farish St.; 39201<br>[200-299] South Farish St.; 39201<br>[100-199] East Amite St.; 39201<br>[100-299] West Amite St.; 39201<br>[100-199] East Pearl St.; 39201<br>[100-299] West Pearl St.; 39201<br>[100-199] East Capitol St; 39201<br>[200-299] West Capitol St.; 39201<br>[100-199] North Roach St.; 39201<br>[100-299] South Roach St.; 39201 | 50 | Loss in water pressure |
| 210 | 94-BWN-2021 | 11/8/2021 | 11/10/2021 | [530-699] Houston Ave; 39209 | 10 | Loss in water pressure |
| 211 | 95-BWN-2021 | 11/9/2021 | 11/12/2021 | [4500-4699] Village Drive; 39206 | 70 | Loss in water pressure |
| 212 | 96-BWN-2021 | 11/9/2021 | 11/12/2021 | [4800-4899] Kilkullen Place; 39209 | 13 | Loss in water pressure |
| 213 | 97-BWN-2021 | 11/12/2021 | 11/19/2021 | Bristol Blvd.;  39204<br>Avian Lane | 30 | Loss in water pressure |
| 214 | 98-BWN-2021 | 11/14/2021 | 11/19/2021 | [2400-3299] US Highway 80;<br>39204/39209 | 15 | Loss in water pressure |
| 215 | 99-BWN-2021 | 11/15/2021 | 11/19/2021 | All City of Jackson Surface Water Customers | All Surface Water Connections except the Jackson Maddox Well System connections | 1) ACH (Aluminum Chlorohydrate) issues<br>2) Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 216 | 100-BWN-2021 | 11/19/2021 | Not available | [3200-3499] Forest H[i]ll Road;  39212<br>Forest Park Drive<br>Park Circle<br>Forest Valley Dr.<br>Park Lane<br>Park Dr.<br><br>Corrected on 11/19/2021 to: [3200-3499] Forest Hill Road; 39212 | 100, corrected to 15 | Loss in water pressure |
| 217 | 13-BWN-2021 | 11/22/2021 | 11/29/2021 | [5600-5899] Turner St.;  39209<br>[1500-1799] Reddix St.<br>[1500-1799] Dewey St.<br>[1500-1724] Truman St. | 90 | Loss in water pressure |
| 218 | 101-BWN-2021 | 11/23/2021 | 11/30/2021 | [1600-1699] Piedmont St.;  39202 | 10 | Loss in water pressure |
| 219 | 14-BWN-2021 | 11/24/2021 | 11/30/2021 | [940-1199] Bullrun Dr.;  39272<br>Mourning Dove Cove<br>Olive Branch Cove<br>White Dove Cove | 120 | Loss in water pressure |
| 220 | 102-BWN-2021 | 11/29/2021 | 12/1/2021 | Flag Chapel Circle; 39213 | Not available | Loss in water pressure |
| 221 | 15-BWN-2021 | 12/1/2021 | 12/3/20221 | Mountain Cove;  Byram 39272 | Not available | Loss in water pressure |
| 222 | 103-BWN-2021 | 12/2/2021 | 12/6/2021 | Flag Chapel Circle; 39213 | 25 | Loss in water pressure |
| 223 | 16-BWN-2021 | 12/2/2021 | 12/7/2021 | [1500-3499] Springridge Road, Raymond; 39154<br>Luckett Lane<br>Devinity Dr.<br>Vance Dr.<br>Lyles Lane<br>Spears Trace<br>Windsor Lane | Not available | Loss in water pressure |
| 224 | 104-BWN-2021 | 12/13/2021 | 12/15/2021 | [400-599] Magnolia St.;  39203<br>[1300-1499] 4th Ave. | 30 | Loss in water pressure |
| 225 | 105-BWN-2021 | 12/15/2021 | 12/16/2021 | [2400-3299] US Highway 80;  39204/39209 | 15 | Loss in water pressure |
| 226 | 17-BWN-2021 | 12/17/2021 | 12/21/2021 | [200-299] Forbes Drive; Byram, 39272 | 10 | Loss in water pressure |
| 227 | 18-BWN-2021 | 12/20/2021 | 12/28/2021 | [5500-5799] US 80;  39209 (North Side Only)<br>[5600-5699] Shaw Road<br>Kennedy Road<br>Samantha Dr.<br>Paco Way<br>Zepher Road | 75 | Loss in water pressure |
| 228 | 106-BWN-2021 | 12/21/2021 | 12/28/2021 | [200-299] Colonial Circle;  39211 | Not available | Loss in water pressure |
| 229 | 107-BWN-2021 | 12/22/2021 | 12/28/2021 | [3700-4099] West Capitol St.; 39209 | 30 | Loss in water pressure |
| 230 | 108-BWN-2021 | 12/23/2021 (extended 12/27/2021) | 12/28/2021 | [400-499] Sheppard Road;  39206<br><br>Extended to:<br>[200-499] Sheppard Road;  39206 | 5, extended to 30 | Loss in water pressure |
| 231 | 109-BWN-2021 | 12/29/2021 | 1/4/2022 | [100-199] Park Circle;  39212<br>Park Dr. | 30 | Loss in water pressure |
| 2022 (Through October 21) | | | | | | |
| 232 | 01-BWN-2022 | 1/5/2022 | 1/7/2022 | [100-299] Melrose Drive;  39211<br>[100-299] Southbrook Dr. | 80 | Loss in water pressure |
| 233 | 02-BWN-2022 | 1/7/2022 | 1/11/2022 | [2800-2999] Fairhill Dr.;  39212 | 50 | Loss in water pressure |
| 234 | 03-BWN-2022 | 1/8/2022 | 1/11/2022 | [1900-2099] Robinson St.;  39209 | 30 | Loss in water pressure |
| 235 | 04-BWN-2022 | 1/8/2022 | 1/11/2022 | [1100-1299] Quinn St.;  39202 | 30 | Loss in water pressure |
| 236 | 05-BWN-2022 | 1/8/2022 | 1/11/2022 | Woodland Hills Place; 39216 | Not available | Loss in water pressure |
| 237 | 06-BWN-2022 | 1/9/2022 | 1/13/2022 | [1800-1899] Lyncrest Ave.;  39202 | 10 | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 238 | 07-BWN-2022 | 1/10/2022 | 1/13/2022 | [1300-1399] Peachtree St.; 39202 | 5 | Loss in water pressure |
| 239 | 08-BWN-2022 | 1/11/2022 | 1/13/2022 | Ridgeover Place; 39211 | 7 | Loss in water pressure |
| 240 | 09-BWN-2022 | 1/11/2022 | 1/13/2022 | [2940-3040] Terry Road; 39212 Maple Ridge Dr. Rebel Woods Dr. | 50 | Loss in water pressure |
| 241 | 10-BWN-2022 | 1/12/2022 | 1/14/2022 | [2400-2599] Gunda St.; 39204 [800-899] Reaves St. | 20 | Loss in water pressure |
| 242 | 11-BWN-2022 | 1/13/2022 | 1/18/2022 | Lorraine Street; 39202 | 25 | Loss in water pressure |
| 243 | 12-BWN-2022 | 1/13/2022 | 1/18/2022 | [4600-4699] Kirkley Dr.; 39206 | 30 | Loss in water pressure |
| 244 | 13-BWN-2022 | 1/13/2022 | 1/18/2022 | Cedar Park Drive; 39206 | Not available | Loss in water pressure |
| 245 | 14-BWN-2022 | 1/20/2022 | 1/24/2022 | [600-799] Claiborne Ave.; 39209 | 20 | Loss in water pressure |
| 246 | 15-BWN-2022 | 1/22/2022 | 1/25/2022 | [900-1199] Valley St.; 39203 | 20 | Loss in water pressure |
| 247 | 16-BWN-2022 | 1/22/2022 | 1/25/2022 | [300-499] St. Andrews Dr.; 39211 [240-299] Brae Burn Dr. | 25 | Loss in water pressure |
| 248 | 17-BWN-2022 | 1/24/2022 | 1/26/2022 | Moss Ave.; 39209 | 20 | Loss in water pressure |
| 249 | 18-BWN-2022 | 1/24/2022 | 1/28/2022 | 940 E. McDowell Road; 39204 | 1 | Loss in water pressure |
| 250 | 19-BWN-2022 | 1/24/2022 | 1/28/2022 | [1800-1999] Hwy 80 West; 39204 [1800-1899] Hattiesburg St. Coach Fred Harris St. Isable St. | 12 | Loss in water pressure |
| 251 | 20-BWN-2022 | 1/24/2022 | 1/28/2022 | [1000-2099] Scanlon Dr.; 39204 [1200-1299] Anna Lisa Lane [1900-1999] Castle Hill Dr. | 50 | Loss in water pressure |
| 252 | 21-BWN-2022 | 1/24/2022 | 2/3/2022 | [600-699] W. McDowell Road; 39204 [2600-2999] Belvedere Dr.; 39212 Freemont St. | 25 | Loss in water pressure |
| 253 | 22-BWN-2022 | 1/25/2022 | 1/27/2022 | [4800-4899] McWillie Cir.; 39206 | 5 | Loss in water pressure |
| 254 | 23-BWN-2022 | 1/25/2022 | 1/27/2022 | [3900-4599] I-55 South Frontage Rd.; 39212 (East Side of Interstate Only) | 5 | Loss in water pressure |
| 255 | 24-BWN-2022 | 1/28/2022 | 2/1/2022 | Olive Street; 39202 | 7 | Loss in water pressure |
| 256 | 25-BWN-2022 | 1/31/2022 | 2/2/2022 | [4100-4399] Oaklawn Dr.; 39206 [300-399] Pine Ridge Road; Woodsia Lane | 70 | Loss in water pressure |
| 257 | 26-BWN-2022 | 2/4/2022 | 2/8/2022 | Holbrook Dr.; 39206 Holbrook Circle | 25 | Loss in water pressure |
| 258 | 27-BWN-2022 | 2/8/2022 | 2/10/2022 | [100-235] Parkside Place; 39209 | 7 | Loss in water pressure |
| 259 | 28-BWN-2022 | 2/10/2022 | 2/14/2022 | [3200-3299] Washington St.; 39209 [1000-1099] Craft St. | 40 | Loss in water pressure |
| 260 | 29-BWN-2022 | 2/11/2022 | 2/14/2022 | [2400-2599] Belvedere Dr.; 39204 | 40 | Loss in water pressure |
| 261 | 30-BWN-2022 | 2/11/2022 | 2/15/2022 | [2929-2999] I-55 South Frontage Road; 39212 (West Side of Interstate Only) | 2 | Loss in water pressure |
| 262 | 31-BWN-2022 | 2/12/2022 | 2/15/2022 | Broadview St.; 39209 | 50 | Loss in water pressure |
| 263 | 32-BWN-2022 | 2/15/2022 | 2/17/2022 | [100-199] Woodsia Lane; 39206 [300-399] Pine Ridge Rd. 4314 Woodland Ave. | 45 | Loss in water pressure |
| 264 | 33-BWN-2022 | 2/16/2022 | 2/18/2022 | [2929-2999] I-55 South Frontage Road; 39212 (West Side of Interstate Only) | 2 | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 265 | 34-BWN-2022 | 2/16/2022 | 2/18/2022 | [3549-4099] West Capitol Street; 39209 | 35 | Loss in water pressure |
| 266 | 35-BWN-2022 | 2/18/2022 | 2/23/2022 | [5100-5299] Hanging Moss Road; 39206<br>[300-399] Meadow Road | 15 | Loss in water pressure |
| 267 | 36-BWN-2022 | 2/20/2022 | 2/23/2022 | Flag Chapel Circle; 39213 | 20 | Loss in water pressure |
| 268 | 37-BWN-2022 | 2/20/2022 | 2/23/2022 | [5300-5699] Terry Road;  Byram, 39272<br>Magnolia Bluff Dr.<br>Womack Dr.<br>Burgess Cove<br>Shorter Dr.<br>Gunn Circle<br>Vining Court | 80 | Loss in water pressure |
| 269 | 38-BWN-2022 | 2/24/2022 | 2/28/2022 | [1900-2299] Hill Ave;  39204<br>Isabel Street<br>Coach Fred Harris St. | 15 | Loss in water pressure |
| 270 | 39-BWN-2022 | 2/28/2022 | 3/2/2022 | [115-199] Highland Circle;  39211<br>Pinevale St. | 20 | Loss in water pressure |
| 271 | 40-BWN-2022 | 3/1/2022 | 3/3/2022 | [3300-3399] Harley Street; 39209 | 2 | Loss in water pressure |
| 272 | 41-BWN-2022 | 3/3/2022 | 3/7/2022 | [200-1499] Mayes St.; 39213<br>[300-499] Eminence Row<br>[3100-3299] Marion Dunbar St.<br>James Hill St.<br>Johnson St.<br>Tougaloo St.<br>Lawson St.<br>Oakpointe Apts.<br>4049 N. West St. | 200 | Loss in water pressure |
| 273 | 42-BWN-2022 | 3/9/2022 | 3/11/2022 | [100-699] Cedarhurst Dr.;  39206 | 50 | Loss in water pressure |
| 274 | 43-BWN-2022 | 3/14/2022 | 3/17/2022 | [400-499] Downing St.; 39216 | 25 | Loss in water pressure |
| 275 | 44-BWN-2022 | 3/21/2022 | 3/23/2022 | 3100 Woodbine Street; 39212<br>Blossom Apartments | 1 | Loss in water pressure |
| 276 | 45-BWN-2022 | 3/25/2022 | 3/29/2022 | Caroline Dr.;  39209<br>St. Francis St. | 15 | Loss in water pressure |
| 277 | 46-BWN-2022 | 3/29/2022 | 3/31/2022 | [600-799] Chickasaw Ave.; 39206<br>[4100-4199] Robin Dr.<br>[4100-4399] Council Circle<br>Eagle Ave.<br>Seminole Ave.<br>Choctaw Road<br>4424 Kings Hwy. | 85 | Loss in water pressure |
| 278 | 47-BWN-2022 | 4/2/2022 | 4/7/2022 | [5400-5599] Wayneland Dr.; 39211 | 30 | Loss in water pressure |
| 279 | 48-BWN-2022 | 4/4/2022 | 4/7/2022 | [2300-2414] River Oaks Blvd.;  39211<br>River Oaks Place<br>Northtown Road | 60 | Loss in water pressure |
| 280 | 49-BWN-2022 | 4/5/2022 | 4/7/2022 | [4600-4699] Normandy Dr.; 39206 | 20 | Loss in water pressure |
| 281 | 50-BWN-2022 | 4/13/2022 | 4/15/2022 | [1200-1699] Pinehurst St.; 39202 | 20 | Loss in water pressure |
| 282 | 51-BWN-2022 | 4/27/2022 | 4/29/2022 | Presidential Hills, 39213<br>Natchez Trace Estates | 2000 | Loss in water pressure |
| 283 | 52-BWN-2022 | 4/28/2022 | 5/2/2022 | Shubuta Street; 39209 | 3 | Loss in water pressure |
| 284 | 53-BWN-2022 | 5/16/2022 | 5/18/2022 | Council Cir.; 39206<br>Redwing Ave.<br>Eagle Ave. | 95 | Loss in water pressure |
| 285 | 54-BWN-2022 | 5/20/2022 | 5/25/2022 | Fondren Green Cir.; 39216 | 7 | Loss in water pressure |
| 286 | 01-BWN-2022 | 6/2/2022 | 6/7/2022 | [176-202] Brooklynn St.; Byram, MS 39272 | 15 | Loss in water pressure |
| 287 | 56-BWN-2022 | 6/3/2022 | 6/8/2022 | [1100-1299] Greymont; 39202 | 20 | Loss in water pressure |
| 288 | 57-BWN-2022 | 6/4/2022 | 6/8/2022 | [1000-1199] Blair St.; 39202 | 10 | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 289 | 58-BWN-2022 | 6/4/2022 | 6/9/2022 | Eastline Drive;  39211 | 10 | Loss in water pressure |
| 290 | 59-BWN-2022 | 6/20/2022 | 6/22/2022 | [720-853] S. Prentiss Street;  39209 [1204-1601] Robinson Street;  39203-09 | 30 | Loss in water pressure |
| 291 | 02-BWN-2022 | 6/21/2022 | This notice was not lifted due to the issuance of the citywide boil water notice. | [ 6000-6199] Montgomery Drive; 39209 | 5 | Loss in water pressure |
| 292 | 60-BWN-2022 | 6/22/2022 | This notice was not lifted due to the issuance of the citywide boil water notice. | [1700-1899] Howard Street;  39202 | 35 | Loss in water pressure |
| 293 | 61-BWN-2022 | 6/22/2022 | This notice was not lifted due to the issuance of the citywide boil water notice. | [300-499] Mississippi Street;  39201 | 10 | Loss in water pressure |
| 294 | 03-BWN-2022 | 6/24/2022 | 7/8/2022 | All City of Jackson Water Connections, Including the City of Byram and areas of Hinds County Served by the City of Jackson water system | All City of Jackson Water Connections, Including the City of Byram and areas of Hinds County Served by the City of Jackson water system | Loss in water pressure |
| 295 | 62-BWN-2022 | 6/24/2022 | 7/9/2022 (7/8/2022 for well water connections) | City of Jackson | All City of Jackson Water Connections, Including the City of Byram and areas of Hinds County Served by the City of Jackson water system | Loss in water pressure |
| 296 | 63-BWN-2022 | 7/9/2022 | 7/12/2022 | Queens-Magnolia Terrace Community; [100-699] North Flag Chapel Rd;  39209 [5300-5799] Clinton Blvd. East Street Loden Place | 1000 | Loss in water pressure |
| 297 | 64-BWN-2022 | 7/12/2022 | 7/15/2022 | [1100-1299] Greymont | 20 | Loss in water pressure |
| 298 | 65-BWN-2022 | 7/14/2022 | 7/22/2022 | [3200-3599] Old Canton Road;  39216 [3400-3599] Kings Hwy. [3500-3699] Hawthorne Dr. Ridge Dr. Glenway Dr. Woodland Dr. Woodland Cir. Duling Ave. | 200 | Loss in water pressure |
| 299 | 66-BWN-2022 | 7/14/2022 | 7/19/2022 | [300-499] Mississippi St.;  39201 | 3 | Loss in water pressure |
| 300 | 67-BWN-2022 | 7/18/2022 | 7/21/2022 | [3700-3799] Liberty St.;  39213 | 20 | Loss in water pressure |
| 301 | 68-BWN-2022 | 7/19/2022 | 7/21/2022 | [1800-1999] Gordon St;  39203 [300-399] Jennings St. [300-399] Dewitt Ave. | 50 | Loss in water pressure |
| 302 | 69-BWN-2022 | 7/20/2022 | 7/22/2022 | [1700-1899] Howard St.;  39202 | 30 | Loss in water pressure |
| 303 | 70-BWN-2022 | 7/21/2022 | 7/25/2022 | [3700-3799] Liberty St.;  39213 | 20 | Loss in water pressure |
| 304 | 71-BWN-2022 | 7/21/2022 | 7/25/2022 | [400-799] West Amite St.;  39203 | 3 | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 305 | 72-BWN-2022 | 7/26/2022 | 7/29/2022 | [1800-1899] St. Mary St.;  39202 | 15 | Loss in water pressure |
| .306 | 04-BWN-2022 | 7/27/2022 (extended) | 7/29/2022 | [5100-5299] Greenway Dr. Extension; 39209 [1800-2199] Greenway Dr. Woodland Way McDonald's 5669 MS Hwy 18 | 50 | Loss in water pressure |
| 307 | State Boil-Water Alert | 7/29/2022 | Not available | City of Jackson in Hinds County | All City of Jackson in Hinds County connections | Turbidity level exceeded standard |
| 308 | 73-BWN-2022 | 7/30/2022 | 9/15/2022 | City of Jackson | All City of Jackson Surface Water Connections Including areas of Byram (46000 Connections) | Turbidity levels exceeded standard |
| 309 | MS0250008 CITY OF JACKSON SURFACE WATER SYSTEM HAS HIGH TURBIDITY LEVELS. BOIL YOUR WATER BEFORE USING | 8/4/2022 | Not available | City of Jackson | All City of Jackson Connections | Turbidity levels exceeded standard |
| 310 | 05-BWN-2022 | 8/29/2022 | 9/1/2022 | Gary Road Elementary School; Byram, 39272 Gary Road Intermediate School | 2 | Loss in water pressure |
| 311 | 06-BWN-2022 | 9/14/2022 | 9/20/2022 | [2000-2199] South Ridge Road; Byram, 39272 | 55 | Loss in water pressure |
| 312 | 74-BWN-2022 | 9/16/2022 | 9/20/2022 | Vine Street; 39202 | 10 | Loss in water pressure |
| 313 | 75-BWN-2022 | 9/18/2022 | 9/20/2022 | [1300-1399] Peachtree St.;  39202 | 5 | Loss in water pressure |
| 314 | 76-BWN-2022 | 9/20/2022 | 9/22/2022 | [4200-4221] N. Honeysuckle Lane; 39211 | 7 | Loss in water pressure |
| 315 | 29-BWN-2020 [sic] | 9/21/2022 | Not available | [701-799] Ewing St. [1100-1200] Lewis St. [301-499] Line St. | 30 | Loss in water pressure |
| 316 | 07-BWN-2022 | 9/22/2022 | 9/27/2022 | [500-522] Golden Eagle Dr.; Byram, 39272 Canyon Cove Talon Cove | 40 | Loss in water pressure |
| 317 | 08-BWN-2022 | 9/25/2022 | Not available | Glennoak Circle; Byram, 39272 | 20 | Loss in water pressure |
| 318 | 77-BWN-2022 | 9/25/2022 (corrected) | 9/28/2022 | [5300-5599] Highland Dr.; 39206 [4300-4599] El Paso St. Paso Cove | 30 | Loss in water pressure |
| 319 | 78-BWN-2022 | 9/25/2022 | 9/28/2022 | [1200-2399] North State Street; 39202 [1600-1899] Pine St. [700-799] Oakwood St. [700-799] Fairview St. [700-799] Arlington St. [700-799] Pinehurst St. [700-799] Gillespie St. Popcorn Alley Park Ave. | 110 | Loss in water pressure |
| 320 | 79-BWN-2022 | 9/25/2022 | 9/29/2022 | [1300-1399] Peachtree St.;  39202 | 5 | Loss in water pressure |
| 321 | 09-BWN-2022 | 9/26/2022 | 9/28/2022 | [7300-8899] Gary Road; Byram, 39272, Gary Dr., Glenn Haven Subdivision, Glennhaven Dr., Glennhaven Ct., Glenn Oak Dr, Cedar Glenn Dr., Brand Creek Dr., Red Oak Cove, Cedar Glenn Cove, Trelles Cove, Highland Cove, Azalea Cove, Glennwood Cove, Ridge Pl., Redwood Cove, Holybush Pl., Glennoak Cir., Eagle Nest Subdivision, Eagle Nest Dr., Freedom Cove, Highpoint Dr., Mountain Crest Dr., Golden Eagle Dr., Talon Cove, Canyon Cove, Lake Ridgelea Subdivision, Turtle Road, Park Ave., Mary Lane, Lake Shore Dr., Oak Ave., Pike Ave., Ridgelea Rd., Lure Ave., Meadow Lane, S. Ridge Road, E. Ridge Road, Bob White St., Rod St., Reel St., Hook St., W. Ridge Rd., Horse Shoe Cir., Line St., Spinning St. | 1000 | Loss in water pressure |

| BWN Count | BWN | Date Issued | Date Lifted | Affected Areas | Number of Connections Affected | Cause |
|---|---|---|---|---|---|---|
| 322 | 80-BWN-2022 | 9/27/2022 | 9/30/2022 | [600-799] Cooper Road; 39212<br>Rosemary Ave.<br>Norwood Ave.<br>Comer St. | 110 | Loss in water pressure |
| 323 | 81-BWN-2022 | 9/28/2022 | 9/30/2022 | [1100-1199] Woodfield Dr.; 39211 | 30 | Loss in water pressure |
| 324 | 10-BWN-2022 | 9/29/2022 | 10/3/2022 | [100-199] Plummer Circle; 39212 | 30 | Loss in water pressure |
| 325 | 82-BWN-2022 | 10/6/2022 | 10/12/2022 | [1100-1199] Lyncrest Ave.; 39202 | 15 | Loss in water pressure |
| 326 | 11-BWN-2022 | 10/7/2022 | 10/12/2022 | Lakeover Place; Terry, 39170 | 5 | Loss in water pressure |
| 327 | 83-BWN-2022 | 10/8/2022 | 10/12/2022 | [3400-3799] Kings Hwy.; 39216 | 30 | Loss in water pressure |
| 328 | 84-BWN-2022 | 10/10/2022 | 10/13/2022 | [1200-1299] Winnrose St.; 39211<br>Winnrose Ct. | 30 | Loss in water pressure |
| 329 | 85-BWN-2022 | 10/11/2022 | 10/13/2022 | Timberlain Dr.; 39211 | 20 | Loss in water pressure |
| 330 | 86-BWN-2022 | 10/14/2022 | 10/18/2022 | [100-699] Cedarhurst Dr.; 39206 | 50 | Loss in water pressure |
| 331 | 87-BWN-2022 | 10/18/2022 | 10/20/2022 | [400-1199] East McDowell Road; 39204<br>Meter Road<br>Parcel Drive<br>Swift Street | 25 | Loss in water pressure |
| 332 | 88-BWN-2022 | 10/19/2022 | 10/22/2022 | Patton Ave.; 39216 | 20 | Loss in water pressure |
| 333 | 89-BWN-2022 | 10/21/2022 | 10/25/2022 | [700-799] Poplar Blvd.; 39202<br>[1200-1299] North St. | 10 | Loss in water pressure |

Attachment B
Emergency Order



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 4
ATLANTA FEDERAL CENTER
61 FORSYTH STREET
ATLANTA, GEORGIA 30303-8960

**MAR 27 2020**

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

The Honorable Chokwe A. Lumumba
Mayor of City of Jackson
219 South President Street
Jackson, Mississippi  39205

      Re: Emergency Administrative Order under SDWA Section 1431, 42 U.S.C. § 300i
         Public Water System: City of Jackson Public Water System
         PWS ID Number: MS0250008
         Docket No.: SDWA-SDWA-04-2020-2300

Dear Mayor Lumumba:

Enclosed is an Emergency Administrative Order (Order) issued by the U.S. Environmental Protection Agency to the City of Jackson, Mississippi (Respondent), as the owner/operator of the City of Jackson Public Water System (System), pursuant to section 1431 of the Safe Drinking Water Act (SDWA), 42 U.S.C. § 300i.

Based on observations made by the EPA during its inspection conducted the week of February 3, 2020, and review of the documents provided by Respondent in response to the EPA's request for information issued pursuant to its authority under section 1445 of the SDWA, 42 U.S.C. § 300j-4, the EPA has determined that conditions exist at the System that present an imminent and substantial endangerment to the persons served by the System. Based on evidence of turbidity exceedances, disinfection treatment concerns, and/or the condition of the distribution system, the System has the potential to have the presence of *E. Coli*, *Cryptosporidium*, or *Giardia* in the drinking water being served to its customers. Therefore, pursuant to section 1431 of the SDWA, 42 U.S.C. § 300i, the EPA is authorized to take actions necessary to protect human health. The Order and its requirements are necessary to ensure adequate protection of public health.

The enclosed Order sets forth the actions that must be taken to ensure that the people served by the System are provided with safe drinking water. The Order requires the System to, among other things: (1) develop and implement a plan to address all monitoring equipment and appurtenant treatment equipment repairs and/or replacements; (2) address dosing processes for disinfection and pH control; (3) develop and implement a plan to provide alternative drinking water when specific triggers are met; and (4) take additional total coliform bacteria samples under prescribed conditions.

The Order constitutes a final agency action and under Section 1448(a) of the SDWA, 42 U.S.C. § 300j-7(a) you may seek federal judicial review. If you have any questions or wish to discuss this Order, please contact Amanda Driskell at (404) 562-9735 or Driskell.Amanda@epa.gov. For legal inquiries,

please have your attorneys contact Suzanne Armor, Associate Regional Counsel, at (404) 562-9701 or
Armor.Suzanne@epa.gov. Thank you for your attention to this matter.

Sincerely,

Carol L. Kemker
Director
Enforcement and Compliance Assurance Division

Enclosure

cc:  Robert K Miller, Director, City of Jackson Department of Public Works
     Lester Herrington, Director of Office of Environmental Health,
      Mississippi State Department of Health

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 4

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | Docket No. SDWA-04-2020-2300 |
| | ) | |
| City of Jackson, Mississippi, | ) | **EMERGENCY ADMINISTRATIVE** |
| | ) | **ORDER** |
| Respondent. | ) | |
| | ) | Proceeding pursuant to Section 1431(a) |
| Public Water System, PWS ID. No. MS0250008. ) | | of the Safe Drinking Water Act, |
| | ) | 42 U.S.C. § 300i(a). |

---

## I.     <u>AUTHORITY</u>

1. This Emergency Administrative Order ("Order") is issued to the City of Jackson, Mississippi ("Respondent") pursuant to the authority vested in the Administrator of the U.S. Environmental Protection Agency Section 1431(a) of the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300i(a). The Administrator has delegated this authority to the Regional Administrator of the EPA Region 4, who has, in turn, delegated this authority to the Director of the Enforcement Compliance and Assurance Division.

2. The EPA has jurisdiction to issue emergency orders pursuant to Section 1431 of the SDWA, 42 U.S.C. § 300i.

## II.     <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

**General Findings**

3. Respondent is a municipality created under the laws of the State of Mississippi and is therefore a "person" as that term is defined in the SDWA. 42 U.S.C. § 300f(12); 40 C.F.R. § 141.2.

4. Respondent owns and/or operates a public water system located in the City of Jackson, Mississippi, PWS ID No. MS0250008 ("System"). The System provides water for human consumption to a population of approximately 173,514.

5. The System is a "public water system" within the meaning of Section 1401(4) of the SDWA, 42 U.S.C. § 300f(4); 40 C.F.R. § 141.2.

6. The System regularly serves at least 25 year-round residents and is therefore a "community water system" ("CWS") within the meaning of Section 1401(15) of the SDWA, 42 U.S.C. § 300f(15), and 40 C.F.R. § 141.2.

7. Respondent's ownership and/or operation of the System makes it a "supplier of water" within the meaning of Section 1401(5) of the SDWA, 42 U.S.C. § 300f(5), and 40 C.F.R. § 141.2, and subject to the requirements of Part B of the SDWA, 42 U.S.C. § 300g, and the National Primary Drinking Water Regulations ("NPDWRs") at 40 C.F.R. § 141.

8.  Pursuant to SDWA Section 1413, 42 U.S.C. § 300g-2, the Mississippi State Department of Health ("MSDH") has primary responsibility for the implementation and enforcement of the public water supply program in Mississippi.

9.  The System consists of two water treatment plants, known as the O.B. Curtis Water Treatment Plant ("O.B. Curtis WTP")[1] and the J.H. Fewell Water Treatment Plant ("J.H. Fewell WTP"),[2] a number of groundwater wells,[3] and appurtenant collection, treatment, storage, and distribution facilities.[4]

10. Portions of the System can be supplied by both ground and surface water sources, while others are served only by surface water sources. The surface water sources are the Ross Barnett Reservoir and the Pearl River. The ground water source is the Sparta Aquifer.

11. The O.B. Curtis and J.H. Fewell WTPs, both of which treat the surface water portions of the System, employ conventional filtration with ultraviolet ("UV") systems to inactivate pathogens. Finished water at the WTPs is disinfected using chloramines.

12. UV disinfection treatment is installed on each individual filter effluent ("IFE") flow at both the O.B. Curtis and J.H. Fewell WTPs to treat for viruses, including *Cryptosporidium* and *Giardia*.

13. Respondent's PWS is required to provide filtration pursuant to 40 C.F.R. §§ 141.73 and 141.173, and disinfection pursuant to 40 C.F.R. §§ 141.72(b) and 141.172.

14. Ground water from the wells is treated at the point of withdrawal using gaseous chlorine.

15. The term "contaminant" means any physical, chemical, biological, or radiological substance or matter in water." 42 U.S.C. § 300f(6).

16. Turbidity is a measure of the cloudiness of water. It is used to indicate water quality and filtration effectiveness (such as whether disease-causing organisms are present). Higher turbidity levels are often associated with higher levels of disease-causing microorganisms.

17. *E. coli*, *Cryptosporidium*, and *Giardia* are contaminants under the meaning of 42 U.S.C. § 300f(6), and are or may be present in the System.

18. On November 22, 2019, the EPA issued a Request for Information to Respondent, pursuant to Section 1445 of the SDWA, 42 U.S.C. § 300j-4, and 40 C.F.R. § 141.31, seeking information to determine Respondent's compliance with federal drinking water regulations.

19. On December 23, 2019, Respondent provided its response to the EPA's Request for Information.

---

[1] To the EPA's knowledge and belief, the O.B. Curtis WTP was initially constructed in or around 1992.
[2] To the EPA's knowledge and belief, the J.H. Fewell WTP was initially constructed in or around 1914.
[3] Respondent maintains at least six active groundwater wells (T.V. Road Well, Willo-O-Wood Well, Wiggins Road Well, Siwell Road Well, Highway 18 Well, and Maddox Road Well), along with three inactive groundwater wells (Forest Hill Road Well, Rainey Road Well, and Presidential Hill Well).
[4] Until approximately October 2014, there were two separately identified public drinking water systems owned by the City of Jackson, Mississippi. One was supplied entirely by groundwater and identified under the PWS ID No. MS0250012; the other was supplied by surface water and identified under the PWS ID No. MS0250008.

20. On January 15 and 16, 2020, consistent with the requirements of Section 1445(b)(1), 42 U.S.C. § 300j-4(b)(1), the EPA notified MSDH and Respondent, respectively, of its intent to inspect the PWS.

21. On February 3 to 7, 2020, representatives of the EPA conducted an inspection of the PWS, pursuant to its authority under Section 1445(b)(1) of the SDWA, 42 U.S.C. § 300j-4(b)(1).

**Bacterial Contamination and Proper Disinfection**

22. During the inspection, the EPA identified the following preliminary concerns related to bacterial contamination and proper disinfection:

   a. The necessary chemical dosing of coagulant to address turbidity is determined by the streaming current detectors ("SCDs"); however, Respondent's SCDs were not properly calibrated at either the O.B. Curtis or J.H. Fewell WTPs, thus failing to provide accurate dosing for proper treatment of drinking water;

   b. Continuous monitoring equipment at the O.B. Curtis WTP has not been repaired or calibrated for approximately three years since the instrument technician position was vacated. This equipment includes pH meters, flow measurement devices, turbidimeters, and the SCDs. Comparisons of operator laboratory bench sheet results indicated that the readouts from the continuous pH meters are off by up to 2 units in some instances. It was indicated on the monthly operating reports submitted in response to the EPA's November 22, 2019 Request for Information, that this equipment was used as the basis for the values reported for compliance.

   c. Jar tests are commonly used in the industry as "bench-scale" simulations of full-scale coagulation/flocculation/sedimentation water treatment processes. Respondent does not follow the industry standard of conducting regular jar tests at both the O.B. Curtis and J.H. Fewell WTPs. Because the SCDs are used as the basis for those coagulant dosing decisions without having been calibrated, the lack of jar testing is an additional indicator in evaluating the ability of the WTPs to deliver safe drinking water to the System's users.

   d. Respondent conducts membrane cleaning cycles without the use of automatic monitoring equipment for pH and chlorine levels. Excess chlorine levels can damage and reduce membrane efficiency. In addition, membrane cleaning is partially dependent on pH, requiring either higher or lower pH cleaning regimes based on the foulants present. This automatic monitoring equipment has been nonfunctional for several years.

   e. Respondent cannot currently perform membrane integrity testing at O.B. Curtis WTP due to wear and breakage of the system components and compressor. This is concerning due to the inability of the Respondent to evaluate the membrane filters' mechanical integrity during times of turbidity exceedance.

   f. Respondent has failed to perform filter maintenance at O.B. Curtis WTP and J.H. Fewell. Considering the recent turbidity exceedances, it is crucial that Respondent maintain the System filters to perform in optimal condition for protection of human health.

   g. NDPWRs require a system's combined filtered water at each plant be less than or equal to 0.3 NTU in at least 95% of the measurements taken each month, and the turbidity level of a

system's combined filtered water at each plant must at no time exceed 1 NTU. Turbidity exceedances were reported at both the O.B. Curtis and J.H. Fewell WTPs in the January 2020 monthly operating report ("MOR"). Finished water turbidity reached 1.35 NTU at the O.B. Curtis WTP and 3.00 NTU at the J.H. Fewell WTP. Additionally, at the O.B. Curtis WTP, 93.5% of turbidity samples were equal to or less than the turbidity limit of 0.3 NTU. The EPA's inspectors observed that the continuous turbidity monitoring equipment at the O.B. Curtis WTP has read inaccurately for approximately three years due to a lack of calibration and maintenance, and that turbidity samples were taken during this time period at a frequency of once per shift, for a total of three times per day. Given that the turbidity monitoring equipment was not operational, the system, to maintain compliance with NDPRWs, should have conducted grab sampling every four hours in lieu of continuous monitoring, but for no more than five working days following the nonoperation of the equipment.

h. UV disinfection devices were found to be offline for significant periods of time at both the O.B. Curtis and J.H. Fewell WTPs. UV disinfection devices are to be operated continuously. In its January 2020 MOR, Respondent reported the following:

   i. At the J.H. Fewell WTP:

- UV Reactor 1 was offline for the entire month of January 2020 (and had been offline since October 16, 2019);

- UV Reactor 2 was offline for 15 of 31 days;

- UV Reactor 3 was offline for 17 of 31 days; and

- UV Reactor 4 was offline for 17 of 31 days.

   ii. At the O.B. Curtis WTP:

- UV Reactor 1 was offline for two of 31 days;

- UV Reactor 2 was offline for four of 31 days;

- UV Reactor 3 was offline for one of 31 days;

- UV Reactor 4 was offline for three of 31 days; and

- UV Reactor 5 was offline for 10 of 31 days.

23. MSDH provided the EPA with a list of all Boil Water Notices ("BWNs") issued between January 2, 2016 and February 1, 2020, to provide notice to the public of the potential to have serious adverse effects on human health as a result of short-term exposure pursuant to 40 C.F.R. § 141.202. The majority of the BWNs issued were due to loss of pressure from leaks and/or line breaks. Low-pressure and loss of pressure in a drinking water distribution system may cause a net movement of water from outside the pipe to the inside through cracks, breaks, or joints in the distribution system. Crack, breaks and joints are common in all water systems. Backsiphonage occurs when pressure is lost in pipes creating a negative pressure and a partial vacuum that pulls water from a contaminated source outside the pipe into the treated, potable water inside the pipe. This creates a suitable environment for bacteriological contamination and other disease-causing organisms, including *E. coli*, to enter the water distribution system downstream of the WTPs, which is then delivered to users.

24. High levels of turbidity increase the likelihood that drinking water may contain disease-causing organisms, such as *Cryptosporidium*, *Giardia*, *Legionella*, and *E. coli* because particles of turbidity provide shelter for microbes and reduce the microbes' exposure to disinfectants. If particulate material is not removed, a high turbidity event can provide shelter for and promote regrowth of pathogens in the water, leading to an outbreak of waterborne diseases.

25. Pathogens, such as *Giardia*, *Cryptosporidium*, and *Legionella*, are often found in water. If consumed, these pathogens can cause gastrointestinal illness (e.g., diarrhea, vomiting, cramps) and other health problems. These illnesses may be severe and sometimes fatal for people with weakened immune systems. *Cryptosporidium* is a significant concern in drinking water because it is resistant to chlorine and other disinfectants.

26. *E. coli* are bacteria, that when present, indicate the water may have been contaminated with human and/or animal wastes. Human and/or animal wastes may contain pathogens that can cause short-term health impacts, such as diarrhea, cramps, nausea, headaches, or other symptoms. Pathogens may pose a greater health risk for infants, young children, the elderly, and people with severely compromised immune systems.

**MSDH Actions and the EPA's Coordination with MSDH**

27. MSDH has pursued informal enforcement actions against Respondent for Lead and Copper Rule ("LCR") treatment technique violations and Long-Term Enhanced Surface Water Treatment Rule violations due to turbidity exceedances. Additionally, MSDH issued a compliance plan to Respondent on February 12, 2016, to address the LCR violations that occurred starting in June 2015. However, these actions have not been effective in adequately protecting the health of the System's users with respect to the findings above.

28. EPA consulted with the City of Jackson and MSDH, to the extent practicable in light of the imminent endangerment, to confirm the correctness of the information on which this Order is based and to ascertain the action which such authorities were or would be taking.

29. Based on the findings above, the EPA has determined that the System has numerous SDWA violations, including violations of the NPDWRs.

30. Based on the findings above, and despite actions taken by MSDH, the local authorities have not undertaken all actions necessary to protect the public health and conditions exist at the System that may present an imminent and substantial endangerment to the health of persons served by the System. On February 28, 2020, MSDH submitted a written request for the EPA to assist with addressing the System's SDWA noncompliance. Therefore, this Order is necessary to protect human health.

31. The EPA has therefore determined that the actions specified in this Order are necessary to protect the health of persons.

## III.     ORDER

Based on the foregoing findings and conclusions, and pursuant to Section 1431 of the Act, 42 U.S.C. § 300i, it is ordered:

### Intent to Comply

32. Within 72 hours of receipt of this Order, Respondent must notify the EPA in writing of its intent to comply with the terms of this Order. To satisfy this requirement, Respondent shall email the EPA point of contact identified below in Paragraph 44.

### Public Notification

33. Effective immediately upon the Effective Date of this Order, Respondent shall carry out the public notice requirements as required by 40 C.F.R. Part 141, Subpart Q for all future violations of NPDWRs. Additionally, Respondent must treat any exceedances of maximum allowable turbidity levels and breaks in water lines or other low pressure or loss of pressure events likely to cause contamination in the System's distribution system as requiring Tier 1 public notification as required by 40 C.F.R. § 141.202 until notified by the EPA that this is no longer necessary.

### Treatment and Distribution System Management

34. Notwithstanding the requirements of this Order, Respondent shall continue to implement all applicable monitoring and reporting requirements of the SDWA and NPDWRs in accordance with 40 C.F.R. Part 141.

35. <u>Dosing Process Repair</u>. Within one week of the Effective Date of this Order, Respondent shall fix dosing process for disinfection and pH control.

36. <u>Repair and/or Replacement of Equipment</u>.

    a. Within one week of the Effective Date of this Order, Respondent shall provide to the EPA and MSDH a status of all monitoring equipment and appurtenant treatment equipment (including, but not limited to, pH meters, flow measurement devices, turbidimeters, SCDs, chlorine analyzers, raw water screens, UV reactors, automatic sludge removal system, membrane filtration treatment train flocculator motors, membrane integrity testing system, and filters). This must include, at a minimum, descriptions of the conditions of the equipment, identify in which facility this equipment is located, any needed repairs, and status of calibration.

    b. Within 30 days of the Effective Date of this Order, Respondent shall submit a comprehensive plan, including a schedule of implementation, for the EPA's review and approval, to repair and/or replace monitoring equipment and repair, replace, and/or perform maintenance on the appurtenant treatment equipment to ensure the System has the appropriate treatment equipment and appropriate information to make treatment decisions, and that the water quality is properly measured for compliance with the NPDWRs. All future MORs and weekly data, as required pursuant to Paragraph 43(43.a), shall include the date of last calibration and any repairs and/or replacement of monitoring equipment done since the last report was provided, until further notice by the EPA.

6

c. Until such time as the monitoring equipment has been repaired and/or replaced and properly maintained, Respondent shall conduct monitoring by collecting grab samples every four hours in lieu of the continuous monitoring. For any instance where grab sampling is conducted in lieu of the required continuous monitoring, Respondent shall identify this deviation in the weekly MORs provided in accordance with Paragraph 43(43.a) of this Order.

37. CFE Turbidity Exceedance Events.

   a. In the event of CFE turbidity measurements exceeding 1.0 NTU, Respondent shall implement the following:

      i. Comply with all requirements of NPDWRs, including 40 C.F.R. §§ 141.170 – 141.175.

      ii. Notify the EPA and MSDH within 24 hours. If cause of the exceedance is known, include this information with notice. However, do not hold or delay the notification in instances where the cause of the exceedance is not known.

      iii. Consult with MSDH on the exceedance and the appropriate BWN.

      iv. Respondent shall issue a Tier 1 public notice as required by 40 C.F.R. § 141.202.

      v. Within 24 hours after the CFE turbidity is less than 0.3 NTU, Respondent shall collect consecutive daily (one sample per calendar day) special purpose samples (bacteriological and microbial) (defined in 40 C.F.R. § 141.21(a)(6)) from the entry point to the distribution system of the treatment plant that had the turbidity exceedance, as well as any other distribution sampling location deemed necessary as identified by MSDH. Respondent shall ensure that each sample is analyzed for total coliform, *E. coli* (if sample is total coliform positive), and chlorine residual.

      vi. Provide the EPA with chlorine residual results as measured at the entry point to the System and in the System's distribution for 10 calendar days preceding and following the event.

   b. In the event of CFE turbidity measurements exceeding 2.0 NTU, Respondent shall implement the following:

      i. Comply with all requirements of NPDWRs, including 40 C.F.R. §§ 141.170 – 141.175.

      ii. Immediately issue an appropriate BWN, provide notice and consult with MSDH within 24 hours, and provide notice to the EPA within 24 hours.

      iii. Respondent shall issue a Tier 1 public notice as required by 40 C.F.R. § 141.202.

      iv. Within 24 hours after the CFE turbidity is less than 0.3 NTU, the System shall collect consecutive daily (one sample per calendar day) special purpose samples (bacteriological and microbial) (defined in 40 C.F.R. § 141.21(a)(6)) from the entry point to the distribution system of the treatment plant that had the turbidity

7

exceedance as well as any other distribution sampling location deemed necessary, as identified by MSDH. Respondent shall ensure that each sample is analyzed for total coliform, *E. coli* (if sample is total coliform positive), and chlorine residual.

    v. Provide the EPA with chlorine residual results as measured at the entry point to the System and in the System's distribution for 10 calendar days preceding and following the event.

    vi. Respondent shall provide the EPA and MSDH a self-assessment evaluation of CFE and IFE to include: (1) assessment of filter performance: (2) development of a filter profile; (3) identification and prioritization of factors limiting filter performance; and (4) corrective action plan to address the issue.

38. <u>Low Pressure/Loss of Pressure Events</u>. In the future event that Respondent experiences breaks in water lines or other low pressure or loss of pressure events likely to cause contamination in the System's distribution system, Respondent will take the following actions:

    a. Respondent shall consult with MSDH within 24 hours to determine if a BWN is required and provide notification to the EPA within 24 hours.

    b. Respondent shall issue a Tier 1 public notice as required by 40 C.F.R. § 141.202.

    c. Respondent shall immediately repair the line break or cause of the low pressure/loss of pressure. When satisfied that system pressure will be maintained and there is adequate chlorine residual, Respondent shall begin sampling from the affected area as described below. MSDH typically recommends a free chlorine residual of 0.5 mg/l at the ends of your distribution system.

    d. Within 24 hours after making repair(s) to the water line(s) as required above, Respondent shall begin collecting special purpose samples (bacteriological and microbial) (defined in 40 C.F.R. § 141.21(a)(6)) from the System's distribution system. The chart, in Attachment I to this Order, lists the number of samples required based on the number of customers affected. If the entire system is placed on BWN, samples should be collected from sites representing the entire water system. Respondent shall ensure that each sample is analyzed for total coliform, *E.coli* (if the sample is total coliform positive), and chlorine residual. Respondent shall continue sampling until results from two consecutive rounds are total coliform negative.

39. <u>Alternative Water Source Plan Development and Implementation</u>.

    a. Within 14 days of the Effective Date of this Order, Respondent shall develop, and submit to the EPA for review and approval, an Alternative Water Source Plan ("AWSP"). In the AWSP, Respondent shall detail how and where it will provide at least one gallon of potable water per day, per person to every person served by the System. This allotment of alternative water must be made available at no cost to every person served by the System, as needed for drinking, cooking, maintaining oral hygiene, and dish washing. The AWSP will also outline how Respondent will inform every person served by the System of when and how an alternative water source is made available. As part of its AWSP, Respondent may opt to provide an alternate water supply that is: (1) provided by a licensed water distributor; (2) purchased bottle water; or (3) provided by another public water system that meets the requirements of

8

the NPDWRs. *Note*: If the AWSP trigger is localized to a specific portion of the distribution system and the entire system is not impacted, Respondent may opt to only serve alternative water to the portion of the population impacted. In order to consider this approach, the AWSP must include a detailed map of the System.

b. The alternative source of water provided shall meet all applicable SDWA requirements at 40 C.F.R. §141. If bottled water will be used by Respondent as an alternative water in accordance with this Order, Respondent must ensure that the bottled water is certified by the International Bottled Water Association or National Sanitation Foundation International.

c. AWSP Implementation Triggers.

 i. If, based upon Respondent's Revised Total Coliform Rule ("RTCR") sampling data collected in accordance with 40 C.F.R. § 141.857 and as outlined in Paragraph 41 below, the PWS exceeds 5.0% total coliform-positive samples in any monthly period during the term of this Order, Respondent shall comply with the "Level 1" assessment requirements of the RTCR at 40 C.F.R. § 141.859(b). In addition, Respondent shall begin implementation of the AWSP within 24 hours of receiving such sampling results. Respondent shall continue implementing the AWSP until the EPA provides written notification to Respondent that AWSP implementation is no longer required; or

 ii. Within 24 hours of Respondent's collection of daily special purpose samples required under Paragraphs 37 and 38 above, Respondent shall begin implementation of the AWSP. Respondent shall continue implementing the AWSP until all daily special purpose sample results are total coliform negative. *Note*: The AWSP may consider, in certain situations, that only a portion of the population is impacted by the triggering event and therefore alternative water only needs to be provided to those impacted. See requirements under Paragraph 39(a) above.

## **Notifications and Reporting**

40. Within 72 hours of the Effective Date of this Order, Respondent shall provide the February 2020 MORs, including the IFE data for all conventional filters at both the O.B. Curtis and J.H. Fewell WTPs during this timeframe.

41. Sample Siting Plan.

a. Within one week of the Effective Date of this Order, Respondent shall review its current Sample Siting Plan developed pursuant to 40 C.F.R. § 141.853, to ensure consistency with the RTCR, at 40 C.F.R. Part 141, subpart Y, and simultaneously provide a copy of the current Sample Siting Plan to the EPA for the EPA's concurrent review.

b. If the current Sample Siting Plan does not include a minimum of 120 sampling locations per month as required under 40 C.F.R. § 141.857(b), Respondent shall update the Sample Siting Plan to achieve the required minimum monitoring frequency for the monthly monitoring period after the Effective Date of this Order.

c. Within 10 business days of the Effective Date of this Order, Respondent shall provide to the EPA, RTCR sampling data for the months of January 2020 and February 2020. If the Respondent has not yet conducted the March 2020 sampling, this sampling shall be conducted within one week of the Effective Date of this Order and the results submitted within 10 days of receipt of the sampling analysis. If the March 2020 sampling has been completed prior to the Effective Date of this Order, Respondent shall submit these results along with the January 2020 and February 2020 results. All RTCR sampling data shall include the chlorine residual data for the RTCR locations.

d. The Respondent shall continue to submit the RTCR sampling data to the EPA until directed otherwise. This data shall include all chlorine residual data for all RTCR sampling locations.

42. Respondent must notify the EPA within 24 hours after learning of a violation of this Order or any NPDWRs, or of a situation with the potential to have serious adverse effects on human health as a result of short-term exposure to contaminants.

43. Establishing Regular Contact with the EPA.

a. Immediately upon the Effective Date of this Order and until further notice by the EPA, Respondent shall submit MOR information weekly as follows:

i. Reports must run from Sunday to Saturday each week;

ii. Weekly reports must be submitted to the EPA and MSDH by Tuesday of the following week (e.g., for the monitoring timeframe of Sunday, March 29 through Saturday, April 4, the report must be submitted by Tuesday, April 7).

iii. IFE data must be submitted with each weekly MOR until further notice.

iv. If at any time, the Respondent is notified, by the EPA or MSDH that a revision to the MOR is required, the Respondent shall implement the revision on the following report required unless the EPA or MSDH provides a specific alternate timeline for implementation.

b. Within five business days of the Effective Date of this Order, Respondent shall begin submitting weekly updates to the EPA on Respondent's progress complying with this Order. Respondent shall submit subsequent weekly reports on Tuesday of each subsequent week. Each weekly update shall identify and describe all actions taken in the previous week to meet the requirements of this Order.

c. Within seven business days of the Effective Date of this Order, Respondent shall contact the EPA to set up a mutually agreeable meeting schedule. The purpose of the meetings to be scheduled pursuant to this paragraph are to accomplish the following goals:

i. Provide an opportunity for the Respondent and the EPA to clarify requirements and timelines,

ii. Provide an opportunity for Respondent to report to the EPA any issues, concerns, or problems it faces in complying with the terms of this Order, and

10

  iii. Provide an opportunity for Respondent and the EPA to maintain an open channel of communication wherein new information can be shared.

 d. Respondent shall prepare an outline of all the requirements in this Order, how Respondent plans to meet all the requirements of this Order, and submit to the EPA in writing at least 48 hours in advance of the first agreed-upon meeting required under Paragraph 43(c) above. If this falls on a weekend, Respondent shall provide the outline on the last workday before the meeting.

44. Respondent shall send all reports, notifications, documentation and submittals required by this Order in writing or via e-mail to:

> U.S. EPA, Region 4
> Enforcement and Compliance Assurance Division
> Attn: Amanda Driskell
> U.S. Environmental Protection Agency
> 61 Forsyth Street
> Atlanta, GA 30303
> Email: driskell.amanda@epa.gov

45. All reports, notifications, documentation, and submissions required by this Order must be signed by a duly authorized representative of Respondent and must include the following statement:

> "I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

## IV. **PARTIES BOUND**

46. The provisions of this Order shall apply to and be binding upon Respondent, its officers, employees, agents, successors, and assigns.

## V. **GENERAL PROVISIONS**

47. This Order constitutes final agency action. Under Section 1448(a) of the SDWA, 42 U.S.C. § 300j-7(a), Respondent may seek federal judicial review.

48. The EPA may modify this Order to ensure protection of human health. The EPA will communicate any modification(s) to Respondent in writing and the modification(s) shall be incorporated into this Order.

49. Compliance with the terms and conditions of this Order shall not in any way be construed to relieve Respondent from its obligations to comply with all provisions of federal, state, or local law, nor shall it be construed to be a determination of any issue related to any federal, state or local permit.

Compliance with this Order shall not be a defense to any actions subsequently commenced for any violation of federal laws and regulations administered by the EPA, and it is the responsibility of Respondent to comply with such laws and regulations.

50. Pursuant to SDWA Section 1431(b), 42 U.S.C. § 300i(b), in the event Respondent violates, fails or refuses to comply with any of the terms or provisions of this Order, the EPA may commence a civil action in U.S. District Court to require compliance with this Order and to assess a civil penalty of up to $24,386 per day of violation under the SDWA, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, amended by the Debt Collection Improvement Act of 1996, and the subsequent Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. § 19.

51. The EPA reserves all rights against Respondent and all other persons to take any further civil, criminal, or administrative enforcement action pursuant to any available legal authority, and to exercise its information gathering and inspection authorities. Nothing in this Order shall preclude the EPA from taking any additional enforcement actions, including modification of this Order or issuance of additional Orders, and/or additional actions as the EPA may deem necessary, and/or from requiring Respondent in the future to perform additional activities pursuant to the SDWA or any other applicable law.

## VI.    **EFFECTIVE DATE**

52. Under SDWA Section 1431, 42 U.S.C. § 300i, this Order shall be effective immediately upon Respondent's receipt of this Order. If modifications are made by the EPA to this Order, such modifications will be effective on the date received by Respondent. This Order shall remain in effect until the provisions identified in the Order have been met in accordance with the EPA's written approval.

## VII.    **TERMINATION**

53. The provisions of this Order shall be deemed satisfied upon Respondent's receipt of written notice from the EPA that Respondent has demonstrated, to the satisfaction of the EPA, that the terms of this Order have been satisfactorily completed.

**FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:**


_____          _____
Carol L. Kemker, Director                              Date

Enforcement and Compliance Assurance Division
Region 4

13

**ATTACHMENT I**

**Sampling Requirements**

| # of Connections Affected | # of Samples Required | # of Connections Affected | # of Samples Required |
|---|---|---|---|
| 1 – 100 | 2 | 4,301 – 5,700 | 18 |
| 101 – 300 | 3 | 5,701 – 8,300 | 20 |
| 301 – 500 | 4 | 8.301 – 11,000 | 30 |
| 501 – 700 | 5 | 11,001 – 13,000 | 40 |
| 701 – 900 | 6 | 13,001 – 16,000 | 50 |
| 901 – 1,100 | 7 | 16,001 – 19,000 | 60 |
| 1,101 – 1,300 | 8 | 19,001 – 23,000 | 70 |
| 1,301 – 1,600 | 9 | 23,001 – 27,000 | 80 |
| 1,601 – 2,200 | 10 | 27,001 – 32,000 | 90 |
| 2,201 – 2,500 | 11 | 32,001 – 43,000 | 100 |
| 2,501 – 2,800 | 12 | 43,001 – 73,000 | 120 |
| 2,801 – 4,300 | 15 | 73,001 – 107,000 | 150 |

Note: Equivalent connections (and population served) will be considered when determining the number of samples which must be collected for a system with a large ratio of population to connections.

14

Mailing Addresses for the CCs:
Mr. Robert K. Miller, Director
City of Jackson Department of Public Works
200 South President Street
Jackson, Mississippi  39205-0017

William Moody, MSDH
Bureau of Public Water Supply
P.O. Box 1700
2423 North State Street
Jackson, MS 39215-1700

Attachment C
Amendment to the Emergency Order

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 4**

| | | |
|---|---|---|
| **IN THE MATTER OF:** | ) | Docket No. SDWA-04-2020-2300 |
| | ) | |
| City of Jackson, Mississippi, | ) | **AMENDMENT TO** |
| | ) | **EMERGENCY ADMINISTRATIVE** |
| Respondent. | ) | **ORDER** |
| | ) | |
| Public Water System, PWS ID. No. MS0250008. | ) | Proceeding pursuant to Section 1431(a) of |
| | ) | the Safe Drinking Water Act, 42 U.S.C. § |
| | | 300i(a). |

## **FIRST AMENDMENT TO EMERGENCY ADMINISTRATIVE ORDER**

1. The U.S. Environmental Protection Agency issued an Emergency Administrative Order (Order), effective April 2, 2020, to Respondent, City of Jackson, Mississippi (Respondent).

2. On April 28, 2020, the EPA and Respondent held the first meeting required under Paragraph 43(c) of the Order. During that meeting, Respondent requested clarification regarding the triggering event under Subparagraph 39(c)(ii) for implementation of the Alternative Water Source Plan (AWSP) required under Order.

3. Pursuant to the authority of Section 1431(a) of the Safe Drinking Water Act, 42 U.S.C. § 300i(a), THE DIRECTOR HEREBY ORDERS THAT PARAGRAPH 39(c)(ii) OF THE ORDER BE REMOVED AND REPLACED WITH THE FOLLOWING:

   a. If, based upon Respondent's daily special purpose samples required under Paragraphs 37 and 38 of the Order, the PWS has a total coliform-positive sample the Respondent shall begin implementation of the AWSP within 24 hours of receiving such sampling results. Respondent shall continue implementing the AWSP until all daily special purpose sample results are total coliform negative. *Note*: The AWSP may consider, in certain situations as specified in 39(a), that only a portion of the population is impacted by the triggering event and therefore, alternative water only needs to be provided to those impacted.

4. Except as expressly agreed in the foregoing paragraphs, this First Amendment to the Order does not otherwise affect, alter, or amend the requirements of the Order.

5. This First Amendment to the Order shall become effective upon receipt by the Respondent.

**FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:**

# CAROL KEMKER

Digitally signed by CAROL KEMKER
Date: 2020.05.28 14:25:12 -04'00'

Carol L. Kemker, Director                    Date
Enforcement and Compliance Assurance Division
Region 4

Attachment D
Consent Order

## UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
## REGION 4

| | | |
|---|---|---|
| **IN THE MATTER OF:** | ) | Docket No. SDWA-04-2020-2301 |
| | ) | |
| City of Jackson, Mississippi, | ) | **ADMINISTRATIVE COMPLIANCE** |
| | ) | **ORDER ON CONSENT** |
| Respondent. | ) | |
| | ) | Proceeding pursuant to Section 1414(g) of |
| Public Water System, PWS ID. No. MS0250008, | ) | the Safe Drinking Water Act, 42 U.S.C. |
| | ) | § 300g-3(g). |

## I.   STATUTORY AUTHORITY

1.      This Administrative Compliance Order on Consent ("AOC") is issued to the City of Jackson, Mississippi ("Respondent" or "City") pursuant to the authority vested in the Administrator of the U.S. Environmental Protection Agency ("EPA") by Section 1414(g) of the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300g-3(g). The Administrator has delegated this authority to the Regional Administrator of EPA Region 4, who has, in turn, delegated this authority to the Director of the Enforcement Compliance and Assurance Division.

## II.   EPA's FINDINGS OF FACT AND CONCLUSIONS OF LAW

2.      Respondent is a municipality created under the laws of the State of Mississippi and is therefore a "person" as that term is defined in the SDWA. 42 U.S.C. § 300f(12); 40 C.F.R. § 141.2.

3.      Respondent owns and/or operates a public water system located in the City of Jackson, Mississippi, PWS ID No. MS0250008 ("System"). The System provides water for human consumption to a population of approximately 173,514.[1]

4.      The System is a "public water system" within the meaning of Section 1401(4) of the SDWA, 42 U.S.C. § 300f(4); 40 C.F.R. § 141.2.

5.      The System regularly serves at least 25 year-round residents and is therefore a "community water system" ("CWS") within the meaning of Section 1401(15) of the SDWA, 42 U.S.C. § 300f(15), and 40 C.F.R. § 141.2.

---

[1] Until approximately October 2014, there were two separately identified public drinking water systems owned by the City. One was supplied entirely by groundwater and identified under the PWS ID No. MS0250012; the other was supplied by surface water and identified under the PWS ID No. MS0250008. In or around October 2014, the City requested the removal of the PWS ID No. MS0250012, as the City intended to stop utilizing the groundwater sources as primary sources of drinking water. At the time of the EPA's Civil Investigation ("Investigation"), the EPA identified that the groundwater sources were still being utilized as a primary source for a portion of the distribution and requested that the PWS ID No. MS0250012 be reinstated for the groundwater portion of the system. In or around July 2020, MSDH reinstated the PWS ID No. MS0250012. This Order addresses only those violations alleged to have occurred in the surface water system, PWS ID No. MS0250008.

6.      Respondent's ownership and/or operation of the System makes it a "supplier of water" within the meaning of Section 1401(5) of the SDWA, 42 U.S.C. § 300f(5), and 40 C.F.R. § 141.2, and subject to the requirements of Part B of the SDWA, 42 U.S.C. § 300g, the National Primary Drinking Water Regulations ("NPDWRs") at 40 C.F.R. Part 141, and the Mississippi Primary Drinking Water Regulations ("MPDWRs"), promulgated pursuant to the Mississippi Safe Drinking Water Act of 1997 ("MSDWA"), Miss. Code Ann. § 41-26-1 et. seq.

7.      Pursuant to SDWA Section 1413, 42 U.S.C. § 300g-2, the Mississippi State Department of Health ("MSDH" or the "State") has primary responsibility for the implementation and enforcement of the public water supply program in Mississippi.

8.      Requirements of, or permits issued to Respondent under, the MSDWA and its implementing regulations are "applicable requirements" pursuant to Section 1414(i)(4) of the SDWA, 42 U.S.C. § 300g-3(i)(4), and may therefore be enforced by the EPA under Section 1414(g)(1) of the SDWA, 42 U.S.C. § 300g-3(g)(1).

9.      The System consists of two water treatment plants, known as the O.B. Curtis Water Treatment Plant ("O.B. Curtis WTP")[2] and the J.H. Fewell Water Treatment Plant ("J.H. Fewell WTP"),[3] and appurtenant collection, treatment, storage, and distribution facilities.

10.     The surface water sources that contribute to the System are the Ross Barnett Reservoir, which serves O. B. Curtis WTP, and the Pearl River, which serves the J. H. Fewell WTP.

11.     The O.B. Curtis and J.H. Fewell WTPs employ conventional filtration with ultraviolet ("UV") systems to inactivate pathogens. The O.B. Curtis WTP also employs a membrane filtration system for a portion of the water that goes through this WTP. Finished water at the WTPs is disinfected using chloramines.

12.     UV disinfection treatment is installed on each conventional individual filter effluent ("IFE") flow at the O.B. Curtis WTP and on each high service pump at the J.H. Fewell WTP to treat for viruses, including *Cryptosporidium* and *Giardia*. Pursuant to 40 C.F.R. § 141.720(d)(3)(ii), systems must treat at least 95% of the water delivered to the public during each month by UV reactors operating within validated conditions for the required UV dose.

13.     The System is required to provide filtration pursuant to 40 C.F.R. §§ 141.73, 141.173, 141.719(b), and 141.720(d); and disinfection pursuant to 40 C.F.R. §§ 141.72(b) and 141.172.

14.     The term "contaminant" means any physical, chemical, biological, or radiological substance or matter in water." 42 U.S.C. § 300f(6).

15.     Turbidity is a measure of the cloudiness of water. It is used to indicate water quality and filtration effectiveness (such as whether disease-causing organisms are present). Higher turbidity levels are often associated with the potential for higher levels of disease-causing microorganisms.

---

[2] To the EPA's knowledge and belief, the O.B. Curtis WTP was initially constructed in or around 1992.
[3] To the EPA's knowledge and belief, the J.H. Fewell WTP was initially constructed in or around 1914.

16.     Lead, *E. coli*, *Cryptosporidium*, *Giardia*, haloacetic acids (HAA5), and total trihalomethanes (TTHM) are contaminants under the meaning of 42 U.S.C. § 300f(6) and are or may be present in the System.

17.     On November 22, 2019, the EPA issued a Request for Information to Respondent, pursuant to Section 1445 of the SDWA, 42 U.S.C. § 300j-4, and 40 C.F.R. § 141.31, seeking information to determine Respondent's compliance with federal drinking water regulations.

18.     On December 23, 2019, Respondent provided its response to the EPA's Request for Information.

19.     On January 15 and 16, 2020, consistent with the requirements of Section 1445(b)(1), 42 U.S.C. § 300j-4(b)(1), the EPA notified MSDH and Respondent, respectively, of its intent to inspect the System.

20.     On February 3 to 7, 2020, representatives of the EPA conducted an Investigation of the System, pursuant to its authority under Section 1445(b)(1) of the SDWA, 42 U.S.C. § 300j-4(b)(1).

21.     On March 30, 2020, the EPA transmitted a copy of the Civil Investigation Report to the Respondent, which identified a number of concerns related to bacterial contamination and proper disinfection.

22.     Effective April 2, 2020, the EPA issued Respondent an Emergency Administrative Order, Docket No. SDWA-04-2020-2300 ("Emergency Order"), pursuant to Section 1431 of the SDWA, 42 U.S.C. § 300i(a).

23.     In the Emergency Order, the EPA found that Respondent had NPDWR violations and that conditions existed within the System that presented an imminent and substantial endangerment to the health of persons served by the System. The NPDWR violations alleged in the Emergency Order included, but were not limited to:

        a.      At the time of the Investigation, Respondent could not perform membrane integrity testing at O.B. Curtis WTP due to wear and breakage of the system components and compressor, in contravention of 40 C.F.R. § 141.719; and

        b.      NDPWRs require a system's combined filtered water at each plant be less than or equal to 0.3 NTU in at least 95% of the measurements taken each month, and the turbidity level of a system's combined filtered water at each plant must at no time exceed 1 NTU. Turbidity exceedances were reported at both the O.B. Curtis and J.H. Fewell WTPs in the January 2020 monthly operating report ("MOR"). Finished water turbidity reached 1.35 NTU at the O.B. Curtis WTP and 3.00 NTU at the J.H. Fewell WTP. Additionally, at the O.B. Curtis WTP, 93.5% of turbidity samples were equal to or less than the turbidity limit of 0.3 NTU. At the time of the Investigation, the EPA's inspectors observed that the continuous turbidity monitoring equipment at the O.B. Curtis WTP had read inaccurately for approximately three years due to a lack of calibration and maintenance, and that turbidity samples were taken during that time period at a frequency of once per shift, for a total of three times per day. Given that the turbidity monitoring equipment was not operational, the system, to maintain compliance with NPDWRs, should have

3

conducted grab sampling every four hours in lieu of continuous monitoring, but for no more than five working days following the nonoperation of the equipment.

24.     In order to ensure that the System has appropriate treatment equipment and appropriate information to make treatment decisions, and that the water quality is properly measured for compliance with NPDWRs, the Emergency Order required Respondent to submit a Comprehensive Equipment Repair Plan ("CERP") for the EPA's review and approval, including a schedule of implementation, to repair and/or replace monitoring equipment and repair, replace, and/or perform maintenance on the appurtenant treatment equipment. The Emergency Order also required the Respondent to fix the dosing process for disinfection and pH control; to increase reporting and notice requirements for exceedances of turbidity requirements; provide boil water notices to the public as required under 40 C.F.R. Part 141, Subpart Q, and provide notice thereof to the EPA; develop and implement, after specific triggering events, an Alternative Water Source Plan; provide Revised Total Coliform Rule ("RTCR") sampling data to the EPA; provide the information to be summarized in its monthly operating reports on a weekly basis to the EPA; and provide weekly updates on compliance with the Emergency Order.

25.     Although Respondent developed a CERP, the EPA has not approved the CERP as of the Effective Date of this AOC because the parties have not reached mutual agreement on the schedules of implementation for the items included therein. Respondent has reported that some work, including repairs and/or replacement, has been completed or is ongoing. Respondent has not yet fully completed the tasks identified therein, including the repair, replacement and/or maintenance of much of the equipment identified as needing such work.

26.     On May 11, 2020 and April 26, 2021, the EPA issued Notices of Noncompliance to Respondent detailing additional violations beyond those previously identified in the Emergency Order. The allegations contained in these Notices of Noncompliance are detailed more fully below, where such alleged noncompliance has not been fully resolved as of the Effective Date of this AOC and/or where the EPA believes additional compliance measures are required at this time to address such noncompliance.

27.     Miss. Admin. Code § 15-20-72.2.2.1(5) requires that a certified Class A operator shall be onsite whenever the treatment plant for a Class A public water system treating surface water is in operation. The System is a Class A public water system because it has surface water treatment, groundwater under the direct influence of surface water, lime softening, or coagulation and filtration for the removal of constituents other than iron or manganese. See Miss. Admin. Code § 15-20-72.2.2.1(5).

A review of the City's operating logbooks, provided to the EPA by MSDH on March 11, 2020, and records of discussions between the City, the EPA and MSDH indicate that the System is not always fully covered by a Class A certified operator. Therefore, the City is in noncompliance with the MPDWR, Miss. Admin. Code § 15-20-72.2.2.1(5), for failure to maintain certified operators to operate the facilities.

28.     40 C.F.R. § 141.719(b)(3) and Miss. Admin. Code § 15-20-72.1.7.1 require that a PWS must conduct direct integrity testing of membrane units at a frequency of not less than once per day that the membrane unit is in operation to demonstrate removal efficiencies.

4

During the February 2020 Investigation and upon review of the City's subsequent MORs, the EPA found that the City was unable to perform direct integrity testing of the membrane units at O.B. Curtis WTP on a number of occasions due to wear and breakage of components and/or malfunctioning equipment. Therefore, the City failed to comply with 40 C.F.R. § 141.719(b)(3) and Miss. Admin. Code § 15-20-72.1.7.1.

29.     40 C.F.R. § 141.719(b)(4) and Miss. Admin. Code § 15-20-72.1.7.1 require that a PWS conduct continuous indirect integrity monitoring on each membrane unit unless the system implements continuous direct integrity testing of membrane units in accordance with the criteria in 40 C.F.R. § 141.719 (b)(3)(i) through (v). If indirect integrity monitoring includes turbidity and if the filtrate turbidity readings are above 0.15 nephelometric units ("NTU"), the PWS must immediately perform direct integrity testing on the associated membrane unit in accordance with 40 C.F.R. § 141.719(b)(3). Pursuant to 40 C.F.R. § 141.719(b)(3), the direct integrity testing log removal value ("LRV") for the membrane units at the O.B. Curtis WTP must be greater than or equal to the control limit[4] of 4, or else it is considered to have failed the direct integrity testing and the System must remove the membrane unit from service, conduct a direct integrity test to verify any repairs, and may return the membrane unit to service only if the direct integrity test is within the control limit. See 40 C.F.R. § 141.719(b)(3)(v).

As indicated by a review of the City's MORs, on multiple days between March 2020 and April 2021, the indirect integrity monitoring of the membrane units at the O.B. Curtis WTP showed turbidity readings greater than 0.15 NTU. Subsequent direct integrity testing, when able to be performed, showed failures of several of the membrane units due to LRVs lower than the control limit of 4. As stated in the MORs for these periods, the City did not remove these membrane units from service, as required by 40 C.F.R. § 141.719(b)(3)(v). Therefore, the City failed to comply with 40 C.F.R. §§ 141.719(b)(3)(v) and 141.719(b)(4) and Miss. Admin. Code § 15-20-72.1.7.1.

30.     Pursuant to 40 C.F.R. § 141.132(b)(2) and Miss. Admin. Code § 15-20-72.1.3.6, a PWS using chlorine dioxide for disinfection or oxidation must conduct daily monitoring for chlorite.

On February 5, 2020, the EPA observed the System treating with chlorine dioxide at the J.H. Fewell WTP. However, the February 2020 MOR stated that the System did not use chlorine dioxide at the J.H. Fewell WTP on February 5, 2020, nor did the report show that the System conducted the required monitoring on that date for chlorite.[5] Therefore, the City did not conduct daily monitoring and failed to comply with 40 C.F.R. §§ 141.132(b)(2) and Miss. Admin. Code § 15-20-72.1.3.6.

31.     Pursuant to 40 C.F.R. § 141.80(c) and Miss. Admin. Code § 15-20-72.1.3.2, the lead action level is exceeded if the concentration of lead in more than 10% of tap water samples collected during any monitoring period conducted in accordance with 40 C.F.R. § 141.86 is greater than 0.015 mg/L, (i.e., if the "90th percentile" lead level is greater than 0.015 milligrams per liter ("mg/L") (or 15 parts per billion ("ppb"))). Under 40 C.F.R. § 141.80(e), any PWS exceeding the lead action level shall implement all applicable source water treatment requirements specified by the State under

---

[4] Under 40 C.F.R. § 141.719(b)(3)(iv), a System must establish a control limit within the sensitivity limits of the direct integrity test that is indicative of an integral membrane unit capable of meeting the removal credit awarded by the State. This control limit is known as the minimum log removal value and is set by the primary enforcement agency for membrane treatment systems (in this matter, MSDH).

[5] According to the State, Respondent currently has the ability to use chlorine dioxide (ClO₂) for manganese removal at both the J.H. Fewell WTP and O.B. Curtis WTP, but not for disinfection.

40 C.F.R. § 141.83. Pursuant to 40 C.F.R. § 141.83, any PWS exceeding the lead action level must complete source water monitoring and make treatment recommendations to the State within 180 days after the end of the monitoring period during which the lead action level was exceeded. The State then makes a determination regarding source water treatment, and, if necessary, the State may require the PWS to install and operate such treatment.

The System exceeded the lead action level of 0.015 mg/L for the following monitoring periods:January – June 2015; January – June 2016; and July – December 2016. On February 12, 2016, MSDH issued a compliance plan to the City to address the lead action level exceedances ("ALEs"). As a resultof the June 2015 lead ALE, the City conducted an optimal corrosion control treatment ("OCCT") studybetween October 2016 and April 2017 and provided the recommended treatment to MSDH on June 13, 2017. MSDH concurred with the recommended treatment and provided a deadline of May 31, 2019 to complete source water treatment installation. MSDH later extended the completion date to December 2019; yet, the City failed to install OCCT at the J.H. Fewell WTP in accordance with the State's deadline. Therefore, the City failed to comply with 40 C.F.R. §§ 141.80(e) and 141.83 and Miss. Admin. Code § 15-20-72.1.3.2, when it failed to install OCCT and provide applicable source water treatment by the December 2019 deadline. The City subsequently conducted an OCCT study amendment in 2021 and presented its results and recommended source water treatment to MSDH in a February 2021 report. MSDH accepted the results and recommended source water treatment plan on June 4, 2021. Given that the City's report recommended a different source water treatment than identified in its initial 2017 OCCT study, and that MSDH established new deadlines for completion of the source water treatment, the OCCT remains unaddressed at J.H. Fewell WTP as of the Effective Date of this AOC.

32.     Pursuant to 40 C.F.R. § 141.82(g) and Miss. Admin. Code § 15-20-72.1.4.3, all systems optimizing corrosion control shall continue to operate and maintain OCCT, including maintaining water quality parameters ("WQPs") at or above minimum values or within ranges designated by the State under 40 C.F.R. § 141.82(f). A water system is out of compliance with the requirements of 40 C.F.R. § 141.82(g) for a six-month period if it has excursions for any State-specified WQP on more than nine days during the period. An excursion occurs whenever the daily value for one or more of the WQPs measured at a sampling location is below the minimum value or outside the range designated by the State. PWSs are required to report any WQP sampling results to the State, pursuant to 40 C.F.R. § 141.90(a). Additionally, PWSs must provide the public notice of treatment technique requirement violations (such as WQP excursions) within 30 days of learning of the violation, pursuant to 40 C.F.R. § 141.203 and Miss. Admin. Code § 15-20-72.1.5.2.

A review of the City's WQP sampling records indicates that the City failed to comply with the lead and copper rule ("LCR") treatment technique requirements for the applicable pH and/or alkalinity WQPs[6] for at least the following monitoring periods:

-   January – June 2016 (144 days of excursions of WQPs);
-   July – December 2016 (179 days of excursions of WQPs);
-   January – June 2017 (183 days of excursions of WQPs);

--------

[6] In its June 4, 2021 acceptance of the OCCT study amendment recommendations, MSDH set interim WQPs for the System, effective July 1, 2021, and final WQPs, to be effective January 1, 2023. The WQPs referenced in this paragraph are the WQPs in place as of June 4, 2021.

- July – December 2017 (186 days of excursions of WQPs);
- January – June 2018 (167 days of excursions of WQPs);
- July – December 2018 (183 days of excursions of WQPs);
- January – June 2019 (89 days of excursions of WQPs);
- July – December 2019 (59 days of excursions of WQPs);
- January – June 2020 (181 days of excursions of WQPs);
- July – December 2020 (63 days of excursions of WQPs); and
- January – June 2021 (42 days of excursions, through April 28, 2021).

According to the State, the City failed to report the WQP violations to the State and did not provide public notification for the following monitoring periods: July – December 2016; January – June 2017; and July – December2017. Therefore, the City failed to comply with 40 C.F.R. §§ 141.82(g), 141.90(a), and 141.203 and Miss. Admin. Code §§ 15-20-72.1.4.3 and 72.1.5.2 for failure to maintain optimal WQPs and provide the appropriate public notification.

33.     Pursuant to 40 C.F.R. § 141.723(d) and Miss. Admin. Code § 15-20-72.1.4.1, a PWS must correct any significant deficiencies identified in an EPA- or State-conducted sanitary survey in accordance with EPA- or State-approved schedules.

On November 18, 2016, MSDH conducted a sanitary survey, during which MSDH made a finding of inadequate application of treatment chemicals and techniques. On May 12, 2017, MSDH issued a significant deficiency report citing the System for failure to achieve the target hardness and alkalinity goals [i.e., WQPs], and thereafter issued a compliance plan to the System, requiring improvements to the System be completed by December 29, 2019 to bring the System into compliance.The City failed to complete the required compliance measures at the System by the December 29, 2019 deadline established by the State, and, according to the State, has still not completed these compliance measures as of the Effective Date of this AOC. Therefore, the City is in noncompliance with 40 C.F.R. § 141.723(d)and Miss. Admin. Code § 15-20-72.1.4.1.

34.     Pursuant to 40 C.F.R. §§ 141.80(f) and 141.84(a) and Miss. Admin. Code § 15-20-72.1.3.2, a water system that fails to meet the lead action level in tap samples taken pursuant to 40 C.F.R. § 141.86(d)(2), after installing corrosion control and/or source water treatment (whichever sampling occurs later), shall replace lead service lines in accordance with the requirements of 40 C.F.R. § 141.84 and Miss. Admin. Code § 15-20-72.1.1.6(8).

Pursuant to 40 C.F.R. § 141.84(b), a water system shall replace annually at least seven percent (7%) of the initial number of lead service lines in its distribution system. The initial number of lead service lines is the number of lead lines in place at the time the replacement program begins. The system shall identify the initial number of lead service lines in its distribution system, including an identification of the portion(s) owned by the system, based on a materials evaluation, including the evaluation required under § 141.86(a) and legal authorities (e.g., contracts, local ordinances) regarding the portion owned by the system. The first year of lead service line replacement shall begin on the first day following the end of the monitoring period in which the action level was exceeded.

The System exceeded the lead action level of 0.015 mg/L for the following monitoring periods: January – June 2015; January – June 2016; and July – December 2016. Therefore, the City

was required to commence its lead service line replacement program in June 2015. Despite exceeding the lead action level on several occasions, the City has failed to implement a lead service line replacement program at any time from June 2015 to the present.[7] Therefore, the City is in noncompliance with 40 C.F.R. §§ 141.80(f) and 141.84 and Miss. Admin. Code § 15-20-72.1.1.6(8).

35.     Pursuant to 40 C.F.R. § 141.86(a)(1) and Miss. Admin. Code § 15-20-72.1.3.2, each water system shall complete a materials evaluation of its distribution system in order to identify a pool of targeted sampling sites that meets the requirements of this section, and which is sufficiently large to ensure that the water system can collect the number of lead and copper tap samples required in 40 C.F.R. § 141.86(c). Systems shall use the information on lead, copper and galvanized steel that it is required to collect under 40 C.F.R. § 141.42(d) when conducting a materials evaluation, including identifying the presence of certain construction materials in the distribution system.

    As of the Effective Date of this AOC,  Respondent has not provided EPA with a complete materials evaluation, utilizing the information specified in 40 C.F.R. § 141.86(a)(2), to identify potential lead service lines, which was required when the LCR was promulgated in 1991.

36.     Pursuant to 40 C.F.R. § 141.64(b)(2) and Miss. Admin. Code 15-20-72.1.2.6, the maximum contaminant level (MCL) for total HAA5 is 60 micrograms per liter (μg/L), determined as a locational running annual average[8] (LRAA) at each monitoring location. Systems must include the highest LRAA for HAA5 and the range of individual sample results for all monitoring locations expressed in the same units as the MCL. If more than one location exceeds the HAA5 MCL, the System must include the LRAA for all locations that exceed the MCL.

    As stated in a public notice issued by the City to its consumers on March 31, 2021, as required under 40 C.F.R. § 141.629, the City's testing results from 4th Quarter 2020 and 1st Quarter 2021 show that the System exceeded the HAA5 MCL during those periods. The level of HAA5 averaged at one of the System's locations for 4th Quarter 2020 was 66 μg/L, and for 1st Quarter 2021 was 65 μg/L. Therefore, the City is in noncompliance with 40 C.F.R. § 141.64(b)(2) and Miss. Admin. Code 15-20-72.1.2.6.

37.     Based on the findings above, the EPA has determined that the System has numerous SDWA violations, including violations of the NPDWRs.

### III.     AGREEMENT ON CONSENT

    Based on the foregoing FINDINGS, and pursuant to the authority of Section 1414(g) of the SDWA, 42 U.S.C. § 300g-3(g), the EPA is issuing this AOC, to place the Respondent on an enforceable schedule to comply with 40 C.F.R. Part 141 and applicable requirements of Miss. Admin. Code. **The EPA hereby ORDERS and Respondent hereby AGREES**:

---

[7] Although the City has prepared a draft Lead Service Line Replacement Program Plan for the EPA's approval, a review of the EPA's files and correspondence with the City indicates that the Plan has not been finalized, nor has it been implemented by the City to date.
[8] The locational running annual average is the average of sample analytical results for samples taken at a particular monitoring location during the previous four calendar quarters. 40 C.F.R. § 141.2.

38.     <u>Public Notification</u>. Upon the Effective Date of this AOC, Respondent shall carry out the public notice requirements as required by 40 C.F.R. Part 141, Subpart Q for all future violations of the NPDWRs.

39.     <u>Comprehensive Staffing Plan</u>. Within thirty (30) days of the Effective Date of this AOC, Respondent shall provide the EPA with a Comprehensive Staffing Plan. This Plan shall include the staff's primary duty location (i.e., either O.B. Curtis or J.H. Fewell), role(s), and years of experience in that role along with including date of original certification(s). Additionally, Respondent's Plan shall identify how it will ensure that a Class A operator is onsite at all times, including any backup plans in case staff are unavailable.

40.     <u>Comprehensive Equipment Repair Plan</u>. The Comprehensive Equipment Repair Plan is incorporated herein as Appendix A, and includes items to be addressed by Respondent. Immediately upon receipt of this AOC, Respondent shall begin implementation of the tasks described in Appendix A in accordance with the schedules of implementation identified therein, including interim milestones, maintenance schedules, and completion deadlines. If, at any time after the Effective Date of this AOC Respondent determines that revisions are required, including extension of timeframes in accordance with Paragraph 50 below, Respondent shall submit a request for revision to the EPA at least ten (10) days prior to implementing any changes explaining why revisions are required and shall not begin implementing such revisions until EPA approval is received. If the EPA determines, during the term of this AOC, that revisions are required, the EPA will notify Respondent in writing of such revisions and Respondent shall submit such revisions to the EPA within thirty (30) days of receipt of the EPA's determination and shall implement such revisions in accordance with the EPA's approval and any associated schedule. Once a task is completed, Respondent shall submit documentation demonstrating completion. Documentation may include, but is not limited to, state concurrence, a contractor work completion acknowledgement, or another document approved by EPA.

41.     <u>Asset Management Plan Development and Implementation</u>.

a.     Within sixty (60) days of the Effective Date of this AOC, Respondent shall provide a scope of work for the EPA's review and approval for development of an Asset Management Plan. The Asset Management Plan shall include detailed asset inventories (including, at minimum, age, condition, and criticality), operation and maintenance tasks, and long-range financial planning.  The scope of work shall include interim milestones and timeframes for completion of the Asset Management Plan. Completion of the Asset Management Plan shall be accomplished within nine (9) months of the EPA's approval of the scope of work. The Asset Management Plan must include an evaluation of all Respondent's assets to facilitate effective and efficient system-wide operational sustainability. See the attached, "*Asset Management: A Best Practices Guide*," for guidance on this topic.[9] The Asset Management Plan must be developed by a qualified entity, and Respondent shall include in its scope of work a description of the entity that will develop the Plan. See the attached, "*Building an Asset Management Team*."[10] for

---

[9] Additional resources on Asset Management can be found at the following EPA website: https://www.epa.gov/sustainable-water-infrastructure/asset-management-water-and-wastewater-utilities. These resources are provided for informational purposes, and do not constitute regulatory requirements.
[10] Available at https://nepis.epa.gov/Exe/ZyPDF.cgi/P1000LTZ.PDF?Dockey=P1000LTZ.PDF.

guidance on this topic. Interim milestones and timeframes contained in the approved scope of work will be enforceable pursuant to this AOC.

b. The Asset Management Plan shall be submitted to EPA for review and approval in accordance with the timeframes contained in the above referenced scope of work. Upon the EPA's approval of the Asset Management Plan, the Plan shall become an enforceable requirement of this AOC. Respondent shall begin implementation of the Asset Management Plan immediately upon receipt of EPA's approval.

42. <u>LCR Corrosion Control Treatment</u>. Within seven (7) days the Effective Date of this AOC, Respondent shall submit to the EPA, for review and approval, a copy of the OCCT Study Amendment report. A proposed treatment plan shall be submitted as outlined in Appendix A, Item 40. Until EPA concurrence is received on the proposed treatment plan, Respondent shall make any revisions as requested by the EPA. Upon receipt of the EPA's concurrence on the proposed treatment plan, the plan will become an enforceable component of this AOC.

43. <u>LCR Materials Evaluation and Lead Service Line Replacement</u>.

a. Within thirty (30) days of the Effective Date of this AOC, Respondent shall submit to the EPA for review and approval a plan for development of an updated materials evaluation which complies with the requirements of 40 C.F.R. § 141.86 and Miss. Admin. Code § 15-20-72, and shall submit the completed materials evaluation within six (6) months of EPA's approval of the materials evaluation plan.

b. Within thirty (30) days of the completed materials evaluation, Respondent shall develop and provide to the EPA for review and concurrence an updated Lead Service Line Replacement Program Plan ("LSLRPP") that identifies timeframes for implementing the identified activities and addresses EPA's comments. The LSLRPP shall include how Respondent will address current inventory and future inventory; how Respondent plans to begin replacement as required by 40 C.F.R. § 141.84; and how the information gathered through the evaluation steps will be utilized to update the materials evaluation and sample siting plans, as necessary.

c. Within fifteen (15) days of receipt of the EPA's concurrence on the revised LSLRPP, Respondent shall begin implementation of the LSLRPP. This shall continue, at a minimum, until such time as Optimal Corrosion Control has been installed and is determined to be effective based on follow-up sampling.

44. <u>Stage 2 Disinfection Byproducts Requirements.</u>

a. Respondent shall conduct monitoring quarterly for TTHM and HAA5 in accordance with 40 C.F.R. § 141.621(a) and its state approved monitoring plan. Samples shall be analyzed in accordance with 40 C.F.R. § 141.621(b). Respondent shall calculate the LRAAs for TTHM and HAA5 using monitoring results collected, in accordance with 40 C.F.R. § 141.620(d). Specifically, Respondent must calculate compliance with the MCL based on the available data from the most recent four

quarters.

b.       Within thirty (30) days of the Effective Date of this AOC, Respondent shall submit documentation that all public notice requirements specified in 40 C.F.R. Part 141, Subpart Q have been completed for the DBP MCL violations noted in this AOC. Thereafter, Respondent must continue to repeat public notice quarterly until the violations have been resolved.

c.       Respondent shall submit to the EPA, in addition to routine reporting to MSDH, the results of the monitoring required pursuant to 40 C.F.R. § 141.621 by the 10th day of the month following the end of the calendar quarter within which the sample was collected in accordance with 40 C.F.R. § 141.629. Respondent shall report quarterly to the EPA until directed otherwise.

45. Reporting and Notification.

a.       Effective immediately upon the Effective Date of this AOC and until further notice by the EPA, or termination of this AOC pursuant to Section IV, whichever comes first, Respondent shall submit MOR information weekly as follows:

    i.       Reports must run from Sunday to Saturday each week;

    ii.      Weekly reports must be submitted to the EPA by Tuesday of the following week (e.g., for the monitoring timeframe of Sunday, July 5 through Saturday, July 11, the report must be submitted by Tuesday, July 14).

    iii.     Respondent shall report the MOR in the formatting requested by the EPA.

b.       Respondent shall continue to submit the WQP sampling data to the EPA for a period of twelve (12) months following the Effective Date of this AOC, which may be extended by the EPA if data indicates noncompliance or if submission of such data is not timely or complete at any time during this twelve (12)-month period. The data shall be reported as follows:

    i.       WQP results for the entry points to the distribution system sampling shall be included with the weekly MOR submittals.

    ii.      WQP results for the tap sampling shall be submitted within fifteen (15) days of the end of each month (e.g., for the monitoring timeframe of July 1 through July 31, the results must be submitted by August 15, 2021).

c.       Effective immediately upon the Effective Date of this AOC and until further notice by the EPA or Termination of this AOC pursuant to Section IV, whichever comes first, if and when Respondent uses chlorine dioxide for disinfection or oxidation at either J.H. Fewell WTP or O.B. Curtis WTP, Respondent shall conduct daily monitoring for chlorite on each such day. Respondent shall include chlorite

11

monitoring data on a weekly basis with its MOR information, as required under
Paragraph 45(a) above.

d.       Effective immediately upon the Effective Date of this AOC and until further
notice by the EPA, or termination of this AOC pursuant to Section IV, whichever
comes first, Respondent shall submit weekly updates to the EPA as follows:

  i.        Weekly updates shall include the Respondent's progress in complying
           with this AOC and identify any failures to comply with the AOC as well as any
           violations that occurred during the previous week.

  ii.       Reports must run from Sunday to Saturday each week;

  iii.      Weekly updates shall be submitted with the weekly MORs to the EPA by
           Tuesday of the following week (e.g., for the monitoring timeframe of July 1
           through July 31, the results must be submitted by August 3, 2021).

  iv.       Weekly updates shall follow the format provided by the EPA and
           be submitted electronically.

e.       Respondent shall send all reports, notifications, documentation and submittals
required by this AOC in writing via e-mail to:

                 U.S. EPA, Region 4
                 Enforcement and Compliance Assurance Division
                 Attn: Amanda Driskell
                 Email: driskell.amanda@epa.gov

                 AND

                 U.S. EPA, Region 4
                 Enforcement and Compliance Assurance Division
                 Attn: Bryan Myers
                 Email: myers.bryan@epa.gov

f.       All reports, notifications, documentation, and submissions required by this
AOC must be signed by a duly authorized representative of the Respondent and must
include the following statement:

                 "I certify under penalty of law that this document and all attachments
                 were prepared under my direction or supervision in accordance with a
                 system designed to assure that qualified personnel properly gather and
                 evaluate the information submitted. Based on my inquiry of the person or
                 persons who manage the system, or those persons directly responsible for
                 gathering the information, the information submitted is, to the best of my
                 knowledge and belief, true, accurate, and complete. I am aware that there
                 are significant penalties for submitting false information, including the

possibility of fine and imprisonment for knowing violations."

## IV.  FINAL REPORT AND TERMINATION OF AOC

46. Within thirty (30) calendar days after Respondent has fully completed and implemented the actions required by Section III (Agreement on Consent) of this AOC, including work outlined in the CERP, Respondent shall submit for the EPA's review and approval a final report (Final Report) that includes: (a) a description of all of the actions which have been taken toward achieving compliance with this AOC; (b) an assessment of the effectiveness of such actions; and (c) an analysis of whether additional actions beyond the scope of this AOC are necessary to further comply with the SDWA and this AOC.

47. If the EPA determines, after review of the Final Report, that all the requirements of this AOC have been completed and implemented in accordance with this AOC and no further actions are necessary to comply with the SDWA, the EPA will provide notice to Respondent and this AOC shall be deemed terminated.

48. If the EPA determines, after review of the Final Report, that, despite all the requirements of this AOC having been completed and implemented in accordance with this AOC, further actions are necessary to comply with the SDWA, the NPDWRs, and the MPDWRs, the Parties agree that this AOC may be amended to reflect such necessary additional actions. Such amendment must be agreed to in writing to become effective under this AOC.

49. If the EPA determines that any requirement has not been completed and implemented in accordance with this AOC, the EPA will notify the Respondent, provide a list of deficiencies, and may require Respondent to modify its actions as appropriate in order to correct such deficiencies. If so required, Respondent shall implement the modified and approved requirement(s) and submit a modified Final Report in accordance with the EPA notice. Failure by Respondent to implement any of the approved modified requirement(s) shall be a violation of this AOC.

50. Notwithstanding the provisions above, the EPA may extend any timeframe contained in this AOC (including, but not limited to, Appendix A) upon a showing of good cause as to why such timeframe (interim or final) cannot be achieved. Such extensions of time to the tasks in Appendix A shall be in writing, but may be incorporated into a revision to Appendix A and not necessarily in a revision or amendment to this AOC.

## V.  GENERAL PROVISIONS

51. Nothing in this AOC shall constitute a waiver, suspension, or modification of SDWA, the MSDWA, their respective implementing regulations, or terms and conditions of any permit issued thereunder to Respondent, which remain in full force and effect.

52. Failure to comply with the requirements herein shall constitute a violation of this AOC and the SDWA, and may subject the Respondent to penalties as provided in Section

1414(g)(3) of the SDWA, 42 U.S.C. § 300g-3(g)(3), as amended by the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended, and as codified by the EPA at 40 C.F.R. Part 19.

53. Respondent's compliance with this AOC does not necessarily constitute compliance with the provisions of the SDWA, 42 U.S.C. § 300f et seq.; the MSDWA, Miss. Code Ann. § 41-26-1 et. seq.; or their respective implementing regulations.

54. Any sampling done to comply with the terms of this AOC shall be done in a manner consistent with EPA approved methodologies. The EPA reserves the right to require Respondent to conduct additional sampling if the EPA determines that Respondent's sampling is not being conducted in accordance with EPA-approved methodologies.

55. This AOC addresses only those violations alleged herein. Nothing in this AOC shall be construed as relieving the Respondent of its obligation to comply with all applicable provisions of federal, state, or local law, nor shall it be construed to be a ruling on, or determination of, any issue related to any other federal, state, or local permit. Compliance with this AOC shall not be a defense to any actions subsequently commenced pursuant to federal laws and regulations administered by the EPA.

56. Issuance of this AOC shall not be deemed as prohibiting, altering, or in any way limiting the ability of the EPA to pursue any other enforcement actions available to it under law. Such actions may include, without limitation, any administrative, civil, or criminal action to seek penalties, fines, injunctive, or other appropriate relief, or to initiate an action for imminent and substantial endangerment under the SDWA or any other federal or state statute, regulation, or permit.

57. The EPA reserves all rights and remedies, legal and equitable, available to enforce any violation cited in this AOC and to enforce this AOC.

58. Nothing in this AOC is intended to nor shall be construed to operate in any way to resolve any criminal liability of Respondent, or other liability resulting from violations that were not alleged in this AOC.

59. This AOC applies to and is binding upon Respondent and its officers, directors, employees, agents, successors, and assigns.

60. Any change in the legal status of Respondent, including but not limited to any transfer of assets of real or personal property, shall not alter Respondent's responsibilities under this AOC.

61. Respondent admits to the jurisdictional allegations set forth within this AOC.

62. Respondent neither admits nor denies the factual allegations set forth within this AOC.

63. Respondent waives any and all claims for relief and otherwise available rights or remedies to judicial or administrative review which Respondent may have with respect to any issue

14

of fact or law set forth in this AOC, including, but not limited to any right of judicial review of the AOC under the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

64. Each party shall bear its own costs and attorneys' fees in connection with the action resolved by this AOC.

65. Pursuant to Section 1414(g)(2) of the SDWA, 42 U.S.C. § 300g-3(g)(2), the EPA has conferred with and sent a copy of this AOC to the State of Mississippi.

66. Each undersigned representative of the parties to this AOC certifies that he or she is fully authorized to enter the terms and conditions of this AOC and to execute and legally bind that party to it.

## VI.   **EFFECTIVE DATE**

67. This AOC shall become effective on the date on which Respondent receives a fully executed copy of this AOC, after signature by the Director, EPA Region 4 Enforcement and Compliance Assurance Division.

## VII.   **MULTIPLE COUNTERPARTS**

68. This AOC may be executed in counterparts, each of which shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.

FOR THE RESPONDENT:

6/30/2021
_____
Date

Chokwe Antar Lumumba, Mayor
City of Jackson, Mississippi

SO ORDERED this _____ day of __7/1/21__, 20____.

CAROL KEMKER   Digitally signed by CAROL KEMKER
Date: 2021.07.01 10:07:19 -04'00'

Carol L. Kemker, Director
Enforcement and Compliance Assurance Division
Region 4

15

**APPENDIX A**
**Comprehensive Equipment Repair Plan (CERP) Schedule of Implementation**

**APPENDIX A**

**Comprehensive Equipment Repair Plan (CERP) Schedule of Implementation**

| Task# | Plant and/or Category | Task | Deadline or Timeframe |
|---|---|---|---|
| **General Tasks** | | | |
| 1 | Operator/Staffing | City will hire an Instrument Technician for O.B. Curtis | Within 3 months of order effective date. |
| 2 | Operator/Staffing | 2. Provide documentation of completion or 2.A. Submit documentation of funding for an additional two (2) operators for O.B. Curtis. 2.B.City will hire 2 unlicensed operators for O.B. Curtis in FY2020-21. | 2. Within 1 month of order effective date. or 2.A and 2.B Within 6 months of order effective date. |
| 3 | Operator/Staffing | Both operations new hires should be eligible for licensure and must complete testing for Class A Waterworks | Within 7 months of order effective date. |
| **Fewell** | | | |
| 4 | Clari-Trac | Clari-Trac System shall be functioning and operational and repairs completed for all Basins including Butterfly Valves, Actuators, Drives, and Vacuum Hoses.4. Provide documentation of completion or 4.A. Contact Manufacturer and identify necessary work/schedule and submit Scope of Work' to EPA; 4.B. Clari-Trac system shall be fully functional and operational with all repairs completed | 4. Within 1 month of order effective date. or 4.A. Within 30 days of order effective date    4.B. Within 6 months of order effective date |
| 5 | UV Reactors | UV Sensors - Functional and fully operational. 5. Provide documentation of completion or 5.A. Order parts identified on the parts list provided by the Technician report from the 1/19/2021 evaluation. Provide the Technician Report/parts list and date parts were ordered to EPA. 5.B. Return all UV Sensors to fully functional/operational status. | 5. Within 1 month of order effective date. or 5.A. Within 30 days of order effective date 5.B. Within 6 months of order effective date |
| 6 | Filters | 6.COJ will develop a Scope of Work' with timeframes for returning filters to fully operational and functional status. Upon EPA approval of Scope of Work/plan, the CERP will be updated to include the individual tasks and timeframes. | Within 60 days of order effective date |
| 7 | Monitoring Equip | 7.A. Flow Measurement Devices - Research and assessment completed 7.B Flow Measurement Devices -will be functional and fully operational. | 7.A. Within 30 days of order effective date 7.B. Within 6 months of order effective date |

**APPENDIX A**
**Comprehensive Equipment Repair Plan (CERP) Schedule of Implementation**

| Task# | Plant and/or Category | Task | Deadline or Timeframe |
|---|---|---|---|
| 8 | Monitoring Equip | 8. Provide documentation of completion or 8.A. Submit a status report for all turbidimeters, to include current status (operational or not) and what repairs/replacement is needed for each item. 8.B. Return all to fully operational status. | 8. Within 1 month of order effective date. or 8.A. Within 30 days of order effective date 8.B. Within 3 months of order effective date |
| 9 | Intake Structure | Pedestrian Bridge | Within 6 months of order effective date |
| 10 | Entire Plant | Corrosion Control report | Within 30 days of order effective date |
| | Curtis | | |
| 11 | Conventional - Chlorine Room | Weight Indicator - 11.A Parts ordered 11.B Functional and fully operational. | 11.A. Within 30 days of order effective date   11.B. Within 90 days of order effective date |
| 12 | Conventional - Chlorine Room | HS#1 - Documentation showing functioning and operational. | Within 30 days of order effective date |
| 13 | Conventional - All Conventional Basins | Clari-Trac System shall be functioning and operational and repairs completed for all Basins including Butterfly Valves, Actuators, Drives, and Vacuum Hoses. 13.A. Contact Manufacturer and identify necessary work/schedule and submit Scope of Work to EPA*; 13.B. Clari-Trac system shall be fully functional and operational with all repairs completed | 13.A. Within 30 days of order effective date   13.B. Within 7 months of order effective date |
| 14 | Conventional - Turbidimeters for Basis 1, 2, 3 | 14. Provide documentation of completion or 14.A. Submit a status report for all turbidimeters, to include current status (operational or not) and what repairs/replacement is needed for each item. 14.B. Return all to fully operational status. | 14. Within 1 month of order effective date. or 14.A. Within 30 days of order effective date   14.B. Within 3 months of order effective date |
| 15 | Conventional - UV Filter Gallery | UV #5 - Operational and Fully functional | Within 30 days of order effective date |
| 16 | Membrane - HS#2 | Chlorine analyzers - Operational and Fully functional. Provide documentation of replacement of one chlorine analyzer and installation of second chlorine analyzer | Within 1 month of order effective date. |
| 17 | Membrane - Blower Room | Blower C - 17. Provide documentation of completion or 17.A Assessment of root cause completed 17.B Submit plan to address the concerns identified in assessment. Upon EPA approval of the plan, Appendix A will be updated to include those individual tasks and timeframes | 17. Within 1 month of order effective date. or 17.A. Within 30 days of order effective date   17.B. Within 60 days of order effective date |
| 18 | Conventional-Intake | Microscreens -18. Provide documentation of completion or 18.A. Submit status report for the microscreens, include current status and any needed repairs/replacement; 18.B. Complete any needed repairs/replacement | 18. Within 1 month of order effective date. or 18.A. Within 30 days of order effective date   18.B. Within 60 days of order effective date |
| 19 | Conventional-Intake | 60-inch sluice gate - 19. Provide documentation of completion or 19.A. Submit status report, include current status and any needed repairs/replacement; 19.B. Complete any needed repairs/replacement | 19. Within 1 month of order effective date. or 19.A. Within 30 days of order effective date   19.B. Within 60 days of order effective date |

**APPENDIX A**
**Comprehensive Equipment Repair Plan (CERP) Schedule of Implementation**

| Task# | Plant and/or Category | Task | Deadline or Timeframe |
|---|---|---|---|
| 20 | Conventional-Intake | 72-inch sluice gate - 20. Provide documentation of completion or 20.A. Submit status report, include current status and any needed repairs/replacement; 20.B. Complete any needed repairs/replacement | 20. Within 1 month of order effective date. or 20.A. Within 30 days of order effective date   20.B. Within 60 days of order effective date |
| 21 | Both - Intake | Roof Repairs/Potassium Permanganate feeder | Within 3 months of order effective date. |
| 22 | Membrane - Intake | Microscreens -22. Provide documentation of completion or 22.A. Submit status report for the microscreens, include current status and any needed repairs/replacement; 22.B. Complete any needed repairs/replacement | 22. Within 1 month of order effective date. or 22.A. Within 30 days of order effective date   22.B. Within 60 days of order effective date |
| 23 | Membrane - Intake | 60-inch sluice gate - 23. Provide documentation of completion or 23.A. Submit status report, include current status and any needed repairs/replacement; 23.B. Complete any needed repairs/replacement | 23. Within 1 month of order effective date. or 23.A. Within 30 days of order effective date   23.B Within 60 days of order effective date |
| 24 | Membrane - Sludge Plant Handling Facility | Gravity Thickener #1 and #2 - Functional and Fully Operational | Within 5 months of order effective date. |
| 25 | Both - Filters | Filter Rehab - Submit detailed Scope of Work'- Upon approval of the Scope of Work, the tasks will be updated to include additional milestones and final completion of this task. | Within 60 days of order effective date |
| 26 | Membrane - Trains #1-6 | 26.A. Submit a report on the current status and any needed repairs/replacement for each membrane train and its components including sluice gate, flocculator, centrifuge, reject valve, turbidimeter and rapid mixer. 26.B. Submit detailed Scope of Work* to address the identified concerns, including any sequencing. Upon approval of the Scope of Work, the tasks will be updated to include additional milestones and final completion of this task. | 26.A. Within 30 days of order effective date   26.B. Within 60 days of order effective date |
| 27 | Membrane - Cover | Complete Membrane Basin Building Structure Project. | Within 6 months of order effective date |
| 28 | Conventional - Soda Ash System | dilution system - - Functional and Fully Operational - Provide documentation of completion or repair the dry powder level indicators | Within 30 days of order effective date |

**Groundwater System-Storage Tank**

| Task# | Plant and/or Category | Task | Deadline or Timeframe |
|---|---|---|---|
| 29 | Storage Tanks | Maddox Rd (Hwy 18) - Provide documentation that tank is fully functioning and operational. | Within 30 days of order effective date |
| 30 | Storage Tanks | TV Rd Booster Station - Submit plan for bringing back into service. | Within 6 months of order effective date |

**APPENDIX A**
**Comprehensive Equipment Repair Plan (CERP) Schedule of Implementation**

| Task# | Plant and/or Category | Task | Deadline or Timeframe |
|---|---|---|---|
| 31 | Wells | Provide a status and plan for each of the wells, include a status of each well, identify any need repairs/replacement, and propose timeframe for addressing these repairs/replacement including any interim steps. Upon EPA approval of the plan, Appendix A will be updated to include those individual tasks and timeframes for each well. | Within 60 days of order effective date |
| 32 | Well House | Well Houses - Submit Scope of Work* including proposed timeframes. Upon EPA approval of the Scope of Work, Appendix A will be updated to include those individual tasks and timeframes. | Within 60 days of order effective date |

**Dosing Automation**

| Task# | Plant and/or Category | Task | Deadline or Timeframe |
|---|---|---|---|
| 33 | Curtis | O.B. Curtis: Submit detailed Scope of Work*, that includes schedule of tasks and timeframes for completion of interim and final tasks. Upon approval of the Scope of Work, Appendix A will be amended to add additional tasks/timeframes for completion of automation. | Within 60 days of order effective date |
| 34 | Curtis | Ammonia/Chlorine Feeds: All chlorinator and ammoniator equipment and appurtenances will be fully functional with automatic, flow-pacing capabilities in service and redundancy present. Submit detailed Scope of Work*, that includes schedule of tasks and timeframes for completion of interim and final tasks. Upon approval of the Scope of Work, Appendix A will be amended to add additional tasks/timeframes for completion of automation. | Within 60 days of order effective date |

**APPENDIX A**
**Comprehensive Equipment Repair Plan (CERP) Schedule of Implementation**

| Task# | Plant and/or Category | Task | Deadline or Timeframe |
|---|---|---|---|
| 35 | Curtis | ACH (Aluminum Chlorohydrate) (coagulant): The treatment system was installed by using the same method as the Alum/lime system that was previously being used and not tweaked for the new ACH coagulant. Studying the coagulation system to determine if CO2 treatment addition will be helpful in improving the treatment system for future automation. Submit detailed Scope of Work*, that includes schedule of tasks and timeframes for completion of interim and final tasks. Upon approval of the Scope of Work, Appendix A will be amended to add additional tasks/timeframes for completion of automation. | Within 60 days of order effective date |
| 36 | Curtis | O.B. Curtis: Potassium Permanganate Feeds: flow pacing or feedback loop. Submit detailed Scope of Work*, that includes schedule of tasks and timeframes for completion of interim and final tasks. Upon approval of the Scope of Work, Appendix A will be amended to add additional tasks/timeframes for completion of automation. | Within 60 days of order effective date |
| 37 | Curtis | O.B. Curtis: Fluoride - Submit detailed Scope of Work*, that includes schedule of tasks and timeframes for completion of interim and final tasks. Upon approval of the Scope of Work, Appendix A will be amended to add additional tasks/timeframes for completion of automation. | Within 60 days of order effective date |
| 38 | Curtis | O.B. Curtis: pH metering information: Replaced/Repaired and are being calibrated as required. Information from the meters is not fed directly into the chemical feeding systems, but manually by operators. This can result in missing peaks. Submit detailed Scope of Work*, that includes schedule of tasks and timeframes for completion of interim and final tasks. Upon approval of the Scope of Work, Appendix A will be amended to add additional tasks/timeframes for completion of automation. | Within 60 days of order effective date |

**APPENDIX A**
**Comprehensive Equipment Repair Plan (CERP) Schedule of Implementation**

| Task# | Plant and/or Category | Task | Deadline or Timeframe |
|---|---|---|---|
| 39 | Curtis | O.B Curtis: Raw Water Flow Meter - Conventional plant (related to the Clari-Trac System): Not currently running automatically. Submit detailed Scope of Work*, that includes schedule of tasks and timeframes for completion of interim and final tasks. Upon approval of the Scope of Work, Appendix A will be amended to add additional tasks/timeframes for completion of automation. | Within 60 days of order effective date |
| 40 | Fewell | The dosing equipment has always been run in manual for disinfection and pH at the Fewell plant. 40.A. Submit a plan to complete research/assessment; 40.B. Based on research, submit work proposal, which should include a proposed treatment plan; 40.C. Complete work. | Task 40.A will be due one month after approval of OCCT Study Findings Plan and Task 40.B will be due two months after approval. Upon approval, Appendix A will be updated to include completion timeframe for Task40.C A proposed treatment plan shall include a scope of work, timeframes for completion of any necessary treatment modifications, and identify funding for implementation of the treatment plan. |

*The Scope of Work (SOW) submitted to the EPA must contain detailed descriptions of all work necessary to successfully complete the Task listed in this AOC. The SOW must include all interim steps, including completion dates and/or timeframes to complete each interim step. In addition to completion dates/timeframes for each interim step, the SOW must also contain the deadline (date) for the completion of the entire Task. Scope of Works may be combined if tasks will all be a part of same project.

The EPA understands that the City may not be able to provide exact completion dates due to the complex nature of some Tasks included in the AOC. If the City is unable to project exact dates of completion for each interim step necessary to complete a Task, the City must, at a minimum, describe the interim steps necessary to complete each Task, along with timeframes that the City reasonably expects to be necessary for each interim step to be completed. For example, if the City has a requirement to submit and receive approval of a "Plans and Specs" document to the MSDH as an interim step, the SOW could include a statement similar to, "The City will submit "Plans and Specs" document for review and approval to the MSDH. Within two (2) weeks of MSDH approval of "Plans and Specs" document, the City will put the work out for bid."

This level of detail must be provided for each interim step necessary to complete each Task identified in the AOC. Without specific, detailed SOWs, including interim steps and completion dates or timeframes for completion, the EPA is unable to adequately review and approve the SOW proposed by the City.

JS 44   (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karl Fingerhood, Angela Mo, Stefan Bachman, Devon Flanagan, U.S. Department of Justice, Environmental Enforcement Section: (202) 514-7519

## DEFENDANTS

The City of Jackson, Mississippi

County of Residence of First Listed Defendant   **Hinds** _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Catoria P. Martin, City Attorney, City of Jackson, MS, 455 East Capitol Street, P.O. Box 2779, Jackson, MS  39207

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [x] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | **PERSONAL INJURY** | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 365 Personal Injury - Product Liability | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | **PERSONAL PROPERTY** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 370 Other Fraud | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 371 Truth in Lending | **LABOR** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 380 Other Personal Property Damage | [ ] 710 Fair Labor Standards Act | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | [ ] 385 Property Damage Product Liability | [ ] 720 Labor/Management Relations | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 751 Family and Medical Leave Act | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | [ ] 790 Other Labor Litigation | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | [ ] 791 Employee Retirement Income Security Act | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | |
| | | [ ] 550 Civil Rights | | |
| | | [ ] 555 Prison Condition | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | |

Additional BANKRUPTCY / SOCIAL SECURITY / FEDERAL TAX SUITS entries:

**SOCIAL SECURITY**
[ ] 861 HIA (1395ff)
[ ] 862 Black Lung (923)
[ ] 863 DIWC/DIWW (405(g))
[ ] 864 SSID Title XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
[ ] 870 Taxes (U.S. Plaintiff or Defendant)
[ ] 871 IRS—Third Party 26 USC 7609

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §§ 300f to 300j-27

Brief description of cause:
Complaint for relief for violations of and imminent and substantial endangerment under Safe Drinking Water Act

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
Nov 29, 2022

SIGNATURE OF ATTORNEY OF RECORD
/s/ Karl Fingerhood

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
Northern Division**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:22cv686-HTW-LGI |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF JACKSON, MISSISSIPPI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

The Court has considered the United States' unopposed motion asking the Court to enter the proposed Interim Stipulated Order. Dkt. No. 2. For the reasons stated in the memorandum in support of the motion and in the light of the fact that the motion is unopposed, and that the proposed order is signed by all parties thereto, the Court grants the unopposed motion. Consequently, said motion is GRANTED and the Interim Stipulated Order is ENTERED. The interim order will be filed as a separate docket entry.

SO ORDERED AND ADJUDGED this the 29th day of November, 2022.

/s/HENRY T. WINGATE_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
(Northern Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.   3:22-cv-00686-HTW-LGI |
| | ) | |
| v. | ) | |
| | ) | **INTERIM STIPULATED ORDER** |
| | ) | |
| THE CITY OF JACKSON, MISSISSIPPI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# I. <u>BACKGROUND</u>

**WHEREAS**, Plaintiff the United States of America, on behalf of the United States

Environmental Protection Agency ("EPA"), filed a Complaint in this matter;

**WHEREAS**, the City of Jackson, Mississippi (the "City") owns and operates a public

drinking water system consisting of the surface water system identified as PWS ID

No. MS0250008, the groundwater system identified as PWS ID No. MS0250012, and

appurtenant treatment, storage, and distribution facilities (collectively, the "System"), pursuant to

the Safe Drinking Water Act, 42 U.S.C. § 300f *et seq.* ("SDWA");

**WHEREAS**, the surface water system includes but is not limited to two water treatment

plants, O.B. Curtis Water Treatment Plant ("O.B. Curtis") located at 100 O.B. Curtis Drive,

Ridgeland, Madison County, Mississippi and J.H. Fewell Water Treatment Plant ("J.H. Fewell"),

located at 2302 Laurel Street, Jackson, Hinds County, Mississippi;

**WHEREAS**, pursuant to SDWA Section 1413, 42 U.S.C. § 300g-2, the Mississippi State

Department of Health ("MSDH") has primary responsibility for the implementation and

enforcement of the public water supply program in the State of Mississippi;

**WHEREAS**, pursuant to SDWA Sections 1414 and 1431, 42 U.S.C. §§ 300g-3 and 300i,

EPA also has authority to enforce the provisions of the SDWA to address, *inter alia*, violations

of the SDWA and/or conditions that may present an imminent and substantial endangerment to

the health of persons;

**WHEREAS**, pursuant to SDWA Section 1414(b), 42 U.S.C. § 300g-3(b), MSDH

requests EPA to commence this civil action;

**WHEREAS**, the Complaint alleges that the City has violated and/or is in violation of the

SDWA and contaminants are in or likely to enter the System that present and may present an

imminent and substantial endangerment to the health of persons; the Complaint also alleges

noncompliance with: EPA Emergency Administrative Order, Docket No. SDWA-04-2020-2300

(effective Apr. 2, 2020, as amended) ("Emergency Order"); the EPA Administrative Compliance

Order on Consent, Docket No. SDWA-04-2020-2301 (effective July 1, 2021) ("Consent Order");

and the National Primary Drinking Water Regulations ("National Regulations"), promulgated at

40 C.F.R. Part 141 pursuant to Section 1412 of the SDWA, 42 U.S.C. § 300g-1, and the

Mississippi Primary Drinking Water Regulations ("State Regulations"), promulgated pursuant to

the Mississippi Safe Drinking Water Act of 1997, Miss. Code Ann. § 41-26-1 *et seq.*

("Mississippi SDWA");

      **WHEREAS**, on July 29, 2022, MSDH issued a boil-water notice for the System;

      **WHEREAS**, on August 29, 2022, the City proclaimed an emergency as a result of

excessive rainfall and extreme flooding, which prevented parts of the System from delivering

any running potable water to most of the approximately 160,000 persons served by the System,

thereby foreclosing use of running water for basic drinking, hygiene, and safety purposes such as

washing hands, showering, flushing toilets, fighting fires, and washing dishes;

      **WHEREAS**, on August 30, 2022, the Mississippi Governor proclaimed an emergency,

and MSDH declared a public drinking water supply emergency;

      **WHEREAS**, on August 30, 2022, the President of the United States declared an

emergency in the State of Mississippi and ordered federal assistance to supplement the state's

response efforts;

      **WHEREAS**, water pressure and water service was restored to persons served by the

System on or about September 6, 2022;

**WHEREAS**, the July 29, 2022, boil-water notice remained in effect until September 15, 2022;

**WHEREAS**, a Unified Command, staffed by, among others, representatives from MSDH, the Mississippi Emergency Management Agency ("MEMA"), the Mississippi Department of Environmental Quality ("MDEQ"), the Federal Emergency Management Agency ("FEMA"), EPA, the United States Army Corps of Engineers, and the City, was established to address this emergency;

**WHEREAS**, the United States, MSDH, and the City (collectively, the "Parties") recognize that the System continues to experience instability and intend for this Interim Stipulated Order ("Stipulated Order") to serve as an interim measure to increase the System's stability while the Parties either litigate this matter to conclusion or attempt to negotiate a judicially enforceable consent decree to achieve long-term sustainability for the System and the City's compliance with the SDWA, Emergency Order, Consent Order, National Regulations, and State Regulations;

**NOW THEREFORE**, the Parties agree and stipulate, and the Court ORDERS:

## II. <u>JURISDICTION AND VENUE</u>

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 and Sections 1414 and 1431(a) of the SDWA, 42 U.S.C. §§ 300g-3, 300i(a), and over the Parties. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and 1395(a), and Sections 1414(b) and (g)(3)(C) and 1431(a) of the SDWA, 42 U.S.C. §§ 300g-3(b) and (g)(3)(C), 300i(a), because it is the judicial district where the City is located, where a substantial part of the events or omissions giving rise to the claims occurred, and where the alleged violations occurred.

3

2.      For purposes of this Stipulated Order, or any actions to enforce this Stipulated

Order, the City and MSDH consent to the Court's jurisdiction over this Stipulated Order and in

any such action the City and MSDH consent to venue in this judicial district.

### III. DEFINITIONS

3.      Unless otherwise expressly provided in this Stipulated Order, terms used in this

Stipulated Order that are defined by the SDWA and the regulations promulgated thereunder shall

have the meanings ascribed to them therein. Whenever the terms set forth below are used in this

Stipulated Order, the following definitions shall apply:

"City" shall mean the City of Jackson, Mississippi.

"City Council" shall mean the duly elected Jackson City Council pursuant to Miss. Code

Ann. § 21-8-7.

"Day" or "Days" shall mean a calendar day or calendar days. In computing any period of

time under this Stipulated Order, where the last day would fall on a Saturday, Sunday, or federal

holiday, the period shall run until the close of business of the next working day.

"Director of Public Works" shall mean the Director of the City of Jackson's Public

Works Department, or of any successor department of the City of Jackson, and may include any

persons within the Public Works Department with the appropriate delegated authority to act on

behalf of the Director of Public Works.

"Effective Date" shall mean the date of entry of this Stipulated Order by the Court.

"EPA" shall mean the United States Environmental Protection Agency and any successor

departments or agencies of the United States.

"Mayor" shall mean the duly elected Mayor of the City of Jackson, pursuant to Miss.

Code Ann. § 21-8-7, and may include any persons with the appropriate delegated authority to act

on behalf of the Mayor.

4

"Month" shall mean calendar month.

"MPSC" shall mean the Mississippi Public Service Commission and any successor department or agency of the State of Mississippi.

"MSDH" shall mean the Mississippi State Department of Health and any successor department or agency of the State of Mississippi.

"New Contracts" shall mean all City contracts pertaining to the System or WSBA entered into after the Effective Date of this Stipulated Order.

"Office of the City Attorney" shall mean the City of Jackson's Office of the City Attorney, as defined in Section 2-216 of the Code of Ordinances, City of Jackson, Mississippi, and any successor department or office of the City, and shall include any outside counsel retained by the City for representation in this matter.

"Paragraph" shall mean a portion of this Stipulated Order identified by an Arabic numeral.

"Parties" shall mean the United States, MSDH, and the City of Jackson.

"Pre-Existing Contracts" shall mean all City contracts pertaining to the System and WSBA in existence as of the Effective Date.

"Public Works Department" shall mean the City of Jackson Department of Public Works and any successor department or office of the City of Jackson.

"Quarter" and "Quarterly" shall refer to the calendar year quarters beginning on January 1, April 1, July 1, and October 1.

"Rate" shall mean rates and amounts required to be paid for water services per month by customers of the City waterworks as prescribed in Section 122-268 and Section 122-269 of the Code of Ordinances, City of Jackson, Mississippi.

"Section" shall mean a portion of this Stipulated Order identified by a Roman numeral, unless the Stipulated Order states that the "Section" referred to is a section of a statute or regulation.

"Sewer System" shall mean the WCTS and the WWTPs.

"WCTS" or "Wastewater Collection and Transmission System" shall mean the municipal wastewater collection, retention and transmission system, including all pipes, force mains, gravity sewer lines, pump stations, pumps, manholes, and appurtenances thereto, which are owned or operated by the City.

"WWTPs" or "Wastewater Treatment Plants" shall mean devices or systems used in the storage, treatment, recycling, and reclamation of municipal wastewater. For purposes of this Stipulated Order, this definition shall include all facilities owned, managed, operated, and maintained by the City, including but not limited to the following treatment facilities: the Savanna Street WWTP located at 3810 I-55 South & Savanna Street, Jackson, Mississippi 39121; the Trahon/Big Creek WWTP located at One Apache Dr., Landfill Road, Byram, Mississippi; the Presidential Hills WWTP located at Franklin D. Roosevelt Dr. W, Jackson, Mississippi; and all components of such wastewater treatment plants.

"Water/Sewer Business Administration Division" or "WSBA" shall mean the division within the Department of Public Works responsible for all aspects of billing customers for and collecting payments from customers for water, sewer, and sanitation services, which currently includes the responsibility for (i) establishing customer service agreements and setting up the associated account(s), including, where necessary, the setting and commissioning of new meters; (ii) collecting water and sewer consumption data using meters and an advanced metering infrastructure system and, where necessary, obtaining manual meter reads; (iii) processing the

6

collected data using a billing software system; (iv) generating bills for water and sewer services based directly on the consumption data and the associated volumetric rate and for sanitation services based on a flat charge; (v) causing bills to be mailed to customers, including coordination with the Water/Sewer Utilities Division in mailing out required notices;  (vi) responding to customer issues about bills; (vii) collecting and processing customer payments; and (viii) providing administrative hearings to customers for billing disputes and representing the interests of the Water/Sewer Utilities Division in such administrative hearings and any appeals of the decision of the hearing officer.

"Water/Sewer Utilities Division" shall mean the City of Jackson's Water/Sewer Utilities Division of the Department of Public Works and any successor division or department of the City of Jackson.

## IV. INTERIM THIRD-PARTY MANAGER

4.      **Interim Third-Party Manager.** Edward "Ted" Henifin is hereby appointed as Interim Third-Party Manager ("ITPM") of the System and WSBA.

5.      **Objectives.** The ITPM shall pursue the following objectives:

a.      To operate, maintain, manage and control the System in compliance with the SDWA, Mississippi SDWA, and their implementing regulations, and to implement capital improvements to the System, including those identified in the Priority Project List (attached hereto as Appendix A), and operate, maintain, manage, and control WSBA, consistent with the terms of this Stipulated Order;

b.      To comply with all the requirements of this Stipulated Order, including but not limited to: (i) implementing each phase of the projects included in the Priority Project List, in accordance with the Priority Project List Implementation Schedule ("Implementation Schedule") and to the extent that funding is available in the Capital Improvements Account for

each such phase of the projects on the List; (ii) advising, consulting, and collaborating with the Director of Public Works, and consulting with EPA and MDEQ, in making financial, managerial, planning, and operational decisions about the System and/or WSBA where such decisions have the potential to materially impact the Sewer System; (iii) and performing all reporting requirements outlined in Paragraph 16 (ITPM Reporting Requirements) herein; and

    c.  To abate conditions of the System that present or may present an imminent and substantial endangerment to the health of persons served by the System to the extent practicable.

    6.  **<u>Responsibilities and Authority of ITPM</u>.** Except as otherwise provided in this Stipulated Order, in accordance with Fed. R. Civ. P. 66, the ITPM shall have the full power and authority necessary to carry out the requirements of this Stipulated Order and all powers and authority under all applicable state and federal law, and assumes all of the responsibilities, functions, duties, powers, and authority of the City insofar as they affect the City's compliance with this Stipulated Order and shall:

    a.  Operate, maintain, manage, and control the System, including implementation of projects on the Priority Project List in accordance with the Implementation Schedule, consistent with the terms of this Stipulated Order;

    b.  Operate, maintain, manage, and control WSBA, consistent with the terms of this Stipulated Order;

    c.  Regularly consult with the Director of Public Works on all aspects of complying with this Stipulated Order and advise, consult, and collaborate with the Director of Public Works and consult with EPA and MDEQ on matters that may, in the judgment of the ITPM, materially impact the Sewer System.

      d.      Pay any and all bills related to the System and WSBA from the ITPM Professional Budget, O&M Account, and/or Capital Improvements Account (as defined herein), as appropriate;

      e.      Direct the ITPM's staff and agents including officers, managers, accountants, consultants, professionals, contractors, engineering firms, and counsel (collectively, "ITPM Agents"); City employees; and City contractors in the operation,  maintenance, management, and control of the System, in the undertaking of projects on the Priority Project List, and the performance of duties associated with this Stipulated Order;

      f.      Direct ITPM Agents, City employees, and City contractors in the operation, maintenance, management, and control of WSBA and the performance of duties associated with this Stipulated Order;

      g.      Respond to notices of violation, information requests, and lawful orders regarding the System from local, state, and federal governments;

      h.      Complete, sign, and verify reports required under the SDWA, Mississippi SDWA, and this Stipulated Order or required under any grants or loans or other financial instruments (including but not limited to Municipality and County Water Infrastructure grants and State Revolving Fund loans);

      i.      Access, without limitations, the staff, documents, books, records, electronic data, and facilities of the City deemed necessary by the ITPM for carrying out this Stipulated Order and make such employees and items available to any ITPM Agent;

      j.      Hire any ITPM Agent that the ITPM deems necessary for the performance of administrative, financial, advisory, legal, technical, and accounting services;

      k.      Enter into contracts, as provided herein, on behalf of the City, necessary for the operation and maintenance of the System and/or WSBA;

9

l.      Hire and/or contract directly with such operators or ITPM Agents that are necessary for the undertaking of projects on the Priority Project List or preparing financial reports or legal documents associated therewith;

m.      Make such purchases as the ITPM deems necessary for the benefit of the System and/or WSBA from the ITPM Professional Budget, the O&M Account, and the Capital Improvements Account. In exercising procurement authority and awarding New Contracts, the ITPM need not comply with Miss. Code Ann. § 31-7-13 but will use best efforts to have the procurement process be competitive, transparent, and efficient;

n.      Perform, modify, or terminate Pre-Existing Contracts. The ITPM's ability to modify or terminate Pre-Existing Contracts shall be governed by the contract's terms or as allowed by law. The ITPM shall consult with the Office of the City Attorney in modifying or terminating Pre-Existing Contracts;

o.      Enter into New Contracts related to the System and/or WSBA and funded from the ITPM Professional Budget, the O&M Account and/or the Capital Improvements Account. The terms and conditions of any New Contracts entered into by the ITPM that are funded from the ITPM Professional Budget, O&M Account, or Capital Improvements Account shall be based on a form contract agreed upon by the ITPM and the City. The ITPM shall consult with the Office of the City Attorney in negotiating New Contracts whose terms extend beyond one (1) year after the Effective Date. The ITPM's ability to modify or terminate New Contracts shall be governed by the contract's terms or as allowed by law;

p.      Develop, within sixty (60) Days of the Effective Date, through a professional financial advisor, a Financial Management Plan for the System and WSBA that takes into consideration the short-term (12-18 Months), mid-term (1.5 to 5 years), and long-term (more than 5 years) operation and maintenance and capital improvement funding needs of the

10

System and WSBA; identifies possible sources of funding for those needs and includes an

implementation plan and schedule for seeking such funding; identifies opportunities for debt

restructuring relevant to the System and/or WSBA and includes a plan and schedule for seeking

such debt restructuring; and may include suggested Rate structure changes or alternative

governance options, including the mechanism for assessing customers for water and sewage

usage and appropriate accompanying Rates; and update the Financial Management Plan as

warranted;

      q.     Within thirty (30) Days of receipt by the City of a Financial Management

Plan, and annually until the termination of this Stipulated Order, meet with the City to discuss

the need to adjust the Rate structure, the Rates under the existing or a modified Rate structure,

and any fees that the City charges customers for water utilities:

      i.     If, in reliance on the latest Financial Management Plan and after

consulting with the Mayor and the Mayor's staff, the ITPM deems a modification of the

Rate structure or a Rate or fee increase appropriate to meet the requirements of this

Stipulated Order, the Mayor shall, in accordance with Title 21, Chapter 13, of the Miss.

Code Ann., propose an amendment, consistent with the ITPM's recommendation, to

Sections 122-268 and/or 122-269, Code of Ordinances of Jackson, Mississippi, to be

placed on the agenda of the next scheduled regular City Council meeting;

      ii.     In the event the City Council does not pass an amendment

proposed by the Mayor in accordance with the preceding sub-Paragraph and more than

365 Days have passed from the date of the last Rate adjustment, the ITPM shall have the

full power and authority to adjust the Rates, Rate structure, and/or fees without the

necessity of any actions on the part of the City Council and with thirty (30) Days' notice

to the Mayor, Director of Public Works, the City Council, and the System's customers

11

published in accordance with Miss. Code Ann. § 21-13-11 and published on the ITPM's website;

   iii.  For customers more than one (1) mile outside the corporate limits of the City, the ITPM shall have the authority to apply for Rate increases or modifications to the Rate structure to the MPSC;

   r.  Seek out, apply for, and execute state and federal grants, loans, and other sources of funds for the implementation of this Stipulated Order (including but not limited to Municipality and County Water Infrastructure grants and State Revolving Fund loans), subject to the limitations of Paragraph 7 (Limitations of ITPM's Authority);

   s.  Modify, update, or reprioritize the Priority Project List and the Implementation Schedule, consistent with Paragraph 18 (EPA Review);

   t.  Notwithstanding sub-Paragraph 6.m, comply with the terms, conditions, and assurances of any current or future grant or loan that funds the System, or—if compliance is not practicable—comply to the extent practicable;

   u.  In the ITPM's judgment, except as otherwise required herein, consult with EPA and/or MSDH with respect to any aspect of complying with this Stipulated Order, and secure technical advice or assistance from EPA and/or MSDH for the purpose of ensuring compliance with the SDWA and all other applicable laws and regulations;

   v.  Cause to be issued any notices to customers, EPA, and/or MSDH required under the SDWA, Mississippi SDWA, and their implementing regulations; and

   w.  Cause to be compiled and issued any reports to customers required under the SDWA, Mississippi SDWA, and their implementing regulations, including but not limited to the Annual Consumer Confidence Report.

12

7.     **Limitations of ITPM's Authority.** Unless otherwise ordered by the Court, the ITPM shall not:

    a.     Encumber or sell any real property asset of the City;

    b.     Propose or agree to consolidate the System with any other public or private utilities;

    c.     Authorize another governmental agency to operate a public water system within the System's current service areas; or

    d.     Apply for a loan in excess of the amount of additional debt capacity recommended in the latest Financial Management Plan.

8.     **ITPM/City Disputes.**  Disputes between the ITPM and the City shall be limited to disputes relating to: (i) Rate increases, (ii) grant applications and State Revolving Fund loan applications in excess of the amount of additional debt capacity recommended in the latest Financial Management Plan, (iii) the form contract for New Contracts, (iv) issues that arise under this Stipulated Order relating to the O&M Account, or (v) decisions regarding the System and/or WSBA that have the potential to materially adversely impact the Sewer System. A dispute will be initiated by either the ITPM or the City serving on the other a written notice of dispute, with a copy to both EPA and MSDH. The ITPM and the City will engage in informal discussion in an attempt to resolve any dispute. If the City and the ITPM cannot resolve the dispute within thirty (30) Days of the invocation of informal discussions, either the ITPM or the City may file a request to this Court for resolution. The United States and MSDH shall be permitted to file statements of position with respect to any disputes submitted to this Court within 30 days of the ITPM's or the City's filing of the motion for dispute resolution.

9.     **Liability of the ITPM.**

    a.     The ITPM is subject to the oversight of the Court.

13

b.       Except for instances of willful misconduct or gross negligence, the ITPM and ITPM Agents shall have the status of officers and agents of this Court, and shall be vested with the same immunities as vested with this Court. No suit shall be filed against the ITPM or ITPM Agents without leave of this Court except as provided in 28 U.S.C. § 959(a).

c.       The City shall indemnify, hold harmless, and defend the ITPM and ITPM Agents from any claim asserted by a third-party with respect to actions taken in their official capacity within the scope of this Stipulated Order, with the exception of any gross negligence or willful misconduct, including but not limited to conduct which constitutes fraud, malice, libel, slander, defamation, or any criminal offense.

d.       In light of the need for the ITPM and ITPM Agents to focus their attention on the obligations of this Stipulated Order, unless granted leave of the Court, the ITPM and ITPM Agents may not testify in any litigation or proceeding, other than this case, with regard to acts or omissions of the City, the ITPM, or ITPM Agents relating to the System and WSBA.

10.    **Removal or Replacement of the ITPM.**

a.       For good cause shown, the United States, MSDH, or the City may move for removal or replacement of the ITPM.

b.       After forty-five (45) Days' notice to the Parties, the ITPM may file a motion with this Court seeking to withdraw.

c.       In the event the ITPM's appointment is terminated for good cause in accordance with sub-Paragraph 10.a or the ITPM provides the notice required under sub-Paragraph 10.b, the Parties shall, jointly or separately, propose at least one ITPM candidate for replacement. The Court shall select and appoint the replacement ITPM from the candidates provided by the Parties.

14

d.      Unless the ITPM has moved to withdraw due to some disability or other exigent circumstance that prevents the performance of ITPM duties, the ITPM shall continue to perform ITPM duties until the earlier of (i) the Court's granting of the ITPM's motion to withdraw or (ii) thirty (30) Days after the ITPM's filing of the motion to withdraw.

e.      Withdrawal or termination of the ITPM, regardless of the reason, shall not relieve the City from complying with all other provisions of this Stipulated Order or from complying with all requirements of the SDWA, the Mississippi SDWA, the National Regulations, the State Regulations, or any other local, state, or federal law. In the event of any vacancy of the ITPM position, the Parties shall request a status conference with the Court to address the vacancy. Until such time as a replacement ITPM is appointed by this Court, the City shall perform all the activities of the ITPM under this Stipulated Order and subject to the provisions of Section V (City Dispute Resolution), or take any such actions otherwise ordered by the Court. The Court shall order any financial institutions in which funds of the ITPM have been deposited to immediately authorize the Chief Financial Officer of the City to access and withdraw said funds in accordance with this Stipulated Order only for such time until a replacement ITPM is appointed by the Court. Upon appointment of the replacement ITPM, the City shall provide an accounting to the Court of the use of any such funds, and all remaining funds (less those accounted for and approved by the Court of the former ITPM) shall be restored and made available to the replacement ITPM.

11.    **ITPM Professional Budget.**

a.      Within thirty (30) Days of the Effective Date, the ITPM shall establish an ITPM Professional Account (the "ITPM Professional Account") for purposes of depositing funds to be used consistent with the ITPM Professional Budget, attached hereto as Appendix B ("ITPM

Professional Budget"). The ITPM shall have financial control and fiduciary responsibility of the ITPM Professional Account, including accrued interest.

b.    Upon the creation of the ITPM Professional Account, the ITPM shall notify the Parties in writing of its creation. Such notice shall include the identity and location of the bank at which the ITPM Professional Account is established, the account number, and other identifying information. The ITPM shall provide this information to the Court under seal.

c.    Within seven (7) Days of the City's receipt of EPA or other grant funds to support the ITPM Professional Budget (which shall not be derived from monies paid by customers for water and sewer services), the City shall deposit such funds in the ITPM Professional Account.

d.    Consistent with the ITPM Professional Budget, the ITPM is authorized to draw down the ITPM's and the ITPM Agents' compensation and expenses from the ITPM Professional Budget with the exception of operators or engineering firms hired to perform operations and maintenance.

e.    The ITPM shall maintain supporting documentation such as timesheets, invoices, and contracts and shall provide such documentation to any Party, if requested.

f.    The ITPM shall make best efforts to conserve the funds in the ITPM Professional Account.

g.    If, in the best professional judgment of the ITPM, a modification to the ITPM's Professional Budget is necessary, the ITPM shall submit any proposed increase of the ITPM's compensation or of the overall budget to EPA and MSDH, subject to the provisions of Paragraph 18 (EPA Review). After the conclusion of EPA and MSDH's review period under Paragraph 18 (EPA Review), the ITPM shall file the proposed modification with the Court.

16

12.     **Operations and Maintenance Account.**

a.      Within thirty (30) Days of the Effective Date, the ITPM shall establish an Operations and Maintenance Account (the "O&M Account") for purposes of depositing City funds to be used to fund operations and maintenance activities of the System and WSBA, including those operations and maintenance activities to be performed by contractors or to respond to imminent and substantial endangerments to the health of persons from the System. The ITPM shall have financial control and fiduciary responsibility of the O&M Account, including accrued interest.

b.      Upon the creation of the O&M Account, the ITPM shall notify the Parties in writing of its creation. Such notice shall include the identity and location of the bank at which the O&M Account is established, the account number, and other identifying information. The ITPM shall provide this information to the Court under seal.

c.      For each fiscal year following the Effective Date, the ITPM, after coordinating with the Director of Public Works, shall develop and submit an O&M Budget ("O&M Budget") and funding schedule to the City. In the event the O&M Budget and/or funding schedule is not approved by the City on or before September 15th of any year, the ITPM shall submit the O&M Budget and/or funding schedule to the Court for approval.

d.      If, at any time, the ITPM believes that additional City funds, beyond those designated for the O&M Budget pursuant to sub-Paragraph 14.c, are necessary for the continued operation and maintenance of the System and/or WSBA, or to address an imminent and substantial endangerment to the health of persons, the ITPM and the Director of Public Works shall confer about the estimated amount of additional funds needed and, if in agreement, present the request to the Chief Financial Officer of the City. Within seven (7) Days or, in the event of an imminent and substantial endangerment to the health of persons, within forty-eight (48) hours,

17

the Chief Financial Officer shall identify in any City fund or other source available to the City

the additional funds and cause the additional funds to be transferred to the O&M Account. In the

event the ITPM and the Director of Public Works are unable to agree on the additional funds

requested or the Chief Financial Officer reports, within the time the Chief Financial Officer is to

transfer the funds, that the funds are unavailable, the ITPM may request that this Court order the

City to transfer the additional funds to the O&M Budget. Any requests under this sub-Paragraph

12.d shall not cumulatively exceed ten percent (10%) of $15,911,397 during fiscal year 2023.

Thereafter, requests under this sub-Paragraph 12.d shall not cumulatively exceed ten percent

(10%) of the O&M Budget for the fiscal year in which the requests for additional funds are

made.

        13.     **Capital Improvements Account.**

        a.     Within thirty (30) Days of the Effective Date, the ITPM shall establish a

Capital Improvements Account ("Capital Improvements Account") for the purpose of depositing

all federal and state grants, loans, and other financial assistance awarded for capital

improvements related to the System and/or WSBA.

        b.     The purpose of the Capital Improvements Account is to fund capital

improvements, including the work identified in the Priority Project List.

        c.     Upon the creation of the Capital Improvements Account, the ITPM shall

notify the Parties in writing of its creation. Such notice shall include the identity and location of

the bank at which the Capital Improvements Account is established, the account number, and

other identifying information. The ITPM shall provide this information to the Court under seal.

        d.     The ITPM shall have financial control and fiduciary responsibility over

the Capital Improvements Account, including accrued interest. All expenditures from the Capital

Improvements Account shall be made in a manner consistent with the terms of the originating

loan, grant or other financial assistance.

    14.    **Duties of the City.** During the pendency of this Stipulated Order, the City shall:

        a.    Cooperate with the ITPM in all respects, including, but not limited to, any

decisions regarding the Sewer System that could materially impact operation of or improvements

to the System;

        b.    Apply for and execute grants to support the ITPM Professional Budget;

        c.    Within seven (7) Days of the Effective Date, cause funds in the amount of

$2 million to be transferred to the O&M Account. Thereafter, during fiscal year 2023, the City

shall transfer funds in accordance with sub-Paragraphs 14.h. During fiscal year 2023, the City

shall transfer funds to the O&M Account totaling $15,911,397, less actual expenditures by the

City for operation and maintenance of the System and WSBA during fiscal year 2023 as of the

date of the City's initial transfer to the O&M Account, and including such additional funds as

may be committed as provided in sub-Paragraph 12.d, and the City shall provide EPA an

accounting of these actual expenditures within thirty (30) Days of the Effective Date. For each

subsequent fiscal year, the City shall fund the O&M Account at no less than the amount of

$15,911,397 and on a schedule to be agreed upon between the ITPM and the City;

        d.    For each fiscal year following the Effective Date, review for approval the

O&M Budget and funding schedule submitted by the ITPM, in accordance with sub-Paragraph

12.c;

        e.    At the direction of the ITPM, immediately, but in no less than seven (7)

Days of the ITPM's request, deposit into the Capital Improvements Account (i) the City's

matching funds for any federal or state loans or grants related to the System and/or WSBA which

are in City accounts as of the Effective Date, and (ii) the City's funds from any federal or state

19

loans or grants related to the System and/or WSBA which are in City accounts as of the Effective

Date. For fiscal year 2023, the amount cumulatively deposited shall be at least $22.948 million.

Thereafter, (i) federal or state loans or grants or other financial assistance awarded to the City for

the System and/or WSBA shall be directly deposited into the Capital Improvements Account,

and (ii) the City shall deposit, within seven (7) Days of the ITPM's request, into the Capital

Improvements Account its matching funds for any federal or state loans or grants related to the

System and/or WSBA;

        f.      Direct its employees to support the ITPM and continue supporting the

operations of the System and WSBA;

        g.      Mail bills for water service;

        h.      Beginning thirty (30) Days after the Effective Date, for the remainder of

fiscal year 2023, deposit $1 million into the O&M Account on a monthly basis up to and

including the amount committed pursuant to sub-Paragraph 14.c;

        i.      Provide information related in any way to the System and/or WSBA in

response to requests from the ITPM, EPA, or MSDH;

        j.      Hear, document, and respond to customer complaints to the extent

practicable;

        k.      Provide an easy-to-find link to the ITPM's website within the City's

website for purposes of publishing Quarterly status reports and other updates about the System

and/or WSBA;

        l.      Approve requests from the ITPM for loans that do not exceed the debt

capacity recommended in the latest Financial Management Plan; and

        m.      Request in a timely manner any and all applicable financial assistance,

which may include subsidies, available to the City for loans awarded in support of the System

and/or WSBA, but in no event later than thirty (30) Days of being made aware of the availability of such assistance.

15.   **Priority Project List.** Attached hereto as Appendix A is the Priority Project List. The Parties acknowledge that commencement and completion of the projects identified in the Priority Project List is subject to the availability of funds and any changes (including scope or sequence) made in a manner consistent with this Stipulated Order.

a.   Within thirty (30) Days of the Effective Date, the ITPM shall submit for review to EPA and MSDH, a schedule for implementation of all projects on the Priority Project List for which there is available funding. Projects that the City is implementing as of the Effective Date shall continue subject to potential adjustment based on EPA and MSDH's review and consultation with the ITPM. The ITPM shall immediately commence work in accordance with the schedule, subject to the provisions of Paragraph 18 (EPA Review).

b.   Within seven (7) Days of additional funds being deposited in the Capital Improvements Account, the ITPM shall identify additional projects or phases of projects on the Priority Project List to be implemented and shall submit an updated Implementation Schedule to EPA and MSDH for review, subject to the provisions of Paragraph 18 (EPA Review).

16.   **ITPM Reporting Requirements.**

a.   **Quarterly Status Reports.** Commencing with the first Quarter after the Effective Date and continuing Quarterly until termination of this Stipulated Order pursuant to Section VII (Termination), the ITPM shall submit written status reports on its progress in implementing the Stipulated Order to the Parties and the Court ("Status Reports"). The Status Reports shall be due on the last Day of January, April, July, and October and shall cover the immediately preceding Quarter. In each report, the ITPM shall provide the following:

        i.        A description of the projects and activities conducted during the reporting period to comply with the requirements of this Stipulated Order;

        ii.        A summary of any delays encountered or anticipated that may affect the ITPM's performance or implementation of this Stipulated Order, including the Priority Project List, and any actions taken to address such delays;

        iii.        Any modification to the Priority Project List or Implementation Schedule consistent with Paragraphs 15 (Priority Project List) and 18 (EPA Review);

        iv.        An accounting of the expenditures from, additions to, and remaining balance of the ITPM Professional Budget;

        v.        A projection of work to be performed pursuant to this Stipulated Order during the next or succeeding Quarter; and

        vi.        In each Status Report filed in the month of January, except in the Status Report due January 31, 2023, an audited financial statement of the ITPM Professional Account, O&M Account, and Capital Improvements Account for the City's previous fiscal year. Any information revealing bank account numbers or constituting personally identifiable information shall be redacted.

        vii.        In each Status Report filed in the month of July, a proposed ITPM Professional Budget for the upcoming fiscal year.

    b.    The reporting requirements in this Stipulated Order do not relieve the ITPM of any reporting obligations required by SDWA, or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

17.    **Records and Information Sharing**.

a.    The ITPM is not a federal, state, county, or local agency; nor is the ITPM an agent of a federal, state, county, or local agency. Accordingly, records maintained or in the custody of the ITPM are not public records subject to public records laws.

b.    Within thirty (30) Days of the Effective Date, the ITPM shall establish and maintain a public website to inform the public of its work, post Status Reports, post requests for proposals, and post other information that—in the ITPM's reasonable judgment—should be disclosed to the public.

c.    Any information provided pursuant to this Stipulated Order may be used by the United States or MSDH in any proceeding to enforce the provisions of this Stipulated Order and as otherwise permitted by law.

d.    Nothing herein shall affect any of the information gathering authorities of EPA or MSDH.

e.    MSDH shall send any notices of violation, information requests, and lawful orders issued regarding the System to the ITPM and the City.

18. **EPA Review.**

a.    The ITPM shall submit to EPA and MSDH: (i) within thirty (30) Days of the Effective Date, the Implementation Schedule; (ii) a written justification, prior to making any modifications, updates or reprioritization of the Priority Project List; (iii) a written justification, prior to making any changes to the Implementation Schedule that would impact the timetable for completion of any Priority Project by more than sixty (60) Days; and (iv) a written justification for any proposed increase of the ITPM's compensation or of the overall ITPM Professional Budget.

23

b.      If any change, modification, or reprioritization falling into categories (ii), (iii), or (iv) in sub-Paragraph 18.a above is necessary to abate an imminent and substantial endangerment or is due to conditions beyond the control of the ITPM, the ITPM shall notify EPA and MSDH as soon as practicable, but in no event later than forty-eight (48) hours after the change, modification, or reprioritization was implemented.

c.      EPA, after consultation with MSDH, may provide written comments to the ITPM within twenty (20) Days of receipt of the items identified in categories (i), (ii), (iii), and (iv) in sub-Paragraph 18.a above. If EPA does not provide comments within twenty (20) Days of receipt, the ITPM may implement the submission. If EPA provides comments, the ITPM may implement any part of its submission that is not the subject of EPA's comments.

d.      During the 20-Day period following receipt of EPA's comments, or such longer period as may be agreed to by EPA and the ITPM (the "Discussion Period"), EPA, MSDH, and the ITPM shall engage in discussions using best efforts to reach agreement on the portion of the submission about which EPA commented.

e.      If EPA and the ITPM fail to reach agreement, then either EPA, after consultation with MSDH, or the ITPM may, within five (5) Days after conclusion of the Discussion Period, petition the Court for relief. If EPA does not so petition, the ITPM may implement the portion of the submission that was the subject of the comments.

## V. <u>CITY DISPUTE RESOLUTION</u>

19.     In the event that the City assumes responsibility for implementing this Stipulated Order pursuant to Paragraph 10.e, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Stipulated Order between EPA, MSDH, and the City. The City's failure to seek resolution of a dispute under this Section shall preclude the City from raising any such issue as a defense

24

to an action by the United States to enforce any obligation of the City arising under this Stipulated Order.

20.     Any dispute subject to Dispute Resolution under this Stipulated Order shall be the subject of informal negotiations. The dispute shall be considered to have arisen when the City sends EPA and MSDH a written notice of dispute that clearly states the matter in dispute. The period of informal negotiations shall not exceed twenty (20) Days from the date EPA and MSDH receive the City's notice, unless that period is modified by written agreement. Within seven (7) Days of the end of this period of informal negotiations, EPA shall provide its written statement of position to the City.

21.     If EPA, MSDH, and the City cannot resolve the dispute by informal negotiations, then the position advanced in writing by EPA, after consultation with MSDH, shall be considered binding unless the City files a motion seeking judicial review of the dispute within ten (10) Days of receipt of EPA's statement of position. The motion shall contain a written statement of the City's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation. The United States shall respond to the City's motion within the time period allowed by the Local Rules of this Court. The City may file a reply memorandum, to the extent permitted by the Local Rules. The dispute shall then be resolved by the Court.

22.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the City under this Stipulated Order, unless and until final resolution of the dispute so provides.

### VI. <u>MODIFICATION</u>

23.    Except as otherwise provided herein, the terms of this Stipulated Order may be modified only by a subsequent written agreement signed by all the Parties and approved by the Court.

### VII. <u>TERMINATION</u>

24.    This Stipulated Order shall terminate when a final judgment is entered by the Court.

### VIII. <u>EFFECT ON ADMINISTRATIVE ORDERS</u>

25.    During the pendency of this Stipulated Order, this Stipulated Order supersedes the Emergency Order and the Consent Order and any MSDH order existing as of the Effective Date.

### IX. <u>APPENDICES</u>

26.    The following appendices are attached to and incorporated into this Stipulated Order:

  a.    Appendix A is the Priority Project List;

  b.    Appendix B is the ITPM Professional Budget.

### X. <u>INTEGRATION</u>

27.    This Stipulated Order and its appendices constitute the final, complete and exclusive agreement and understanding among the Parties with respect to the agreement embodied in this Stipulated Order and supersedes all prior agreements and understandings, whether oral or written, concerning the agreement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Stipulated Order, nor shall they be used in construing the terms of this Stipulated Order.

## XI. STAY OF LITIGATION

28.     Litigation in this matter is stayed for six (6) Months from the Effective Date, subject to extensions by the Court. Prior to the expiration of the stay, the Parties shall file a joint report as to whether the Parties believe an additional stay is appropriate. During a stay, no Party shall serve any discovery nor file any dispositive motions in this matter, without leave of the Court.

Entered this 29th day of November, 2022.

/s/HENRY T. WINGATE

UNITED STATES DISTRICT JUDGE

27

Signature Page for Interim Stipulated Order in *United States v. City of Jackson*

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


Dated: November 29, 2022          /s/ Karl Fingerhood
                                  KARL FINGERHOOD (PA Bar No. 63260)
                                  ANGELA MO (CA Bar No. 262113)
                                  STEFAN J. BACHMAN (SC Bar No. 102182)
                                  DEVON LEA FLANAGAN (VA Bar No. 87444)
                                  Attorneys
                                  Environmental Enforcement Section
                                  Environment and Natural Resources Division
                                  U.S. Department of Justice
                                  P.O. Box 7611
                                  Washington, D.C. 20044-7611
                                  Tel: (202) 514-7519
                                  Fax: (202) 616-2427
                                  Email: Karl.Fingerhood@usdoj.gov
                                         Angela.Mo@usdoj.gov
                                         Stefan.Bachman@usdoj.gov
                                         Devon.Flanagan@usdoj.gov


                                  DARREN J. LAMARCA
                                  United States Attorney for the
                                  Southern District of Mississippi

                                  ANGELA GIVENS WILLIAMS
                                  Chief, Civil Division
                                  Assistant United States Attorney


Dated: November 29, 2022          /s/ Jennifer Case
                                  JENNIFER CASE (MS Bar No. 104238)
                                  Assistant United States Attorney
                                  United States Attorney's Office
                                  501 East Court Street, Suite 4.430
                                  Jackson, Mississippi 39201
                                  Tel: (601) 965-4480


28

**Signature Page for Interim Stipulated Order in *United States v. City of Jackson***

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Dated:

**DIANA SAENZ**  Digitally signed by DIANA SAENZ
Date: 2022.11.28 08:49:57 -05'00'

DIANA SAENZ
Acting Division Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

**JAMES VINCH**  Digitally signed by JAMES VINCH
Date: 2022.11.22 11:23:45 -05'00'

JAMES VINCH
Attorney-Advisor
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

29

**Signature Page for Interim Stipulated Order in *United States v. City of Jackson***

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Dated:

**LEIF PALMER**  Digitally signed by LEIF PALMER
Date: 2022.11.28 15:41:35 -05'00'

LEIF PALMER (GA Bar No. 560159, OR Bar No. 873163)
Regional Counsel
Region 4
United States Environmental Protection Agency
61 Forsyth Street S.W.
Atlanta, Georgia 30303
Tel: (404) 562-9542
Email: Palmer.Leif@epa.gov

**SUZANNE RUBINI**  Digitally signed by SUZANNE
RUBINI
Date: 2022.11.28 15:33:36 -05'00'

SUZANNE G. RUBINI (NY Bar No. 2268696)
Deputy Regional Counsel
Region 4
United States Environmental Protection Agency
61 Forsyth Street S.W.
Atlanta, Georgia 30303
Tel: (404) 562-9674
Email: Rubini.Suzanne@epa.gov

30

**Signature Page for Interim Stipulated Order in *United States v. City of Jackson***

FOR THE CITY OF JACKSON, MISSISSIPPI:

Dated:

CATORIA MARTIN (MS Bar No. 103938)
City Attorney
Email: cmartin@city.jackson.ms.us

TERRY WILLIAMSON (MS Bar No. 8639)
Legal Counsel
Email: twilliamson@city.jackson.ms.us

OF COUNSEL:
OFFICE OF THE CITY ATTORNEY
455 East Capitol Street
Post Office Box 2779
Jackson, Mississippi 39207-2779
Tel: (601) 960-1799
Fax: (601) 960-1756

31

**Signature Page for Interim Stipulated Order in *United States v. City of Jackson***

FOR THE MISSISSIPPI STATE DEPARTMENT OF HEALTH:

Dated: 11/26/2022 | 6:26 PM CST

*Daniel Edney, MD*
DocuSigned by:
C1E0259FEE6A424...

DANIEL P. EDNEY, MD, FACP, FASAM
State Health Officer
Executive Director
Mississippi State Department of Health
P.O. Box 1700
Jackson, Mississippi 39215
Tel: (601) 576-7634
Fax: (601) 576-7931
Email: Daniel.Edney@msdh.ms.gov

11/26/2022 | 11:51 AM CST

*Cassandra Walter*
DocuSigned by:
1D6CE85904314A6...

CASSANDRA WALTER (MS Bar No. 8441)
Attorney
Legal Counsel
Mississippi State Department of Health
P.O. Box 1700
Jackson, Mississippi 39215
Tel: (601) 576-7847
Fax: (601) 576-7805
Email: Cassandra.Walter@msdh.ms.gov

32

**Appendix A - Priority Project List**

1. O&M Contract
   a. Establish, support, and maintain a contract(s) for operation and maintenance of the System. The contract must establish clear level of service goals including minimum appropriate staffing in accordance with Miss. Admin. Code § 15-20-72.2.2.1(5) and all applicable laws and regulations.

2. Winterization of system
   a. Develop and implement to the extent funding and schedule permit a comprehensive plan to properly winterize both O.B. Curtis and J.H. Fewell.
   b. Complete membrane winterization project.

3. Corrosion control
   a. Address any outstanding issues impeding full implementation of optimized corrosion control treatment ("OCCT") at J.H. Fewell and O.B. Curtis, and complete implementation of such OCCT as required by MSDH and consistent with the MSDH-approved OCCT plans to meet State-approved water quality parameters.

4. Alternative water source plan
   a. Implement an Alternative Water Source Plan ("AWSP") including entering into agreements for the immediate provision of alternative water - at least one gallon per person per day.

5. Distribution system study, analysis, and implementation
   a. Develop a plan for EPA review and approval for distribution system study and analysis to include at a minimum:
      i. A GIS-based dynamic hydraulic model
      ii. Valve and hydrant location and assessment, including valve size
      iii. An asset management system
      iv. Water loss identification and reduction
      v. System operation optimization and configuration standards
         1. Pressure study – HGL analysis
         2. Implement pressure control/pressure zones/booster pumping as recommended and as funding and schedule permit.
      vi. Corrosion control
      vii. Service line inventory and replacement planning
         1. Prioritize replacement of any lead lines found, with schedule approved by EPA and MSDH.
         2. Update lead service line replacement plan in compliance with Lead and Copper Rule Revisions.
   b. Implement plan as funding and schedule permit.

1

6.  System stabilization and sustainability plan
    a.  Develop a sustainable plan to stabilize and invest in the water system to ensure safe and reliable drinking water for all of Jackson, all the time.
    b.  Key areas to be addressed include sustainable revenue models, appropriate levels of renewal and replacement, asset management plan, service levels, water demand modeling, and other related factors.

7.  SCADA system improvements – sensors, actuators, sensors, etc.

8.  Chemical systems at plants and wells
    a.  Assess and repair, as necessary, all chemical feed pumps and associated equipment at all facilities, including but not limited to; controls, sensors, weight indicators, and feed lines, to return all chemical feeds to fully functional status, ensure operational redundancy, and establish flow paced automated dosing for all chemical feed systems.

9.  Chlorine system improvements at O.B. Curtis
    a.  Make replacements or immediate interim repairs as necessary for continuous safe operation.
    b.  Develop and implement plan to eliminate use of gaseous chlorine at O.B. Curtis.

10. Intake Structure Repairs
    a.  Assess and repair, as necessary, the intake structures at J.H. Fewell and O.B. Curtis, including, but not limited to, sensors (including related remote SCADA capabilities), chemical feed systems, valves, electrical components, screens, physical structure, and any appurtenances, to return the intake structures and related components to fully operational status.

11. Treatment facilities (J.H. Fewell and O.B. Curtis as applicable) unit processes and pumps – evaluate performance and restore redundancy
    a.  Membrane system
    b.  Raw water pumping and screening
    c.  Oxidation basins
    d.  Rapid mix
    e.  Flocculation and sedimentation
    f.  Sludge removal
    g.  Filters
    h.  UV
    i.  Transfer pumping
    j.  High service pumping

12. Sludge assessment in all finished water storage facilities
    a.   Assess sludge levels and remove as required. Develop operating procedures to minimize future sludge accumulation in all finished water storage facilities.

13. Resilient power plan
    a.   Assess power vulnerability throughout the system and develop and implement a plan to address issues identified in the assessment as funding and schedule permit.

**Appendix B - ITPM Professional Budget**

*Estimated Interim Third-Party Manager's professional budget for 12 months following Effective Date*

| CATEGORY | YEARLY COST |
|---|---|
| ITPM Compensation - $33,333.33/month | |
| • Salary<br>• Living expenses<br>• Travel expenses | $400,000 |
| *ITPM Compensation Sub-total* | *$400,000* |
| ITPM Staff Compensation and Expenses | |
| • Local deputy administrator/senior project manager<br>• Project managers/contract inspectors<br>• Contract administrator/invoice processor<br>• Environmental compliance manager<br>• Other staff as needed | $725,000 |
| • Payroll taxes, fringe benefits, and human resources administration | $385,500 |
| *ITPM Staff Compensation and Expenses Sub-total* | *$1,110,500* |
| ITPM Contractor and Consultant Support and Services | |
| • General and regulatory legal support | $200,000 |
| • Accounting<br>• Financial advisor | $300,000 |
| • Engineering<br>• Information technology and website | $450,000 |
| • Community engagement/governance development<br>• Pricing/rates<br>• Other contractors and consultants as needed | $450,000 |
| *ITPM Contractor and Consultant Support and Services Sub-total* | *$1,400,000* |
| Other Direct Expenses | |
| • Phones and computers for ITPM and staff<br>• Professional liability insurance<br>• Office supplies/miscellaneous consumables<br>• Other direct expenses as needed | $66,000 |
| *Other Direct Expenses Sub-total* | *$66,000* |
| *OVERALL ITPM PROFESSIONAL BUDGET TOTAL* | *$2,976,500* |