IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

National Association for the
Advancement of Colored People,
et al.                                                                                              Plaintiffs

vs.                                                        Case No. 3:23-cv-272-HTW-LGI

Tate Reeves, in his official capacity
as Governor of the State of Mississippi;
et al.                                                                                             Defendants

**Response in Opposition to Plaintiffs' Motion for Clarification of June 1, 2023, Order on Judicial Immunity (Dkt. 51 and 52); and, Plaintiffs' Position on the Temporary Restrictions on Appointment of <u>Judges Pursuant to H.B. 1020 Section 1 (Dkt. 47)</u>**

Defendant, Michael K. Randolph, in his official capacity as Chief Justice of the Mississippi Supreme Court ("Chief Justice"), submits this Response in Opposition to Plaintiffs' Motion for Clarification of June 1, 2023, Order on Judicial Immunity (Dkt. 51 and 52) (Herein, "Motion for Clarification"); and Plaintiffs' Position on the Temporary Restrictions on Appointment of Judges Pursuant to H.B. 1020 Section 1 (Dkt. 47) (Herein, "Plaintiffs' Position"), to wit:

**Introduction and Procedural Background**

On June 1, 2023, this Court entered its' Order granting the Chief Justice's Motion to Dismiss. (Dkt. 45). The Chief Justice's Motion was based on the doctrine of Judicial Immunity which this Court found, "covers the Chief Justice and prevents this court from holding him in this lawsuit." (Dkt. 45 at 22). Further, the Court

found that the "doctrine of Judicial Immunity shelters judges from lawsuits, **whether declaratory or injunctive**, when the judge, within his jurisdiction, performs a 'judicial act,' or is about to perform a judicial act." *Id*. at 23 (emphasis added).

The Court further ruled that, "This court has applied their guiding principles and arrived at the only conclusion it could: Chief Justice Randolph must be dismissed from this litigation, which still will continue with the remaining parties to address the constitutionality of H.B. 1020 as a whole." (Dkt. 45 at 23).

Nowhere in the Court's well-reasoned opinion is there an inkling that the Chief Justice would remain a party defendant. To the contrary, the Court found that the case would proceed against the remaining defendants, absent the Chief Justice. *Id*. Nor was the Court's dismissal of the Chief Justice limited to a specific claim by the Plaintiffs. The Court specifically found that the Chief Justice "must be dismissed from this litigation." *Id*.

The Plaintiffs' position statement and Motion for Clarification misconstrues and perverts the Court's ruling into being a quasi-dismissal and granting less than a final and complete adjudication of the Chief Justice's Motion to Dismiss (Dkt. 47, 51, and 52). The Plaintiffs seek continued restrictions of the Chief Justice as if this Court had not already dismissed the Chief Justice. (Dkt. 47 at 1). Respectfully, the Plaintiffs cannot restrain the Chief Justice after he has been dismissed. Obstinately, and in direct contradiction of this Court's Order, the Plaintiffs attempt to maintain an action against the Chief Justice through unsupported allegations

and half-truths. Such practice should not be entertained or tolerated by the Court. Plaintiffs' Motion is a poorly disguised motion for reconsideration which likely was the next arrow in the Plaintiffs' arsenal to further impede the proceeding. This attempt to prevent and interrupt the orderly progression of this proceeding will only extend the time and costs, unnecessarily. It is wholly frivolous, disingenuous, and repugnant to the opinion of this Court. (Dkt. 45). The Court's Order dismissing the Chief Justice requires no clarification, explanation, or reconsideration. If dissatisfied, appeal it.

### I.  Judicial Immunity Bars Plaintiffs' Fabricated Claims for Declaratory Relief against the Chief Justice.

Plaintiffs allege that they have asserted a claim for Declaratory Judgment, not only against H.B. 1020, but against the Chief Justice specifically. (Dkt. 52 at n. 1). Initially, the Court should look no further than the Plaintiffs' response to the Chief Justice's Motion to Dismiss, which wholly and fully failed to argue this new additional claim against the Chief Justice. (Dkt. 25). Today's Motion is the first and only attempt to assert this newly perceived claim of Declaratory Judgment against the Chief Justice. Those arguments are not only flawed, they have been waived and certainly are not properly before Your Honor.

Plaintiffs *now* argue that Count II and Count III were directed to the Chief Justice. (Dkt. 52 at 1). Plaintiffs are undoubtedly the "masters of their complaint", and today's preposterous claim is directly contradicted by the Complaint itself. *See Whitley v. BP, P.L.C.*, 838 F. 3d 523, 528 (5th Cir. 2016). The Complaint seeks no declaratory judgment against the Chief Justice. (Dkt. 1). Further, had the Plaintiffs

pled a claim for declaratory judgment, the Chief Justice is not an interested party, a requirement to obtain a declaratory judgment. "[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any **interested party** …." 28 U.S.C. § 2201.

Count I seeks an injunction of S.B. 2343, which has nothing to do with the Chief Justice. (Dkt. 1 at 46). Count II seeks injunctive relief to prevent the appointments to the CCID court. (Dkt. 1 at 47). Count II sought injunctive relief but never asks for declaratory relief against the Chief Justice. *Id.* In fact, no reference is made to the Chief Justice at all, in the delineated Counts of the Complaint, nor the Prayer for Relief. Count III seeks injunctive relief against the appointment of the CCID judges. It also did not seek a declaratory judgment against the Chief Justice. (*Id.* at 48). Count III sought an injunction but did not pray for a declaratory judgment. *Id.*

Focusing on the prayer for relief, it did not seek declaratory relief against the Chief Justice. The prayer for relief and the numbered Counts of the Complaint raise the unconstitutionality of statutes, none of which are remotely directed towards the Chief Justice. (Dkt. 1 at 50).

There are no circumstances that support the ill-conceived continuation of the litigation targeting the Chief Judicial officer of the State of Mississippi. What purpose is served by the vexatious attack on the Chief Justice other than an attempt to disrupt the administration of justice and to exclude the Chief Justice from the office which he has been elected to serve in proceedings related to this very

matter.[1] The Complaint simply does not support the continuation of the litigation against the Chief Justice. It is an uncontroverted fact that the Chief Justice has committed no wrong to warrant these proceedings. "Section 2201 does not provide an independent cause of action for determination of the constitutionality of a statute, but rather is only an avenue for relief in a 'case of actual controversy within (the court's) jurisdiction.'" *Earnest v. Lowentritt*, 690 F.2d 1198, 1203 (5th Cir. 1982) quoting 28 U.S.C. § 2201. Additionally, the Chief Justice has not violated any Court Order, as required by the plain language of 42 U.S.C. § 1983 itself. For that reason alone, his dismissal was warranted.

In an attempt to subvert this Court's ruling, the Plaintiffs now, for the first time, allege that "timely declaratory relief is unavailable" and "§ 1983 does not bar temporarily restraining the Chief Justice from making these appointments." (Dkt. 47 at 3). In support of this position, the Plaintiffs exhibit a lack of candor to the Court and offer an incomplete quotation of 42 U.S.C. § 1983, "in any action against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless [**a declaratory decree was violated or**] declaratory relief was unavailable." (Dkt. 47 at 2)(omitted portion of 42 U.S.C. § 1983 included in bolded brackets). The Chief Justice has not violated any declaratory judgment issued by any Court. Further, the Chief Justice has taken no action in reliance or in furtherance of H.B. 1020. The Plaintiffs' Complaint clearly

---

[1] In the State Court proceedings, the Trial Court dismissed the Chief Justice on the basis of Judicial Immunity, the Plaintiffs appealed that Order *inter alia*, and then filed a Motion for the Chief Justice's recusal.

seeks declaratory judgment relating to H.B. 1020, but not directed towards the Chief Justice. (Dkt. 1 at 51). Plaintiffs cannot now argue that declaratory relief was unavailable. "**Plaintiffs' request for declaratory relief in this pending case itself negates the argument that declaratory relief was not available. Plaintiffs do not complain of any violation of a prior declaratory decree.**" *Leclerc v. Webb*, No. 03-664, 2003 U.S. Dist. LEXIS 7569, at *27-28 (E.D. La. May 1, 2003) (emphasis added).

Plaintiffs' arguments that the Chief Justice does not enjoy immunity from declaratory judgments are negated by Courts across the country. "The immunity enjoyed by Judges …. extends to all forms of relief, including monetary damages and injunctive, declaratory, and equitable relief." *Campbell v. Booth*, No. 2:22-cv-52, 2022 U.S. Dist. LEXIS 88931, at *9 (S.D. Tex. Apr. 15, 2022), *See Wightman v. Jones*, 809 F. Supp. 474, 479 (N.D. Tex. 1992) (holding that in the context of a *Bivens* action, judicial immunity bars both declaratory and equitable relief); *Doe v. Rivera*, No. 1:19CV151-MPM-RP, 2020 U.S. Dist. LEXIS 155807, 2020 WL 5078771, at *6 (N.D. Miss. Aug. 27, 2020) (in addition to immunity from suit for monetary damages, absolute immunity also extends to *Bivens* claims for injunctive relief)(Mills, D.J.).

While Plaintiffs' claims were made exclusively under § 1983, the analysis of immunity in *Bivens* actions parallel that of the case *sub judice*, "[t]he immunities provided to federal officials in *Bivens* actions are generally coextensive with those provided to state officials in § 1983 actions." *McCarrell v. Davis*, No. A-17-CV-668-

LY-ML, 2017 U.S. Dist. LEXIS 231661, at *7-8 (W.D. Tex. July 31, 2017) *See Butz v. Economou*, 438 U.S. 478, 504 (1978). Just as in the case at bar, the Plaintiff in *McCarrell* failed to plead that a declaratory decree had been violated and the Judge was accordingly immune. *Id.* [2]

Plaintiffs' Motion simply attempts to revisit the path that this Court has already trod. Plaintiffs' actions are unnecessarily confusing and continue the multiplicity of litigation against the Chief Justice in state and federal court re: the same overriding issue, the constitutionality *vel non* H.B. 1020. Allowing their clamor to continue by entertaining this very pleading suggests that this Court is incapable of granting complete relief in the absence of the Chief Justice. The Order in this case is clear, well supported by precedent from the United States Supreme Court, statutes of the United States Congress, and case law from the Fifth Circuit Court of Appeals and references to Mississippi case law. If the Plaintiffs sincerely disagree with this Court's Order, they should seek appeal under 28 U.S.C. § 1292. The Court should not entertain this foolishness and attempt to circumvent Fed. R.

---

[2] *See, e.g., Wrightman*, 809 F. Supp. 474 (analyzing common law practice, congressional intent, and policy considerations before holding that "in the context of a *Bivens* action, judicial immunity bars both declaratory and equitable relief"); *Evans*, 2007 U.S. Dist. LEXIS 47275, 2007 WL 1888308, at *3 (extending judicial immunity to actions for declaratory, injunctive and other equitable relief); *see also Mehdipour v. Purcell*, 173 F. Supp. 2d 1165, 1167 (W.D. Okla. 2001), *aff'd sub nome. Mehdipour v. Okla. Court of Civil Appeals*, 62 F. App'x 203 (10th Cir. 2003) ("Without any Supreme Court or Tenth Circuit case to the contrary and in reliance upon decisions from the Sixth, Ninth, and Eleventh Circuits, this court holds that federal judges are absolutely immune from equitable relief under *Bivens*."); *see also Newsome v. Merz*, 17 F. App'x 343, 345 (6th Cir. 2001); *Bolin v. Story*, 225 F.3d 1234, 1240-42 (11th Cir. 2000); *Mullis v. U.S. Bankr. Court for the Dist. of Nev.*, 828 F.2d 1385, 1391-94 (9th Cir. 1987), *cert denied*, 486 U.S. 1040 (1988).

Civ. P. 59 and 60, as well as 28 U.S.C. § 1292. There is no provision in the Federal Rules of Civil Procedure for a motion for clarification.

> Congress has provided carefully structured procedures for taking appeals, including interlocutory appeals, and for petitioning for extraordinary writs in Title 28 of the United States Code. Through these procedures, a litigant . . . receives full federal court review of allegations of deprivations of federal constitutional rights by federal judicial officers acting under color of federal law. To allow an action for declaratory and injunctive relief against federal officials who would be entitled to judicial immunity from damages merely engenders unnecessary confusion and a multiplicity of litigation.

*Wightman*, 809 F. Supp. at 477-79. The congressional amendments to 42 U.S.C. § 1983 law, in 1996, specifically extend judicial immunity to injunctive relief **unless** a declaratory decree was breached. *See Calton v. United States Court of Appeals Fifth Circuit*, No. 22-3372, 2022 U.S. Dist. LEXIS 239634, at *7-9 (E.D. La. Sep. 3, 2022) (internal citation omitted)(emphasis added); *Wightman v. Jones*, 809 F. Supp. 474, 476-79 (N.D. Tex. Dec. 7, 1992).

The fundamental principle to be gleaned from the Judicial Immunity doctrine and the amendment to § 1983 is that, "[w]ithout an extension of immunity to requests for **injunctive and declaratory relief**, a disgruntled litigant would be able to affect a 'horizontal appeal' or 'reverse review' by simply suing appellate judges in a district court civil action." *United States Court of Appeals Fifth Circuit*, U.S. Dist. LEXIS 239634, at *9 (emphasis added); citing, *Wightman*, 809 F. Supp. at 479.

Plaintiffs' Motion for Clarification offers a mystical distraction (i.e. smokescreen) between suing an individual in a claim for damages, a claim for injunctive relief, for prospective relief, or declaratory judgment. There is no

distinction in a §1983 analysis. "[A] section 1983 due process claim is not actionable against a state judge acting purely in his adjudicative capacity because he is not a proper party in a section 1983 action challenging the constitutionality of a state statute." *Bauer v. Texas*, 341 F.3d 352, 359 (5th Cir. 2003). The Fifth Circuit's holding in *Bauer* applies regardless of the relief sought against the state Judge when the constitutionality of a statute is at issue. That was precisely the issue before this Court when it granted the Chief Justice's Motion to Dismiss. Nothing has changed that would affect the Court's rulings (other than the Plaintiffs' strategy). "Section 1983 will not provide any avenue for relief against judges acting purely in their adjudicative capacity, any more than, say, a typical state's libel law imposes liability on a postal carrier or telephone company for simply conveying a libelous message. Just as a dismissal for failure to state a claim would be proper in the latter case, so is it in the former." *In re Justices of The Supreme Court of Puerto Rico*, 695 F.2d 17, 22 (1st Cir. 1982) (internal cites omitted).

Again, Plaintiffs do not, nor can they honestly allege that the Chief Justice has done anything wrong to them or acted unconstitutionally towards them. This Court specifically found that "Chief Justice Randolph has jurisdiction to appoint four (4) special temporary circuit judges by way of H.B. 1020 – a 'legislative grant' of jurisdiction." (Dkt. 45 at 21). If H.B. 1020 and the judicial appointments it contemplates are ultimately found to be constitutional, then it follows that the Chief Justice would have the authority to act. However, as the Court noted, should H.B. 1020 be declared unconstitutional, such authority would vanish and become a

nullity. (Dkt. 45 at 22). The Chief Justice's inclusion as a Defendant has not one iota of bearing on this Court's ability to rule on the remaining issues. Do Plaintiffs, in their arguments, suggest that the Court should presume the Chief Justice would act unconstitutionally to their detriment? Plaintiffs' misguided and incorrect assumptions are nonsensical and denigrate the integrity of the Chief Justice and the office he holds.

Plaintiffs cite *Severin v. Parish of Jefferson*, 357 F. App'x 601, 605 (5th Cir. 2009)(per curiam), for the proposition that "judicial immunity does not bar declaratory relief." The line cite from Severin is disingenuous at best as the Court's actual finding was "[w]hile judicial immunity does not bar declaratory relief, Severin's request is nevertheless still barred because a careful review reveals that it is simply an attempt to challenge the validity of his current confinement, and as a result should be brought in a habeas corpus proceeding." *Severin,* 357 F. App'x at 605. Not only did the Court in Severin deny the Plaintiff's claim for declaratory relief against the Judge but it did so on the basis of Judicial Immunity.

> **Judicial immunity is clearly applicable in cases, such as the instant one, brought pursuant to 42 U.S.C. § 1983**. The Supreme Court has recognized only two instances in which judicial immunity is inapplicable. First a judge is not immune from liability for non-judicial actions, i.e. actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions though judicial in nature, taken in the complete absence of all jurisdictions.

*Id.* at 604. *See also, Sparkman,* 435 U.S. at 356; *Pierson v. Ray,* 386 U.S. 547, 554-55, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967); *Mireles v. Waco,* 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991). Neither of the "instances" cited above, have been or

can be shown in this proceeding. Plaintiffs simply cherry-pick line citations to advance their disappointment with the Court's holdings. Plaintiffs cite no authority for the proposition that a state judge must be a party, in order to bind him by a declaratory judgment against the state.

Plaintiffs cite of *Texas v. Bauer* is puzzling, for their assertion that judicial immunity does not bar declaratory relief. (Dkt. 52 at n. 2). *Au contraire*, not only did the Court in *Bauer* deny the Plaintiff's appeal as to the defendant judge, but it did so by expressly ruling that "Even assuming, *arguendo*, that the requirements of Article III standing in this respect are minimally met, prudential standing considerations similarly dictate **the impropriety of declaratory relief for those reasons.**" *Bauer v. Texas*, 341 F.3d 341, 358-359 (5th Cir. 2003)(emphasis added). In reaching the above conclusion, the Fifth Circuit noted that the Plaintiff sought a declaration that select provisions of the Texas Probate Code were facially unconstitutional. *Id*. at n. 5. Ultimately the Court in *Bauer* found:

> Because determinations made under section 875 (the challenged state law) are within a judge's adjudicatory capacity, **there is no adversity between (Plaintiff) and (Judge) as to whether section 875 is facially unconstitutional**. As such, **there is no case or controversy under Article III** and (the Judge) is not a proper party under section 1983.

*Bauer*, 341 F.3d at 361 (internal parentheticals added for clarity)(emphasis added). This is precisely the situation presented by the case *sub judice*. What adversity existed between the Plaintiffs and the Chief Justice as to whether H.B. 1020 is facially unconstitutional? The verbatim language of § 1983, is a reality that the Plaintiffs begrudgingly refuse to accept. "Indeed, it is ordinarily

presumed that judges will comply with a declaration of a statute's unconstitutionality without further compulsion." *In re Justices of Supreme Court*, 695 F.2d 17, 23 (1st Cir. 1982).[3]

The continued litigation against the Chief Justice, while full remedy can be accorded, is tantamount to harassment and infringes upon the Chief Justice's ability to perform his duties and tend to the administration of justice throughout the State of Mississippi.

## II.    The Chief Justice Has and Does Contend that Judicial Immunity Bars Plaintiffs' H.B. 1020 § 4 Claim.

By their Motion for Clarification, Plaintiffs argue that because the Chief Justice did not specifically reference appointments to the CCID Court in his Motion to Dismiss, those claims survive the Court's Order. (Dkt. 52 at 4-6). Again, the Plaintiffs attempt to rewrite the Court's opinion ruling, as well as misconstrue the Chief Justice's Motion for their own misguided purposes. In dismissing the Chief Justice from the action, the Court found that "Chief Justice Randolph must be dismissed from this litigation …" (Dkt. 45 at 23). The Court's ruling was without exception and in no way limited its' dismissal of the Chief Justice to less than all of Plaintiffs' claims against him.

The Plaintiffs' arguments totally lack merit. This Court, as well as others, have held that the appointment of judges by the Chief Justice is a judicial act for

---

[3] *See Davis v. Page*, 640 F.2d 599, 605 (5th Cir. 1981) (*en banc*), *vacated on other grounds sub nom. Chastain v. Page*, 458 U.S. 1118, 102 S. Ct. 3504, 73 L. Ed. 2d 1380 (1982); *cf. Law Students Civil Rights Research Council, Inc. v. Wadmond*, 299 F. Supp. 117, 133 (S.D.N.Y. 1969) (three-judge court) (Friendly, J.), *aff'd*, 401 U.S. 154, 27 L. Ed. 2d 749, 91 S. Ct. 720 (1971).

purposes of Judicial Immunity. The Plaintiffs cannot now fabricate an argument that the Court's opinion was less than understandable. (Dkt. 45 at 23).

For the reasons set forth herein, the Plaintiffs' Position (Dkt. 47) should be stricken and the Plaintiffs' Motion (Dkt. 51 and 52) should be stricken or denied as a mislabeled motion for reconsideration.

Respectfully submitted, this, the 9th day of June, 2023.

                                                               Respectfully submitted,

                                                               Michael K. Randolph, in his
                                                               official capacity as Chief Justice
                                                               of the Mississippi Supreme Court

                                                    By:    */s/ Ned A. Nelson*
                                                            Ned A. Nelson, MB #105712

Of Counsel:

Mark A. Nelson, MB #3808
Ned A. Nelson, MB #105712
Nelson Law PLLC
7 Woodstone Plaza, Ste. 7
Hattiesburg, MS  39402
Telephone:  601.602.6031
Facsimile:  601.602.3251
mark@nelsonfirm.law
ned@nelsonfirm.law

## Certificate of Service

I, Ned A. Nelson, hereby certify that on this the 9th day of June, 2023, I electronically filed the foregoing with Clerk of the Court using the ECF system which will provide notice to all counsel of record.

*/s/ Ned A. Nelson*
Ned A. Nelson