IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, ET AL.,<br><br>*Plaintiffs*,<br><br>v.<br><br>TATE REEVES, in his official capacity as Governor of the State of Mississippi, ET AL.,<br><br>*Defendants*. | Case No. 3:23-cv-272-HTW-LGI<br><br>**PLAINTIFFS' COMBINED REPLY IN SUPPORT OF MOTION FOR CLARIFICATION AND RESPONSE IN OPPOSITION TO DEFENDANT RANDOLPH'S MOTION FOR RULE 54(b) CERTIFICATION** |

As explained below, as well as in Plaintiffs' earlier arguments in ECF Nos. 47 and 52, Plaintiffs respectfully submit that the Court should take the following actions in this case:

1. Clarify that its order granting Defendant Randolph's Motion to Dismiss (ECF 45):

   a. Addressed only Plaintiffs' request for injunctive relief as part of their claim against Defendant Randolph with respect to H.B. 1020 § 1;

   b. Did not address Plaintiffs' request for declaratory relief as part of their claim against Defendant Randolph with respect to H.B. 1020 § 1; and

   c. Did not address Plaintiffs' claim against Defendant Randolph for declaratory and injunctive relief with respect to H.B. 1020 § 4.

   d. Therefore the order of dismissal reaches only Defendant Randolph's immunity from injunctive relief with respect to H.B. 1020 § 1, unless "declaratory relief was unavailable."  42 U.S.C. § 1983.

2. Accord Defendant Randolph the status of a nominal defendant who will not be required to do anything in this litigation, except to abide this Court's rulings on the constitutionality of §§ 1 and 4 of H.B. 1020, as his counsel has repeatedly represented Defendant Randolph is obliged to do pursuant to his oath of office.

3. Deny Defendant Randolph's Motion for Rule 54(b) certification.

4. Extend the current temporary restriction on Defendant Randolph's appointment of four new judges to the Hinds County Circuit Court until the Court can enter a declaratory judgment that the appointment of new judges pursuant to § 1 of H.B. 1020 violates the Equal Protection Clause.

5. If the Court declines to extend the temporary restriction, the Court should issue a tentative preliminary ruling declaring that § 1 of H.B. 1020 violates the Equal Protection Clause and request Defendant Randolph to forebear, as a matter of comity, from making any appointments pursuant to § 1 of H.B. 1020 until the Court can issue a final declaratory judgment on the constitutionality of § 1 of H.B. 1020.

## ARGUMENT

**I.  The Complaint Raised Claims and Sought Relief that Defendant Randolph, and Thus the Court's Order, Did Not Address.**

Plaintiffs' Motion for Clarification demonstrated that the Court's dismissal order did not address Plaintiffs' claims against the Chief Justice for declaratory relief as to H.B. 1020 § 1 or for declaratory or injunctive relief as to § 4.  *See* ECF No. 52.  The order instead addressed only Plaintiffs' request for an injunction with respect to § 1, which was the subject of Plaintiffs' Motion for Temporary Restraining Order and Motion for Preliminary Injunction because it requires the Chief Justice to immediately appoint four new judges to the Hinds County Circuit Court.  *See* ECF No. 45 at 2 n.2 ("This Order [] addresses H.B. 1020, and, more specifically, that law's specific provision, § 1, which mandates appointment of special judges by the Chief Justice of the Mississippi Supreme Court"); *id.* at 11.  The Chief Justice, however, makes five arguments in response: the Plaintiffs' Complaint never made a prayer for declaratory relief; the Plaintiffs' Complaint never made a claim for declaratory relief; he is not an interested party with respect to

2

any claims for declaratory relief; he enjoys immunity from such relief; and he attempts to overlook that he never asserted immunity as to § 4. None of these arguments has merit.[1]

      A.      *The Opposition misreads or mischaracterizes the Complaint's Prayer for Relief.*

The Opposition brief argues, at length, that Plaintiffs never asserted a claim for declaratory judgment against the Chief Justice until the instant motion. ECF No. 55 at 3-5 ("Opp."). But this argument rests on a tortured reading of the Prayer for Relief, which requests:

> "[T]hat this Court enter judgment in favor of Plaintiffs and ***against Defendants***, as follows: …
>
> B. Declare that H.B. 1020's packing of the Hinds County Circuit Court intentionally discriminates against Jackson's residents on the basis of race;
>
> C. Declare that H.B. 1020's creation of the CCID Court intentionally discriminates against Jackson's residents on the basis of race."

Compl. at 50 (emphasis added).

The prayer for relief plainly requests declaratory relief against all Defendants without specifying, differentiating, or excluding any. There is certainly no language to suggest the Chief Justice alone would be excluded from that request. True enough, Plaintiffs' motion for a

---

[1] Defendants Tindell, Luckey and Fitch filed a Response in Opposition to Plaintiffs' Motion for Clarification, ECF No. 58, in which they support Defendant Randolph's arguments. They contend that "Plaintiffs effectively seek [] to relitigate an issue that this Court has already decided against them." ECF No. 58 at 2. Because the parties never briefed and the Court never addressed the issues raised herein, these issues have neither been litigated nor decided. These Defendants also go several steps further and suggest that dismissal of the Chief Justice "robs this Court of jurisdiction over Plaintiffs' judicial-appointment claim." *Id*. at 4. They therefore suggest that the appointments claim should be dismissed and Plaintiffs' pending Motion for a Preliminary Injunction should be denied. *Id.* If these Defendants seek this sweeping relief, they should make a proper motion, and Plaintiffs will file an opposition as provided by the rules of this Court. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").

3

temporary restraining order sought immediate injunctive relief against the Chief Justice, but the Complaint plainly includes a prayer for declaratory relief against the Chief Justice as well.[2]

    B.  *The Opposition also misreads or mischaracterizes the Claims for Relief.*

The Chief Justice's confused reading of the Complaint extends beyond the Prayer for Relief. The Opposition mistakenly asserts that Count II "seeks injunctive relief to prevent the appointments to the CCID Court." Opp. at 4. In reality, Count II is concerned with the appointments to the Hinds County Circuit Court, not the CCID inferior court. Compl. at 47 ("House Bill 1020's packing of the *Hinds County Circuit Court* intentionally discriminates against the majority-Black residents of Jackson . . .") (emphasis added). In the next sentence, the Opposition asserts that Count II sought injunctive relief against the Chief Justice but never asked for declaratory relief against the Chief Justice. Wrong again. Paragraph B of the Prayer for Relief, reproduced *supra*, asks the Court to "[d]eclare that H.B. 1020's packing of the Hinds County Court [the claim made in Count II] intentionally discriminates against Jackson's residents on the basis of race." Compl. at 50. As noted above, this request for declaratory relief does not differentiate between the Defendants but applies to each of them, including the Chief Justice.

The Opposition is similarly confused about Count III. The Chief Justice asserts that Count III "sought an injunction [against the appointment of the CCID inferior court judge] but did not pray for declaratory judgment." Opp. at 4. But Paragraph C of the Prayer for Relief,

---

[2] Defendant Randolph also skips over Plaintiffs' repeated many factual allegations that demonstrated that the Chief Justice is the only Defendant against whom Plaintiffs can achieve complete relief for *both* of these claims. *See, e.g.*, Compl., ¶ 28 ("H.B. 1020 authorizes Chief Justice Randolph to appoint four temporary special Circuit Court judges to the Seventh Circuit Court District and a judge to the new CCID Court."); *id*. ¶ 86 ("Section 1 commands the Chief Justice of the Mississippi Supreme Court to appoint four temporary special circuit judges for Hinds County's Seventh Circuit Court District.").

reproduced *supra*, asks the Court to "[d]eclare that H.B. 1020's creation of the CCID Court intentionally discriminates against Jackson's residents on the basis of race." Compl. at 50. While Paragraph C refers to the creation of the CCID court rather than appointment of the CCID judge, that appointment is necessarily included in the request for a declaration that creation of the CCID is discriminatory. Finally, Paragraph F of the Prayer for Relief requests a preliminary and permanent injunction against the appointment of any judge to the CCID Court. Compl. at 50. Such an injunction would necessarily include a ruling—*i.e.,* a declaration—that the appointment violates the Equal Protection Clause.

> C. *The Chief Justice is a proper defendant in the claim that his appointment of judges pursuant to § 1 of H.B. 1020 is unlawful.*

The Chief Justice also argues—without support—that he is not an interested party against whom declaratory judgment may lie. Opp. at 4 (citing the Declaratory Judgment Act, 28 U.S.C. § 2201). But the term "interested party" refers to the plaintiff in an action under the Declaratory Judgment Act, not the defendant. 28 U.S.C. § 2201 (the court "may declare the rights . . . of any interested party *seeking* such declaration"); *Reardon v. Pa.-N.Y. Cent. Transp. Co.*, 323 F. Supp. 598, 599 (N.D. Ohio 1971) ("The reference to an 'interested party' . . . is to one seeking a declaration of rights, and not to those who may be joined as parties defendant to such an action.").

As to defendants, the Act authorizes a claim against any person with whom the plaintiff has an "actual controversy." *Id*. H.B. 1020 assigns to the Chief Justice the functions of appointing different judges, and Plaintiffs assert that those appointments violate the Equal Protection Clause. Accordingly, the Chief Justice is an "adverse party" with respect to those claims for declaratory relief. *See* 28 U.S.C. § 2202 (authorizing "[f]urther necessary or proper

5

relief based on a declaratory judgment or decree . . . , after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment").

        D.       *Under § 1983, state judges do not enjoy immunity from prospective declaratory relief.*

The Chief Justice next argues that judicial immunity applies to state court judges in actions sued for prospective declaratory relief under § 1983. The text of the statute, as amended in 1996, presupposes that declaratory relief continues to be available, and the legislative history is crystal clear: "litigants may still seek declaratory relief" against judges. S.R. No. 104-366 at 37 (1996). The case law also is in accord. *See, e.g., Davis v. Tarrant Cnty.*, 565 F.3d 214, 228 (5th Cir. 2009) (state judges sued under Section 1983 have no immunity for "prospective declaratory relief"); *see also* ECF No. 52 at 3-4 (collecting cases). Indeed, the Fifth Circuit has expressly concluded that declaratory relief remains available under § 1983 against defendant judges even when these judges act in their judicial capacity. *See, e.g.*, *Caliste v. Cantrell*, 937 F.3d 525, 532-33 & n.7 (5th Cir. 2019) (affirming declaratory judgment against state judge and noting that declaratory relief remains available regardless of whether actions were taken in the judicial defendant's "judicial capacity" or "administrative capacity").[3]

The state of the law on the availability of declaratory and injunctive relief against state judges under the amended Section 1983 is laid out clearly in *Ward v. City of Norwalk*, 640 Fed. App'x 462 (6th Cir. 2016):

---

[3] In an attempt to muddle § 1983's clear text and case law, Defendant Randolph points to the unremarkable conclusions of *Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003), in which the plaintiff did not have standing to pursue a facial challenge to state law because the defendant judge had merely adjudicated the plaintiff's statutory rights in a prior proceeding. *Id.* at 359; *see* Opp. at 9, 11. Those conclusions have nothing to do with whether § 1983 permits prospective declaratory relief in general. Furthermore, appointments are not adjudications, and in any event, Plaintiffs do not challenge any prior adjudications here.

6

- "Plaintiffs cannot seek an injunction against a judicial officer without first seeking a declaratory judgment . . ." *Id.* at 467.

- "[T]he plain language of § 1983 contemplates a declaratory judgment against judicial officers . . . in their official capacities." *Id.*

- "The . . . amendatory language to § 1983 does not expressly authorize suits for declaratory relief against judges.  Instead, it implicitly recognizes that declaratory relief is available in some circumstances, and then limits the availability of injunctive relief to circumstances in which declaratory relief is unavailable or inadequate." *Id.*

- "[T]he legislative history confirms this reading of the amendment." *Id.*

- "Section 1983 now implicitly recognizes that declaratory relief is available against judicial officers." *Id.*

- "[S]overeign immunity does not bar plaintiffs' declaratory judgment claim against [a judge and a clerk] in their official capacities" because the claim "falls squarely within the *Ex parte Young* doctrine," which "allows individuals to seek prospective relief against state officials who violate federal laws or the Constitution." *Id.* at 467-68.

- A "declaratory judgment claim, however, is actionable only to the extent it seeks prospective relief." *Id.* at 468.

Ignoring the text of Section 1983, its legislative history, and the relevant case law, the Chief Justice visits confusion on the Court by citing a bevy of cases addressing immunity in *Bivens* actions, *i.e.,* actions brought against federal officials for damages under the implied constitutional right of action recognized in *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971).  Opp. at 6-7; *id.* at n.2. Defendant cites *Campbell v. Booth*, *Wrightman v. Jones*, and *Doe v. Rivera*, each of which is a *Bivens* case, for the proposition that the "immunity enjoyed by Judges extends to all forms of relief, including monetary damages and injunctive, declaratory, and equitable relief." Opp. at 6.[4]  While that may be true in a *Bivens* action, it certainly is not true in a Section 1983 action, as demonstrated by cases like *Davis* and *Ward*.

---

[4] Likewise, all of the cases cited in footnote 2 are *Bivens* cases against federal officials.

Undeterred by the clarity of the law concerning claims for prospective declaratory relief and injunctions against state court judges in § 1983 cases, the Chief Justice attempts to import *Bivens* jurisprudence as precedent for the instant § 1983 case. He cites *McCarrell v. Davis* for the proposition that "[t]he immunities provided to federal officials in *Bivens* actions are generally coextensive with those provided to state officials in § 1983 actions." Opp. at 6 (*citing McCarrell v. Davis*, 2017 WL 11221248 (W.D. Tex. July 31, 2017), *report and recommendation adopted*, 2017 WL 11221249 (W.D. Tex. Aug. 25, 2017)). But that quote from *McCarrell* is ripped from its context: the magistrate in that case ultimately concluded that, while immunities under *Bivens* and § 1983 *generally* are parallel, *Bivens* provides absolute judicial immunity to federal judges, whereas § 1983 provides judicial immunity from injunctive judgment *unless* "a declaratory decree was violated" or, as here, "*declaratory relief was unavailable*." *McCarrell*, 2017 WL 11221248 at 3 (emphasis added).

The distinction between *Bivens*'s absolute judicial immunity for federal judges from all remedies, on the one hand, and § 1983's more limited immunity for state judges, on the other, is also recognized by other cases cited by the Chief Justice. *See, e.g.*, *Wightman v. Jones*, 809 F. Supp. 474, 476-79 (N.D. Tex. 1992) (cited at Opp. at 6). Despite holding that federal judges have absolute immunity in *Bivens* cases, the court in *Wightman* noted that "it is now established that in the context of a claim under 42 U.S.C. § 1983, absolute judicial immunity does not bar such equitable relief against *state court judges*." *Id.* at 476 (emphasis added). This Court should reject the Chief Justice's attempts to re-write § 1983 to the contrary.

> E. *Judicial immunity is an affirmative defense, which Defendant Randolph did not assert as to § 4, and which the Court did not reach in its June 1st opinion.*

The Court's order granting dismissal "addresses H.B. 1020, and, more specifically, that law's specific provision, § 1, which mandates appointment of special judges by the Chief Justice

8

of the Mississippi Supreme Court." Order, ECF No. 45 at 2, n.2.[5] By the its own terms, then, the Order did not reach the question of whether the Chief Justice is immune from suit with respect to § 4 of H.B. 1020, which directs the Chief Justice to appoint a judge for the new Capitol Complex Improvement District (CCID) court for a term from January 1, 2024, to July 1, 2027. Nor could the Court reach that question—the Chief Justice made no mention of H.B. 1020 § 4 in his Motion to Dismiss, Memorandum in Support, Reply, or oral argument at the May 22, 2023 hearing. *See generally* ECF No. 20. But judicial immunity is an affirmative defense that must be pled by Defendant; failure to plead the affirmative defense waives it. *Boyd v. Carroll*, 624 F.2d 730, 732-33 (5th Cir. 1980) ("The failure to plead judicial immunity waive[s] the affirmative defense."). Because the Chief Justice did not brief affirmative defenses to H.B. 1020 § 4, those affirmative defenses were not ruled upon.

The Chief Justice neither marshals a belated affirmative defense to Plaintiffs' § 4 claim nor disputes that the question of judicial immunity for the appointment of the CCID inferior court judge is separate and distinct from the question of judicial immunity for nominating circuit judges under H.B. 1020 § 1. The CCID inferior court judge created by § 4 is to act as a municipal judge, not a circuit judge. ECF No. 12-1 § 4 ("The CCID inferior court shall have jurisdiction to hear and determine all preliminary matters and criminal matters authorized by law for municipal courts.") Municipal court judges are appointed by "the governing authorities of a municipality," Miss. Code § 21-23-3, as are temporary municipal judges (called "municipal judge[s] *pro tempore*"), Miss. Code § 21-23-9. There is no history of the Chief Justice appointing either new or temporary municipal judges—as the Chief Justice's own evidence

---

[5] The Opposition says that the dismissal was "without exception" and "in no way limited" "to less than all of Plaintiffs claims" against the Chief Justice. But the quoted language from n.2 of the order clearly indicates otherwise. ECF No. 45 at 2, n.2.

shows. At the hearing on June 14, 2023, the Chief Justice personally introduced a list of over 1,500 temporary judicial appointments he has made. Not one of these judges was a municipal court judge. The question of whether appointing the CCID inferior court judge to exercise the powers of a municipal judge—which the Chief Justice has never done—constitutes a "judicial act" thus requires a substantially different analysis than the nomination of circuit court judges. *See* Order, ECF No. 45 at 16 (noting that judicial immunity is a "fact-intensive inquiry"); *see also, e.g.*, *Davis*, 565 F.3d at 222 (citing favorably *Lewis v. Blackburn*, 555 F. Supp. 713, 715 (W.D.N.C. 1983), *rev'd on other grounds*, 759 F.2d 1171 (4th Cir. 1985), as "holding that a judge's appointment of magistrate[] [judges] is a ministerial act"). The Chief Justice failed to address the distinct analysis for CCID inferior judicial nominations in his motion to dismiss, and thus H.B. 1020 § 4 is absent from this Court's earlier order dismissing the Chief Justice. *See Wearry v. Foster,* 33 F.4th 260, 265, (5th Cir. 2022) ("[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.").

## II.     Chief Justice Randolph Should Remain in this Action as a Nominal Defendant.

Chief Justice Randolph alone is tasked by H.B. 1020 § 1 and § 4 with appointing different judges to the Hinds County Circuit Court and CCID inferior court. Because the Court cannot prevent § 1 or § 4 from intruding on Plaintiffs' constitutional rights unless it relieves Chief Justice Randolph of these statutory duties, Chief Justice Randolph is "essentially [a] nominal part[y]" in this suit. *In re Justs. of Sup. Ct. of P.R.*, 695 F.2d 17, 20 (1st Cir. 1982) ("*In re Justices*").

A "nominal party" has "no real interest in the result of the suit, or no actual interest or control over the subject matter of the litigation, but is solely joined because a technical rule of practice requires their presence in the record." *Nominal Party*, Wex Legal Dictionary (2020). In the securities context, for example, a nominal defendant is a party who "can be joined to aid the

recovery of relief . . . because he has no ownership interest in the property which is the subject of litigation." *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009). In other words, a nominal defendant is "non-interested" but "must often be joined purely as a means of facilitating collection," or effecting a remedy. *S.E.C. v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991).

Chief Justice Randolph has disavowed having "adverse legal interests" to Plaintiffs (ECF No. 20 at 5 (citation omitted), and he has pointed to the vigorous defense of H.B. 1020 by the Mississippi Attorney General's Office (*id.* at 6), which has "adequate incentive and resources to defend the statute[]," *In re Justices*, 695 F.2d at 21. But as the Attorney General's Office has noted (ECF No. 46-1), *Ex parte Young* formally requires Plaintiffs to name as a defendant the state official charged with making the appointments under H.B. 1020: the Chief Justice. Accordingly, he should remain in this case effectively as a nominal defendant "to aid the recovery of relief." *Janvey*, 588 F.3d at 834.

As a nominal defendant, the Chief Justice would not "personally . . . participate in or bear the burden of the present litigation." *Rivera Puig v. Garcia Rosario*, 785 F. Supp. 278, 285-86 (D.P.R.), *aff'd and remanded*, 983 F.2d 311 (1st Cir. 1992). In *Rivera Puig*, for example, the court allowed an "attack on the constitutionality" of a law to proceed against a state judge notwithstanding his judicial immunity defense because "Judge García Rosario is a nominal defendant," with "the Secretary of Justice . . . defend[ing] the constitutionality of the Puerto Rico statute." *Id.* at 285. The same situation is presented here.

Moreover, like the plaintiffs in *In re Justices*, Plaintiffs stipulated at the June 14, 2023 hearing to the limited involvement of Chief Justice Randolph in this case. *See* 695 F.2d at 20-21 (describing how "plaintiffs stated to [the court] at oral argument that they would not conduct discovery against the Justices"). Specifically, Plaintiffs would not seek discovery against Chief

11

Justice Randolph, "reliev[ing] the most immediate practical burden of the litigation." *Id.* at 21. Chief Justice Randolph would not be deposed or asked to testify in any capacity. Chief Justice Randolph "need not appear; and since other parties (including the . . . [Attorney General]) are prepared to defend the statutes on their merits, [Chief Justice Randolph] need not take a position or even file a brief." *Id.* at 27. In sum, "it is difficult to see that [Defendant Randolph], as a practical matter, need participate further in the suit[]" in any way for this Court to preserve its ability to provide Plaintiffs complete relief in ruling on the constitutionality of § 1 and § 4. *Id.* at 21. Plaintiffs' stipulation is fully consistent with the Court's conclusion that the Chief Justice enjoys judicial immunity, as he would be free from the traditional constraints of litigation and only expected to "comply with a declaration of a statute's unconstitutionality without further compulsion." *Rivera Puig*, 785 F. Supp. at 285. Finally, if Plaintiffs prevail, the Chief Justice will not be required to take any action to comply with the Court's declaratory judgment; he simply would be required not to take the actions H.B. 1020 imposes on him.

### III. Rule 54(b) Certification is Not Warranted or Prudent at Present.

As explained above, the Court's dismissal addressed only one of the two remedies pleaded in Count II (i.e., injunctive, but not declaratory, relief as against the Chief Justice). Rule 54(b) allows a district court to enter partial final judgment on "one or more, but fewer than all, claims," Fed. R. Civ. P. 54(b), but that judgment still must encompass **all** remedies pleaded for a single claim. And a count "*seeking multiple remedies* for the alleged violation of [one] right, *states a single claim for relief.*" *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743 n.4 (1976) (emphasis added). Here, the Court's conclusion that the Chief Justice enjoys judicial immunity is a threshold determination as to whether injunctive relief would be available pursuant to § 1983. But "a district court does not resolve a 'claim' merely by ruling on a threshold legal issue relevant to that claim." *Tetra Techs., Inc. v. Cont'l Ins. Co.*, 755 F.3d 222, 230 (5th Cir. 2014).

12

As demonstrated above, (1) the Court's dismissal order bears only on Plaintiffs' prayer for injunctive relief as to § 1, (2) Plaintiffs' prayer for declaratory relief—as to which there is no judicial immunity—remains undecided, and (3) if the Court agrees that declaratory relief has been unavailable because of the speed with which H.B. 1020 requires the Chief Justice to make the appointments, injunctive relief is also available notwithstanding judicial immunity. Because multiple remedies remain outstanding, *Wetzel* and *Tetra Techs.* teach that the claim for relief in Count II with respect to § 1 of H.B. 1020 is not yet fit for Rule 54(b) certification.

There is a further reason why Rule 54(b) certification would be improper. The Rule provides that a court may direct entry of a partial final judgment "only if the court expressly determines that there is no just reason for delay." Here are several just reasons for delay. First, if the Chief Justice is released from this case and makes the appointments as H.B. 1020 requires, Plaintiffs will be deprived of their right to equal protection, and as the Court has previously found, that is sufficient irreparable harm to justify a temporary restraint on the Chief Justice. *See* ECF No. 26 at 4; ECF No. 38 at 2. Second, if judges are unlawfully appointed to the Hinds County Circuit Court, it will cause harm to that court. *See* Second Declaration of Judge Tomie Green, ECF No. 57-1, ¶¶ 14-15 ("Were the constitutionality of H.B. 1020 to be decided only after the appointment of judges—and after criminal pleas were accepted by appointed judges and trials with appointed judges had been initiated or concluded—it would drive confusion, foster litigation by affected parties, delay further resolution of cases, and cause irreparable harm to our community and its citizens.").

Third, it would be imprudent to grant a partial final judgment now, which would start the clock running for an interlocutory appeal. This will result in piecemeal appeals to the Fifth Circuit that may later be rendered moot by ongoing litigation concerning Plaintiffs' parallel

13

request for declaratory relief. *See Tetra Techs.*, 755 F.3d at 231 ("[W]ere we to affirm the district court, we would no doubt be required to endure a second appeal concerning the same claim between the same parties . . . . Rule 54(b) does not permit such piecemeal appeals, but rather was 'created specifically to avoid' them." (citation omitted)). For all these reasons, the Court should deny the Chief Justice's motion for Rule 54(b) certification.

### IV. Section 1983 Allows for Limited Injunctive Relief Against Chief Justice Randolph to Preserve the Court's Opportunity to Issue a Declaratory Judgment.

The plain text of § 1983 allows for injunctions against state judicial officials, like the Chief Justice, where "a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.[6] Plaintiffs argue that the second condition, the unavailability of declaratory relief, is applicable here. Pltfs.' Position on Temporary Restriction, ECF No. 47, at 2-3. The Chief Justice ignores that argument, and instead contends that Plaintiffs need to show that the Chief Justice violated a declaratory judgment before they can seek an injunction against him. Having set up this straw-man, Opp. at 5-7, Defendants proceed to argue vigorously that no violation has occurred—a point that is not alleged and is entirely irrelevant.

Plaintiffs instead argue that the Court can fashion an interim declaratory decree or, because timely declaratory relief is unavailable, § 1983 allows this Court to temporarily restrain the Chief Justice. ECF No. 47 at 2-3; ECF No. 57 at 1-2. This is so because under H.B. 1020— absent temporary injunctive relief—the Chief Justice would have been required to make judicial appointments within 15 days of the bill's passage, *i.e.*, by early May 2023. H.B. 1020 § 1(2),

---

[6] The Chief Justice accuses Plaintiffs of "exhibit[ing] a lack of candor" because they used an ellipsis in place of the phrase "a declaratory decree was violated or." There is no basis for the allegation. Plaintiffs have never contended that the Chief Justice violated a declaratory order, and there is no lack of candor in omitting language upon which Plaintiffs do not rely. Moreover, the language that Defendants allege was omitted appears on page 3 of Plaintiffs' memorandum in support of the motion. ECF No. 52 at 3.

14

ECF No. 12-1 at 3. Given the speed with which the legislature required appointments to be made under H.B. 1020 § 1, and the fact that that deadline has now long passed, Plaintiffs reasonably expect (and the Chief Justice does not dispute) that the Chief Justice will make appointments immediately if the temporary restriction is lifted. In short, if the TRO is lifted, there cannot possibly be a final declaratory judgment on the constitutionality of the Chief Justice's power to appoint the H.B. 1020 § 1 judges before the Chief Justice appoints those unconstitutional judges—and the Court may not issue a wholly retrospective declaratory judgment. *See Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 276 (5th Cir. 2020).

The Court should preserve the status quo by keeping in place the temporary restriction, thereby preserving the Court's ability to grant meaningful relief. *See, e.g.*, *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) ("Preliminary injunctions commonly favor the status quo and seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned."); *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984) ("The primary function of a preliminary injunction is to preserve the status quo until, upon a final hearing, a court may grant full, effective relief."); *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980) ("The purpose of the preliminary injunction is to preserve the status quo until the rights of the parties can be fairly and full investigated" (quoting *Meiselman v. Paramount Film Distrib. Corp.*, 180 F.2d 94, 97 (4th Cir. 1950))); *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977) (noting that "the purpose of granting interim injunctive relief" is to "maintain the status quo pending a final determination of the merits of the suit").

Furthermore, delaying the appointments to give the Court the time to issue a declaratory judgment is vital to prevent confusion and further delay in the Hinds County Circuit Court.  *See* Second Green Decl., *supra*, ¶¶ 14-15.

**V.    At the Very Least, if the Court Has a Tentative View that H.B. 1020 § 1 Violates the Equal Protection Clause, the Court Should Request the Chief Justice to Refrain as a Matter of Comity from Making the Appointments Until the Court Can Issue a Final Declaratory Judgment.**

If the Court concludes that it can no longer temporarily restrain the Chief Justice from making the appointments, Plaintiffs urge the Court to request the Chief Justice, as a matter of comity, to forebear from making the appointments until the Court can enter a declaratory judgment on the constitutionality of the appointments provision.  In this regard, Plaintiffs ask the Court to consider the briefing it has on Plaintiffs' Motion for a Preliminary Injunction from Plaintiffs and the Attorney General's Office (ECF Nos. 41, 50, and 57) and decide whether on the basis of that briefing it can make a tentative ruling that Plaintiffs have a substantial likelihood of success on the merits of their claim that § 1 of H.B. 1020 violates the Equal Protection Clause. If the Court makes that ruling, it should request the Chief Justice to defer to the tentative ruling as a matter of comity and delay making the appointments until this Court can enter a final declaratory judgment on § 1's constitutionality.  The Chief Justice's counsel has repeatedly represented that the Chief Justice will abide by such a declaration.  If this Court indicates that it is inclined to find the statute to be unconstitutional, it is hoped, that in the spirit of comity, the Chief Justice will not make the appointment that would undermine the Court's ability to make a final declaratory judgment.

There is strong precedent for such cooperation between state and federal judges.  In a case cited by the Chief Justice, *Law Student Civil Rights Research Council, Inc. v. Wedman,* 299 F. Supp. 117 (S.D.N.Y. 1969) (three-judge district court), one of the wisest and most respected

16

federal judges of the 20th Century, Henry Friendly, found that certain questions that New York Bar applicants were required to answer offended the Constitution. But instead of enjoining the state court judges who were responsible for the bar admission process, Judge Friendly held the case in abeyance because "[c]onsiderations of comity to respected fellow-judges suggest they should be afforded a reasonable opportunity to reflect on our conclusions and perhaps take action that may obviate any occasion for an injunction." *Id.* at 133. (In this case, the Chief Justice would simply take no action on the appointments.) More recently, then-Circuit Judge Steven Breyer noted that "it is ordinarily presumed that judges will comply with a declaration of a statute's unconstitutionality without further compunction." *In re Justices*, 695 F.2d at 23. The Fifth Circuit has also taken the approach of relying on comity. *See Davis v. Page*, 640 F.2d 599, 605 (5th Cir. 1981) (en banc) (on entering declaratory relief, the court stated "injunctive relief is inappropriate since there is no indication that the judges of the State of Florida will not conform to the dictates of the Constitution").

If the Court will take no other action to avert the challenged appointments, Plaintiffs respectfully urge the Court to request the Chief Justice to forebear from making the appointments until the Court can issue a final declaratory judgment.

## CONCLUSION

For the reasons above, this Court should grant Plaintiffs' motion, and clarify that the Court's earlier order addressed only Defendants' request for immunity as to § 1 of H.B. 1020, and did not impair or limit this court's ability to provide declaratory relief as to § 1, or to provide injunctive or declaratory relief as to § 4.

Respectfully submitted this 16th day of June, 2023.

<div style="columns:2">

*/s/ Mark H. Lynch*
Eric H. Holder, Jr.,* DC Bar # 303115
Carol M. Browner,† DC Bar # 90004293
Megan A. Crowley,* DC Bar # 1049027
Gary S. Guzy,* DC Bar # 375977
Mark H. Lynch,* DC Bar # 193110
Brenden J. Cline,* DC Bar # 1021317
David Leapheart,† DC Bar # 1032122
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-6000
Fax: (202) 662-6291
eholder@cov.com
cbrowner@cov.com
mcrowley@cov.com
gguzy@cov.com
mlynch@cov.com
bcline@cov.com
dleapheart@cov.com

*Counsel for NAACP*

*Pro Hac Vice
†Pro Hac Vice Applications to be Filed

*/s/ Carroll Rhodes*
Carroll Rhodes, Esq. MS Bar # 5314
**LAW OFFICES OF CARROLL RHODES**
POST OFFICE BOX 588
HAZLEHURST, MS 39083
Telephone: (601) 894-4323
Fax: (601) 894-1464
crhode@bellsouth.net

Janette Louard,† OH Bar # 066257
Anthony Ashton,† MD Bar # 9712160021
Joe R. Schottenfeld,* DC Bar # 1735796
**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE**
4805 Mt. Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
Fax: (410) 358-9350
jlouard@naacpnet.org
aashton@naacpnet.org
jschottenfeld@naacpnet.org

*Counsel for All Plaintiffs*

*Pro Hac Vice
†Pro Hac Vice Applications to be Filed

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2023, I electronically filed the foregoing Plaintiffs' Combined Reply in Support of Motion for Clarification and Response in Opposition to Defendant Randolph's Motion For Rule 54(B) Certification with the Clerk of the Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Mark H. Lynch*
Mark H. Lynch