IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, ET AL.,<br><br>*Plaintiffs*,<br><br>v.<br><br>TATE REEVES, in his official capacity as Governor of the State of Mississippi, ET AL.,<br><br>*Defendants*. | Case No. 3:23-cv-272-HTW-LGI |

**[PROPOSED] ORDER**

Upon consideration of Plaintiffs' Motion for Clarification of June 1, 2023 Order on Judicial Immunity (ECF No. 51), the memorandum filed in support of the motion (ECF No. 52), the response in opposition (ECF No. 55), the reply thereto (ECF No. 63), and Plaintiffs' Notice of Additional Support for Declaratory Relief as Against Chief Justice Randolph (ECF No. __), Defendant Randolph's Motion for Rule 54(b) Certification (ECF No. 54) and the response in opposition (ECF No. 63), along with the entire record herein, the Court, having held a hearing, hereby **ORDERS** that Plaintiffs' Motion for Clarification is **GRANTED** and Defendant Randolph's Motion for Rule 54(b) Certification is **DENIED**.

**PROCEDURAL HISTORY**

On April 21, 2023, the Complaint for Declaratory and Injunctive Relief was filed by Plaintiffs the National Association for the Advancement of Colored People ("NAACP"), the Mississippi State Conference of the NAACP ("Mississippi NAACP"), the Jackson City Branch of the NAACP ("Jackson NAACP"), Derrick Johnson, Nsombi Lambright-Haynes, Frank

1

Figgers, Charles Taylor, Markyel Pittman, and Charles Jones (collectively, "Plaintiffs") against Hon. Tate Reeves, in his official capacity as Governor of the State of Mississippi; Sean Tindell, in his official capacity as Commissioner of the Mississippi Department Public Safety; Bo Luckey, in his official capacity as Chief of the Mississippi Department of Public Safety Office of Capitol Police; Hon. Michael K. Randolph, in his official capacity as Chief Justice of the Mississippi Supreme Court; and Lynn Fitch, in her official capacity as Attorney General of the State of Mississippi.  ECF No. 1.

The Complaint for Declaratory and Injunctive Relief challenges two Mississippi laws, House Bill 1020 ("H.B 1020") and Senate Bill 2343 ("S.B. 2343") and asserts, *inter alia*, two claims against Defendants: Count II, titled "House Bill 1020's packing of the Hinds County Circuit Court intentionally discriminates against the majority-Black residents of Jackson on the basis of race in violation of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution," and Count III, titled "House Bill 1020's creation of the CCID Court intentionally discriminates against the majority-Black residents of Jackson on the basis of race in violation of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution." ECF No. 1 at 47-48.  The Complaint for Declaratory and Injunctive Relief requests that the Court "[d]eclare that H.B. 1020's packing of the Hinds County Circuit Court intentionally discriminates against Jackson's residents on the basis of race," "[d]eclare that H.B. 1020's creation of the CCID Court intentionally discriminates against Jackson's residents on the basis of race," and provide injunctive relief.  *Id.* at 50-51.

On April 28, 2023, Plaintiffs filed a Necessitous and Urgent Motion for a Temporary Restraining Order to prevent § 1(2) of H.B. 1020 from coming into effect.  ECF No. 11.  This provision required the Chief Justice to make four appointments to the Hinds County Circuit

Court no later than 15 days after enactment, and the Governor signed the bill on April 21. Plaintiffs' motion requested that the Court maintain the status quo by issuing a temporary restraining order enjoining Defendant Randolph from appointing judges to the Hinds County Circuit Court pursuant to H.B. 1020 § 1 pending the briefing, hearing, and resolution of Plaintiffs' then-forthcoming motion for a preliminary injunction.

On May 1, 2023, the Court held a teleconference hearing in which counsel for Defendant Randolph indicated plans to challenge the Court's jurisdiction to entertain Plaintiffs' Motion for a Temporary Restraining Order, and the Court set a hearing concerning "the jurisdictional issue concerning the Chief Justice . . . [and] the TRO matter." May 1, 2023 Tr. at 26:13-17.

On May 4, 2023, Defendant Randolph filed a Motion to Dismiss. ECF No. 19. The Motion to Dismiss and memorandum filed in support of the motion asserted the affirmative defense of judicial immunity with reference to only one Plaintiffs' claims: Count II's request for injunctive relief, the subject of Plaintiffs' Motion for a Temporary Restraining Order. *See* ECF No. 20 at 7. Neither the Motion to Dismiss nor the memorandum filed in support referenced Count II's request for declaratory relief or Count III's requests for declaratory or injunctive relief against Defendant Randolph, which were irrelevant to this Court's jurisdiction over Plaintiffs' Motion for a Temporary Restraining Order. *See* ECF Nos. 19-20.

On May 11, 2023, Plaintiffs filed their response in opposition to each of the arguments made in Defendant Randolph's Motion to Dismiss. ECF No. 25.

On May 12, 2023, after this Court vacated the hearing that had been set for Plaintiffs' TRO motion and Plaintiffs filed a Renewed Necessitous and Urgent Motion for a Temporary Restraining Order (ECF No. 24), the Court granted the renewed motion and set a hearing for May 22, 2023. ECF No. 26.

3

On May 19, 2023, Defendant Randolph filed a reply in support of his Motion to Dismiss. ECF No. 35.  The reply did not reference Count II's request for declaratory relief or Count III's requests for declaratory or injunctive relief against Defendant Randolph, which were irrelevant to this Court's jurisdiction over Plaintiffs' Motion for a Temporary Restraining Order.  *See id.*

"On May 22, 2023, this Court held an in-person Hearing, whereat it heard oral arguments on the following Motions: (1) Defendant Honorable Chief Justice Michael K. Randolph's Motion to Dismiss based on the doctrine of Judicial Immunity [Docket no. 19]; and (2) Plaintiffs' Renewed Necessitous and Urgent Motion for a Temporary Restraining Order [Docket no. 24]." ECF No. 38.

On May 23, 2023, this Court ordered: "To maintain the status quo and to avoid possible irreparable harm from any violation of constitutional rights to equal protection of the law, Defendant Chief Justice Michael K. Randolph hereby still is temporarily restricted from appointing special judges pursuant to H.B. 1020, until such a time that this Court renders its ruling on the Plaintiffs' forthcoming Motion for Preliminary Injunction."  ECF No. 38 (footnote omitted).  The next day, on May 24, 2023, Plaintiffs filed their Motion for Preliminary Injunction re Appointment of Judges pursuant to H.B. 1020 § 1.  ECF No. 40.

On June 1, 2023, this Court granted Defendant Randolph's Motion to Dismiss.  ECF No. 45. Consistent with Defendant Randolph's motion, the Order "only addresse[d] H.B. 1020, and, more specifically, that law's specific provision, § 1, which mandates appointment of special judges by the Chief Justice of the Mississippi Supreme Court."  *Id.* at 2 n.2.  The Order further stated: "Plaintiffs, aggrieved by the alleged racially discriminatory purpose of H.B. 1020 §1, ask this court preliminarily and permanently to enjoin the Chief Justice from exercising the authority granted him by H.B. 1020, thus prohibiting him from appointing any additional special judges to

the Hinds County Circuit Court. The Chief Justice, however, has raised the defense of Judicial Immunity, which defense shields judges from civil liability for acts performed in their judicial capacities." *Id.* at 11.  After determining that judicial immunity applies where "H.B. 1020 requires the Chief Justice to appoint four (4) temporary special judges for the Seven Circuit Court District," the Order then "ORDERED and ADJUDGED that Defendant Michael K. Randolph, in his official capacity as the Chief Justice of the Mississippi Supreme Court, be dismissed from this litigation because of Judicial Immunity." *Id.* at 20-23.

On June 7, 2023, Plaintiffs filed a Motion for Clarification of June 1, 2023 Order on Judicial Immunity.  ECF No. 51.  This motion sought an order clarifying that the Court's June 1, 2023 Order granting Defendant Randolph's Motion to Dismiss (ECF No. 45) addressed only Plaintiffs' request for injunctive relief as part of Plaintiffs' claim challenging H.B. 1020 § 1 and left intact Plaintiffs' remaining claims against Defendant Randolph: Plaintiffs' claims for declaratory relief on § 1 and for declaratory and injunctive relief on § 4.

On June 9, 2023, Defendant Randolph filed a Motion for Rule 54(b) Certification and a Response in Opposition to Plaintiff's Motion for Clarification.  ECF Nos. 54 and 55.  On June 12, 2023, the State Executive Defendants filed a separate Response in Opposition to Plaintiffs' Motion for Clarification of June 1, 2023, Order on Judicial Immunity.  ECF No. 58.

On June 14, 2023, the Court held a hearing on Plaintiffs' Motion for Clarification and Defendant Randolph's Motion for Rule 54(b) Certification, *inter alia*.

On June 16, 2023, Plaintiffs filed their Combined Reply in Support of Motion for Clarification and Response in Opposition to Defendant Randolph's Motion for Rule 54(b) Certification.  ECF No. 63.

On June 29, 2023, the Court held a hearing at which the Court authorized Plaintiffs to submit additional authority in support of Plaintiffs' positions by July 3, 2023.

Before the Court is Plaintiffs' Motion for Clarification of June 1, 2023 Order and Defendant Randolph's Motion for Rule 54(b) Certification.

## MOTION FOR CLARIFICATION OF JUNE 1, 2023 ORDER

Judicial immunity is an affirmative defense that must be pled by Defendant; failure to plead the affirmative defense waives it.  *Boyd v. Carroll*, 624 F.2d 730, 732-33 (5th Cir. 1980) ("The failure to plead judicial immunity waive[s] the affirmative defense.").  It is not uncommon for a judge to be found immune from some of a plaintiff's claims but not for others, so that the judge is dismissed from some claims but remains in the case for others.  For example, in *Malina v. Gonzales*, 994 F.2d 1121 (5th Cir. 1993), the Fifth Circuit held that where a state judge was sued over multiple acts, the judge may enjoy immunity as to some acts (there, a jail sentence) but not others (there, stopping, summoning, and charging an individual).  *Id.* at 1124.

In *Pulliam v. Allen*, 466 U.S. 522 (1984), the Supreme Court held that the "common law[] reject[ed] [] a rule of judicial immunity from prospective relief," such that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity."  *Id.* at 536, 541-42.  Congress responded by enacting the Federal Courts Improvement Act of 1996 to create limited judicial immunity by statute in § 1983 lawsuits, restricting plaintiffs to declaratory relief against state-court judges unless that relief has proven to be ineffective or unavailable.  *See Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 763 (8th Cir. 2019).  Section 1983 now provides that "in any action against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983.

Despite recognizing Plaintiffs' Count II and Count III claims for declaratory relief, Defendant Randolph did not attempt to argue that these claims were barred by judicial immunity. At the May 22 hearing, counsel for the Chief Justice told the Court that it could "acknowledg[e] immunity in this case, and the plaintiffs still have a remedy, because they have available to them Count 2 or 3 . . . seeking a declaratory judgment that this statute is unconstitutional." May 22, 2023 Hearing Tr. at 29:22-30:4. Similarly, Defendant Randolph's Motion to Dismiss recognized that "Plaintiffs have not alleged that declaratory relief is unavailable." ECF No. 20 at 9. Nevertheless, the Motion targeted judicial immunity only to injunctive relief for H.B. 1020 § 1.

The Motion to Dismiss did not, and could not, challenge Plaintiffs' claims for declaratory relief. There is a simple reason: "judicial immunity does not bar declaratory relief." *Severin v. Parish of Jefferson*, 357 F. App'x 601, 605 (5th Cir. 2009) (per curiam); *see Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 763 (8th Cir. 2019) ("Currently, most courts hold that the amendment to § 1983 does not bar declaratory relief against judges."); *see also, e.g.*, *Francis v. Pellegrino*, 224 Fed. App'x 107, 108 (2d Cir. 2007) (same); *O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016) (same); *Ruhbayan v. Smith*, No. 21-7419, 2022 WL 2764422, at *1 (4th Cir. July 15, 2022) (same); *Ward v. City of Norwalk*, 640 Fed. App'x 462 (6th Cir. 2016) (same); *Johnson v. McCuskey*, 72 F. App'x 475, 477 (7th Cir. 2003); *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008) (same); *Esensoy v. McMillan*, No. 06-12580, 2007 WL 257342, at *1 n.5 (11th Cir. Jan. 31, 2007) (per curiam) (same).

The as-amended text and legislative history of 42 U.S.C. § 1983 make clear that judicial immunity does not bar claims for declaratory relief. Section 1983 states only that "*injunctive relief* shall not be granted" against a judicial actor in certain circumstances; it does not bar declaratory relief. 42 U.S.C. § 1983 (emphasis added). Section 1983 provides that injunctive

7

relief *may* be granted if "a declaratory decree was violated or declaratory relief was unavailable"—presupposing that a declaratory decree could be issued against a judicial actor in the first place. The legislative history of the Federal Courts Improvement Act of 1996, which amended Section 1983, squarely supports this plain meaning of the terms of Section 1983 and further forecloses any argument to the contrary—which, in any event, the Chief Justice did not raise. The Senate Judiciary Report explained that "***litigants may still seek declaratory relief***." S. Rep. No. 104-366, at 37 (1996) (emphasis added); *see also Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) ("[T]he 1996 amendment to § 1983 would limit the relief available to plaintiffs [suing judges acting in their judicial capacity] to declaratory relief."). Indeed, the Fifth Circuit has expressly concluded that declaratory relief remains available under § 1983 against defendant judges even when these judges act in their judicial capacity. *See, e.g.*, *Caliste v. Cantrell*, 937 F.3d 525, 532-33 & n.7 (5th Cir. 2019) (affirming declaratory judgment against state judge and noting that declaratory relief remains available regardless of whether actions were taken in the judicial defendant's "judicial capacity" or "administrative capacity").

This Court's June 1, 2023 Order recognized that a "legion of federal cases" have concluded that judicial immunity covers judicial acts, ECF No. 45 at 22; none of those same cases have concluded that judicial immunity bars claims for declaratory relief. *Davis v. Tarrant Cty., Tex.*, 565 F.3d 214 (5th Cir. 2009), for example, held that the state judges in that case had judicial immunity, *id*. at 225, but concluded that no immunity would have barred a proper claim for "prospective declaratory relief" against those same judges, *id*. at 228; *see also Holloway v. Walker*, 765 F.2d 517, 525 (5th Cir. 1985) (recognizing that "[j]udicial immunity does not extend to suits for . . . declaratory relief under section 1983"). Indeed, a legion of cases since the 1996

8

amendments recognize that declaratory relief is available despite any claim of judicial immunity.[1]

Lastly, absent from Defendant Randolph's Motion was any mention of Plaintiffs' Count III claim to enjoin his compliance with H.B. 1020 § 4. This provision concerns the creation of a new court for the Capitol Complex Improvement District ("CCID") beginning on January 1, 2024. ECF No. 12-1, § 4. Under § 4(2), the Chief Justice "shall appoint the CCID inferior court judge." *Id.*

Whether the Chief Justice enjoys immunity for appointing the CCID judge is a different question than whether he enjoys immunity for appointing judges to the Hinds County Circuit Court. While the Order found judicial immunity with respect to § 1 because both "§ 9-1-105 and H.B. 1020 [§ 1] . . . allow the Chief Justice to appoint special temporary circuit judges," ECF No. 45 at 21-22, § 4 does not concern temporary circuit court judges. *See* ECF No. 12-1 § 4. Nor does § 4 concern any of the other "judicial officer[s]" that the Chief Justice may have temporarily appointed in the past under § 9-1-105: "a judge of the Court of Appeals, chancery, circuit or county court, or a Supreme Court Justice." Miss. Code § 9-1-101.

Instead, § 4 authorizes a new "CCID inferior court judge" with powers similar to those of municipal courts. ECF No. 12-1, § 4. Far from being a superficial distinction, the CCID court appointment is even further removed from normal judicial functions and instead directly

---

[1] *See, e.g., Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) ("[a]bsolute judicial immunity [] does not bar prospective relief against a judicial officer"); *see also Norman v. Texas Ct. of Crim. Appeals*, 582 F. App'x 430, 431 (5th Cir. 2014) (citing *Holloway* for proposition that "judicial immunity does not bar claims for . . . declaratory relief in § 1983 actions"); *LaBranche v. Becnel*, 559 F. App'x 290, 290 (5th Cir. 2014) (same); *Guillion v. Cade*, 449 F. App'x 340, 341 (5th Cir. 2011) (same); *Modelist v. Miller*, 445 F. App'x 737, 740 n.1 (5th Cir. 2011) (same); *Anderson v. L. Firm of Shorty, Dooley & Hall*, 393 F. App'x 214, 216 (5th Cir. 2010) (same); *Johnson v. Bigelow*, 239 F. App'x 865, 865 (5th Cir. 2007) (same); *West v. Keeshan*, 61 F. App'x 121, 121 (5th Cir. 2003) (same).

intertwined with executive and administrative actions.  Under Misssissippi law, unlike temporary circuit court judges who may be selected by the Chief Justice, municipal court judges and their temporary replacements—"municipal judge[s] *pro tempore*"—are selected by "the governing authorities of the municipality."  Miss. Code §§ 21-23-3, -9.  Depending on the form of municipal government, those "governing authorities" can be "the mayor, the [city] council or both"—all of whom are non-judicial government officials.  *Jordan v. Smith*, 669 So. 2d 752, 756 (Miss. 1996), *overruled on other grounds by Myers v. City of McComb*, 943 So. 2d 1 (Miss. 2006).

There is no history of the Chief Justice appointing either new or temporary municipal judges—as the Chief Justice's own evidence shows.  At the hearing on June 14, 2023, the Chief Justice introduced a list of over 1,500 temporary judicial appointments he has made.  Not one of these judges was a municipal court judge.

This Court has yet to consider the question of whether appointing the CCID inferior court judge to exercise the powers of a municipal judge constitutes a "judicial act."  Answering that question requires the separate "fact-intensive inquiry" necessary determine whether Defedant Randolph possesses judicial immunity to appoint what § 4 styles a municipal judge.  Order, ECF No. 45 at 16.  The Court's determination that the Chief Justice's appointment of temporary special circuit judges under H.B. 1020 § 1 is a judicial act has no bearing on whether the Chief Justice's appointment of the CCID inferior court judge under § 4 is a judicial act.  *See, e.g.*, *Davis*, 565 F.3d at 222 (citing favorably *Lewis v. Blackburn*, 555 F. Supp. 713, 715 (W.D.N.C. 1983), *rev'd on other grounds*, 759 F.2d 1171 (4th Cir. 1985), as "holding that a [state] judge's appointment of magistrate[] [judges] is a ministerial act").

As "the official seeking absolute immunity," the Chief Justice was required to carry "the burden of showing that such immunity is justified for the function in question." *Wearry v. Foster*, 33 F.4th 260, 265 (5th Cir. 2022) (citation omitted).  The Chief Justice did not address whether appointment of the CCID judge is a normal judicial function for which he enjoys immunity.  *See* ECF No. 20.  Defendant Randolph thus did not carry his burden to dismiss Plaintiffs' claims regarding § 4.

It is therefore **ORDERED and ADJUDGED** that the Court's June 1, 2023 Order granting Defendant Randolph's Motion to Dismiss (ECF No. 45) dismissed only Plaintiffs' request for injunctive relief as part of Plaintiffs' claim challenging H.B. 1020 § 1, subject to the § 1983 exception allowing injunctive relief against an immune judge if "a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

It is further **ORDERED** that the Court's June 1, 2023 Order left intact Plaintiffs' remaining claims against Defendant Randolph: Plaintiffs' claims for declaratory relief on H.B. 1020 § 1 and for declaratory and injunctive relief on § 4.

It is further **ORDERED** that the Court's June 1, 2023 Order is amended to clarify as follows:  "It is therefore **ORDERED and ADJUDGED** that Defendant Michael K. Randolph, in his official capacity as the Chief Justice of the Mississippi Supreme Court, be dismissed from this litigation <u>to the extent that Plaintiffs seek injunctive relief as part of their claim challenging H.B. 1020 § 1 ("unless a declaratory decree was violated or declaratory relief was unavailable," 42 U.S.C. § 1983)</u> because of Judicial Immunity."

It is further **ORDERED** that Chief Justice Randolph is "essentially [a] nominal part[y]" in this suit.  *In re Justs. of Sup. Ct. of P.R.*, 695 F.2d 17, 20 (1st Cir. 1982).  As a nominal defendant, the Chief Justice need not "personally . . . participate in or bear the burden of the

11

present litigation." *Rivera Puig v. Garcia Rosario*, 785 F. Supp. 278, 285-86 (D.P.R.), *aff'd and remanded*, 983 F.2d 311 (1st Cir. 1992). Specifically, Plaintiffs have stipulated that they will not seek discovery against nominal defendant Chief Justice Randolph, "reliev[ing] the most immediate practical burden of the litigation." 695 F.2d at 21. Chief Justice Randolph will not be deposed or asked to testify in any capacity. Chief Justice Randolph "need not appear; and since other parties (including the . . . [Attorney General]) are prepared to defend the statutes on their merits, [Chief Justice Randolph] need not take a position or even file a brief." *Id.* at 27.

## MOTION FOR 54(b) CERTIFICATION

As explained above, the Court's dismissal addressed only one of the two remedies pleaded in Count II (i.e., injunctive, but not declaratory, relief as against the Chief Justice). Rule 54(b) allows a district court to enter partial final judgment on "one or more, but fewer than all, claims," Fed. R. Civ. P. 54(b), but that judgment still must encompass **all** remedies pleaded for a single claim. A count "*seeking multiple remedies* for the alleged violation of [one] right, *states a single claim for relief*." *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743 n.4 (1976) (emphasis added). Here, the Court's conclusion that the Chief Justice enjoys judicial immunity is a threshold determination as to whether injunctive relief would be available pursuant to § 1983. But "a district court does not resolve a 'claim' merely by ruling on a threshold legal issue relevant to that claim." *Tetra Techs., Inc. v. Cont'l Ins. Co.*, 755 F.3d 222, 230 (5th Cir. 2014).

As demonstrated above, the Court's dismissal order bears only on Plaintiffs' prayer for injunctive relief as to § 1, and Plaintiffs' prayer for declaratory relief—as to which there is no judicial immunity—remains undecided. Because multiple remedies remain outstanding, *Wetzel* and *Tetra Techs.* teach that the claim for relief in Count II with respect to § 1 of H.B. 1020 is not yet fit for Rule 54(b) certification.

12

There is a further reason why Rule 54(b) certification is improper. The Rule provides that a court may direct entry of a partial final judgment "only if the court expressly determines that there is no just reason for delay." Here, there are several just reasons for delay. First, if the Chief Justice is released from this case and makes the appointments as H.B. 1020 requires, Plaintiffs will be deprived of their right to equal protection, and, as the Court has previously found, that is sufficient irreparable harm to justify a temporary restraint on the Chief Justice. *See* ECF No. 26 at 4; ECF No. 38 at 2. Second, if judges are unlawfully appointed to the Hinds County Circuit Court, it will cause harm to that court. *See* Second Declaration of Judge Tomie Green, ECF No. 57-1, ¶¶ 14-15 ("Were the constitutionality of H.B. 1020 to be decided only after the appointment of judges—and after criminal pleas were accepted by appointed judges and trials with appointed judges had been initiated or concluded—it would drive confusion, foster litigation by affected parties, delay further resolution of cases, and cause irreparable harm to our community and its citizens.").

Third, it would be imprudent to grant a partial final judgment now, which would start the clock running for an interlocutory appeal. This would result in piecemeal appeals to the Fifth Circuit that may later be rendered moot by ongoing litigation concerning Plaintiffs' parallel request for declaratory relief. *See Tetra Techs.*, 755 F.3d at 231 ("[W]ere we to affirm the district court, we would no doubt be required to endure a second appeal concerning the same claim between the same parties . . . . Rule 54(b) does not permit such piecemeal appeals, but rather was 'created specifically to avoid' them." (citation omitted)).

It is therefore **ORDERED and ADJUDGED** that the Chief Justice's motion for Rule 54(b) certification is **DENIED**.

It is further **ORDERED** that the Court will hold a hearing on Plaintiffs' Motion for Preliminary Injunction re Appointment of Judges pursuant to H.B. 1020 § 1 on July ____, 2023 at ____ o'clock.


Dated: _____         _____
                                      HENRY T. WINGATE
                                      UNITED STATES DISTRICT COURT JUDGE