**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**NATIONAL ASSOCIATION FOR THE**
**ADVANCEMENT OF COLORED PEOPLE, ET AL.**                          **PLAINTIFFS**

**VS.**                                                  **CASE NO. 3:23-cv-00272-HTW-LGI**

**TATE REEVES, in his official capacity**
**As Governor of the State of Mississippi, ET AL.**                    **DEFENDANTS**

---

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF STATE DEFENDANTS'**
**RESPONSE IN OPPOSITION TO UNITED STATES'**
**MOTION TO INTERVENE [DKT. #69]**

---

**INTRODUCTION**

The United States' motion to intervene [Dkt. #69] should be denied because it is untimely. The United States has been aware of the partisan assault on H.B. 1020 since at least as early as February 2023, when Congressman Bennie Thompson (D-MS) discussed "possible civil rights concerns" relative to H.B. 1020 with the U.S. Department of Justice.  The United States thereafter sat idly by while the NAACP and other plaintiffs sued multiple state officials—initiating an action that has to date spawned all of the following:  extensive briefing by all parties on multiple motions; three lengthy court hearings on numerous issues; the consolidation of this case with a later-filed case challenging the constitutionality of 2023 S.B. 2343; and the defeat of Plaintiffs' efforts to keep Chief Justice Mike Randolph in this case as an enjoinable defendant in connection with H.B. 1020's judicial appointment provision.

Only after all of the foregoing transpired and the principal issues were framed did the United States, on July 12, 2023, seek to intervene for what is effectively the sole purpose of doing what the Eleventh Amendment prohibits Plaintiffs from doing:  suing the State of Mississippi in a

naked attempt to circumvent this Court's dismissal of Chief Justice Randolph on judicial immunity grounds.  The United States' dilatory intrusion in this matter will do nothing to further this Court's consideration or efficient disposition of the issues before it.  For all these reasons, the United States' motion to intervene is untimely.  Therefore, the United States is not entitled to intervention of right pursuant to 42 U.S.C. § 2000h-2 or to permissive intervention, and its belated motion to intervene should be denied in its entirety.

Alternatively, the United States' motion should be denied to the extent it seeks to add the State of Mississippi as a defendant and to assert claims in its own right against Mississippi's Attorney General.  The United States lacks standing to sue the State of Mississippi or the Attorney General.  Because the United States seeks relief that is different from that sought by Plaintiffs— namely, declaratory and injunctive relief *against the State*—it must, as a matter of law, establish Article III standing.  The United States does not articulate any concrete and particularized, actual or imminent harm or injury to the federal government caused by H.B. 1020.  Instead, the United States seeks only to vindicate Plaintiffs' personal claims.  But as a matter of law, a sovereign does not acquire standing by litigating, as a volunteer, the personal claims of its citizens.  Because the United States lacks standing to pursue relief against the State of Mississippi or the Attorney General, it may not seek such relief in this lawsuit.

Further, the United States has no cause of action to enforce the Fourteenth Amendment against the State of Mississippi in connection with a crime-reduction statute like H.B. 1020.  Consistent with the express terms of the Fourteenth Amendment, only Congress can create causes of action permitting the United States to sue the sovereign States over alleged Fourteenth Amendment violations.  Congress has not authorized the United States to bring a Fourteenth Amendment enforcement action over a crime-reduction statute like H.B. 1020.  Because the United

2

States has no cause of action against the State of Mississippi in this context, it has no right to intervene for the purpose of suing the State, nor does it meet the requirements for permissive intervention for that purpose.

While the United States seeks intervention of right pursuant to 42 U.S.C. § 2000h-2, that statute merely provides a vehicle by which the United States can, subject to certain requirements, intervene in pending Fourteenth Amendment equal protection cases.  It does not confer upon the United States any substantive cause of action by which to enforce the Fourteenth Amendment against the State of Mississippi, in connection with H.B. 1020 or otherwise.

For these reasons and those set forth herein, the United States' motion to intervene should be denied outright as untimely.  Alternatively, because the United States lacks standing, the motion should be denied to the extent it seeks to add the State of Mississippi as a defendant and to assert claims in its own right against the Attorney General.  In the further alternative, because the United States has no cause of action against the State of Mississippi, the motion should be denied to the extent it seeks to add the State as a defendant.

## FACTUAL BACKGROUND

The United States' motion to intervene invokes 42 U.S.C. § 2000h-2 (Title IX, § 902 of the Civil Rights Act of 1964, as amended).  Section 2000h-2 provides that "[w]henever an action has been commenced . . . seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, . . . the Attorney General for or in the name of the United States may intervene in such action upon timely application . . . ."  42 U.S.C. § 2000h-2.  Section 2000h-2 further provides that "[i]n such action the United States shall be entitled to the same relief as if it had instituted the action."  *Id.*

Plaintiffs, including the NAACP, challenge the constitutionality of H.B. 1020 on Fourteenth Amendment equal protection grounds.   Specifically, they seek declaratory and injunctive relief against Mississippi's Attorney General, Commissioner of the Department of Public Safety, and Capitol Police Chief (hereinafter collectively "the State Defendants") in an effort to permanently halt and invalidate the following features of H.B. 1020:  the Chief Justice's appointment of temporary special circuit judges to the Hinds County Circuit Court; the creation of the Capitol Complex Improvement District ("CCID") court; and the Attorney General's appointment of prosecutors for the CCID court.  Dkt. #1 at 47-51.

The Governor and the Chief Justice, both previously defendants in this matter, were dismissed as parties from this action—the former by Plaintiffs and the latter by this Court.  Dkt. #44, #45.  The State of Mississippi, on the other hand, is not and never has been a party to this litigation.  *See* Dkt. #1 at 10, ¶¶ 25-29.  In moving to intervene, the United States does not seek to assert any claims against the Attorney General that are not already asserted in Plaintiffs' complaint. *Compare* Dkt. #69-2 at 25-30 *with* Dkt. #1 at 46-51.  *See also* Dkt. #70 at 3.  The United States instead seeks to (1) assert such claims against the Attorney General in its own right; (2) add the State of Mississippi as a named defendant; and (3) assert Fourteenth Amendment equal protection claims against the State.  *See* Dkt. #69-2 at 25-30; Dkt. #70 at 3.  The United States does not identify a cause of action authorizing it to sue the State of Mississippi to enforce the Fourteenth Amendment in connection with H.B. 1020.

This case has been hotly litigated by all parties since its inception.  As this Court is well aware, this litigation has thus far entailed extensive briefing by all parties on multiple motions, three lengthy court hearings on numerous issues, the consolidation of this case with a later-filed case challenging the constitutionality of S.B. 2343, and the defeat of Plaintiffs' efforts to keep

Chief Justice Randolph in this case as an enjoinable defendant in connection with H.B. 1020's judicial appointment provision. Only after all of the foregoing transpired and the principal issues were framed did the United States, on July 12, 2023, seek to intervene to sue the State of Mississippi and the Attorney General as set forth above. The State Defendants timely file the instant response in opposition to the United States' motion to intervene.

## ARGUMENT

## I. THE UNITED STATES' MOTION TO INTERVENE SHOULD BE DENIED BECAUSE IT IS UNTIMELY.

Section 2000h-2 authorizes intervention by the United States only "upon timely application." 42 U.S.C § 2000h-2. Similarly, FRCP 24 requires that both intervention of right and permissive intervention be sought "[o]n timely motion." FED. R. CIV. P. 24(a),(b)(1). "Timeliness [in this context] is to be determined from all the circumstances. And it is to be determined by the court in the exercise of sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review." *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 366 (1973).

In evaluating timeliness, a district court should consider four factors: (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 512-13 (5th Cir. 2016) (quoting *Ford v. City of Huntsville*, 242 F.3d 235, 239 (5th Cir. 2001)).

In the case at bar, the United States' motion to intervene should be denied in its entirety because the motion is anything but timely under the circumstances.  First, the United States has known of its purported interest in this case since its inception, having learned of H.B. 1020 at least as early as February 22, 2023, during the earliest stages of the bill's evolution in the 2023 legislative session.  It was then—two months before H.B. 1020 became law—that Congressman Bennie Thompson (D-MS) disclosed that he had "been discussing [H.B. 1020] and possible civil rights concerns with the U.S. Department of Justice."  2/22/2023 WLBT article (Ex. 1).

H.B. 1020 was signed by the Governor on April 21, 2023.  Dkt. #34-1 at 2.  That same day—April 21—the NAACP-backed Plaintiffs in this case filed their 51-page, 149-paragraph complaint challenging the constitutionality of H.B. 1020 on Fourteenth Amendment equal protection grounds.  Dkt. #1.  That Plaintiffs were in a position to file such an extensive pleading the very day that H.B. 1020 was signed into law is demonstrative of an intent to pursue litigation that was formulated well in advance of H.B. 1020's enactment.

Over the course of the last three months, the parties have hotly litigated this case.  On April 28, 2023, Plaintiffs filed a "necessitous and urgent motion for a temporary restraining order" [Dkt. #11], followed by a "renewed necessitous and urgent motion for a temporary restraining order" [Dkt. #24] on May 11, 2023.  On May 12, 2023, this Court entered a temporary restraining order directed to Chief Justice Randolph, "temporarily restrict[ing] [him] from appointing judges pursuant to H.B. 1020." Dkt. #26 at 4.  Following a lengthy hearing on May 22, 2023, this Court on May 23, 2023—over the State Defendants' objection—entered an order extending the aforementioned TRO "until such a time that this Court renders its ruling on the Plaintiffs' forthcoming Motion for Preliminary Injunction."  Dkt. #38 at 2.  Plaintiffs thereafter filed their

motion for preliminary injunction, which has been fully briefed and ripe for ruling since June 9, 2023.  *See* Dkt. #39, #40, #41, #50, #57.

The parties have to date engaged in extensive briefing in connection with a multitude of motions, including the following:  Plaintiffs' motion and renewed motion for a TRO; Plaintiffs' motion for preliminary injunction; Governor Reeves's motion to dismiss; Chief Justice Randolph's motion to dismiss; Plaintiffs' motion for "clarification" regarding the Court's order dismissing Chief Justice Randolph; Chief Justice Randolph's motion for Rule 54(b) certification; and the *Jxn Undivided* plaintiffs' motion to consolidate a later-filed challenge to S.B. 2343 with the instant litigation.  Briefing on all of these motions is complete, and this case is presently consolidated with the S.B. 2343 case.  The Court has to date conducted three hearings of considerable length (on May 22, June 14, and June 29, 2023) to consider multiple pending motions.  Virtually all of the proceedings and developments in this matter have been the subject of widespread media attention.

On June 1, 2023, this Court entered its order dismissing Chief Justice Randolph as a defendant on judicial immunity grounds [Dkt. #45], leaving no defendant in this case who is susceptible to a federal injunction blocking the challenged judicial appointment provision of H.B. 1020.  Despite the requests of the State Defendants to dissolve the aforementioned TRO and dismiss Plaintiffs' judicial appointment claim for multiple legal reasons following Chief Justice Randolph's dismissal, the TRO presently remains in effect.  At the time of this filing, the TRO has been in place for 75 days and counting—*viz.*, 47 days longer than the 28-day period authorized by FED. R. CIV. P. 65(b)(2).

As noted above, the United States has been aware of events surrounding H.B. 1020 since the bill's infancy in the legislature.  Yet it was not until this Court dismissed Chief Justice Randolph—thereby foreclosing any avenue to relief on Plaintiffs' judicial appointment claim—

that the United States apparently decided it was necessary to intervene in this matter.  As set forth in detail below, the United States takes this belated action despite the fact that it lacks standing to assert such claims and has no cause of action against the State of Mississippi.

Second, allowing the United States to intervene in this matter would prejudice the State Defendants by further prolonging resolution of Plaintiffs' judicial appointment claim.  As set forth above, the TRO blocking the appointment of temporary special circuit judges pursuant to H.B. 1020 has now been in effect for 47 days longer than the time period allowed by FED. R. CIV. P. 65(b)(2), and the clock continues to run.  Chief Justice Randolph was dismissed June 1, and Plaintiffs' motion for preliminary injunction has been fully briefed and awaiting disposition since June 9.  Allowing the United States to intervene at this late date will almost certainly invite additional briefing and more hearings, thereby further delaying resolution of the judicial appointment issue.

Third, the United States will suffer no prejudice if its motion to intervene is denied. Plaintiffs have the financial backing of the NAACP and a sizeable team of skilled attorneys— including a former U.S. Attorney General—to ensure that their rights are protected and their purported equal protection arguments are zealously advanced in this case.  Any ruling this Court makes relative to H.B. 1020 that favors Plaintiffs will inure to the benefit of the United States in its stated effort to protect the rights of citizens at large.  The United States will not be prejudiced by allowing Plaintiffs' counsel to litigate this case in the absence of the federal government.

Finally, the unusual circumstance of the urgent need sought to be addressed by H.B. 1020's judicial appointment provision—namely, relief from a judicial backlog of criminal cases in Hinds County—further militates in favor of a determination that the United States' motion to intervene is untimely.  As this Court has recognized, "Jackson has a crime cancer"—a "crime problem [that]

is sweltering, undisputed and suffocating"—and "[t]he criminal justice system in Hinds County is in crisis." Dkt. #45 at 9-10, 21. H.B. 1020's judicial appointment mechanism is a direct legislative response to that crisis. The State of Mississippi has a legitimate interest in reducing overcrowded criminal dockets in its most populous county—particularly to ensure that both victims and defendants alike have timely access to justice in the Hinds County criminal court system. This is especially important in the seat of State government, where a rise in violent crime has placed a steady strain on Hinds County's criminal dockets in recent years. That these concerns do not appear to resonate with the United States (or the Department of Justice) is surprising. At this juncture, the United States' belated intervention would only prolong any assistance to Hinds County that is to result from the Chief Justice's appointment of temporary special circuit judges. Nothing prevented the United States from intervening at the outset of this litigation and joining in the battle over the judicial appointment issue when it occurred in April-June 2023. That battle should not be refought to placate the purported interests of a latecomer that "slept on its rights" the first time around.

Considering all of the foregoing, this Court should view the United States' motion for what it is: a naked attempt to circumvent this Court's dismissal of Chief Justice Randolph on judicial immunity grounds by suing the State of Mississippi—something Plaintiffs are barred from doing under 42 U.S.C. § 1983 and by sovereign immunity, see *infra*. But as set forth below, the State of Mississippi is no more amenable to suit in this case by the United States than by Plaintiffs. If the United States truly believed that its intervention was necessary in this case for any purpose, it could have sought to intervene at the outset—before the parties and this Court expended considerable resources litigating key issues in this case. At this juncture, those issues are framed and await resolution. All parties are represented by competent counsel, and the asserted interests of Plaintiffs

and the United States are ostensibly aligned.  The United States' dilatory intrusion in this matter will do nothing to further this Court's consideration or efficient disposition of the issues before it. For all these reasons, the United States' motion to intervene is untimely.  Therefore, the United States is not entitled to intervention of right pursuant to § 2000h-2 or to permissive intervention, and its belated motion to intervene should be denied outright.

## II. ALTERNATIVELY, THE MOTION SHOULD BE DENIED TO THE EXTENT THE UNITED STATES SEEKS TO ADD THE STATE OF MISSISSIPPI AS A DEFENDANT AND TO ASSERT CLAIMS IN ITS OWN RIGHT AGAINST THE ATTORNEY GENERAL BECAUSE THE UNITED STATES (1) LACKS STANDING; AND (2) HAS NO CAUSE OF ACTION AGAINST THE STATE OF MISSISSIPPI.

### A.  The United States lacks standing to assert an equal protection claim against the State of Mississippi or the Attorney General.

It is black-letter law that "at the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017).  *See also Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) ("An intervenor of right must independently demonstrate Article III standing if it pursues relief that is broader than or different from the party invoking a court's jurisdiction.").  Here, Plaintiffs did not sue the State of Mississippi and thus do not seek relief against the State of Mississippi.  *See* Dkt. #1 at 10, ¶¶ 25-29.  The United States, on the other hand, seeks to add the State of Mississippi as a defendant and to seek declaratory and injunctive relief against the State for alleged equal protection violations. *See* Dkt. #69-2 at 6, ¶ 20; 25, heading preceding ¶ 148; 29-30, ¶¶ A-E.  Because the United States— as a putative intervenor of right—"seeks additional relief beyond that which the plaintiff[s] request[]," *Town of Chester*, 581 U.S. at 439, it must—pursuant to *Town of Chester*—separately demonstrate Article III standing to pursue such relief.

To establish Article III standing, a plaintiff must show—among other things—an "injury in fact" that is both (a) "concrete and particularized" and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  In the case at bar, the Mississippi Legislature's enactment of H.B. 1020 does not injure the United States.  While the United States obviously disagrees with the State of Mississippi regarding the constitutionality of H.B. 1020, merely "observ[ing] conduct with which one disagrees . . . is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms." *Valley Forge Christian College v. Ams. United for Separation of Church & State*, 454 U.S. 464, 485-86 (1982).  It is no surprise, then, that the United States makes no effort to articulate any concrete and particularized, actual or imminent harm or injury to the federal government caused by H.B. 1020.

Instead, the United States asserts that "[t]his case implicates the United States' ability to protect its sovereign interest in ensuring that persons of all races are afforded equal protection of the laws in accordance with the Fourteenth Amendment to the U.S. Constitution."  Dkt. #70 at 6-7.  This purported "sovereign interest" is nothing more than an attempt to vindicate Plaintiffs' personal claims.  But a sovereign cannot "merely litigat[e] as a volunteer the personal claims of its citizens." *See Pennsylvania v. New Jersey*, 426 U.S. 660, 665 (1976).  Nor may a sovereign "step[] in to represent the interests of particular citizens who, for whatever reason, cannot represent themselves." *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600 (1982).

Because the United States lacks standing to pursue relief against the State of Mississippi or the Attorney General, it may not seek such relief in this lawsuit.  Therefore, should the Court find that the United States' motion to intervene is timely, the motion should nevertheless be denied

to the extent the United States seeks to add the State of Mississippi as a defendant and to assert claims in its own right against the Attorney General.

**B.  As a matter of law, the United States has no cause of action to enforce the Fourteenth Amendment against the State of Mississippi in connection with H.B. 1020.**

The United States cannot sue the State of Mississippi unless it identifies a cause of action that authorizes it to sue the State in connection with H.B. 1020.  *See Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979) ("*cause of action* is a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court") (emphasis in original).  Nowhere in its papers does the United States identify any statutory (or other) authority for suing the State of Mississippi over an allegedly unconstitutional crime-reduction statute like H.B. 1020.  *See* Dkt. #69, #69-2, #70.

The Fourteenth Amendment does not supply a generalized cause of action by which the federal government is authorized to sue on behalf of citizens.  Rather, it empowers Congress to "enforce" its provisions via "appropriate legislation."  U.S. CONST. amend. XIV, § 5.  It is the exclusive prerogative of Congress to decide whether and to what extent lawsuits may be filed for alleged violations of the Fourteenth Amendment; neither the federal executive nor the federal judiciary can create causes of action to enforce the Fourteenth Amendment where Congress has not done so.  *See Lexmark Int'l, Inc. v. State Control Components, Inc.*, 572 U.S. 118, 128 (2014) ("a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied").

Congress has occasionally created causes of action authorizing the U.S. Attorney General to sue state entities for alleged Fourteenth Amendment equal protection violations in particular circumstances.  *See, e.g.*, 42 U.S.C. § 2000b(a) (authorizing U.S. Attorney General to sue state entities that enforce racially-segregated public facilities); 42 U.S.C. § 2000c-6(a) (authorizing U.S.

Attorney General to sue state entities that maintain racially-segregated schools). But in keeping with "congressional policy denying the federal government broad authority to initiate an action whenever a civil rights violation is alleged," *U.S. v. Mattson*, 600 F.2d 1295, 1299-1300 (9th Cir. 1979), Congress has conferred such power only sparingly. When it has done so, it has specifically addressed and carefully limited the circumstances by which a federal enforcement action may be brought—for example, by imposing multiple preconditions that must be satisfied before the U.S. Attorney General can sue a state entity. *See, e.g.*, 42 U.S.C. §§ 2000b(a), 2000c-6(a).

Such specific and narrowly-crafted congressional enactments foreclose any possibility of an implied cause of action by which the United States could sue a state in connection with alleged equal protection violations. And the notion of an implied cause of action to enforce the Fourteenth Amendment was rejected in *United States v. City of Philadelphia*, 644 F.2d 187, 200 (3d Cir. 1980), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) (holding that "the fourteenth amendment does not implicitly authorize the United States to sue to enjoin violations of its substantive provisions"). *See also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000) (reaffirming generally that "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute" purporting to create a cause of action) (internal quotation marks omitted). Because Congress has not expressly created a cause of action specifically authorizing the U.S. Attorney General to sue states over allegedly unconstitutional crime-reduction statutes like H.B. 1020, the United States has no cause of action against the State of Mississippi.

To the extent the United States would argue that this Court may divine a cause of action from traditional principles of equity, that argument must likewise fail. Any notion that "principles

13

of equity" allow the federal executive branch to sue states that allegedly violate the Fourteenth Amendment is incompatible with the Amendment's vesting of enforcement authority in Congress exclusively.  *See City of Philadelphia*, 644 F.2d at 200 (refusing to recognize implied right of action for federal government to sue in connection with alleged Fourteenth Amendment violations because "Section 5 of the fourteenth amendment confers on Congress, not on the Executive or the Judiciary, the 'power to enforce, by appropriate legislation, the provisions of this article'").

To the extent the United States contends that 42 U.S.C. § 2000h-2 provides a cause of action against the State of Mississippi, that contention is erroneous.  Section 2000h-2 only authorizes intervention—it does not create a cause of action.

Section 2000h-2 authorizes the U.S. Attorney General, in the name of the United States, to "intervene . . . upon timely application" in a pending action asserting Fourteenth Amendment equal protection claims predicated on race, and to pursue "the same relief as if it had instituted" the pending action.  42 U.S.C. § 2000h-2.  By its own terms, Section 2000h-2 "merely provides a process for the U.S. Attorney General to intervene in equal protection civil rights actions." *Kennedy v. Warren Props., LLC*, Civil Action No. 17-00114-KD-N, 2017 WL 5896252, at *5 (S.D. Ala. Nov. 7, 2017) (emphasis added).  It does not create a cause of action.  *See Sayman v. Nat'l Evaluation Sys., Inc.*, No. 02 C 2413, 2002 WL 598519, at *1 (N.D. Ill. Apr. 17, 2002) ("42 U.S.C. § 2000h-2 does not create an independent federal claim; it merely allows the United States Attorney General to intervene in a civil rights action if the matter is of general public importance").  That is evident from the plain language of § 2000h-2.  It is confirmed by the fact that § 2000h-2 does not abrogate sovereign immunity—a necessary feature of any federal statute by which a cause of action is to be made cognizable against a state.  *See Wade v. Miss. Coop. Extension Serv.*, 528 F.2d 508, 520-21 (5th Cir. 1976).

Federal courts have taken different views regarding whether § 2000h-2 limits the United States, as an intervenor, to the precise relief requested by the plaintiffs in the pending action as its plain text may be read to suggest.  *Compare Turner v. Goolsby*, 255 F. Supp. 724, 732 (S.D. Ga. 1965) ("litigation should not be expanded at the instance of a late comer such as the United States" in conjunction with intervention effectuated by § 2000h-2), *with Spangler v. United States*, 415 F.2d 1242, 1244 (9th Cir. 1969) (Section 2000h-2 "does not limit the United States . . . to the relief asked for by the plaintiff"), *and Sanders v. Ellington*, 288 F. Supp. 937, 939 (M.D. Tenn. 1968) (countenancing United States' claims for relief not sought by plaintiffs in pending action).  But that is a different question entirely from whether § 2000h-2 itself *creates* a cause of action—which it does not.  Even in *Spangler*, *supra*, the Ninth Circuit obviously recognized that an independent legal basis must exist for the United States to seek relief not sought by the plaintiffs in the pending action—there being no cause of action created by § 2000h-2 itself.  *See Spangler*, 415 F.2d at 1244 (reasoning that § 2000h-2 would not prevent U.S. Attorney General from seeking additional relief by virtue of cause of action created by 42 U.S.C. § 2000c-6).  While the United States cites both *Spangler* and *Sanders*, *supra*, in its brief, it gets no help from either case since neither construes § 2000h-2 as creating a cause of action.

The United States further cites *Coffey v. State Educ. Fin. Comm'n*, 296 F. Supp. 1389 (S.D. Miss. 1969), in which the United States "intervened as a party plaintiff" pursuant to § 2000h-2 and "joined the State of Mississippi as an added defendant."  296 F. Supp. at 1390.  But the issue of whether § 2000h-2 *creates a cause of action* against the State of Mississippi was not before the court in *Coffey* and thus was not analyzed in that case.  *See id.* at 1390-92.  Regardless, an arm of the State—*viz.*, the State Educational Finance Commission—was already made a defendant by the private plaintiffs in *Coffey*.  *See id.* at 1390.  And as subsequent case law makes clear, any such

claim against the State of Mississippi made by private plaintiffs—including the present Plaintiffs—would, properly analyzed, be precluded by 42 U.S.C. § 1983 and barred by sovereign immunity in any event. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a State is not amenable to suit under 42 U.S.C. § 1983 because a State is not a "person" under § 1983); *Duncan v. Miss. Bd. of Nursing*, 982 F. Supp. 425, 427-28 (S.D. Miss. 1997) (reaffirming that "a State is not a 'person'" amenable to suit under 42 U.S.C. § 1983); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (In the absence of consent, "[t]here can be no doubt . . . that suit against the State . . . is barred by the Eleventh Amendment."); *McCardell v. U.S. Dep't of Housing & Urban Dev.*, 794 F.3d 510, 521 (5th Cir. 2015) ("The Eleventh Amendment bars suits brought by private citizens against a state in federal court without the state's consent."); *Briggs v. Mississippi*, 331 F.3d 499, 503 (5th Cir. 2003) ("[T]he Eleventh Amendment bars suit against a state or 'state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought.'"). Thus, *Coffey* is no help to the United States.

The United States has not identified a single case wherein a court has held that § 2000h-2 itself *creates a cause of action* by which the United States may enforce the Fourteenth Amendment against the State of Mississippi. Section 2000h-2 merely provides a vehicle by which the United States can, subject to certain requirements, intervene in pending Fourteenth Amendment equal protection cases. It does not confer upon the United States any substantive cause of action by which to enforce the Fourteenth Amendment against the State of Mississippi, in connection with H.B. 1020 or otherwise. This Court cannot "recognize a cause of action" for the United States "that Congress has denied" it by only authorizing *intervention* in § 2000h-2. *See Lexmark Int'l, Inc.*, 572 U.S. at 128. *See also Alexander v. Sandoval*, 532 U.S. 275, 290 (2001) ("The express

provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.").

Congress knows how to provide a cause of action to the United States when it desires to do so.  It has done so in the context of desegregating public facilities and schools.  It has not done so here.  Because the United States has no cause of action to enforce the Fourteenth Amendment against the State of Mississippi in connection with a crime-reduction statute like H.B. 1020, it cannot state an equal protection claim against the State of Mississippi.  Therefore, if the motion to intervene is to be granted at all, and if the Court finds that the United States has standing, the motion should nevertheless be denied to the extent the United States seeks to add the State of Mississippi as a defendant.

While the United States principally seeks intervention of right pursuant to § 2000h-2, all of the foregoing arguments apply with equal force to foreclose permissive intervention.  In its brief, the United States mentions permissive intervention only as an afterthought, in a single footnote with almost no analysis.  *See* Dkt. #70 at 7, n.2.  As the United States concedes, see *id.*, permissive intervention in this context requires the putative intervenor to "ha[ve] a claim or defense that shares with the main action a common question of law or fact."  FED. R. CIV. P. 24(b)(1)(B).  As set forth in detail above, Plaintiffs' motion is untimely.  Further, as a matter of law, the United States lacks standing and has no cause of action to enforce the Fourteenth Amendment against the State of Mississippi in connection with H.B. 1020.  For all these reasons, the United States cannot satisfy the requisite elements of permissive intervention, and there is simply no legal basis for it to intervene in this case.

## CONCLUSION

For all these reasons, the United States' motion to intervene should be denied in its entirety as untimely.  Alternatively, because the United States lacks standing, the motion should be denied to the extent the United States seeks to add the State of Mississippi as a defendant and to assert claims in its own right against the Attorney General.  In the further alternative, because the United States has no cause of action against the State of Mississippi, the motion should be denied to the extent it seeks to add the State as a defendant.

THIS the 26th day of July, 2023.

    Respectfully submitted,

    SEAN TINDELL, in his official capacity as Commissioner of the Mississippi Department of Public Safety; BO LUCKEY, in his official capacity as Chief of the Mississippi Department of Public Safety Office of Capitol Police; and LYNN FITCH, in her official capacity as Attorney General of the State of Mississippi, DEFENDANTS

By:   LYNN FITCH, ATTORNEY GENERAL FOR THE STATE OF MISSISSIPPI

By:   s/Rex M. Shannon III
   REX M. SHANNON III (MSB #102974)
   Special Assistant Attorney General

REX M. SHANNON III (MSB #102974)
GERALD L. KUCIA (MSB #8716)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi  39205-0220
Tel.:  (601) 359-4184
Fax:  (601) 359-2003
rex.shannon@ago.ms.gov
gerald.kucia@ago.ms.gov

ATTORNEYS FOR DEFENDANTS

SEAN TINDELL, in his official capacity as Commissioner
of the Mississippi Department of Public Safety; BO LUCKEY,
in his official capacity as Chief of the Mississippi
Department of Public Safety Office of Capitol Police;
and LYNN FITCH, in her official capacity as
Attorney General of the State of Mississippi

## CERTIFICATE OF SERVICE

      I, Rex M. Shannon III, Special Assistant Attorney General and one of the attorneys for the above-named defendants, do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF filing system, which sent notification of such filing to all counsel of record.

      THIS the 26th day of July, 2023.

s/Rex M. Shannon III
REX M. SHANNON III
