IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*; <br><br> *Plaintiffs*, <br><br> and <br><br> UNITED STATES OF AMERICA, <br><br> *Proposed Plaintiff-Intervenor*, <br><br> v. <br><br> LYNN FITCH, in her official capacity as Attorney General of the State of Mississippi; and STATE OF MISSISSIPPI, <br><br> *Defendants*. | Case No. 3:23-cv-272-HTW-LGI <br><br> District Judge Wingate |

## UNITED STATES' REPLY TO DEFENDANTS' OPPOSITION TO UNITED STATES' MOTION TO INTERVENE

Defendants' brief in opposition to the United States' motion to intervene contains fundamental legal and factual errors.  The United States' application was timely and non-prejudicial, and, as an intervening party acting "as if it had instituted the action," the United States is limited neither to the relief sought by the original Plaintiffs, nor to their choice of defendants, upon intervening in equal protection cases.  Because the United States has been given express statutory authority to intervene as of right and because it may bring its claim against the State of Mississippi, the Court should grant the pending motion in its entirety.[1]

---

[1] Pursuant to Local Rule 7(b)(6)(A), the United States requests oral argument on this motion, which also seeks, in the alternative, permissive intervention pursuant to Fed. Civ. P. 24(b)(1)(B).

## I.     ARGUMENT

The United States has a statutory right to intervene in this case under Fed. R. Civ. P.

24(a)(1) and Section 902 of the Civil Rights Act of 1964.  Section 902, as amended, provides the

following:

> Whenever an action has been commenced in any court of the United States seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, sex or national origin, the Attorney General for or in the name of the United States may intervene in such action upon timely application if the Attorney General certifies that the case is of general public importance. In such action the United States shall be entitled to the same relief as if it had instituted the action.

42 U.S.C. § 2000h-2.

Section 902 grants the United States an unconditional right to intervene in certain cases

seeking relief from the alleged denial of equal protection of the laws under the Fourteenth

Amendment, if the Attorney General certifies, as here, that the case is one of general public

importance.  *Id.*; *see also* ECF No. 69-1 (Certificate of the Attorney General in this case).[2]

In addition, the Fifth Circuit has repeatedly held that Rule 24 is to be liberally construed

in favor of intervention.  *See*, *e.g.*, *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021);

*Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014).  And where an intervenor timely moves to

intervene and has an unconditional statutory right to intervene in the lawsuit, a court has no

discretion to deny the intervention.  *See Equal Emp. Opportunity Comm'n v. STME, LLC*, 938

F.3d 1305, 1322 (11th Cir. 2019); *see also L.W. ex rel. Williams v. Skrmetti*, No. 3:23-CV-376,

2023 WL 3513302, at *1-3 (M.D. Tenn. May 16, 2023) (granting motion to intervene in equal

---

[2]  With respect to standing, it is well-established that the United States has a profound sovereign interest in ensuring enforcement of the Constitution, *see In re Debs*, 158 U.S. 564, 584-86 (1895), and its ability to seek injunctive and declaratory relief "to restrain violations of constitutional rights . . . has long been recognized."  *United States v. City of Jackson*, 318 F.2d 1, 11 (5th Cir. 1963) (collecting cases).

protection matter because motion was timely and United States has a "widely recognized . . . unconditional right to intervene" under Section 902 of the Civil Rights Act of 1964).

Defendants' assertion that the United States' intervention is untimely and prejudicial is wrong, and the cases cited by Defendants preclude such a finding.  Rather, caselaw stands for the well-settled proposition that the timeliness inquiry is contextual and fact-specific.  Where, as here, the litigation stands at an early stage before discovery has begun and the case is of "general public importance," intervention by the United States is necessary and appropriate to prevent the denial of equal protection of the laws on account of race.  42 U.S.C. § 2000h-2.

In this case, the United States timely filed its motion to intervene—which will prejudice no party—three months after H.B. 1020 was signed and Private Plaintiffs filed suit, and prior to any discovery.  *See Wal–Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565-66 (5th Cir. 2016) (intervention was timely because it happened "before discovery progressed" and intervenors did not wish to delay or relitigate parts that had already concluded); *United States v. Jefferson Cnty. Bd. of Educ.*, 372 F.2d 836, 896 (5th Cir. 1966) (finding the U.S. motion to intervene was timely), *aff'd on reh'g*, 380 F.2d 385 (5th Cir. 1967) (en banc).  The United States does not seek to delay the litigation or relitigate phases that have already concluded or are currently pending with the Court, as is the case with respect to Private Plaintiffs' preliminary injunction motion.  Intervention would therefore not delay any proceedings in this case, including discovery and any dispositive motions or trial.  Thus, intervention by the United States would neither delay the litigation nor prejudice the parties.

The United States, on the other hand, *will* suffer prejudice if its motion to intervene is denied, as the case implicates the United States' ability to protect its sovereign interest in ensuring that persons of all races are afforded equal protection of the laws in accordance with the

Fourteenth Amendment to the U.S. Constitution.  *See* U.S. Const. art. II, § 3; *see also Cooper v. Aaron*, 358 U.S. 1, 17 (1958) ("constitutional rights . . . can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes . . . whether attempted ingeniously or ingenuously.").  Whatever a Legislature's purported motives for enacting legislation, a State is not free to include provisions that discriminate on the basis of race in violation of the Equal Protection Clause.  Granting intervention here will also conserve resources without burdening the Court or the parties—it will ensure that the United States' interests are protected, without delaying adjudication of this matter.

The United States' claim is substantially similar to three of the claims brought by the Private Plaintiffs.  *Compare* ECF No. 1 at 46-50 (NAACP Complaint) (challenging under the Equal Protection Clause certain provisions of H.B. 1020, including the appointment of temporary judges, the creation of a new Capitol Complex Improvement District or CCID Court, and the appointment of prosecutors in the CCID) *with* ECF No. 69-2 at 25-30 (United States Complaint in Intervention) (challenging under the Equal Protection Clause provisions of H.B. 1020 involving the appointment of temporary judges, the creation of the CCID Court, and the appointment of prosecutors with the CCID).  The United States seeks not only to remedy the violation of Private Plaintiffs' equal protection rights, but also to vindicate the national interest in ensuring the Constitution's guarantee of equal protection of the laws in Mississippi.  *See General Tel. Co. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 325-26 (1980) (noting that when the United States uses its statutory civil rights authority to address civil rights violations impacting specific individuals, "it acts also to vindicate the public interest").

Defendants suggest that there is an open question whether the United States as intervenor is limited to the "precise relief requested by the plaintiffs in the pending action."  ECF No. 74 at 15 (Defendants' Opposition Brief).  To be clear, the question is not open.  Defendants have offered no valid legal arguments for their position that the United States as intervenor is restricted to the original or existing defendants.  *See, e.g., L.W. ex rel. Williams*, 2023 WL 3513302, at *3 (holding that nothing in the language of Section 902 "was intended to change the ordinary rules applicable to intervenors").  Rather, when intervening under Section 902, the United States—"entitled to the same relief as if it had instituted the action"—is permitted to seek relief that is independent from the relief sought by original plaintiffs, including by seeking relief from new State defendants.  *See, e.g.*, *Coffey v. State Educ. Fin. Comm'n.*, 296 F. Supp. 1389, 1390 (S.D. Miss. 1969) (Section 902 intervention allowing United States to seek independent relief against the State of Mississippi); *Spangler v. United States*, 415 F.2d 1242, 1244-45 (9th Cir. 1969) (Section 902 intervention allowing United States to raise new claims not brought by original plaintiffs); *Sanders v. Ellington*, 288 F. Supp. 937, 939 (M.D. Tenn. 1968) (finding Section 902 allowed United States to intervene to bring significantly broader equal protection claims than private plaintiffs had originally alleged).  When a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party.  *See Marcaida v. Rascoe*, 569 F.2d 828, 831 (5th Cir. 1978).  Nothing in the case law or the text or Section 902's legislative history supports the argument that the United States enjoys fewer rights as a party or is otherwise relegated to lesser status in a lawsuit because it has intervened pursuant to 42 U.S.C. § 2000h-2.

Defendants further argue that the United States somehow lacks standing to bring its complaint in intervention, *see* ECF No. 74 at 11, despite the clear language of Section 902.[3] Congress adopted Section 902 to give the Attorney General an "absolute and complete" "intervening authority"—a "blanket power"—to protect against violations of the Equal Protection Clause. *Hearing on H. Res. 789 Before the H. Comm. on Rules*, 88th Cong. 5, 41 (Jun. 30, 1964);[4] *see also Report of Assistant Attorney General John Doar in Charge of the Civil Rights Division* (1965), at 177-83 (highlighting the importance and success of federal intervention under Section 902 in school desegregation, public accommodations, and other civil rights cases of general public importance). Importantly, Congress acknowledged that this "blanket power" was preconditioned upon the Attorney General certifying that the matter is one of general public importance. *Hearing on H. Res. 789 Before the H. Comm. on Rules*, 88th Cong. 22 (Jun. 30, 1964). Having provided that certification, the United States is authorized, by a federal statute, to enter this case, and it has standing to do so.

The State's suggestion that there is no cause of action here, *see* ECF No. 74 at 12, ignores that in Section 902 Congress explicitly gave the Attorney General the ability to intervene in such

---

[3] Defendants' reliance on *Town of Chester, N.Y. v. Laroe Estates, Inc.,* 581 U.S. 433, 439 (2017), ECF No. 74 at 10, is misplaced. *Town of Chester* involves standing requirements for a private individual seeking to intervene pursuant to Rule 24(a)(2), when the individual seeks distinct relief from the original plaintiff. *See id.* at 435-36, 438, 440-42. Here, the circumstances are completely different, where Congress has explicitly given the United States the ability to intervene in a case of general public importance involving violations of the Equal Protection Clause on the basis of race, color, religion, sex, or national origin.

[4] In fact, Chairman Howard Smith, speaking in opposition, acknowledged that the Section 902 provision was an "extension of the power to the Attorney General to intervene in all cases," and further distinguished between the express power in the bill of the Attorney General to intervene specifically and the "general provision" providing for blanket intervention. *Id.* at 20-22. Moreover, under Rep. William McCulloch's analysis of the bill, unlike the discretion of a Federal court to grant or deny intervention under Title II of the Civil Rights Act, which is limited particularly to public accommodations, Section 902 instead provides general authority "directly related to the equal protection of the laws." *Id.* at 22.

cases of general public importance to enforce the Equal Protection Clause.  Defendants' legal theory would effectively render Section 902 meaningless.[5]  Moreover, once the United States intervenes under Section 902, it becomes a "party plaintiff" that can maintain an equal protection claim, even if the court were to dismiss the original plaintiffs' claims.  *See Pasadena Bd. Of Educ. v. Spangler*, 427 U.S. 424, 430-31 (1976).

In addition, considering Section 902's provision of an absolute right to intervene in this case, this motion is not the appropriate vehicle to address Defendants' underlying arguments regarding the merits of the United States' Complaint, *see, e.g.,* ECF No. 74 at 8-9 (arguing that the State's view of the purpose behind H.B. 1020's judicial appointment provision is a factor to consider in denying intervention).

Defendants also point out that private parties cannot abrogate sovereign immunity by suing a state.  *See* ECF No. 74 at 15-16 (citing a series of cases brought by private plaintiffs but not the United States).  This argument, however, ignores the "well-established" law "that the Eleventh Amendment does not bar the United States government from filing suit in federal court against a state."  *Matter of Fernandez*, 130 F.3d 1138, 1138 (5th Cir. 1997) (per curiam) (citing *United States v. Mississippi,* 380 U.S. 128, 140, (1965) (noting that "nothing in the [Eleventh Amendment] or any other provision of the Constitution prevents or has ever been seriously supposed to prevent a State's being sued by the United States.")); *see also Franchise Tax Bd. v.*

---

[5]  In sponsoring the bill to codify Section 902, Senator Hubert Humphrey highlighted its function to establish a "responsible officer or instrumentality of Government to seek out the areas of difficulty, and to propose remedies, solutions or adjustments . . . [—] if you really want to get at the problem you have got to have that kind of authority."  *Hearings on S. 773, S. 1210, S. 1211, and S. 1937 Before the Subcomm. on Emp. & Manpower of the S. Comm. on Lab. & Pub. Welfare*, 88th Cong. 144 (1963), https://www.govinfo.gov/app/details/CHRG-88shrg22287O/CHRG-88shrg22287O/summary (statement of Sen. Humphrey).  In enacting Section 902, Congress distinctly intended the Attorney General to have the authority necessary to intervene in cases that involved violations of the Equal Protection Clause based on race.

*Hyatt*, 139 S. Ct. 1485, 1495 (2019) ("The States, in ratifying the Constitution, similarly surrendered a portion of their immunity by consenting to suits brought against them by the United States in federal courts."); *Arizona v. California*, 460 U.S. 605, 614 (1983); *United States v. Texas,* 143 U.S. 621, 646 (1892). And, as cases like *Coffey*, *Spangler*, and *Sanders* confirm, the United States has the same ability to bring suit against a state defendant when intervening pursuant to 42 U.S.C. § 2000h-2 as when instituting a new action.[6]

Finally, given the United States' statutory right to intervene, the Court need not reach the issue of permissive intervention under Rule 24(b)(1)(B). But if the Court does address this question, the United States has met the requirements for permissive intervention. The United States' claims share "common question[s] of law [and] fact" with existing Plaintiffs' claims: challenging under the Equal Protection Clause certain provisions of H.B. 1020, including the appointment of temporary judges, the creation of a new CCID Court, and the appointment of prosecutors in the CCID. *See* Fed. R. Civ. P. 24(b)(1)(B). The United States' timely motion will not unduly delay or prejudice the adjudication of the original parties' rights. *Id.* 24(b)(3). And as explained here, the United States has standing to bring this action. For those reasons, in the alternative, the Court should permit the United States to intervene in this litigation.

---

[6] The United States has sued numerous states, including Mississippi, in cases involving voting rights across decades. *See Voting Section Litigation*, U.S. Dep't of Just. https://www.justice.gov/crt/voting-section-litigation. More broadly, in the last decade alone, the United States has brought numerous cases for equitable relief to protect the interests of the federal government. *See, e.g.*, *Arizona v. United States*, 567 U.S. 387 (2012); *United States v. State Water Res. Control Bd.*, 988 F.3d 1194 (9th Cir. 2021); *United States v. California*, 921 F.3d 865, 876 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 124 (2020); *United States v. Bd. of Cnty. Comm'rs of Otero*, 843 F.3d 1208 (10th Cir. 2016); *United States v. South Carolina*, 720 F.3d 518, 523-24 (4th Cir. 2013); *United States v. Alabama*, 691 F.3d 1269, 1279 (11th Cir. 2012); *United States v. City of Arcata*, 629 F.3d 986, 988 (9th Cir. 2010).

## II.      CONCLUSION

For the foregoing reasons, the United States has met the requirements for intervention as of right under Rule 24(a)(1), or in the alternative, for permissive intervention.  This Court should grant the motion to intervene.

Dated: August 2, 2023


 Respectfully submitted,


| | |
|---|---|
| DARREN J. LAMARCA | KRISTEN CLARKE |
| United States Attorney | Assistant Attorney General |
| Southern District of Mississippi | Civil Rights Division |

*/s/ Angela Givens Williams*                     */s/ Victor J. Williamson*

| | |
|---|---|
| ANGELA GIVENS WILLIAMS (#102469) | T. CHRISTIAN HERREN, JR. (AL 6671R63T) |
| MITZI DEASE PAIGE (#6014) | JOHN A. RUSS IV (CA 192471) |
| Assistant U.S. Attorneys | VICTOR J. WILLIAMSON (DC 495783) |
| 501 E. Court St. | J. ERIC RICH (MD 0012130218) |
| Suite 4.430 | KAITLIN TOYAMA (CA 318993) |
| Jackson, MS  39201 | JOHN POWERS (DC 1024831) |
| Phone: (601) 965-4480 | ROBERT WEINER (DC 298133) |
| Angela.Williams3@usdoj.gov | Attorneys |
| Mitzi.Paige@usdoj.gov | Civil Rights Division |
| | U.S. Department of Justice |
| | 950 Pennsylvania Ave NW – 4CON |
| | Washington, D.C. 20530 |
| | Phone: (800) 253-3931 |
| | chris.herren@usdoj.gov |
| | john.russ@usdoj.gov |
| | j.rich@usdoj.gov |
| | victor.williamson@usdoj.gov |
| | kaitlin.toyama@usdoj.gov |
| | john.powers@usdoj.gov |
| | robert.weiner@usdoj.gov |

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2023, I electronically filed the foregoing with the clerk of the court using the Court's ECF system, which will send notification of this filing to counsel of record.

*/s/ Victor J. Williamson*
VICTOR J. WILLIAMSON
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
