IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, ET AL., <br><br> *Plaintiffs*, <br><br> v. <br><br> TATE REEVES, in his official capacity as Governor of the State of Mississippi, ET AL., <br><br> *Defendants*. | Case No. 3:23-cv-272-HTW-LGI <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** |

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiffs the National Association for the Advancement of Colored People ("NAACP"), the Mississippi State Conference of the NAACP, the Jackson City Branch of the NAACP, Derrick Johnson, Nsombi Lambright-Haynes, Frank Figgers, Charles Taylor, Markyel Pittman, and Charles Jones (collectively, "Plaintiffs") respectfully request leave to file a First Amended Complaint ("FAC").

From the outset of this lawsuit, Plaintiffs have endeavored to block H.B. 1020's unconstitutional appointments before they occur in order to maintain the status quo pending litigation of their claims. But like many civil rights lawsuits, this action involves complex questions of standing and the *Ex parte Young* doctrine because the State of Mississippi enjoys Eleventh Amendment immunity from suit by its citizens in federal court and relief must be sought from an appropriate state official. *See, e.g.*, *McLaughlin v. City of Canton*, 947 F. Supp. 954, 962-69 (S.D. Miss. 1995) (Wingate, J.). Civil rights cases against judges are further complicated by the limited judicial immunity enacted by the 1996 amendments to Section 1983.

1

Because H.B. 1020 directed the Chief Justice of the Mississippi Supreme Court to appoint four temporary special judges to the Hinds County Circuit Court within 15 days of passage of the act, Plaintiffs moved for a temporary restraining order enjoining the Chief Justice from making those appointments. The Court granted that motion and it remains in effect. ECF Nos. 26, 38. The Court subsequently ruled, however, that the Chief Justice's appointment authority under H.B. 1020 is cloaked with judicial immunity. ECF No. 45.

Plaintiffs have demonstrated that notwithstanding this immunity ruling, the Chief Justice remains a proper party to this action. Plaintiffs' Complaint adequately pleaded claims for prospective declaratory relief against the Chief Justice, for which he does not enjoy judicial immunity, with respect to both the H.B. 1020 appointments to the Hinds County Circuit Court and the Capitol Complex Improvement District ("CCID") Court (§ 1 and § 4), and for injunctive relief with respect to the H.B. 1020 appointment to the CCID Court, which the Chief Justice has not addressed. *See* ECF Nos. 52, 63, 65, 67. The Chief Justice disagrees and urges that the immunity ruling means he should be dismissed from the suit for any purpose. ECF Nos. 55, 66. The Attorney General further argues—without filing a motion—that in the absence of the Chief Justice, Plaintiffs' appointment claims should be dismissed for lack of subject-matter jurisdiction on standing and sovereign immunity grounds. ECF No. 46-1. The Court has not issued a final order of dismissal.

Plaintiffs' proposed FAC primarily adds alternative defendants from whom Plaintiffs can obtain varying degrees of relief on Counts II and III if the Court enters a final order of dismissal of the Chief Justice and lifts the order restraining him from making the appointments to the Hinds County Circuit Court, thereby denying Plaintiffs the ability to obtain complete relief from Defendant Randolph. Specifically, the proposed FAC adds the following parties on Plaintiffs'

2

challenges to the H.B. 1020 appointments to the Hinds County Circuit Court and CCID Court (§ 1 and § 4):

- John/Jane Does 1-4, the individuals, as yet unknown to Plaintiffs, whom Chief Justice Randolph will appoint as the temporary special judges of the Hinds County Circuit Court under H.B. 1020 § 1 if the current order restricting Defendant Randolph from making those appointments (ECF Nos. 26, 38) is lifted;

- John/Jane Doe 5, the individual, as yet unknown to Plaintiffs, whom Chief Justice Randolph must appoint as the CCID Judge under § 4(2);

- Greg Snowden, the Director of the Administrative Office of Courts ("AOC"), who will be involved in compensating the CCID Judge under H.B. 1020 § 4(3) and, on information and belief, the temporary special judges, and who will designate a location for the CCID Court to hold court, in conjunction with the Department of Finance and Administration ("DFA"), under § 7 of the statute; and

- Liz Welch, the Executive Director of the DFA, who, on information and belief, will be responsible for compensating the temporary special judges and CCID Judge, and who, under § 7, will designate a location for the CCID Court to hold court, in conjunction with the AOC.

To avoid piecemeal amendments, the FAC adds John/Jane Does 6 and 7, the CCID Prosecutors who must be appointed by the Attorney General under § 5 to serve as prosecuting attorneys for any cause of action within the jurisdiction of the CCID Court. These defendants

3

would still be amenable to suit for partial relief on Count IV regarding the constitutionality of § 5 if Defendant Fitch is ultimately found not to be a proper defendant on that claim.[1]

## BACKGROUND

On April 21, 2023, hours after H.B. 1020 and S.B. 2343 were signed into law, Plaintiffs filed this action against Governor Tate Reeves, Department of Public Safety Commissioner Sean Tindell, Capitol Police Chief Bo Luckey, Chief Justice Michael Randolph, and Attorney General Lynn Fitch, all of whom were sued in their official capacities. ECF No. 1.[2] The Complaint alleged that four provisions of those laws violated the Fourteenth Amendment's Equal Protection Clause: (1) S.B. 2343 § 1(6)(a)-(b), which targets Jackson's majority-Black residents for separate and unequal policing by the Capitol Police; (2) H.B. 1020 § 1, which requires the Chief Justice to appoint four unelected judges to the Hinds County Circuit Court; (3) H.B. 1020 § 4, which creates the CCID Court and requires the Chief Justice to appoint an unelected judge to it, which will go into effect on January 1, 2024; and (4) H.B. 1020 § 5, which requires the Attorney General to appoint two unelected prosecutors for the CCID Court.[3]

---

[1] Consolidated Plaintiffs and Proposed Plaintiff-Intervenor do not oppose this motion. Defendant Randolph opposes this motion. Counsel for Plaintiffs has also conferred with the Mississippi Attorney General's office, counsel for the remaining Defendants, who indicated that they reserve the right to respond to the motion in due course within the time frame permitted by L.U.Civ.R. 7(b)(4).

[2] Plaintiffs voluntarily dismissed Defendant Reeves on May 31, 2023. ECF No. 44.

[3] The Complaint also alleged that S.B. 2343 § 1(6)(c)—which became effective July 1, 2023—would suppress and chill Jackson residents' exercise of their First Amendment rights and exacerbate the discriminatory and unequal effects of the law as a whole. *Id.* ¶¶ 104-30. Because Plaintiffs did not yet know "what bearing, if any," forthcoming regulations would have on them, Plaintiffs stated that they "[did] not at this time pray for any relief with respect to that provision and may amend this Complaint as circumstances require." *Id.* ¶ 10. Plaintiffs do not raise their First Amendment challenge to that provision at this time because the rules or regulations have not been issued and the Court granted Consolidated Plaintiffs' preliminary injunction barring the enforcement of S.B. 2343 § 1(6)(c). If the State later issues rules or regulations to effectuate that provision, Plaintiffs will promptly challenge the provision and any such rules or regulations then.

The Court granted Defendant Randolph's Motion to Dismiss on June 1.  ECF No. 45. Consistent with Defendant Randolph's motion, however, the Order "only addresse[d] H.B. 1020, and, more specifically, that law's specific provision, § 1," *id.* at 2 n.2, and only addressed the request that the Court "preliminarily and permanently [] enjoin the Chief Justice," *id.* at 11.

On June 7, Plaintiffs filed a Motion for Clarification of the June 1 Order.  ECF No. 51. The motion sought clarification that the Order left intact Plaintiffs' remaining claims against Defendant Randolph: Plaintiffs' claims for declaratory relief on § 1 and for declaratory and injunctive relief on § 4.  The motion has been fully briefed (ECF Nos. 52, 58, 63) and was argued at the June 14 hearing.  *See also* ECF Nos. 65-67 (additional authorities).

No scheduling order has been entered yet in this action.

## ARGUMENT

Plaintiffs' motion satisfies Federal Rule of Civil Procedure 15(a)(2), which provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires."  *See, e.g., Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (citation omitted).

### 1. Justice Requires Granting Leave to Amend.

Justice clearly requires granting leave to file the proposed amendment.  Plaintiffs' claim, *inter alia,* that the appointments provisions of H.B. 1020 § 1 and § 4 violate the Equal Protection Clause of the Fourteenth Amendment.  The Court has twice found that Plaintiffs' claim is sufficiently weighty to justify an order restraining Chief Justice Randolph from making the appointments to the Hinds County Circuit Court in order "to maintain the status quo and to avoid possible irreparable harm from any violation of constitutional rights to equal protection of the law . . . ."  ECF No. 26 at 4; ECF No. 38 at 2 (same).  The Court, however, subsequently ruled that the Chief Justice enjoys judicial immunity.  But the immunity ruling need not deprive Plaintiffs of the opportunity to defend their constitutional rights.  "It is a settled and invariable

5

principle, that every right, when withheld, must have a remedy, and every injury its proper redress." *Marbury v. Madison,* 5 U.S. 137, 147 (1803). While there are sometimes exceptions to this principle, this case should not be one of them. The proposed amendment adds parties who can be subject to both injunctive and declaratory relief that is necessary to protect Plaintiffs' rights.

### 2. The Proposed Amendment Provides a Workable Pathway to Vindicate Plaintiffs' Rights.

The Fifth Circuit permits suits against John/Jane Doe defendants as placeholders for the actual defendants when they are unknown to plaintiffs, provided that plaintiffs substitute the actual defendants when their identities are learned. *See, e.g., Vega v. Gusman,* No. CV 20-1931, 2022 WL 912232, at *13 (E.D. La. Mar. 29, 2022) ("[I]t has long been an accepted practice to allow claims against an unknown defendant to be amended to identify the defendant when his identity is discovered."). Here, Does 1-4 are the individuals whom the Chief Justice will appoint to the Hinds County Circuit Court, if the current restraining order is lifted. Doe 5 is the individual whom the Chief Justice will appoint to the CCID Court, if he is not enjoined before January 1, 2024. Because of the risk that the Circuit Court appointees will take the oath of office and assume office immediately upon their appointment, it is necessary to enjoin them before they take the oath of office.[4] Unless and until they take the oath of office, they are private citizens who have not yet performed any judicial act. As this Court has recognized, the point of judicial immunity is that "a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." ECF No. 45 at 11 (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). This policy underlying judicial

---

[4] Section 155 of the Mississippi Constitution requires that state judges take the prescribed oath of office "before they proceed to execute the duties of their respective offices."

immunity does not, by definition, come into play before an individual assumes judicial office and performs judicial duties. Accordingly, Does 1-5 are amenable to a TRO enjoining them from accepting appointment to an unlawful judgeship and from taking the oath of office.[5]

Plaintiffs therefore are filing herewith a motion to temporarily restrain Does 1-4 from accepting appointment to the Hinds County Circuit Court and from taking the oath of office. Their actual identities will become known when the Chief Justice announces his appointments, and Plaintiffs will promptly substitute the actual individuals for Does 1-4. But the Court need not wait for that substitution before it enters a TRO. Even a preliminary injunction—much less a TRO—can be issued against an individual before the individual becomes a party to the suit. As the Fifth Circuit has explained:

> It is not grounds for reversal that the trial court's interlocutory order was issued prior to the time that appellant was made a party by substitute service of process. Rule 65(a) does not require service of process.

*Corrigan Dispatch Co. v. Casa Guzman, S.A.,* 569 F.2d 300, 302 (5th Cir. 1978). And Rule 65(b) provides that on a proper showing TROs can be issued without notice.

Even though TROs can be issued without notice, Plaintiffs nonetheless will attempt to provide notice in three ways. First, they will publish notice of the motion for a TRO in *The Clarion-Ledger*, which is a newspaper with state-wide circulation. Second, if the Court grants the TRO against the appointees before their identities are known, Plaintiffs will publish notice of the order in *The Clarion-Ledger*. Such publication is a permitted means of providing legal notice in Mississippi if this Court so orders. Miss. Code § 13-3-31. Moreover, as the State Executive

---

[5] Alternatively, if they do assume office, 42 U.S.C. § 1983, as Plaintiffs have previously demonstrated, permits them to be sued for a prospective declaratory judgment that they are not lawful judges because their appointments violate the Equal Protection Clause. *See* ECF No. 52 at 3-4; ECF No. 63 at 6-8.

Defendants have noted, "Virtually all of the proceedings and developments in this matter have been the subject of widespread media attention." ECF No. 74 at 7. Thus, even without the publication of the TRO that Plaintiff will undertake, there is a strong likelihood that Does 1-4 learn of these proceedings through the media's coverage of this case. Third, as an additional step to insure that Does 1-4 know of the TRO before they take the oath of office, Plaintiffs ask that the TRO direct Greg Snowden, the Director of the Administrative Office of Courts (who also is being added as a defendant through the proposed amendment), to give a copy of the TRO to each of the appointees before they take the oath of office.

To be sure, courts have held that the John Doe device may not be used for "fictitious" defendants. *See Sorrell v. Dallas, TX Bridge Shelter, Staff,* No. 3:08-CV-1065-G (BH), 2008 WL 3915347, at *1 (N.D. Tex. Aug. 25, 2008). Does 1-4 are hardly fictitious; they are simply unknown at this time, but clearly will be become known if the Court lifts the current restraining order against Chief Justice Randolph. If that order is lifted, the Chief Justice will be required by H.B. 1020 to promptly appoint four judges to the Hinds County Circuit Court. Thus, the identities of the Does 1-4 will not require time consuming discovery, which is ordinarily required to determine the identify of a Doe defendant. *See, e.g.*, 59 Am. Jur. 2d Parties § 314 ("A plaintiff may bring an action against unknown John Doe defendants, but they must substitute named defendants for those unknown defendants after the completion of discovery. If, after the completion of discovery, the plaintiff is unable to substitute named defendants for unknown John Doe defendants, the action can no longer proceed against the John Doe defendants.").

### 3. There Is No Reason to Deny the Proposed Amendment.

A motion for leave to amend a complaint may be denied only for a "substantial reason," *Lyn-Lea Travel*, 283 F.3d at 286 (citation omitted), such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 591 (5th Cir. 2016). Rule 15(a)(2) thus "evinces a bias in favor of granting leave to amend." *Lyn-Lea Travel*, 283 F.3d at 286 (citation omitted). Here, there is no reason—let alone a "substantial reason"—to deny Plaintiffs' request for leave to file the FAC.

      a.    *There Has Been No Undue Delay*. Plaintiffs filed the Complaint only three months ago, and have not unduly delayed amending or exhibited bad faith or a dilatory motive in bringing their amendments. *See, e.g.*, *De La Garza Gutierrez v. Pompeo*, 741 F. App'x 994, 1001 (5th Cir. 2018) (no undue delay where "the case was less than six months old"). To the contrary, Plaintiffs are moving promptly and in good faith to amend to clarify any ambiguity in their complaint and identify alternative defendants against whom Plaintiffs may obtain relief, given Defendant Randolph's insistence that the temporary restraining order should be lifted and that he should be dismissed from this case for any purpose. Plaintiffs are also being proactive to avoid any not-yet-raised issue with respect to their challenge to the CCID Prosecutors. This is Plaintiffs' first request for leave to amend.

      b.    *The FAC will not cause undue prejudice to Defendants*. The amendments primarily concern new parties, not the existing Defendants. Defendants cannot complain about the FAC's adding certain new defendants as a means to obtain partial relief on Plaintiffs' constitutional claims if Defendant Randolph is unrestrained from making the appointments under § 1 and § 4. *See* FAC ¶¶ 146-48, 153-55, 160-62. Defendant Randolph has maintained throughout this litigation that Plaintiffs must seek relief against other parties, while the remaining Defendants have argued that they are not proper defendants on those claims. *See, e.g.*, ECF No.

58. The limited edits to the allegations regarding Defendants make minor typographical and stylistic revisions, such as clarifying which Defendants are subject to each claim.

        c.      *The amendments are not futile*. An amendment is futile if it would fail to survive a Rule 12(b)(6) motion to dismiss. *Thomas*, 832 F.3d at 592. The proposed FAC passes that test.

As an initial matter, Does 1-5 may be sued under § 1983 even though they are private citizens. "For a plaintiff to state a viable claim under § 1983 against any private defendant . . . , the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law." *Pikaluk v. Horseshoe Ent., L.P.*, 810 F. App'x 243, 246 (5th Cir. 2020) (cleaned up). One of the "[several] tests for deciding whether a private actor's conduct can be fairly attributable to the State" is whether the private actors "are 'willful participant[s] in joint action with the State or its agents.'" *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549-50 (5th Cir. 2005) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)); *see Hollins v. City of Jackson*, 145 F. Supp. 2d 750, 761 (S.D. Miss.) (Wingate, J.), *aff'd*, 245 F.3d 790 (5th Cir. 2000) ("[I]n order for a private party to 'act under color of state law' . . . [t]he government and private actor must be willing participants in joint activity").

Here, by first considering an offer from the Chief Justice to accept an appointment pursuant to H.B. 1020 and then by accepting the offer, Does 1-4 become willing participants in the State's unlawful plan to place appointed judges on the Hinds County Circuit Court, and they may be sued under § 1983 to prevent them from taking the oath of office or otherwise assuming

office.[6]  The same is true for Doe 5, who must decide whether to accept an appointment to the new, unlawful CCID Court.

Plaintiffs also have standing to seek partial relief on their constitutional claims from the new defendants.  To have standing to challenge a state law, a plaintiff must show: "(1) an injury in fact to the plaintiff that is concrete, particularized, and actual or imminent; (2) the injury was caused by the defendant; and (3) the injury would likely be redressed by the requested judicial relief."  *Texas Democratic Party v. Abbott*, 978 F.3d 168, 178 (5th Cir. 2020).  Plaintiffs' claim that the judicial appointments violate the Equal Protection Clause plainly satisfies the injury requirement. As explained in Plaintiffs' preliminary injunction briefing, the challenged laws will imminently deprive Plaintiffs of the right to elect their judges—a right that is available in every other county in Mississippi—and impair Plaintiffs' rights as voters and interests as residents by "depriv[ing]" and "dilut[ing]" their voting rights, stigmatizing them "as less worthy participants in the political community."  ECF No. 41 at 5-8 (citations omitted).  The same is true of H.B. 1020 § 5's appointment of the CCID Prosecutors, Does 6 and 7.

As to causation and redressability, it "is enough to confer standing" to sue a government official who has "a role in causing the claimed injury and is in a position to redress it at least in part." *Texas Democratic Party*, 978 F.3d at 178.  Plaintiffs' injuries arising from unlawful appointments can be averted by an order enjoining Does 1-5 from accepting appointment and taking the oath of office as a Hinds County Circuit Court or CCID Court judge and Does 6 and 7

---

[6] *See Dennis*, 449 U.S. at 27-28 ("Private persons, jointly engaged with state officials in the challenged action, are acting see 'under color' of law for purposes of § 1983 actions."). Also instructive is that the state actor in *Dennis* was a judge who was held to have judicial immunity for his role in the joint action with the private parties.  The Supreme Court ruled that "it is of no consequence in this respect that the judge himself is immune from damages liability."  *Id.* at 28.  The Court also rejected the private party's argument that "unless he is held to have an immunity derived from that of the judge, the latter's official immunity will be seriously eroded." *Id.* at 29.

from accepting appointment as CCID Prosecutors, including forbidding them from taking the oath of their offices or otherwise assuming their offices.  FAC ¶¶ 147, 154, 161.  If these appointments are nonetheless made and the John/Jane Does begin to perform the functions of their offices, Plaintiffs' irreparable harm will be ongoing every day the Does remain in office.  The Court can abate this harm from the outset, however, by an order enjoining Defendants Snowden and Welch from taking any action to compensate Does 1-5 or from designating a location for the CCID Court to hold court.  *Id.* ¶¶ 148, 155.  Additionally, Plaintiffs' ongoing injuries can be abated prospectively by an order enjoining Does 1-7 from exercising the powers and performing the duties of their offices.  *See id.* ¶¶ 148, 155, 159.  Under Section 1983, the Court may order this relief against sitting judges in the event that (1) the Court issues a prospective declaratory decree that the § 1 or § 4 appointments violate the Equal Protection Clause, and (2) that decree is violated.  *See id.* ¶¶ 148, 155.  Each of these forms of relief will help reinstate Plaintiffs' voting rights, reduce their stigmatization, or restore their benefits from having locally elected officials.

      The new defendants would not enjoy judicial or prosecutorial immunity from Plaintiffs' suit.  Prior to assuming office, the Doe defendants will be sued solely in their individual capacities for the purpose of enjoining them from assuming office.  *See* pp. 6-7, *supra,* regarding the non-existence of judicial immunity prior to assuming office; p. 11, *supra*, regarding amenability of private citizens to suit under § 1983.  If they assume office, they will instead be sued solely in their official capacities—and only at that point would any official immunity arise.  If Does 1-5 take office, the FAC seeks only a declaratory judgment, or an injunction if such a declaratory decree is unavailable or has been violated, pursuant to 42 U.S.C. § 1983.  FAC at 59-62 (Prayers for Relief B, C, J, N); *see, e.g.*, *Caliste v. Cantrell*, 937 F.3d 525, 532-33 & n.7 (5th

Cir. 2019). The remaining defendants are not judges and would be acting in purely non-judicial capacities; they would not enjoy § 1983's statutory immunity for the acts of a "judicial officer . . . in such officer's judicial capacity." And § 1983 does not recognize prosecutorial immunity from prospective relief. *See Reed v. Goertz*, 995 F.3d 425, 430 (5th Cir. 2021) ("Prosecutorial immunity applies only in lawsuits for damages, not for prospective relief."), *rev'd on other grounds*, 143 S. Ct. 955 (2023).

The new defendants are also proper parties under *Ex parte Young*, 209 U.S. 123 (1908). "In most cases, Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court." *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020) (citation omitted). The *Ex parte Young* doctrine is an exception to this general rule that "permits suits for prospective relief against state officials acting in violation of federal law." *Id.* (cleaned up). To determine if *Ex parte Young* applies, courts conduct a "straightforward inquiry" considering three criteria: "(1) A plaintiff must name individual state officials as defendants in their official capacities; (2) the plaintiff must allege an ongoing violation of federal law; and (3) the relief sought must be properly characterized as prospective." *Id.* (citations omitted) (cleaned up). That request for prospective relief must involve a state official with a "sufficient connection to enforcing an allegedly unconstitutional law." *Texas Democratic Party*, 978 F.3d at 179 (citation omitted). A mere "scintilla of enforcement authority" will suffice, *id.* at 180, and "direct enforcement of the challenged law [is] not required" so long as the state official's actions will "constrain[] the plaintiffs." *City of Austin v. Paxton*, 943 F.3d 993, 1001 (5th Cir. 2019) (emphasis and citation omitted).

Here, addition of the Doe defendants will not present any Eleventh Amendment, sovereign immunity, or *Ex parte Young* issues for two reasons. First, so long as the Doe

13

defendants have not yet assumed their offices, they are being sued solely in their individual capacities for the purpose of enjoining them from assuming office, and no governmental immunity is available to them. Second, if they assume office, the Doe defendants will instead be sued solely in their official capacities, and fall within the *Ex parte Young* exception to Eleventh Amendment sovereign immunity. As sitting judges and prosecutors, each of the Doe defendants will be (1) a state official who is sued in their official capacity, (2) for an ongoing violation of Plaintiffs' constitutional rights, and (3) for prospective relief.

The same is true for Snowden and Welch, who have at least a scintilla of authority to enforce H.B. 1020 because the agencies they direct are "named in the statute in question" and are charged by the statute to administer its provisions and further the statute's deprivation of Plaintiffs' constitutional rights. *Paxton*, 943 F.3d at 998; *see also* FAC ¶¶ 31-35 (citing §§ 1, 4, 5, 7). Defendant Welch likewise has at least a scintilla of authority to carry out the challenged appointments because her agency is responsible for paying the challenged appointees. An injunction prohibiting Snowden and Welch from paying the unlawfully appointed judges is highly likely to redress Plaintiffs' injuries.

## CONCLUSION

For the reasons set forth above, the interests of justice require granting leave to file the proposed amendment and there is no "substantial reason" to deny leave to amend the Complaint. Accordingly, this Court should grant Plaintiffs leave to file their proposed FAC.

Respectfully submitted this 3rd day of August, 2023.

| | |
|---|---|
| /s/ Mark H. Lynch<br>Eric H. Holder, Jr. ,* DC Bar # 303115<br>Megan A. Crowley,* DC Bar # 1049027<br>Gary S. Guzy,* DC Bar # 375977<br>Mark H. Lynch,* DC Bar # 193110<br>Brenden J. Cline,* DC Bar # 1021317<br>**COVINGTON & BURLING LLP**<br>One CityCenter<br>850 Tenth Street NW<br>Washington, DC 20001<br>Tel: (202) 662-6000<br>Fax: (202) 662-6291<br>eholder@cov.com<br>mcrowley@cov.com<br>gguzy@cov.com<br>mlynch@cov.com<br>bcline@cov.com<br><br>*Counsel for NAACP*<br><br>*Pro Hac Vice<br>**Pro Hac Vice* pending | /s/ Carroll Rhodes<br>Carroll Rhodes, MS Bar # 5314<br>**LAW OFFICES OF CARROLL RHODES**<br>POST OFFICE BOX 588<br>HAZLEHURST, MS 39083<br>Telephone: (601) 894-4323<br>Fax: (601) 894-1464<br>crhode@bellsouth.net<br><br>Joe R. Schottenfeld,* DC Bar # 1735796<br>Evan Walker-Wells,** NY Bar # 6050645<br>**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE**<br>4805 Mt. Hope Drive<br>Baltimore, MD 21215<br>Tel: (410) 580-5777<br>Fax: (410) 358-9350<br>jschottenfeld@naacpnet.org<br>ewells@naacpnet.org<br><br>*Counsel for All Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2023, I electronically filed the foregoing Plaintiffs' Motion for Leave to Amend Complaint with the Clerk of the Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Carroll Rhodes
Carroll Rhodes