IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, ET AL.,<br><br>*Plaintiffs*,<br><br>v.<br><br>TATE REEVES, in his official capacity as Governor of the State of Mississippi, ET AL.,<br><br>*Defendants*. | Case No. 3:23-cv-272-HTW-LGI<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXPEDITE DISCOVERY** |

More than three months ago, Plaintiffs filed this action (ECF No. 1), counsel for one of the defendants entered an appearance (ECF No. 4), and the first responsive pleading was filed (ECF No. 19)—yet Plaintiffs remain unable to obtain any discovery. This is because the State Defendants refuse to have a Rule 26(f) conference to commence discovery until this Court issues a Rule 16 Initial Order requiring them to do so. *See* Ex. 1 (e-mails with opposing counsel).

By early November, Plaintiffs plan to use discovery from the State Defendants and certain non-parties to support a motion for a preliminary injunction on the remaining provisions of H.B. 1020 at issue, which take effect on January 1, 2024. Plaintiffs' upcoming and pending preliminary injunction motions require discovery as to Counts II, III, and IV, which challenge the authority for the Hinds County Circuit Court and CCID court judicial appointments and CCID prosecutor appointments. Accordingly, Plaintiffs respectfully move this Court to grant expedited discovery on these claims in advance of a Rule 26(f) conference.

Plaintiffs attempted to resolve the discovery schedule without resort to motions practice. *See id.* The State Defendants take the position that the attorney conference requirement remains stayed by the Court's May 19, 2023 Order Staying Attorney Conference, Disclosure

Requirements, and all Discovery (ECF No. 36), which was issued pending resolution of Defendant Gov. Reeves's motion to dismiss on immunity grounds. Ex. 1. Shortly thereafter, however, Plaintiffs voluntarily dismissed Governor Reeves. ECF No. 44. On June 1, 2023, this Court issued a text order dismissing Defendant Reeves's motion to dismiss as moot, and on June 2, 2023, the Court informed counsel by e-mail that the stay order was also moot. *See* Ex. 2 (e-mail from Court). The Court also directed that "[i]f any party herein requests a stay of this matter, said party is instructed to file the proper motion on ECF." *Id.* No party has done so.[1] The State Defendants contend that, because the Court's message came via e-mail instead of the docket, the message was without effect. Ex. 1. The Court should reject this gamesmanship.

The State Defendants also contend that, "[a]s a practical matter," Plaintiffs should not be able to obtain *any* discovery until the Court resolves *all* pending motions concerning different plaintiffs (the United States and Consolidated Plaintiffs), different defendants (Defendant Randolph and proposed new defendants), and a different claim (the consolidated challenge to the prior restraint provision of S.B. 2343). *Id.* But those motions are irrelevant to the question of when Plaintiffs should be allowed to take discovery from the State Defendants and non-parties to support their H.B. 1020 preliminary injunction motions. Plaintiffs are not seeking discovery from Defendant Randolph or anyone else whose party status is unresolved. The State Defendants have not argued that Plaintiffs will be forbidden to take merits discovery; the only open question is whether Counts II and III will proceed against Defendant Randolph or any of

---

[1] Notably, Defendant Randolph did not request a stay, and this Court did not enter a stay pending resolution of his motion to dismiss. Nonetheless, Plaintiffs do not seek discovery from Defendant Randolph. But even if discovery from Defendant Randolph were stayed, discovery can proceed with respect to the State Defendants and non-parties. *See* L.U.Civ.R. 16(b)(3)(B) (Court can permit "any portion of the case to proceed" despite entry of a discovery stay). Defendant Randolph has no interest that discovery because no discovery will be taken from him.

2

the proposed defendants Greg Snowden, Liz Welch, or John/Jane Does 1-5.  As to Count IV, there is no question that Plaintiffs have named the right defendant, Defendant Lynn Fitch.

Postponing discovery threatens to prejudice Plaintiffs' ability to prosecute their case and timely pursue the preliminary injunction they will need before H.B. 1020's creation of the CCID court with appointed prosecutors takes effect on January 1, 2024.  The Court should thus immediately grant expedited discovery on the appointments provisions.

The State Defendants have reserved the right to oppose this motion.  Because Plaintiffs understand Defendant Randolph to be a nominal party as to whom Plaintiffs do not seek discovery, Plaintiffs copied counsel for Defendant Randolph on their communications but did not request, and did not receive, his position on this motion.

## BACKGROUND

By now, this Court is familiar with the facts of the Hinds County Circuit Court judicial appointments claim (Count II) in this very active litigation.  *See, e.g.*, Mot. for TRO, ECF No. 12 *et seq.*; Mot. for Prelim. Inj., ECF No. 40 *et seq.*  Plaintiffs thus offer only a brief background as to the CCID Court and its appointed prosecutors (Counts III and IV).

### A.     *Factual Background*

The Capitol Complex Improvement District ("CCID") was created in 2017 by the Mississippi legislature, in order to provide regular funding for and administration of infrastructure projects within a defined geographic area in the City of Jackson.  CCID Master Plan at 1, https://www.dfa.ms.gov/sites/default/files/CCID%20Home/Master% 20Plan%20Documents/ccid-master-plan_march2019.pdf.  The CCID, as originally drawn, encompassed 8.7 square miles of downtown Jackson, including a number of state-owned or leased buildings, Jackson State University, and University of Mississippi Medical Center (UMMC).  The district is overseen by a nine-member advisory committee—four of these

members are appointed by the Governor, the Lieutenant Governor, or the Speaker of the State House.  The remaining members are appointed by the mayor, City Council, the City Department of Public Works, Jackson State University, and the UMMC. CCID Bylaws at 1, https://www.dfa.ms.gov/sites/default/files/CCID%20Home/CCID%20Bylaws/4675_001bl.pdf. At present, the committee is headed by the Lieutenant Governor's appointee, Department of Finance and Administration official Rebekah Staples.  CCID Website, Department of Finance and Administration, https://www.dfa.ms.gov/capitol-complex-improvement-district.

House Bill 1020 transforms the CCID from an infrastructure improvement area to an unaccountable and uniquely powerful judicial district.  The Act creates a court out of whole cloth, including a specially appointed judge, prosecutors, and public defenders to hear cases arising within the CCID's borders in downtown Jackson.  *See* Compl., ECF No. 1, ¶¶ 91–96; H.B. 1020 §§ 2–4.  By law, the judges of every Mississippi municipal court, with which H.B. 1020 equates the CCID court, are appointed by the municipality's governing body and must be "a qualified elector of the county in which the municipality is located."  Miss. Code §21-23-3. But the CCID judge would instead be appointed by a state official (the Chief Justice) and may be from any part of the state.  *See* Compl., ECF No. 1, ¶¶ 91–96; H.B. 1020 §§ 2–4.  The CCID prosecutors would likewise be appointed by a state official, Defendant Attorney General Lynn Fitch, rather than elected by Jackson's residents.  *See id.*

The legislature has also empowered the CCID court to issue harsher sanctions than any other similarly-situated court in the state.  The CCID court would have jurisdiction to hear cases arising within the CCID boundaries pertaining to preliminary and criminal matters.  *See id.*  In the criminal cases, the CCID judge would be authorized to sentence *misdemeanor* offenders to

4

*prison* time in the Central Mississippi Correctional Facility—a power that no other Mississippi judges have, and a penalty that no other Mississippi citizens face.

H.B. 1020 singles out majority-Black Jackson, deprives its citizenry and its elected leaders of the right to choose who judges and prosecutes them, and burdens Jackson's residents with the threat of unusually harsh sanctioning. In doing so, H.B. 1020 violates the Equal Protection Clause of the 14th Amendment. Compl., ECF No. 1, ¶¶ 140–49.

### B.     Procedural History

On April 21, 2023, Governor Tate Reeves signed H.B. 1020 into law. On the same day, the NAACP Plaintiffs filed the instant lawsuit to challenge its multiple constitutional violations. Two defendants, the Governor and the Chief Justice, filed motions to dismiss on immunity grounds. Only Defendant Gov. Reeves sought an order staying the attorney conference, initial disclosure requirements, and all discovery pursuant to L.U.Civ.R. 16(b)(3). The Court granted Defendant Reeves's stay request pending resolution of his immunity defense, ECF No. 36, but the Court subsequently ruled that stay was mooted upon his voluntary dismissal from the case. *See* Ex. 2. The Court later granted Defendant Chief Justice Randolph's motion to dismiss, addressing only Count II regarding H.B. 1020's "specific provision, § 1, which mandates appointment of special judges by the Chief Justice of the Mississippi Supreme Court," and only the request that the Court "preliminarily and permanently [] enjoin the Chief Justice from exercising [that] authority." ECF No. 45 at 2 n.2, 11. Thereafter, Plaintiffs filed a motion to clarify the Court's ruling, which has been fully briefed and is under consideration by the Court. ECF Nos. 51–52, 55, 63; *see also* ECF Nos. 65–67 (supplemental briefing). In July and August, Plaintiffs reached out to State Defendants in order to schedule a 26(f) conference and commence discovery. Ex. 1. First, counsel for the State Defendants asserted that the stay was still in place. *Id.* This assertion appeared to rest on the fact that the Court had lifted the stay by an e-mail to

5

the parties rather than through an order entered on the docket. After Plaintiffs' counsel challenged that position, *id.*, counsel for the State Defendants continued to refuse to participate in a discovery conference because an Initial Order had not yet been issued. *Id.*

As Plaintiffs' counsel mentioned at the May 22 and June 14, 2023 hearings, Plaintiffs intend to move for a preliminary injunction to enjoin the CCID Court provisions of H.B. 1020 before those provisions go into effect on January 1, 2024. Plaintiffs seek discovery to support the forthcoming preliminary injunction motion regarding the CCID appointments and to supplement the briefing on the pending preliminary injunction motion on the Hinds County Circuit Court appointments as may be necessary.

## LEGAL STANDARD

Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). Federal Rule of Civil Procedure 26, however, also authorizes a court to allow discovery before the parties have conferred. Fed. R. Civ. P. 26(d)(1). Such discovery is often appropriate "when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *Amos v. Taylor*, 2020 WL 5809972, at *4 (N.D. Miss. Aug. 26, 2020) (citation omitted). In considering a motion for expedited discovery, a court must assess whether there is good cause to do so, i.e., whether "the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party." *St. Louis Grp., Inc. v. Metals & Additives Corp., Inc.*, 275 F.R.D. 236, 239–40 (S.D. Tex. 2011).

**ARGUMENT**

I. **Expedited Discovery Is Appropriate Because the Need for Discovery Outweighs any Prejudice to Defendants.**

Courts frequently balance five factors in determining the reasonableness of an expedited discovery request, including: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Amos*, 2020 WL 5809972, at *5 (citation omitted). Here, these factors weigh in favor of granting expedited discovery.

    A. *One Preliminary Injunction is Pending, and Another Preliminary Injunction is Forthcoming.*

First, courts often consider whether a preliminary injunction is pending. *See Amos*, 2020 WL 5809972, at *5; Fed. R. Civ. P. 26(d) Advisory Committee Note (d) ("[Early discovery] will be appropriate in some cases, such as those involving requests for preliminary injunction."). "Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *Ellsworth Assocs., Inc. v. United States*, 917 F.Supp. 841, 844 (D.D.C. 1996) (citations omitted). Plaintiffs here have filed a preliminary injunction motion to enjoin the Hinds County Circuit Court judicial appointments provision, ECF Nos. 39-41, so this factor is satisfied. Expedited discovery will facilitate the resolution of Plaintiffs' pending preliminary injunction motion as to the Hinds County Circuit Court judicial appointments claim, regardless of whether that injunction is issued against Defendant Randolph or new defendants identified in Plaintiffs' proposed amended complaint. *See* Mot. for TRO, ECF No. 82.

In addition to the already-pending preliminary injunction motion, Plaintiffs intend to file a second (and final) preliminary injunction motion to prevent formation of the CCID Court and

7

appointment of its prosecutors effective January 1, 2024. Absent a scheduling order or the parties' agreement, Plaintiffs intend to pursue the below filing schedule to allow time for discovery and to give this Court adequate time to consider the briefing, conduct a hearing, and rule on the motion before the provisions' effective date:

| Preliminary Injunction Milestone | Date |
|---|---|
| Plaintiffs' Motion | By November 13, 2023 |
| Defendants' Opposition | By November 27, 2023 |
| Plaintiffs' Reply | By December 4, 2023 |
| Hearing on Preliminary Injunction | As soon after December 4th as the Court's schedule permits. |

As with Plaintiffs' earlier motions for a TRO and Preliminary Injunction, *see* ECF Nos. 11–12, 39–41, the purpose of the preliminary injunction will be to preserve the status quo, to prevent the CCID court from violating Jackson citizens' right to Equal Protection under the Constitution, and to allow this Court the time to reach a decision while preserving the Court's ability to grant full and meaningful relief. *See* TRO Order, ECF No. 26 at 4; TRO Order, ECF No. 38 at 2; *see also Ellsworth Assocs.*, 917 F.Supp. at 844 (D.D.C. 1996) ("[C]ourts have routinely granted expedited discovery in cases involving challenges [in a preliminary injunction] to constitutionality of government action." (citation omitted)). To be sure, some courts have said that "mere anticipation" of filing a preliminary injunction motion does not weigh in favor of granting expedited discovery. *See Amos*, 2020 WL 5809972 at *5. But here, Plaintiffs have proposed a definite and appropriate schedule for their forthcoming motion, which corresponds directly with H.B. 1020's statutorily-set deadlines. Regardless, even without this factor, expedited discovery remains appropriate on balance. *See id.* at *10.[2]

---

[2] If this were not the case, plaintiffs would be incentivized to file a thinly supported preliminary injunction motion and then seek a delayed hearing date so as to allow time for limited discovery

8

### B. *The Requested Discovery is Narrow, for the Limited Purpose of Supporting a Preliminary Injunction Motion, and not Unduly Burdensome.*

Plaintiffs are requesting expedited discovery for the limited purpose of supporting motions for preliminary injunction related to the Hinds County Circuit Court judicial appointments and CCID claims *only*.[3]  Plaintiffs do not request expedited discovery specific to the policing takeover provision of S.B. 2343 (Compl., ¶¶ 131–135 (Count I)), nor do Plaintiffs seek expedited discovery specific to the First Amendment claims in the Consolidated litigation.

In order to show likelihood of success on the merits of their preliminary injunction motion, Plaintiffs will need to show, among other facts, that the creation of the H.B. 1020 judicial and prosecutorial appointments will have a disparate impact on Black citizens and was motivated by discriminatory intent.  To demonstrate intent, Plaintiffs can use evidence of (1) the historical background of the decisions, (2) the specific sequence of events leading up to the decisions, (3) departures from the normal procedural sequence, (4) substantive departures, and (5) legislative history.  *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977).

Some of this record is already public, but certain evidence—in particular what input in the legislative process, if any, came from stakeholders and what information legislators relied on in passing H.B. 1020—is not publicly available.  Plaintiffs' written discovery requests to Defendants and third parties will be narrowly tailored to those aims.  In addition to written discovery, Plaintiffs anticipate needing no more than five depositions of city, state, or CCID

---

prior to that hearing.  This file-first, support later approach should be rejected because it would interfere with the Court's ability to have timely proceedings and would reduce judicial economy.

[3] Looking beyond the preliminary injunction motions that are aimed to maintain the status quo pending ultimate resolution of the merits, the requested discovery will also be relevant to that ultimate resolution, whether by dispositive motion or by trial seeking a final declaratory judgment that the challenged statutory provisions are unconstitutional.

officials in expedited discovery. The narrow nature of the requested discovery weighs in favor of expedition because the requests will be "reasonably tailored . . . to the specific issues that will have to be determined at the preliminary injunction [proceeding]." *Irish Lesbian & Gay Org. v. Giuliani*, 918 F. Supp. 728, 731 (S.D.N.Y. 1996); *see also Amos*, 2020 WL 5809972, at \*6. (same).

Moreover, because the discovery is reasonably related only to the background, process, substance, and legislative history of the appointments provisions, Plaintiffs' proposed expedited discovery is not overly burdensome. And by moving to expedite discovery five months before the CCID court's effective date, Plaintiffs ensure that the State Defendants will have a reasonable amount of time to respond to written discovery requests and requests for production, further reducing the potential burden of responding to discovery. *See CGB Diversified Servs., Inc. v. Adams*, 2020 WL 1271772, at \*2 (D. Kan. 2020) (expedited discovery request overly burdensome where defendant would have "to identify, assemble, and produce, in only a seven-day period, countless documents as well as forensic copies of electronic devices").

If the Court has concerns that expedited discovery may not be narrow in scope, or may be burdensome, the "court may weigh the[se] factor[s] in favor of good cause and resolve the . . . concerns by allowing the opposing party to raise objections and requiring an expedited process for resolution of those objections." *Amos*, 2020 WL 5809972, at \*9 (citing *CGB Diversified Servs., Inc. v. Morrison*, 2020 WL 4547885, at \*4 (C.D. Ill. Apr. 2, 2020)). The court in *Amos*, for example, put in place an expedited schedule for any discovery disputes, allowing seven days for an opposition to a motion to compel and five days for a subsequent reply. Such an expedited schedule would obviate any concern that expedited discovery may be too broad or too

burdensome, because the State Defendants will have the opportunity to object on those bases, as in any other discovery process.  *Id.*

### C. Movants Seek Expedited Discovery Long After Discovery Typically Would Have Commenced, Not in Advance of Normal Discovery.

Under the target dates set out by the Federal Rules, discovery would be well underway by now.  Federal Rule 26 dictates that discovery should begin after the parties conclude a 26(f) conference, which must be held "as soon as practicable—and in any event at least 21 days before a case's scheduling conference is to be held, or a scheduling order is due."  Fed. R. Civ. P. 26(d), (f).  Rule 16, in turn, governs the default timing for a scheduling order and says "[t]he judge must issue the scheduling order as soon as practicable, but unless the judge finds good cause for delay, the judge must issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared."  Thus, the 26(f) conference normally should be held, and discovery should begin, at least 21 days before the scheduling order is due, which is either 90 days from service or 60 days from any defendant's appearance.

Here, Defendants were first served on April 24, 2023, *see* ECF Nos. 6–10, and counsel for Defendants first appeared on April 27, 2023, *see* ECF Nos. 4–5.  Thus, under Rule 16's default schedule, the Court's scheduling order would have been due on June 26, 2023 (60 days from Defendants' appearance) and discovery would have commenced after a 26(f) conference no later than June 5, 2023 (21 days before the scheduling order's due date).[4]  Moreover, none of these dates would have been affected by the Court's brief stay of the discovery conference and

---

[4] Of course, a judge has discretion to modify this default schedule, *see* Fed. R. Civ. P. 26(d)(1), and local practice indicates that discovery starts on the date identified in the magistrate judge's initial order.  L.U.Civ.R. 16(a).  This case, however, was filed more than three months prior to this motion for expedited discovery, and the previous discovery stay has been mooted.  *See* L.U.Civ.R. 16(b) (describing circumstances for an automatic stay, not applicable here).

other discovery activity, which was precipitated by Governor Reeves's motion to dismiss and then was determined by the Court determined on June 2 was moot.

Defendants therefore cannot reasonably argue that beginning limited discovery now is "far in advance" of typical discovery.

## CONCLUSION

For the reasons above, this Court should grant Plaintiffs' motion and expedite discovery as to Counts II, III, and IV in advance of a Rule 26(f) conference.

Respectfully submitted this 18th day of August, 2023.

/s/ Mark H. Lynch
Eric H. Holder, Jr.,* DC Bar # 303115
Megan A. Crowley,* DC Bar # 1049027
Gary S. Guzy,* DC Bar # 375977
Mark H. Lynch,* DC Bar # 193110
Brenden J. Cline,* DC Bar # 1021317
David Leapheart,* DC Bar # 1032122
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-6000
Fax: (202) 662-6291
eholder@cov.com
mcrowley@cov.com
gguzy@cov.com
mlynch@cov.com
bcline@cov.com
dleapheart@cov.com

*Counsel for NAACP*

*Pro Hac Vice

/s/ Carroll Rhodes
Carroll Rhodes, MS Bar # 5314
**LAW OFFICES OF CARROLL RHODES**
POST OFFICE BOX 588
HAZLEHURST, MS 39083
Telephone: (601) 894-4323
Fax: (601) 894-1464
crhode@bellsouth.net

Joe R. Schottenfeld,* DC Bar # 1735796
Evan Walker-Wells,* NY Bar # 6050645
**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE**
4805 Mt. Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
Fax: (410) 358-9350
jschottenfeld@naacpnet.org
ewells@naacpnet.org

*Counsel for All Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2023, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Brenden J. Cline
Brenden J. Cline