**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

|  |  |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, ET AL., | Case No. 3:23-cv-272-HTW-LGI |
| *Plaintiffs*, | |
| v. | **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** |
| TATE REEVES, in his official capacity as Governor of the State of Mississippi, ET AL., | |
| *Defendants*. | |

Ironically, Defendants Tindell, Luckey, and Fitch (collectively the "Original State Defendants") lack standing to assert the only defenses they raise to Plaintiffs' proposed First Amended Complaint ("FAC"). Regardless, those arguments are misguided and fall far short of the mark on their merits. The Court should not hesitate to grant Plaintiffs leave to file the FAC.

**I.      The Original State Defendants Lack Standing to Assert Defenses on Behalf of the Proposed New Defendants or the State of Mississippi, a Non-Party.**

As the Original State Defendants concede, courts considering whether to grant leave to amend ask whether the amendments will cause, among other things, "prejudice ***to the opposing party***"—not to proposed new defendants, not to non-parties, and certainly not to the public at large. Opp. at 3 (quoting *Union Planters Nat'l Leasing, Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982)) (emphasis added). Accordingly, in opposing a motion for leave to amend, a defendant may raise only those defenses that are personal to that defendant rather than to a proposed new defendant, a non-party, or the public at large. *See, e.g.*, *Bell v. Reeves*, No. 19-CV-11435, 2019 WL 4305814, at *2 (E.D. La. Sept. 11, 2019) ("In the present matter, the defendants raise futility on behalf of the proposed new defendants. It is unclear on what basis

the defendants have standing to raise such arguments.  Moreover, at this stage, arguments concerning futility are premature and may be raised by [the proposed new defendants] when they make their appearances."); *Ntakirutimana v. Cmty. Health Sys. Inc.*, No. CV L-09-114, 2012 WL 12894294, at *3 (S.D. Tex. Dec. 20, 2012) ("[Original] Defendants' attorneys should not have raised personal defenses on behalf of the New Defendants in an attempt to obtain a ruling that Plaintiffs should be denied leave to amend to add the New Defendants."); *Massey v. Tasch, Inc.*, No. CIV.A. 00-1187, 2002 WL 1423249, at *1 (E.D. La. June 27, 2002) ("[C]ounsel for existing defendants does not have the authority to stipulate on behalf of the proposed new defendants." (quoting 61A Am. Jur. 2d Pleading § 787 (2002))).  Here, the FAC makes no material changes to the claims and allegations against the Original State Defendants, and they do not contend otherwise.  They therefore have nothing relevant to say about the FAC.

Specifically, the Original State Defendants' quarrel is first with Plaintiffs' standing to bring claims against the proposed ***new*** defendants.  *Compare* Opp. at 1-2 (contesting Plaintiffs' standing to bring Count II), *with* ECF No. 80-1 at 49 (not pleading Count II—which concerns Defendant Randolph's appointments to the Hinds County Circuit Court—against the Original State Defendants).[1]  The Original State Defendants have no personal stake in Count II and therefore cannot be individually prejudiced by the proposed amendment.

---

[1] The two cases cited in support of the Original State Defendants' argument that Count II of the proposed FAC would be subject to dismissal for lack of standing are inapposite because they involved amendments directed at the ***original defendants*** who had standing to assert futility rather than, as here, ***new defendants*** who must make their own futility argument.  *See Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017); *Kasprzak v. Am. Gen. Life & Accident Ins. Co.*, 942 F. Supp. 303, 307 (E.D. Tex. 1996).  In *Moore*, the plaintiff sought to add a new plaintiff (his daughter) with a new claim, but both the trial and appellate courts ruled that her addition would not cure the lack of standing that required dismissal of the original plaintiff's claims. *See* 853 F.3d at 248, 252-53; *Moore v. Bryant*, 205 F. Supp. 3d 834, 856-57 (S.D. Miss. 2016).  Similarly in *Kasprzak*, the proposed amendment did not seek to add new defendants, and the court ruled that it would not cure plaintiffs' failure to establish standing as to the existing defendants.  942 F. Supp. at 307.

Second, as to their claim that the State of Mississippi itself would be somehow prejudiced by allowing Plaintiffs' FAC, that claim does not bear on the motion for leave to amend because the State and the public at large are not parties to the FAC. *See* Opp. at 3-5 (alleging undue prejudice to "the people of the State of Mississippi").

The Original State Defendants' only arguments in opposition to Plaintiffs' motion are thus not properly before the Court. Those defenses are at best premature and may be raised only by the parties to whom they belong, and only after Plaintiffs are granted leave to file the FAC, which will bring the proposed new defendants into the case.

## II.   Plaintiffs Have Standing to Bring Count II Against the Proposed New Defendants.

Even if the Court excuses the Original State Defendants' failure to raise any arguments on their own behalf, and considers the arguments they have improperly raised on behalf of others, those arguments are meritless.

The Original State Defendants' reliance on their prior briefing in opposition to Plaintiffs' Motion for Preliminary Injunction on Count II (ECF No. 50 at 11-18) to demonstrate the futility of Plaintiffs' amendments to Count II is misguided and insufficient. The Original State Defendants' principal point in that briefing was to argue that "[b]ecause Chief Justice Randolph is no longer a party to this action, there is no longer anyone with the subject power of appointment who is left to enjoin in this case." *Id.* at 11; *see also id.* at 18 (contending that Plaintiffs "failed to show how any purported injury is redressable given Chief Justice Randolph's dismissal"). But granting leave to file the FAC will add defendants who have no immunity before they take the oath of office, and who, if enjoined from taking the oath of office and otherwise assuming office, will redress Plaintiffs' injuries.

Another point prominently made in the prior briefing is that Plaintiffs have not alleged an injury that is "actual and imminent," citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147

3

(2013).  *See* ECF No. 50 at 11-12, 17-18.  To the contrary, if the current TRO is lifted, the Chief

Justice is certain to make the unconstitutional appointments because he is required to make them

by H.B. 1020, and he could make them within minutes of the current TRO being lifted.  This is

as actual and imminent as a future injury can be, if the current TRO is lifted.

        To the extent the Court considers the remaining standing arguments that the Original

State Defendants seek to incorporate by reference, Plaintiffs in turn incorporate their own prior

standing arguments by reference.  *See* ECF No. 41 at 5-9; ECF No. 57 at 2-5.  Notably, the

Original State Defendants do not raise any arguments specific to the Doe defendants, and

therefore concede any such points by their silence.

**III.    The Original State Defendants' Prejudice and Undue Delay Arguments Lack Merit.**

        The Original State Defendants assert that the motion for leave to amend should be denied

because Plaintiffs will cause unfair prejudice by engaging in piecemeal litigation and having

waited too long to bring their motion to amend.  Opp. at 3-5.  This charge is without merit.

        As an initial matter, and again only if the Court considers the arguments the Original

State Defendants have improperly raised on behalf of others, the prejudice argument is

misguided.  *See* Opp. at 4-5.  Plaintiffs' FAC would not cause the Court to leave the existing

TRO against Defendant Randolph in place any longer than it would otherwise be—a result that is

nowhere sought in Plaintiffs' Motion.  Indeed, the very point of Plaintiffs' proposed FAC is to

provide proper defendants for Plaintiffs' Motion for Preliminary Injunction on Count II if the

TRO against Defendant Randolph is dissolved.  If anything, allowing the FAC and granting the

new motion for a TRO could facilitate the Court's resolution of the uncertainty regarding

Defendant Randolph's status while still maintaining the status quo by allowing the proposed new

defendants to be enjoined instead.  Moreover, even if the Court did extend the existing TRO (or

grant a new one), that is not a cognizable injury that could support a claim of "undue prejudice"

because a party cannot be harmed by being prevented from violating the Constitution.  *See*

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338-39 (5th Cir. 1981).[2]  At

bottom, Plaintiffs do not lose the right to file a meritorious motion because Defendants would

prefer that the Court tend to their own requests first.

The premises of the prejudice argument are also faulty.  The timing and sequence of the

issues Plaintiffs have presented to the Court have been dictated by the different dates on which

different provisions of H.B. 1020 take effect.  The inherently "piecemeal" nature of this litigation

was thus the choice of the Legislature, not Plaintiffs.  And as explained in Plaintiffs'

Memorandum in support of the Motion, the proposed FAC also addresses issues that are not

presently before the Court in an effort to ***avoid*** piecemeal litigation.  *See* Memo. at 3-4

(proposing to add John/Jane Does 6 and 7, the CCID Prosecutors, who would be amenable to suit

on Count IV even if an argument is later raised that Defendant Fitch is not).

Furthermore, the charge that Plaintiffs have been dilatory ignores that this case was filed

only four months ago, with no initial order, attorney conference, discovery, or scheduling order

to date.  That is nothing like the Original State Defendants' only case denying leave to amend

based on a party's dilatory motion.  *See* Opp. at 3 (citing *Union Planters Nat. Leasing, Inc. v.*

*Woods*, 687 F.2d 117, 121 (5th Cir. 1982), in which the party "sought to amend . . . more than a

year after suit was filed" and after "[d]iscovery had been completed").  The Original State

Defendants' position is thus without legal support.

---

[2] Even if, contrary to Plaintiffs' intentions and the law regarding the lack of harm from being prevented from violating the Constitution, the FAC somehow "contribute[s] to further delay" that risks causing future injury (Opp. at 4-5), the Original State Defendants' "[a]llegations of *possible* future injury are not sufficient" for standing—as they once forcefully argued.  ECF No. 50 at 11 (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013)).

The Original State Defendants also ignore the facts of the actual history of this litigation. Because H.B. 1020 required the Chief Justice to appoint four temporary special Circuit Court judges to the Hinds County Circuit Court no later than 15 days after passage of the statute, Plaintiffs had to first attempt to enjoin those appointments on an urgent schedule in order to forestall the irreparable harm they will suffer if the appointments are made.  Plaintiffs sought a TRO on April 28, just one week after filing their complaint.  ECF No. 11.  That motion was mooted, however, when on May 4, the Chancery Court of Hinds County entered a preliminary injunction.  When the Chancery Court vacated that injunction on May 11 (ECF No. 23), Plaintiffs on the same day filed a second motion for a TRO.  ECF No. 24.  On May 12, the Court entered an order (ECF No. 26) restricting the Chief Justice from making the appointments until it had conducted a hearing on the second motion for a TRO (which the Court scheduled for May 22) and until it rendered its ruling on Chief Justice Randolph's judicial immunity defense, which he had raised in a motion to dismiss filed on May 4 (ECF No. 19).  On May 24, Plaintiffs moved for a preliminary injunction.  ECF No. 40.

Up until that point in the litigation, the most obvious party to target for an injunction to prevent the judicial appointments at issue in Count II was the Chief Justice because he was the person designated by the Legislature to make the appointments.  Plaintiffs had a good-faith belief that he was not immune from injunctive relief because, based on their reading of the cases, the Fifth Circuit's four-factor test indicated that the appointment of Circuit Court judges to nearly full terms is not an adjudicatory, judicial act.[3]  This Court disagreed, however, and found the

---

[3] The immunity in 42 U.S. 1983 for judicial officers applies only to actions "brought against a judicial officer for an act or omission in such officer's judicial capacity."

Chief Justice to enjoy judicial immunity on June 1—after Plaintiffs had obtained a TRO and filed a Motion for a Preliminary Injunction.  ECF No. 45.

In response to that ruling—and after further colloquies regarding the Court's ability to enjoin Defendant Randolph at the June 14 and June 29 hearings and in briefs filed June 16 (ECF No. 63 at 14-17) and July 3 (ECF No. 65 at 4)—Plaintiffs moved mere weeks later to add parties who are not immune and from whom Plaintiffs can obtain redress on August 3.  Even measured from June 1, when the Court issued its immunity ruling, Plaintiffs motion was filed only two months later.  Two months is not undue delay, particularly in a case where the Original State Defendants have not filed a motion to dismiss, discovery has not yet begun, no trial has been scheduled, the proposed amendment does not add a new substantive claim or change the underlying theory of the case, and most of the activity to date has swirled around the efforts of another defendant (Chief Justice Randolph) to extricate himself from aspects of Plaintiffs' claims that are not raised against the Original State Defendants.  Defendants have cited no case—and Plaintiffs are aware of none—where a court in similar circumstances has found two months to be undue delay in pursuing the course Plaintiffs pursue here to remedy an early adverse ruling.

Moreover, Rule 15(a)(2) is intended to remedy problems like the one Plaintiffs faced following the Court's ruling that the Chief Justice is immune from an injunction against the appointments to the Hinds County Circuit Court.  As even the Original State Defendants' cases say (Opp. at 3), "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 181-82 (1962) (citation omitted).  Indeed, Rule 15's "purpose is [*inter alia*] to provide maximum opportunity for each claim to be decided on the merits rather than on procedural technicalities

. . . .  No longer is a party to be irrevocably bound to the legal or factual theory of the party's first pleading."  Wright & Miller, 6 *Federal Practice and Procedure* § 1471 (3d Ed.) (footnote omitted).  Here, the Original State Defendants (as well as Defendant Randolph) contend that Plaintiffs are prevented by a non-merits defense of immunity from obtaining an injunction prohibiting Defendant Randolph from making the challenged appointments.  In response to this obstacle—which is unrelated to the substantive merits of their claim—Plaintiffs seek to pivot to other defendants who, until they take the oath of office and assume office, do not enjoy immunity.  The underlying legal theory is the same—the appointments violate Plaintiffs' right to equal protection because the statute deprives only the residents of Hinds County of the opportunity to elect all of their Circuit Court judges and the overwhelming percentage of those residents are Black.  The amendment should be allowed in order to let the parties proceed to the merits of this important claim.

Hoping to excuse these misguided arguments, the Original State Defendants once again try to insulate H.B. 1020 from scrutiny by labeling it "crime-reduction legislation," Opp. at 4, but Plaintiffs have previously explained that the interest in public safety cannot trump individuals' constitutional rights.  *See* ECF No. 57 at 11-12.

## CONCLUSION

For the reasons above, the interests of justice require granting leave to file the proposed amendment and there is no "substantial reason" to deny leave to amend the Complaint. Accordingly, this Court should grant Plaintiffs leave to file their proposed FAC.

Respectfully submitted this 24th day of August, 2023.

<div style="display:flex">

*/s/ Mark H. Lynch*
Eric H. Holder, Jr.,* DC Bar # 303115
Megan A. Crowley,* DC Bar # 1049027
Gary S. Guzy,* DC Bar # 375977
Mark H. Lynch,* DC Bar # 193110
Brenden J. Cline,* DC Bar # 1021317
David Leapheart,* DC Bar # 1032122
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-6000
Fax: (202) 662-6291
eholder@cov.com
mcrowley@cov.com
gguzy@cov.com
mlynch@cov.com
bcline@cov.com
dleapheart@cov.com

*Counsel for NAACP*

**Pro Hac Vice*

</div>

*/s/ Carroll Rhodes*
Carroll Rhodes, MS Bar # 5314
**LAW OFFICES OF CARROLL RHODES**
POST OFFICE BOX 588
HAZLEHURST, MS 39083
Telephone: (601) 894-4323
Fax: (601) 894-1464
crhode@bellsouth.net

Joe R. Schottenfeld,* DC Bar # 1735796
Evan Walker-Wells,* NY Bar # 6050645
**NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED
PEOPLE**
4805 Mt. Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
Fax: (410) 358-9350
jschottenfeld@naacpnet.org
ewells@naacpnet.org

*Counsel for All Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2023, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Brenden J. Cline*
Brenden J. Cline