IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, ET AL.,<br><br>*Plaintiffs*,<br><br>v.<br><br>TATE REEVES, in his official capacity as Governor of the State of Mississippi, ET AL.,<br><br>*Defendants*. | Case No. 3:23-cv-272-HTW-LGI<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO STAY THE FORTHCOMING ORDER LIFTING THE TRO AGAINST DEFENDANT RANDOLPH PENDING APPEAL** |

Plaintiffs respectfully request that the Court stay, pending appeal, its forthcoming order lifting the TRO that has preliminarily enjoined Chief Justice Randolph from appointing special circuit judges under H.B. 1020 § 1—unless the Court first grants leave to amend (Dkt. 80) and the replacement TRO sought against those proposed John/Jane Doe defendants to prevent them from accepting the appointments (Dkt. 82). Alternatively, and at minimum, Plaintiffs request an administrative stay of 21 days to allow them to seek an emergency, expedited stay pending appeal from the Fifth Circuit. *See In re Abbott*, 800 F. App'x 296, 298 (5th Cir. 2020) ("Entering temporary administrative stays so that a panel may consider expedited briefing in emergency cases is a routine practice in our court.")

A stay of the Court's forthcoming order lifting the existing TRO (or issuance of the replacement Doe TRO) is necessary "[t]o maintain the status quo and to avoid possible irreparable harm from any violation of constitutional rights to equal protection of the law," as this Court twice found in issuing and then renewing the existing TRO. Dkts. 26, 38. The statutory deadline for the H.B. 1020 § 1 appointments has passed. If the current TRO is lifted

and no replacement TRO is in place, the Chief Justice will be immediately required to appoint and swear in the special circuit judges. The Court's forthcoming order thus threatens to upend the status quo and cause irreparable harm to Plaintiffs' constitutional rights, unless it is paired with (1) an order granting leave to amend (Dkt. 80) and the replacement TRO (Dkt. 82), or (2) a stay pending appeal.

## LEGAL STANDARD

Courts consider four factors in determining whether to grant a motion to stay an order's effectiveness pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable damage absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013). The Fifth Circuit has refused, however, to apply the stay factors "in a rigid . . . [or] mechanical fashion." *Campaign for S. Equal. v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014) (citation omitted). Rather, the Fifth Circuit has tempered the first factor such that a party "need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981); *accord Campaign for S. Equal.*, 773 F.3d at 57.

## ARGUMENT

Plaintiffs intend to appeal the Court's forthcoming dismissal of the Chief Justice and—unless the Court grants the replacement TRO (Dkt. 82)—its lifting of the TRO against him. As explained below, each of the stay factors favors staying the Court's lifting of the existing TRO in the absence of a replacement TRO. The Court's June 1, 2023 dismissal ruling underlying its

planned lifting of the TRO involved a serious and difficult legal question that warrants a stay pending appellate review, and in the alternative, Plaintiffs respectfully submit that they are likely to succeed on appeal. Additionally, Plaintiffs will suffer irreparable harm absent a stay; a stay will not harm Defendants; and it would be in the public interest. Unless the Court issues the replacement TRO beforehand, it should thus stay its forthcoming order lifting the existing TRO.

### I.     Whether Judicial Immunity Defeats Plaintiffs' Constitutional Rights Is a Serious, Difficult Question, and Plaintiffs Are Likely to Succeed on Appeal.

Plaintiffs can satisfy either the relaxed or traditional form of the first stay factor. *See Campaign for S. Equal.*, 773 F.3d at 57.

Under the more flexible approach to the first stay factor, the Court need not make "a prediction that it has rendered an erroneous decision" in dismissing Chief Justice Randolph from Plaintiffs' H.B. 1020 § 1 claim for injunctive relief that was underlying the existing TRO. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844–45 (D.C. Cir. 1977). Instead, "[w]hat is fairly contemplated is that tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Id.*; *accord Campaign for S. Equal.*, 773 F.3d at 57. Under that standard, this case poses a serious, difficult question: whether the Chief Justice can invoke judicial immunity to avoid being an *Ex parte Young* defendant in a challenge to a state law that denies Plaintiffs equal protection of the laws, thereby threatening to deny Plaintiffs the ability to vindicate their constitutional rights. In light of the equities described below, this is at least a "substantial legal question" warranting a stay to preserve the status quo pending appeal. *Edelman v. Jordan*, 414 U.S. 1301, 1303 (1973) (Rehnquist, C.J., in chambers) ("A substantial legal question being present, the[] equities lead me to conclude that [the district court order] should be stayed."); *see also* 11 Charles A. Wright, Arthur R. Miller, &

Mary K. Kane, *Federal Practice and Procedure*, § 2904 (3d ed.) ("Many courts also take into account that the case raises substantial difficult or novel legal issues meriting a stay.").

Alternatively, under the traditional standard, Plaintiffs respectfully submit that they are likely to succeed on an appeal of the June 1, 2023 dismissal order. That order applied the four-factor test for judicial immunity to determine whether the Chief Justice's appointment of temporary special circuit judges to nearly four-year terms was a judicial act. *See* Order, Dkt. 45 at 17, 22. As the Court summarized, the four-factor test for judicial immunity requires weighing the following considerations: "(1) was a 'normal judicial function' involved; (2) did the relevant act occur in or adjacent to a court room; (3) did the 'controversy' involve a pending case in some manner; and (4) did the act arise 'directly out of a visit to the judge in his official capacity.'" *Id.* at 17 (quoting *Daves v. Dallas Cnty.*, 22 F.4th 522, 529 (5th Cir. 2022) (en banc)).

The Court based its immunity ruling on a finding that appointment of judges under H.B. 1020 § 1 is a "normal judicial function." *See id.* at 21-22 (comparing H.B. 1020 § 1 to the preexisting Miss. Code § 9-1-105 and concluding that "both allow the Chief Justice to appoint special temporary circuit judges"). Plaintiffs respectfully submit that instead of comparing statutory authorities, the Fifth Circuit is likely to follow precedents like *Lewis v. Blackburn*, 555 F. Supp. 713 (W.D.N.C. 1983), *rev'd on other grounds*, 759 F.2d 1171 (4th Cir. 1985), which categorically hold: "Appointment of magistrates and other judges is ministerial . . . . The act of appointing to office is not a judicial duty." *Id.* at 723; *see also Davis v. Tarrant Cnty.*, 565 F.3d 214, 222 n.3 (5th Cir. 2009) (favorably citing *Lewis*); Dkt. 25 at 9-10 (collecting cases). None of the cases relied on by the Court's dismissal order compared statutory authorities or involved the act of appointing an individual to an office. Furthermore, the Court did not consider any of the other three factors, all of which weigh against a finding of judicial immunity. *See* Dkt. 25 at 11.

4

The Court's dismissal order underlying its forthcoming lifting of the TRO thus poses a serious, difficult legal question, and in the alternative, Plaintiffs are likely to succeed on appeal.

## II.     The Equities Strongly Support a Stay Pending Appeal to Preserve the Status Quo.

The remaining stay factors also weigh heavily in favor of granting a stay pending appeal. "There is substantial overlap between [the stay factors] and the factors governing preliminary injunctions," and indeed the latter "demands a significantly higher justification than a request for a stay." *United States v. Hinds Cnty.*, 625 F. Supp. 3d 541, 547 (S.D. Miss. 2022) (citations omitted). These considerations of the equities are substantially the same factors that the Court considered in granting the existing TRO (Dkts. 26, 38), and thus likewise strongly favor staying the Court's forthcoming order dissolving that TRO pending appeal. *Compare* Dkt. 38 (granting TRO "[t]o maintain the status quo and to avoid possible irreparable harm from any violation of constitutional rights to equal protection of the law"), *with Planned Parenthood of Greater Texas*, 734 F.3d at 410 (listing remaining stay factors).

Specifically, Plaintiffs will face the same irreparable injuries to their constitutional rights from a failure to stay the forthcoming order lifting the TRO that they would have suffered from a failure to issue the TRO in the first place. The Court already considered and agreed with Plaintiffs' arguments in the context of Plaintiffs' original TRO motion. *See* Dkt. 12 at 15-16. As explained there, this Court correctly noted in *Church at Jackson v. Hinds County*, No. 3:21-CV-298-HTW-LGI, 2021 WL 4344886 (S.D. Miss. Sept. 23, 2021), that "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Id.* at *6 (citation omitted); *see also id.* (noting that because "there is an 'equal terms' violation . . . there is a presumption of irreparable harm"). Because imminent constitutional violations like those threatened here "cannot be undone through monetary remedies," they are necessarily irreparable. *See Deerfield Med. Ctr. v. City of*

5

*Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). Indeed, courts often find that "irreparable injury is present as a matter of law" where a motion for emergency injunctive relief is based on a violation of the Equal Protection Clause, as it is here. *Killebrew v. City of Greenwood*, 988 F. Supp. 1014, 1016 (N.D. Miss. 1997); *see, e.g.*, *Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F. Supp. 3d 511, 529 (S.D. Tex. 2020) ("It has repeatedly been recognized by the federal courts at all levels that violation of constitutional rights constitutes irreparable harm as a matter of law.").

Next, staying the forthcoming order pending appeal will not substantially injure other parties, as Plaintiffs previously demonstrated in their successful TRO motion. *See* Dkt. 12 at 16. Significantly, despite repeatedly protesting the length of time the TRO has remained in place, neither the Attorney General's Office nor the Chief Justice have presented evidence or argument of ***any*** injury to the State's interests in that time—no increased judicial backlog, no delayed resolution of cases, and no other exigent need for the additional judges. The balance of equities greatly favors Plaintiffs because a stay will merely preserve the status quo and shield Plaintiffs' constitutional rights from violation while causing the individual who remains restrained (the Chief Justice) no injury whatsoever. Individuals cannot be harmed by being prevented from violating the Constitution. *See Deerfield Med. Ctr.*, 661 F.2d at 338–39. Conversely, the immediacy of the harm to Plaintiffs that would result from the denial of a stay pending appeal increases the value of maintaining the status quo. *See Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (where appeal is taken "on the eve of" a statutory deadline, "the value of preserving the status quo here is much higher than in most other contexts"). Accordingly, the violation of Plaintiffs' rights far outweighs any purported harm to the Chief Justice from an injunction.

Last, the public interest supports leaving the TRO in place pending an appeal, just as Plaintiffs previously argued (and the Court agreed) in the original TRO context. *See* Dkt. 12 at

16-17.  "It is always in the public interest to prevent the violation of a party's constitutional rights." *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (citation omitted).  Plaintiffs have made a prima facie case that H.B. 1020 is "unconstitutional [and] so the public interest [is] not disserved by an injunction preventing [its] implementation," including a stay of the forthcoming order to temporarily leave the TRO in place pending appeal.  *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996).  Even the laudable goal of addressing crime must be pursued through means that do not violate the Constitution.  *See, e.g., Villas at Parkside Partners v. City of Farmers Branch*, No. CA 3:06-CV-2376-L, 2007 WL 1498763, at *10 (N.D. Tex. May 21, 2007) ("[T]he 'public interest . . . does not extend so far as to allow . . . actions that interfere with the exercise of fundamental rights.'" (quoting *Deerfield Med. Center*, 661 F.2d at 338-339); *Phillips v. Cole*, 298 F. Supp. 1049, 1053 (N.D. Miss. 1968) ("The State of Mississippi, in undertaking to define crime and prosecution thereof, must, at all events, comply with the demands of the Constitution of the United States."); *see also, e.g., Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) ("There is generally no public interest in the perpetuation of unlawful [government] action.").

As explained previously, the status quo is particularly important to preserve here because waiting to vacate H.B. 1020's judicial appointment provision until after the appointments have been made would mean unseating the appointed judges after they have begun to hear cases.  This would be highly disruptive to the Hinds County Circuit Court and its litigants.  *See Ioppolo v. Rumana*, 581 F. App'x 321, 332 (5th Cir. 2014) (noting the "public[] interest in the proper administration of the judicial system").  Continuing to enjoin the appointments while the threshold issue of judicial immunity is heard on appeal will thus serve the public interest.

## CONCLUSION

For the reasons above, if the Court does not grant the replacement TRO (Dkt. 82), then it should stay its forthcoming order dissolving the TRO against the Chief Justice pending appeal. Alternatively, the Court should issue an administrative stay of 21 days from the issuance of the forthcoming order to allow Plaintiffs to seek a stay pending appeal from the Fifth Circuit.

Respectfully submitted this 20th day of September, 2023.

*/s/ Mark H. Lynch*
Eric H. Holder, Jr.,* DC Bar # 303115
Megan A. Crowley,* DC Bar # 1049027
Gary S. Guzy,* DC Bar # 375977
Mark H. Lynch,* DC Bar # 193110
Brenden J. Cline,* DC Bar # 1021317
David Leapheart,* DC Bar # 1032122
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-6000
Fax: (202) 662-6291
eholder@cov.com
mcrowley@cov.com
gguzy@cov.com
mlynch@cov.com
bcline@cov.com
dleapheart@cov.com

*Counsel for NAACP*

**Pro Hac Vice*

*/s/ Carroll Rhodes*
Carroll Rhodes, MS Bar # 5314
**LAW OFFICES OF CARROLL RHODES**
POST OFFICE BOX 588
HAZLEHURST, MS 39083
Telephone: (601) 894-4323
Fax: (601) 894-1464
crhode@bellsouth.net

Joe R. Schottenfeld,* DC Bar # 1735796
Evan Walker-Wells,* NY Bar # 6050645
**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE**
4805 Mt. Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
Fax: (410) 358-9350
jschottenfeld@naacpnet.org
ewells@naacpnet.org

*Counsel for All Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2023, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Brenden J. Cline*
Brenden J. Cline