## DECLARATION OF MARKYEL PITTMAN

I, Markyel Pittman hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. I am a resident of Jackson, Mississippi.

2. I am a registered voter in Mississippi, and I vote regularly in all elections.

3. I am a member of the NAACP and am the State President of the NAACP's Mississippi Youth and College Division for the Jackson State Branch Unit 5843. I am currently getting my master's degree at Jackson State University. In addition to my studies at Jackson State, I am very involved in political organizing work on campus. In my work for the NAACP and as an organizer, I see every day how important it is for members of my community to be able to exercise forms of democratic control over the people who represent them.

4. I live in Southwest Jackson. My home falls within the CCID, which means that I am subject to the new municipal court that H.B. 1020 creates. Like many of my peers at Jackson State, I can now be prosecuted by prosecutors designated by the Attorney General in cases heard by a municipal judge appointed by the Chief Justice.

5. H.B. 1020's imposition of this new CCID court system means that those of us who live in the CCID—and Jackson's residents generally— are now disconnected from the people who are in charge of dispensing justice to us. In fact, I believe that this is the purpose of H.B. 1020: To deprive residents of Jackson like me from being able to exercise control over or even influence the systems of law enforcement and the administration of justice to which we are subject.

6. I fear the consequences that this purposeful denial of our political control will allow. Jackson State already fell within the jurisdiction of the Capitol Police before H.B. 1020. And, in my time at Jackson State, I have heard from a number of friends who have had troubling run-ins with the Capitol Police. Friends have, for example, reported to me that they were pulled over for no reason or

1

felt threatened by an intimidating capitol police presence. Under H.B. 1020, not only does the Capitol Police have a more expansive jurisdiction, but the prosecutors and judges we may be hauled before are also not necessarily at all responsive to our concerns—they do not need to be from Jackson and report only to statewide elected officials.

7. The denial of our political voice will hurt our political power in other ways, too. Jackson State is an HBCU, and we have a predominantly Black student body. I know from my experience organizing on campus just how important it is to be able to connect elected political figures to the judges who administer justice. In the past, I have organized students around issues of law enforcement and convinced others to vote on the grounds that, by electing the mayor or city council, for example, they can inform how the criminal legal system functions in Jackson. But, under H.B. 1020, we have two systems of justice: One that is subject to our local control, and the other that is entirely outside of our control.

8. Instead of our local elected leaders, whom I know, choosing our municipal judges and prosecutors, the CCID judge and prosecutor will be chosen by the Chief Justice and the Attorney General. I do not know either of them and I cannot even vote for the Chief Justice, who represents a different district.  And I believe that both of them have very different policy perspectives than I do.

9. Where all other municipal court judges in Jackson must have, I believe, strong ties to the communities in which they sit, there is no reason or incentive for the Chief Justice and the Attorney General to appoint a municipal court judge and prosecutor who come from my community or are connected to my community. By allowing the Chief Justice and State Attorney General to appoint the CCID judges and prosecutors, and not even requiring that these officials be eligible to vote in Jackson, H.B. 1020 deprives my community of the ability to develop a connection with the judges and prosecutors who are supposed to serve us.

10. Black Mississippians have long been subject to over-incarceration. We have faced years of racism and discrimination at the hands of Mississippi's political and court systems. But in Jackson, until H.B. 1020, we at least had the ability to choose local officials who could represent our

2

interests and, to an extent, mitigate some of the over-policing we face. We could choose sheriffs, judges, and local officials who would understand some of the unfairness that we often face at the hands of the justice system. But H.B. 1020 takes some of that power away and instead gives the State Attorney General and the Chief Justice the ability to choose who oversees us on these vitally important matters.

11. Rather than allowing us to choose, H.B. 1020, subjugates the Black-elected and Black-led institutions of Jackson to the will of legislators and state officials who do not represent us. I do not know of any other city or county that has been targeted in this way.

I DECLARE THAT, TO THE BEST OF MY KNOWLEDGE, THE FOREGOING IS TRUE AND CORRECT.

Executed this 13th day of November, 2023.

*Markyel Pittman*

Markyel Pittman