# Exhibit 3

# THIRD DECLARATION OF CHARLES TAYLOR

I, Charles Taylor, hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. I am an African American resident of Jackson where I have lived since I was four years old.

2. I am a registered voter in Mississippi and vote regularly in all elections. I have closely followed the effort to enact House Bill 1020 and the surrounding controversy.

3. I am a member of the NAACP and serve as the Executive Director of the Mississippi State Conference of the NAACP ("MS NAACP"), a position I have held since October 2022. I have been a member of the NAACP since 2008.

4. Having lived in Jackson since I was a child, I am well acquainted with the long history of Black leadership in Jackson and Hinds County. Jackson and Hinds County are both majority Black jurisdictions. Jackson is over 80% Black and Hinds County, which is predominantly made up of Jackson, is over 70% Black. Both routinely elect Black leadership. Jackson has a Black mayor and a majority-Black city council. Similarly, the Hinds County Sheriff and District Attorney are black, as is the majority of the Hinds County legislative delegation.

5. Our Black leadership extends to the Jackson municipal court judges whom our elected Black leaders select to administer vital aspects of Jackson's legal system. Currently, five of our six municipal court judges are people of color.

6. As a resident of Jackson, and as an officer of the MS NAACP, I recognize the importance of having judges and prosecutors who are accountable to voters and to local government. By statute, our municipal court judges must be electors of Hinds County. And, because we can select our municipalities governing body, we can determine who our municipal judges are.

1

7.  Given their power, it is essential that municipal judges and prosecutors understand and are accountable to the communities they preside over. Municipal judges and prosecutors are the front lines of law enforcement actions in Jackson. Democratic control ensures that we, Jackson's residents, have a say in who our judges are. But democracy only functions to the extent that we elect and influence the governing bodies that are responsible for picking our municipal judges.

8.  In the past, Mississippi has often limited the state-sanctioned forms of democratic judicial control and access to justice based on race. During Jim Crow, while judges were predominantly elected from single-member districts, Black Mississippians were precluded from voting and had little say in who was elected to Mississippi courts. Following the enactment of the Voting Rights Act of 1965, and with it the massive expansion of the Black vote, Mississippi transitioned many Circuit Court judgeships to at-large or multi-member districts in an attempt to limit the voting power of the emergent Black electorate.

9.  Today, Jackson is 80% Black. Yet, H.B. 1020 has us repeating some of the sordid parts of Mississippi's past by making it so that the judges and prosecutors that oversee a substantial portion of the city would be appointed entirely by white officials and not by the local elected officials I and my peers have chosen. I believe that our elected officials know that we care about whom they select to be our municipal judges and take our preferences into account when selecting municipal court judges and prosecutors. I know who my municipal judges are, and I vote for my mayor and other elected officials specifically with these judges in mind. It is no coincidence that our judges, like Jackson, are predominantly Black.

10. Across the rest of Mississippi, none of my peers have municipal judges who are appointed by the Chief Justice or municipal prosecutors who are designated by the Attorney General. The fact that the Chief Justice of the Mississippi Supreme court and the State Attorney General are the ones charged with appointing these judges and prosecutors gives me further cause for concern. I do not vote for in Chief Justice's district, and, because of racially polarized voting in Mississippi, the

2

Attorney General typically does not need to win Black votes. I have many policy disagreements with both the Chief Justice and the State Attorney General, and I do not believe either of them will appoint judges or prosecutors whose political and law enforcement beliefs align with my own.

11. As I have stated before, I firmly believe that the circumstances surrounding the passage of H.B. 1020 demonstrate the Mississippi Legislature's intent to take power from our Black-elected and Black-led institutions and provide control instead to white, state officials like the Chief Justice and the Attorney General. Jackson and Hinds County's elected leadership at the local and state level were excluded from the political process surrounding the enactment of H.B. 1020. Neither of the two jurisdictions' legislative delegation or elected leaders were consulted before H.B. 1020 was introduced. Only one Black member, Representative Earle S. Banks, was included in the conference committee for H.B. 1020, but he was excluded from conference meetings and was handed the draft only minutes before the voting deadline with no meaningful opportunity for input on the ultimate bill language. He ultimately voted against the conference report.

12. H.B. 1020 is an imposition from white legislators who were not elected from Jackson or Hinds County and who could not have won an election here if they had run. As I have noted, voting in Mississippi is racially polarized and, as a result, despite Black Mississippians accounting for roughly 40% of the state, Black-preferred candidates do not win statewide elections. No Black official has been elected statewide since the end of the Reconstruction era. And yet, white legislators from outside our county see fit to strip us of control over our government and to subvert the functioning of our government.

13. By stripping Jackson residents of their political power and control over local political institutions, H.B 1020 severs the connection between judges and prosecutors and the communities they are supposed to serve. The candidates appointed by the Chief Justice and the State Attorney General are not required to be residents of Hinds County, and they may well be unknown and unaccountable to us.

3

14. Jackson residents will be forced to appear in court in front of unaccountable judges and prosecutors who are beholden to politicians who were not elected by Hinds County residents and who have not been responsive to our concerns. The State is using H.B. 1020 to wrestle power from Black-elected and Black-led institutions of Hinds County and grant that power to White legislators. I am unaware of any other city or county that has been targeted in this way.

15. We want our courts and our prosecutors to treat us fairly and to be responsive to our needs as a county and a community. But H.B. 1020 gives unaccountable State officials the controlling voice in our local judiciary.

I DECLARE THAT, TO THE BEST OF MY KNOWLEDGE, THE FOREGOING IS TRUE AND CORRECT.

Executed this 13th day of November, 2023.

DocuSigned by:
*Charles Taylor*
7B0E13B325CD48A...
Charles Taylor

4