# Exhibit 4

**THIRD DECLARATION OF TOMIE GREEN**

I, Tomie Green, hereby submit this supplemental declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. The Jackson Municipal Court is an integral part of the Jackson court system and plays an invaluable role in the administration of justice in Jackson—particularly by making sure that our criminal justice system functions as efficiently as possible.

2. When someone is arrested, for example, they are required to have an initial appearance before a judge within 48 hours. Almost invariably, that person's initial appearance takes place before one of Jackson's seven municipal judges.

3. The Municipal Judge will set that person's bond and, at times, hear the preliminary hearing. If the crime is a felony, the case will be moved to a county or circuit judge, because felonies are outside of a municipal court's jurisdiction. But, if the crime is a misdemeanor, then the Municipal Judge can oversee the entire proceeding. In my experience hearing appeals from these cases, he, sentences handed out by a Municipal Court Judge do not typically involve incarceration. They include fines, counseling, or some other measure. When they do involve incarceration, the defendant is sentenced to time in a local jail.

4. The Jackson Municipal Court has jurisdiction over a variety of criminal and civil misdemeanor cases. The CCID Inferior Court, with judges appointed by the Chief Justice of the Mississippi Supreme Court, is supposed to function as another Municipal Court. H.B. 1020 directs that the CCID judge "shall have the same jurisdiction as municipal courts to hear and determine all cases charging violations of the motor vehicle and traffic laws of this state, and violations of the City of Jackson's traffic ordinance or ordinances

1

related to the disturbance of the public peace that accrue or occur, in whole or in part, within the boundaries of the Capitol Complex Improvement District." And, according to the statute, "[a]ny person convicted in the CCID inferior court may be placed in the custody of the Mississippi Department of Corrections, Central Mississippi facility."

5. Under H.B. 1020, the Chief Justice will appoint the CCID court judge who will determine preliminary and criminal matters and will have the same jurisdiction to the Jackson Municipal Court regarding misdemeanor violations that occur in the CCID.

6. H.B. 1020 therefore creates two significant problems that will interfere with Jackson's residents' ability broadly to oversee the administration of justice in Jackson.

7. First, the Mayor's ability, along with the city council, to appoint municipal court judges serves as one of the means by which Jackson residents are able to judge the Mayor, hold him accountable, and push for local representation on the municipal court bench. Elected officials understand that part of how they are viewed by their constituency will depend on the candidates they appoint to the judiciary; Mayors are no different. This political pressure can influence an elected official to appoint judges that come from and represent the community, and can dissuade them from appointing people with whom residents have no connection.

8. The Chief Justice is unaccountable to Jackson Residents and has very different priorities. So H.B. 1020 erodes the connection that local residents have with the judges they face in their courts and with the officials they elect to local office.

9. As a result, I fear that H.B. 1020's CCID court will only increase the burdens on Jackson's elected judges and the overall legal system in Jackson. As the Mississippi Supreme Court explained in *Saunders v. State*, No. 2023-CA-00584-SCT, 2023 WL

2

6154416, at *9 (Miss. Sept. 21, 2023) defendants have a right to appeal from the CCID court. Because that judge may well be selected by the Chief Justice to enact different policies, I am worried that there will be considerably more appeals from CCID judge determinations than from Jackson's appointed municipal judges. For example, the CCID judge may well impose severe or unnecessary bail on many or all defendants who come before that judge; those bail determinations would then be appealed to the county or circuit judges, which would further tax the judicial system.

10. Rather than improve the administration of justice, H.B. 1020's creation of the CCID Court appears to be designed to facilitate the ability of Capitol Police to further sanction Jackson's residents, by providing them (through prosecutors designated by the Attorney General) with a specific, designated forum to which they can bring defendants whom they have arrested for offenses like disturbing the peace.

11. The consequences of this selective system of justice are compounded by the second way in which H.B. 1020 will interfere with the administration of justice in Jackson, or create a new, standalone system of justice: H.B. 1020 requires the CCID Inferior Court to sentence people to time in the Central Mississippi Correctional Facility, which is a Mississippi Department of Corrections prison for individuals convicted of felonies, not misdemeanors. This will expose individuals who are otherwise convicted of misdemeanors in the CCID court to a series of collateral consequences that typically only apply to defendants who are convicted of a felony offense. For example, I am not aware of any programs available in the Central Mississippi Correctional Facility that cater to people who are supposed to be there for less than a year.

12. In short, the CCID Inferior Court deprives Jackson residents of the ability to exercise the full extent of their political power, while simultaneously allowing individuals in Jackson to be sentenced to more punitive forms of incarceration. And it does so without any apparent benefits for the administration of justice in Jackson.

I declare under penalty of perjury under the laws of the United States of American that the foregoing is true and correct, to the best of my ability.

Respectfully Submitted and Executed this 13th day of November, 2023.

_____
TOMIE GREEN