IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, ET AL., <br><br> *Plaintiffs*, <br><br> v. <br><br> TATE REEVES, in his official capacity as Governor of the State of Mississippi, ET AL., <br><br> *Defendants*. | Case No. 3:23-cv-272-HTW-LGI <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT RANDOLPH'S MOTION TO STRIKE** |

Chief Justice Randolph moves to strike Plaintiffs' preliminary injunction motion and supporting papers on the mistaken belief that Plaintiffs' claims about H.B. 1020's requirements are coded statements about whether he is "personally biased." Dkt. 115 at 3. They are not. The motion to strike is both procedurally improper and substantively meritless, and it should be denied on either or both grounds.[1]

### I. Plaintiffs' Preliminary Injunction Motion and Declarations Cannot Be Stricken Because They Are Not "Pleadings."

Defendant Randolph's motion is procedurally improper and can be denied on that ground alone. Rule 12(f) applies only to "pleadings," which Rule 7(a) defines as "complaint[s]" and "answer[s]." *See* Fed. R. Civ. P. 7(b) (describing "Motions and Other Papers" separate from "Pleadings"); *see also, e.g.*, *Batiste v. Lewis*, 976 F.3d 493, 501 (5th Cir. 2020) ("A declaration

---

[1] Unless the Court issues a final decision dismissing the Chief Justice from Plaintiffs' § 4 claim regarding his unprecedented duty to appoint the CCID Inferior Court judge, the Chief Justice remains a proper *Ex parte Young* defendant who may be preliminarily enjoined on that claim.

As Plaintiffs' preliminary injunction motion reiterated (Dkt. 110 at 1 n.1), however, if the Court allows Plaintiffs to add proposed defendants Doe 5, Snowden, and Welch and preliminarily enjoins them, there will be no need for relief directed at Defendant Randolph. *See* Dkts. 80-81.

. . . isn't a 'pleading.'"); *Brown v. United States*, 2021 WL 3729296, at *6 n.3 (S.D. Miss. Aug. 23, 2021) ("[M]otions, briefs, memoranda, objections or affidavits may not be attacked by a motion to strike, as they are outside the Federal Rules of Civil Procedure's definition of 'pleading.'" (citation omitted)) (Jordan, C.J.); *Full House Resorts, Inc. v. Boggs & Poole Contr. Grp., Inc.*, 2015 WL 1427284, at *4 (S.D. Miss. Mar. 27, 2015) ("Neither the Position Paper nor the Motion for Summary Judgment to which it is attached is a 'pleading' falling under the scope of this Rule [12(f)]." (citations omitted)) (Starrett, J.).

The Chief Justice's motion to strike (Dkt. 115 at 4) cites the prominent treatise by the scholars Charles Alan Wright and Arthur R. Miller, but ignores what they explained: "Rule 12(f) motions only may be directed towards pleadings as defined by Rule 7(a); thus motions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f)." 5C Fed. Prac. & Proc. Civ. § 1380 (3d ed.) ("[A]s the cases make clear, it is neither an authorized nor a proper way . . . to strike an opponent's affidavits."). The Chief Justice's motion (Dkt. 115 at 5) also cites *United States v. Coney*, 689 F.3d 365 (5th Cir. 2012). But that case affirmed the denial of a motion to strike and quoted this same Wright & Miller passage to "assume without deciding that [defendant] could file a motion to strike the Government's summary judgment filings pursuant to Rule 12(f)." *Id.* at 379 n.5.

The Rule 12(f) motion to strike should thus be denied as not qualifying under that rule.

**II.     The Motion to Strike Is Meritless.**

Even if the Chief Justice could move to strike Plaintiffs' preliminary injunction papers as "pleadings," his motion would fail on its merits. Striking a pleading is a "drastic remedy," so motions to strike "are viewed with disfavor and are infrequently granted." *Brown v. Lee*, 2021 WL 1561256, at *3 (S.D. Miss. Mar. 31, 2021) (Wingate, J.) (citation omitted). While Rule 12(f) provides that a court "may strike from a pleading . . . any redundant, immaterial,

impertinent, or scandalous matter," the Fifth Circuit—in a case cited by the Chief Justice—instructs that "motion[s] to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *Coney*, 689 F.3d at 379 (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, 306 F.2d 862, 868 (5th Cir. 1962)).  That a pleading might "offend the sensibilities" of the moving party does not warrant striking the pleading if its challenged statements are "directly relevant to the controversy at issue and are minimally supported in the record." *Id.* at 379-80.  The challenged statements clear that low bar.

In moving to strike—in full—Plaintiffs' preliminary injunction papers, the Chief Justice argues they are "legally irrelevant," "immaterial," and "scandalous" because they "state, infer and imply that the Chief Justice will conduct himself in a racist manner." Dkt. 115 at 1, 3.  The Chief Justice contends that these statements are "false" and "defamatory" and "draw unfavorable attention to The Chief Justice." *Id.* at 2, 4.

Plaintiffs, of course, never stated or implied anything like this.  To the contrary, Plaintiffs named the Chief Justice in this lawsuit solely to relieve him of his legal duty—assigned by the Legislature—to appoint the CCID Inferior Court judge, regardless of how he intends to carry out that duty.  The problem is H.B. 1020 itself.  All that Plaintiffs "state, infer [or] imply" is that the Chief Justice will obey his oath of office and comply with Mississippi law, including H.B. 1020, as he must.  When the Chief Justice's counsel raised this same issue at the September 5, 2023 hearing, Plaintiffs' counsel explained that the Complaint ascribes the discriminatory intent (an element of an Equal Protection Clause claim) to the Legislature in enacting H.B. 1020, not to the Chief Justice, who is merely the executor of the statute's commands.  Hearing Tr., Ex. A at 152:18-24, 154:14-23.

Here, too, the anodyne statements in Plaintiffs' papers are not remotely "scandalous." Plaintiffs' preliminary injunction motion explains that because the Chief Justice is a State official elected from a district that does not include Jackson, Plaintiffs have no way to ensure that he will appoint a judge who is responsive to their community's concerns. *See* Dkt. 111 at 5-6, 8-10. The supporting declarations further illustrate how H.B. 1020 § 4 "sever[s] the connection" between judges in Jackson and the communities they serve. Dkt. 110-3 ¶ 13. The declarants, each a Jackson resident, explain that they have no electoral influence on the Chief Justice; that they believe the Chief Justice does not share their policy views; and that they are concerned the Chief Justice will appoint a CCID Inferior Court judge who is not from their community and whose beliefs do not align with their own. *See, e.g.*, Dkt. 110-1 ¶ 8 ("I do not know either of [the Attorney General or the Chief Justice] and I cannot even vote for the Chief Justice, who represents a different district. And I believe that both of them have very different policy perspectives than I do."); Dkt. 110-2 ¶ 7 ("Because of H.B. 1020, as a resident of Jackson, I cannot be assured that the appointed judges and prosecutors share my priorities or understanding of the world."); Dkt. 110-3 ¶ 10 ("I have many policy disagreements with both the Chief Justice and the State Attorney General, and I do not believe either of them will appoint judges or prosecutors whose political and law enforcement beliefs align with my own.").

Moreover, there can be no dispute that these inoffensive statements are "directly relevant" to Plaintiffs' equal protection claim, regardless of how the Chief Justice perceives them. *Coney*, 689 F.3d at 379. In moving to preliminarily enjoin the Chief Justice from appointing the CCID Inferior Court judge, Plaintiffs explained that H.B. 1020 § 4 departs from the longstanding system for selecting local judges in Mississippi, in which local judges are selected by a community's voters or local governing authorities. *See* Dkt. 111 at 5-6. Plaintiffs

also explained that this provision denies Jackson's majority-Black residents the benefits of local accountability afforded to other voters in the State. *See id.* at 7, 12-14. In combination with H.B. 1020 § 5's requirement that the Mississippi Attorney General appoint unaccountable prosecutors for the CCID Inferior Court, § 4's appointment provision denies Plaintiffs equal protection of the law under the Fourteenth Amendment's Equal Protection Clause. *See id.* at 7-9. There would thus be no basis to strike even inflammatory, racially charged statements (which the challenged statements are not) in a lawsuit like this one ***about*** racial discrimination. *See, e.g.*, *Nguyen v. La. State Bd. of Cosmetology*, No. 14-00080-BAJ, 2015 WL 590006, at *8 (M.D. La. Feb. 11, 2015) (deeming it "imprudent to strike allegations of racial discrimination, however offensive, in a case centered on claims of racial discrimination").[2]

"This Court is ultimately charged with finding the truth. And that task cannot be accomplished by censoring" Plaintiffs' papers as the Chief Justice demands. *Sharper v. Right Away Maintenance Co.*, No. 22-560-BAJ-SDJ, 2023 WL 4777911, at *4-5 (M.D. La. July 26, 2023) (denying motion to strike allegations as "scandalous" because the "actual words said to Plaintiff are material to [] his claim for disparate treatment" (citation omitted)). Because the challenged statements do not have a whiff of scandal and are directly relevant to Plaintiffs' preliminary injunction motion, the Chief Justice's improper motion to strike should be denied.

---

[2] The Chief Justice's limited citations to cases granting motions to strike show how far his motion falls short of the Rule 12(f) standard. The Bankruptcy Court in *In re Pioneer Health Servs.*, 2018 Bankr. LEXIS 3082, at *13 (S.D. Miss. Bnkr. 2012), struck far more extreme claims that a debtor had "made false statements, used his relationship with [a trust] to its detriment, and otherwise engaged in improper conduct." In *Pigford v. Veneman*, 215 F.R.D. 2, at *3 (D.D.C. 2003), the court struck allegations that defendant's counsel "persistently demonstrated the same racist attitude" and exhibited "contempt for 'lawyers of color.'" And the court granted the motion not because the allegations were inflammatory, but because the plaintiff did not "explain[] how such accusations could be relevant to plaintiff's pending motion." *Id.* at 3.

5

Respectfully submitted this 30th day of November, 2023.

<table>
<tr><td>

/s/ Mark H. Lynch
Eric H. Holder, Jr.,* DC Bar # 303115
Megan A. Crowley,* DC Bar # 1049027
Gary S. Guzy,* DC Bar # 375977
Mark H. Lynch,* DC Bar # 193110
Brenden J. Cline,* DC Bar # 1021317
David Leapheart,* DC Bar # 1032122
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-6000
Fax: (202) 662-6291
eholder@cov.com
mcrowley@cov.com
gguzy@cov.com
mlynch@cov.com
bcline@cov.com
dleapheart@cov.com

*Counsel for NAACP*

*Pro Hac Vice

</td><td>

/s/ Carroll Rhodes
Carroll Rhodes, MS Bar # 5314
**LAW OFFICES OF CARROLL RHODES**
POST OFFICE BOX 588
HAZLEHURST, MS 39083
Telephone: (601) 894-4323
Fax: (601) 894-1464
crhode@bellsouth.net

Joe R. Schottenfeld,* DC Bar # 1735796
**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE**
4805 Mt. Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
Fax: (410) 358-9350
jschottenfeld@naacpnet.org

*Counsel for All Plaintiffs*

</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2023, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Brenden J. Cline
Brenden J. Cline

6