**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, ET AL., <br><br> *Plaintiffs*, <br><br> v. <br><br> TATE REEVES, in his official capacity as Governor of the State of Mississippi, ET AL., <br><br> *Defendants*. | Case No. 3:23-cv-272-HTW-LGI <br><br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION RE H.B. 1020 § 4 AND § 5** |

In their rush to defend the CCID Inferior Court as a policy matter, Defendants gloss over Plaintiffs' legal claim: H.B. 1020's ***appointments*** of the prosecutors and judge by State officials, rather than by City officials, deny Plaintiffs equal protection of law.

Plaintiffs do not attack the CCID Inferior Court per se. Even were the Court to assume the CCID Inferior Court will accomplish all the public safety and criminal justice goals Defendants attribute to it, Defendants have no explanation why those goals require that the prosecutors and judge not be selected in the traditional manner in which municipal court prosecutors and judges in Mississippi have been selected for over 100 years—by locally elected officials. There has been no suggestion, for example, that the Jackson government would fail to fill the vacancies; that it would not select qualified prosecutors or judges; or that its selection process would be marred by corruption. With no compelling (or even rational) explanation in the legislative record, the unspoken legislative intent is to discriminate against Plaintiffs and other Black residents and voters of Jackson by depriving them of (i) the opportunity, enjoyed by voters in every other jurisdiction in Mississippi, to vote for the local officials who select prosecutors and judges for municipal courts, and (ii) the resulting system of local governance.

The stakes could hardly be higher: these politically insulated appointees will soon punish misdemeanants as if they were felons, threatening to chill unpopular speech around the State Capitol.  Frequent appeals from the actions of the unaccountable prosecutors and judge will likely distract the Hinds County Circuit Court and aggravate its criminal case backlog.  And these appointees will do nothing to stem Jackson's wave of serious crime that this Court has cataloged, over which they lack jurisdiction.  This Court should preliminarily enjoin § 4(2) and § 5(1)'s discriminatory appointments at the December 19 hearing.

I.    **The Judicial Immunity and Standing Defenses Fail, and In Any Event Will Soon Be Irrelevant.**

Defendants first contest this Court's ability to decide the preliminary injunction motion based on judicial immunity and standing defenses.  But Plaintiffs have named proper defendants and adequately demonstrated standing.  The Court should thus not hesitate to reach the merits.

A.    **Defendants Fitch and Randolph Are Proper Defendants.**

The Court should not lose sight of the fact that Attorney General Fitch unquestionably may be enjoined from appointing the two CCID Inferior Court prosecutors under H.B. 1020 § 5. The statute tasks Defendant Fitch with making those appointments (§ 5(1)), and she enjoys no immunity for making them, so she can serve as an *Ex parte Young* defendant in this challenge to § 5's constitutionality.  She has not argued otherwise.  *See* Dkt. 122.

Plaintiffs' second challenge—to the appointment of the CCID Inferior Court judge under H.B. 1020 § 4—also named the person tasked with making that appointment: the Chief Justice. Defendant Randolph contends it is the law of the case that judicial immunity bars this Court from forbidding him to carry out an unconstitutional provision of state law.  Dkt. 120.  It is not.  *See* Fed. R. Civ. P. 54(b).  Even Defendant Randolph's cases say a "judge could always [] reconsider[] his initial decision" and doing so is appropriate where an initial decision "is no

2

longer sound," *Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983), as here because of the

"intervening change of law," *Ball v. LeBlanc*, 881 F.3d 346, 351 (5th Cir. 2018).  Plaintiffs have

explained how the *Saunders* decision effectively undermined the "municipal-hybrid court" logic

that this Court preliminarily adopted at the September 13, 2023 hearing for extending judicial

immunity to the § 4 appointment.  *See* Dkt. 108, ¶ 5.c.  Defendants have no response.

>   **B.      Plaintiffs Have Standing to Prevent H.B. 1020's Discriminatory
>            Remaking of Jackson's Criminal Justice System.**

With respect to standing, Defendants begin by misstating the applicable standard.

Plaintiffs do not bear a "heavier burden" than normal (Dkt. 122 at 8), but a lighter one.  At the

"preliminary injunction stage, the movant must clearly show only that each element of standing

is ***likely*** to obtain in the case at hand." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir.

2020) (emphasis added).  At this early stage in the proceedings, "the manner and degree of

evidence required to show standing is ***less*** than at later stages." *Id.* at 329 (emphasis added).

Defendants then try to discount the multiple injuries Plaintiffs will suffer if H.B. 1020 § 4

and § 5's appointment provisions go into effect.  Each attempt fails.

First, Plaintiffs will lose the benefits of being served only by prosecutors who are

politically accountable to their community.  Defendants' only response is that if a CCID Inferior

Court prosecutor secures a conviction, the defendant could appeal to the Hinds County Circuit

Court.  Dkt. 122 at 11.  But Plaintiffs are still deprived of a locally accountable prosecutor at the

first level of the criminal justice system, a benefit provided to voters in all other jurisdictions.

And a wrongful conviction, even if reversed, is not harmless.  Further, appellate review does

nothing to rein in an unelected prosecutor's exercise of discretion.  How will he "pick his cases"?

Will he "pick people that he thinks he should get" and then "search[] the law books . . . to pin

some offense on [them]"? *Morrison v. Olson,*, 487 U.S. 654, 728 (1988) (Scalia, J., dissenting)

(quoting R. Jackson, J.).  H.B. 1020 § 5 "must be adjudged on the basis of what it permits to happen," *id.* at 731, and the danger of unchecked prosecutorial discretion to bring cases (regardless of their outcome on appeal) threatens to deter swaths of lawful behavior, including First Amendment activities that have been protected by this Court.  *See* Dkt. 111 at 15-16.

Similarly, Plaintiffs stand to lose the benefits of their communities being judged only by judges who are chosen locally.  Mississippi recognized these benefits when it was the first state to give localities political control over their criminal courts in the 1800s.  *See* Dkt. 111 at 12-13. Defendants claim that "locally-elected judges" on the Hinds County Circuit Court will still have controlling authority via the appellate process (Dkt. 122 at 11), again ignoring the deprivation of the statewide norm of a locally accountable judge at the first level and the harm from wrongful convictions reversed on appeal—and forgetting that the Chief Justice has, through the exercise of his temporary appointment power, appointed nearly half of the Circuit Court's judges.  *See* Dkt. 41 at 3.  This diminished justice system affects all Jackson residents, regardless of whether they personally come into contact with the courts serving their community.  *See* Dkt. 40-4 ¶¶ 6, 11, 15; *see also City of Greensboro v. Guilford Cnty. Bd. of Elections*, 120 F. Supp. 3d 479, 490 (M.D.N.C. 2015) (finding injury where "citizens will [be] governed . . . [by] the only City Council in the state that was elected through a system and process established without local participation or oversight").

Second, Plaintiffs will be harmed as voters by the appointments of both the prosecutors and the judge.  As explained by Plaintiffs (Dkt. 41 at 5-6) and the United States (Dkt. 119 at 31-32), "once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause." *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 665 (1966).  Defendants mistakenly equate § 4 and § 5's dilution of Jackson officials'

control within the CCID's borders to their dilution of control over "the composition of the airport's governing board" in *Stallworth v. Bryant*, 936 F.3d 224, 231 (5th Cir. 2019)—an attenuated interest unlike the core local government functions at issue here. *See, e.g.*, *Phillips v. Snyder*, 836 F.3d 707, 710-14 (6th Cir. 2016) (city residents had standing to challenge state law allowing "appointed individuals" to "exercise the power of the local government").

Third, the prosecutor and judge appointments "perpetuat[e] archaic and stereotypic notions" and "stigmatiz[e]" Jackson's Black residents as "innately inferior and therefore as less worthy participants in the political community." *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984). Defendants contend that Plaintiffs will not be personally subjected to discriminatory treatment, ignoring that Plaintiffs are among the Jackson (and CCID) voters whom the Legislature has branded as unfit to pick their own prosecutors and judges. *See* Dkt. 41 at 7.

Plaintiffs are "likely" to have standing on at least one of these three grounds, so they have made a sufficient showing to obtain a preliminary injunction. *Speech First*, 979 F.3d at 330.

### C.      The Purported Defenses Will Soon Be Irrelevant.

The purported immunity and standing issues will vanish once the Court grants the United States's July 12, 2023 motion to intervene (Dkt. 69), which was argued on September 5, 2023. The United States's amicus brief indicates that it will move for a parallel preliminary injunction once intervention is granted. Dkt. 119 at 2 n.3. While *Ex parte Young* requires Plaintiffs to seek relief from State officials who implement the legislation, the United States can obtain the same relief directly from the State of Mississippi. Further, the interest of the United States in enforcing the U.S. Constitution plainly gives it standing to sue. *See, e.g.*, Dkt. 79.

### II.     Defendants Do Not, and Cannot, Dispute the Evidence Showing Plaintiffs Are Likely to Succeed on the Merits.

Plaintiffs have made far more than the required "prima facie showing" to warrant

preliminarily enjoining the § 4 and § 5 appointments.  Dkt. 111 at 8 (citation omitted).

### A.   The appointment provisions have obvious discriminatory effects.

Defendants contend it will make no difference if the CCID Inferior Court prosecutors and judge are chosen by State rather than City officials.  Yet the Legislature thought so, or else it would have allowed City officials to make the appointments, just as all cities (including Jackson) do for municipal courts.  Defendants' notion that all appointees would "dispense justice" in the same way is naïve and wrong (Dkt. 122 at 16), as Justice Robert Jackson vividly illustrated in explaining the realities of prosecutorial discretion.  *See* Dkt. 111 at 6.  Defendants also over-simplify the work of the criminal justice system as generating appealable "judgment[s]" (Dkt. 122 at 17), ignoring the day-to-day tasks of prosecutors deciding whether and how to bring charges, talking to crime victims, negotiating plea deals, etc., and judges presiding over hearings, interacting with the public, serving as a check on over-zealous prosecutors, etc.  The effects of having State appointees in these roles will bear more heavily on Black citizens, as the motion (Dkt. 111 at 11) and amicus brief's demographic map (Dkt. 119 at 6) make clear.  Defendants' novel theory that the Fourteenth Amendment does not protect the residents of a state's capitol is unsupported, and, in any event, ignores that the CCID is only a gerrymandered part of Jackson.

### B.   The appointment provisions were motivated by discriminatory intent.

<u>Clear Pattern</u>.  Contrary to Defendants' claim, the CCID Inferior Court does not "apply equally to <u>all</u> citizens of Jackson."  Dkt. 122 at 18.  Its appointees will have jurisdiction only within the CCID's twenty-nine-sided white enclave—more gerrymandered than the "strangely irregular twenty-eight-sided figure" struck down in *Gomillion v. Lightfoot*, 364 U.S. 339, 341 (1960).  H.B. 1020 will more than double the CCID's white population, covering 50% of the City's white residents but less than 10% of its Black residents.  *See* Dkt. 119 at 6-7.  Yet any person from the overwhelmingly Black remainder of Jackson who sets foot in this white enclave

will be subject to the CCID's unique and politically insulated justice system.  This stark

differential treatment on its own shows the appointment provisions were motivated by race.  At

minimum, this powerful evidence is the "starting point" for analyzing whether the presumption

of legislative good faith is overcome by the relevant facts.  Dkt. 111 at 10 (citing cases).

_Substantive Departures_.  Defendants do not dispute, and merely try to explain away, that

§ 4 and § 5 abandon Mississippi's tradition of local control over the criminal justice system, and

over officials functioning as municipal prosecutors and judges in particular.  Dkt. 122 at 21-24.

Tellingly, nowhere do Defendants mention that the appointed CCID Inferior Court prosecutors

will have unchecked prosecutorial discretion—the precise threat Mississippi has long reined in

via local control.  Nor do Defendants mention the CCID Inferior Court judge's many tasks that

cannot be appealed, but have still traditionally been given to locally accountable judges.

Defendants also do not dispute, and again try to explain away, that these appointees will

have unprecedented power to punish misdemeanants as if they were felons.  While sentencing a

misdemeanant to the State penitentiary is just an "option" (Dkt. 122 at 24), that option is

available only to the CCID Inferior Court appointees—amplifying the discrimination between

residents of Jackson and the rest of the State that is at the core of Plaintiffs' claim.  Defendants'

assertion that the Court must presume the Legislature was well-intentioned in sending only

Jackson's misdemeanants to a State penitentiary is untenable when that prison is under federal

investigation for dangerous and substandard conditions.  Dkt. 110-5C.  The presumption of good

faith must further give way to the presumption that the Legislature knew, under applicable law,

that "the discretion to fix punishment for an offense by imprisonment in the penitentiary" makes

the CCID Inferior Court's sentences "a felony regardless of the penalty actually imposed,"

thereby stripping Jackson's misdemeanants of their civil rights.  *McLaughlin v. City of Canton*,

*947 F. Supp. 954, 972-73 (S.D. Miss. 1995) (Wingate, J.); *see* Dkt. 111 at 14-15.[1]

Also uncontested are H.B. 1020's other serious departures: this Court preliminarily enjoined its companion bill's permitting regime as unconstitutional; the Mississippi Supreme Court found its temporary circuit judge provision to be unconstitutional; and the bill creates a new court system instead of providing the normal solution of funding, staffing, or other improvements to existing systems. *See* Dkt. 119 at 20-21 (citing, e.g., the Crime Lab backlog).

*Other Factors*.  The evidence of discriminatory intent in H.B. 1020's legislative process is also beyond dispute.  Defendants concede that H.B. 1020's principal author (Rep. Trey Lamar) stuffed the original bill with 1,000 pages of revenue provisions in order to steer the bill to the committee he chaired rather than a potentially unfavorable committee and then struck the provisions on which he based this ploy.  What Defendants call a "robust debate" (Dkt. 122 at 27) was in fact the Legislature sidelining Hinds County's representatives and not consulting the elected circuit judges to whom the CCID court will be inferior.  Defendants also ignore that the Legislature summarily rejected a modest amendment to partially remedy the bill's discrimination by electing the CCID judge.  Defendants do not dispute that the offensive meaning of Rep. Lamar's "best and brightest" comment was clear to Black lawyers and judges in Hinds County. Dkt. 57-1, ¶ 18.  Nor do Defendants address the Conference Committee's closing its meetings to the public in violation of the Joint Rules of the Senate and House.  Defendants say the final bill was handed to Rep. Banks "before the deadline" (Dkt. 122 at 25), omitting that it was mere "minutes before" the deadline.  Dkt. 12-2 at 153.

---

[1] The Court need not shut its eyes to Mississippi's shameful history of weaponizing the criminal justice system for racist ends (Dkt. 111 at 16) and undermining Black Mississippians' political power (*id.* at 19; Dkt. 119 at 10-14).  As the Supreme Court recently confirmed in *Allen v. Milligan*, 599 U.S. 1, 22 (2023), an "extensive history of repugnant racial and voting-related discrimination" dating back at least to the 1960s is relevant in present-day discrimination cases.

**C.    The appointment provisions fail any level of scrutiny.**

Defendants do not address strict scrutiny and misapply rational basis review.  Dkt. 122 at

13-15.  This Court can assume that there are rational (or even compelling) reasons for creating

the CCID Inferior Court, but Defendants identified no rational, non-discriminatory reason for

departing from the traditional manner of selecting prosecutors and judges.  *See* Dkt. 119 at 26-

31.  Nor are the appointments narrowly tailored to a compelling interest.  *See* Dkt. 111 at 19-20.

**III.    Defendants Distort the Law and Facts of Irreparable Harm.**

On the law, Defendants ignore the well-settled principle that "[w]hen an alleged

deprivation of a constitutional right is involved, most courts hold that no further showing of

irreparable injury is necessary," so "there is a presumption of irreparable harm." *Church at*

*Jackson v. Hinds County*, 2021 WL 4344886, at *6 (S.D. Miss. Sept. 23, 2021) (Wingate, J.); *see*

Dkt. 111 at 20-21; Dkt. 119 at 31.  On the facts, Defendants misrepresent the record in asserting

that Plaintiffs "manufactur[ed] an 'emergency.'"  Dkt. 122 at 30.  Defendants refused to provide

discovery and forced Plaintiffs to move for expedited discovery to support their preliminary

injunction motion, Dkt. 91; that discovery motion was fully briefed by September 8, 2023 and

awaits decision.  Plaintiffs have also awaited the Court's final order on whether Defendant

Randolph enjoys judicial immunity as to the § 4 appointment, and a ruling on their motion for

leave to amend the complaint to add defendants who could be sued in Defendant Randolph's

stead.  Indeed, Defendant Randolph, who has been unsparing in his criticism of Plaintiffs,

concedes there are "a number of matters that, in all fairness, should be decided prior to the

Plaintiffs' Motion for Preliminary Injunction."  Dkt. 120 at 7.  Faced with the impending January

1, 2024, date for the CCID appointments, Plaintiffs filed their motion in time to accommodate

the Court's and opposing counsel's schedules in view of the Christmas holidays.

## IV.   Defendants Do Not Rebut Plaintiffs' Equities and Public Interest Showing.

Defendants again cannot dispute that, as a matter of law, the equities and the public interest always favor prevention of constitutional violations.  *See* Dkt. 111 at 21; Dkt. 119 at 32. Moreover, if the Court strikes down the appointments provisions, the Legislature can easily amend § 4 and § 5 to conform to the selection process that prevails in all other jurisdictions under existing law, *see* Miss. Code § 21-23-3, resulting in only a short delay in achieving the asserted public safety and criminal justice goals of those sections.  The ease with which the offending provisions can be fixed adds to the public interest in favor of enjoining them.

## CONCLUSION

Because Plaintiffs will suffer injuries as voters and residents even if they never come in contact with the CCID Inferior Court, the Court should preliminarily enjoin the issuance and/or acceptance of appointments for the court's prosecutors and judge, as described in the Motion.

Respectfully submitted this 14th day of December, 2023.

*/s/ Mark H. Lynch*
Eric H. Holder, Jr.,* DC Bar # 303115
Megan A. Crowley,* DC Bar # 1049027
Gary S. Guzy,* DC Bar # 375977
Mark H. Lynch,* DC Bar # 193110
Brenden J. Cline,* DC Bar # 1021317
David Leapheart,* DC Bar # 1032122
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-6000
Fax: (202) 662-6291
eholder@cov.com
mcrowley@cov.com
gguzy@cov.com
mlynch@cov.com
bcline@cov.com
dleapheart@cov.com

*Counsel for NAACP*

*/s/ Carroll Rhodes*
Carroll Rhodes, MS Bar # 5314
**LAW OFFICES OF CARROLL RHODES**
POST OFFICE BOX 588
HAZLEHURST, MS 39083
Telephone: (601) 894-4323
Fax: (601) 894-1464
crhode@bellsouth.net

Joe R. Schottenfeld,* DC Bar # 1735796
**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE**
4805 Mt. Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
Fax: (410) 358-9350
jschottenfeld@naacpnet.org

*Counsel for All Plaintiffs*

*\*Pro Hac Vice*

10