# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**NATIONAL ASSOCIATION FOR THE**
**ADVANCEMENT OF COLORED PEOPLE, ET AL.**                    **PLAINTIFFS**

**VS.**                                     **CASE NO. 3:23-cv-00272-HTW-LGI**

**TATE REEVES, in his official capacity**
**As Governor of the State of Mississippi, ET AL.**          **DEFENDANTS**

## STATE DEFENDANTS' RESPONSE IN OPPOSITION TO STATEMENT OF INTEREST OF THE UNITED STATES [DKT. #119]

### INTRODUCTION

The Court should refuse to consider the so-called "Statement of Interest" [Dkt. #119] filed by the United States, a non-party, because it is substantively and procedurally defective. It fails to comport with governing federal law, presents improper amicus arguments, improperly presumes party status, and is prejudicially untimely. Even if the Court considers the United States' aforementioned filing, it should be disregarded because it fails to articulate any valid basis for a preliminary injunction. For these reasons and those set forth herein, the State Defendants ("Defendants") oppose the United States' "Statement of Interest."

### ARGUMENT

**I. THE COURT SHOULD REFUSE TO CONSIDER THE UNITED STATES' "STATEMENT OF INTEREST" BECAUSE IT IS SUBSTANTIVELY AND PROCEDURALLY DEFECTIVE.**

The United States' "Statement of Interest" is substantively and procedurally defective because it fails to comport with governing federal law, presents improper amicus arguments, improperly presumes party status, and is prejudicially untimely.

1

First, the "Statement of Interest" fails to comport with federal law. The United States filed its "Statement of Interest" pursuant to 28 U.S.C. § 517. Dkt. #119 at 1. That statute authorizes the U.S. Attorney General to send "any officer of the Department of Justice . . . to any State or district in the United States *to attend to the interests of the United States* in a suit pending in a court of the United States." 28 U.S.C. § 517 (emphasis added). Proper statements of interest are a "means of communication from the executive branch to the judicial branch giving notice that the litigation adversely impacts upon the . . . interests of the United States so that the Court may take that circumstance into account if it becomes relevant to any legal arguments advanced by" the parties. *See Creedle v. Gimenez*, Case No. 17-22477-Civ-WILLIAMS/TORRES, 2017 WL 5159602, at *2 (S.D. Fla. Nov. 7, 2017). *See also Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 291 (4th Cir. 2010) (Michael, J., dissenting) ("A statement of interest . . . is designed to explain to a court the interests of the United States in litigation between private parties."). Nowhere in the United States' 33-page "Statement of Interest" does it articulate what "interests of the United States" the Department of Justice is purportedly "attend[ing] to" by filing a "Statement of Interest" in this litigation. This defect is amplified here, where the United States has no independent cause of action against the State of Mississippi or its officials in connection with H.B. 1020. *See* Dkt #74 at 12-17. For this reason alone, the United States' "Statement of Interest" is improper and should be disregarded in its entirety.

Second, the "Statement of Interest" presents improper amicus arguments. "Statements of interest usually function as amici briefs." *United States ex rel. Kuriyan v. HCSC Ins. Servs. Co.*, Civ No. 16-1148 JAP/KK, 2021 WL 5238332, at *1 (D.N.M. Jan. 29, 2021). "But amici briefs are not meant to advance or expand arguments not presented by the parties. [Citations omitted.] Nor are amici briefs meant to introduce new arguments." *Id.* Relatedly, where the United States'

statement of interest "does not advance a legal interest [of the United States] but merely expands on [a party's] arguments," it should be disregarded. *See id.* Here, the United States' "Statement of Interest" does not advance or even identify any legal interest of the United States. Rather, it expands arguments presented by Plaintiffs and introduces a new argument not asserted by Plaintiffs, *viz.*, that "discrimination against those residing only in the City of Jackson creates a functional classification between Jacksonians and other Mississippians and therefore it must 'rationally further a legitimate state interest.'" Dkt. #119 at 28. For this additional reason, the Court should disregard the United States' "Statement of Interest."

Third, by seeking to present new arguments—and new evidence, see *infra*—the United States is improperly presuming party status. The United States should not be afforded the rights of a party without proving that intervention is proper. To date, this Court has declined to grant the United States' pending motion to intervene [Dkt. #69]. Defendants adopt and incorporate herein by reference the arguments and authorities set forth in their response in opposition to the United States' motion to intervene [Dkt. #73, #74]. Unless and until this Court authorizes intervention, the United States should not be afforded actual or presumptive party status.

Finally, the "Statement of Interest" is prejudicially untimely because it seeks to offer new arguments and evidence after months of active litigation and only 14 days prior to the December 19, 2023, hearing on Plaintiffs' motion for preliminary injunction. This action has been pending since April 21, 2023. Dkt. #1. Despite a multitude of filings and numerous hearings occurring over the last eight months, the United States waited over three weeks after Plaintiffs filed their pending motion for preliminary injunction [Dkt. #110]—and just two weeks before the evidentiary hearing on Plaintiffs' motion—to file its "Statement of Interest." In addition to the prejudice inherent in confronting novel arguments at the eleventh hour, Defendants are unfairly prejudiced

by the late-filed "Declaration of Jonathan D. Brooks" that accompanied the United States' "Statement of Interest." *See* Dkt. #119-1.  Mr. Brooks purports to be a geographer employed by the Civil Rights Division of the U.S. Department of Justice.  Dkt. #119-1 at 2, ¶ 2.  Attached to his declaration were several maps that he claims to have prepared using Census data and "mapping software." *See id.* at 3, ¶ 9.  As a practical matter at this late date, Defendants have no ability to validate or rebut this newly-submitted technical "evidence" in advance of the December 19 motion hearing.  Courts have refused to consider untimely "statements of interest" when, as here, equitable factors favored disregarding the United States' dilatory submissions.  *See, e.g., Fair Housing Ctr. of Cent. Indiana, Inc. v. Rainbow Realty Group, Inc.*, No. 1:17-cv-01782-JMS-TAB, 2022 WL 6158365, at *4 (S.D. Ind. Oct. 7, 2022); *LSP Transmission Holdings, LLC v. Lange*, 329 F. Supp. 3d 695, 703-04 (D. Minn. 2018).  This Court should do the same.

Conversely, because the United States does not contend that Plaintiffs' counsel has "inadequately argued the issues" presented in this case, it can show no prejudice to the United States in the Court's refusal to consider its "Statement of Interest," which "is neither timely nor useful, nor otherwise necessary to the administration of justice."  *See U.S. ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 928 (S.D. Tex. 2007).  For all these reasons, the Court should refuse to consider the United States' "Statement of Interest" or the exhibit attached thereto.

**II. ALTERNATIVELY, THE COURT SHOULD DISREGARD THE UNITED STATES' "STATEMENT OF INTEREST" BECAUSE IT FAILS TO ARTICULATE A VALID BASIS FOR A PRELIMINARY INJUNCTION.**

Most of the United States' "Statement of Interest" simply repackages Plaintiffs' arguments, which Defendants have shown to be meritless.  The United States does, however, posit the new argument—not raised by Plaintiffs—that H.B. 1020's alleged "discrimination against those residing only in the City of Jackson creates a functional classification between Jacksonians and

4

other Mississippians and therefore it must 'rationally further a legitimate state interest.'" Dkt. #119 at 28.  This argument fails for two reasons.

First, contrary to the United States' assertions, Jackson is not "in all relevant respects alike," *id.* at 27 (quotation marks omitted), to any other municipality in Mississippi.  For all the many reasons set forth in Defendants' response to Plaintiffs' motion for preliminary injunction— reasons having nothing to do with race—Jackson is <u>not</u> similarly situated to any other city or town in Mississippi.  *See* Dkt. #122 at 17-18.  That is a fact that Plaintiffs and the United States repeatedly ignore but do not and cannot refute.

Second, the challenged CCID Court provisions are rationally related to multiple legitimate state interests, for example:  ensuring that the expanded role and geographic jurisdiction of the Capitol Police force are concurrently paired with a complementary judicial apparatus to efficiently process felony arrests and adjudicate misdemeanors; ensuring that initial processing of an additional 600+ felony cases per year generated by the expanded Capitol Police force are not added to the existing backlog of criminal cases pending in the Hinds County court system; increasing the ease and speed with which Jackson citizens can complete the necessary witness affidavit paperwork required for the prosecution of certain crimes not witnessed by the police; and providing Capitol Police with an additional needed judicial vehicle for obtaining search warrants necessary to investigate crimes—warrants that some Hinds County judges categorically refuse to sign for Capitol Police officers under any circumstances.  *See id.* at 13-15.  All of this is part and parcel of an effort to reduce crime, increase public safety, and thereby prevent further and permanent erosion of Jackson's tax base in the heart of the city's economic engine—the CCID.

In support of its argument on this point, the United States cites *City of Greensboro v. Guilford County Bd. of Elections*, 120 F. Supp. 3d 479, 487 (M.D.N.C. 2015).  But *City of*

*Greensboro* is distinguishable and avails the United States nothing. In that case, the North Carolina General Assembly enacted legislation that fundamentally "restructure[d] both Greensboro city elections and the form of Greensboro city government," going so far as "prohibit[ing] the City of Greensboro and its voters from making changes to the form or structure of city government." *See City of Greensboro*, 120 F. Supp. 3d at 482, 485. The challenged legislation in *City of Greensboro* shut out "voters from exercising local control over their form of government, either through the City Council or through the voters by referendum, while giving that right to all other municipalities in the State." *See id.* at 486-87. And the State of North Carolina "offered no state interest that is protected or promoted by excluding Greensboro and its voters from rights given to other municipal voters." *See id.* at 488.

Unlike *City of Greensboro*, Plaintiffs' right to vote is not impaired or implicated <u>at all</u> in the case at bar. Sections 4 and 5 of the challenged law do not alter the manner in which any existing municipal judge or prosecutor is selected. Every municipal and county court facility and office in Jackson and Hinds County remains intact and untouched by the challenged law. Furthermore, unlike the State in *City of Greensboro*, Defendants here have established multiple rational bases related to legitimate State interests of public safety and economic preservation in Mississippi's capital city. The United States' reliance on *City of Greensboro* is accordingly misplaced.

As Defendants have noted previously, under the disparate-impact reasoning espoused by Plaintiffs and the United States, every legislative action ever taken with regard to Jackson alone would—given the city's racial demographics—by definition have a discriminatory effect. That is not a legally sound predicate upon which to establish discriminatory effect, nor does it prove invidious discrimination. *See* Dkt. #122 at 18.

6

The United States further attempts to expand on Plaintiffs' "local control" theme. But these arguments fail for the same reasons that Plaintiffs arguments do, namely: the challenged law does not eliminate a single elected judgeship or prosecutor's office in Jackson or Hinds County; local citizens will in fact retain electoral control over the decisions of the CCID Court judge and prosecutors, there being a direct appeal of right by trial de novo to the Hinds County Court, and ultimately to the Hinds County Circuit Court—the latter court having "controlling authority via the appellate process," *Saunders v. State*, 371 So. 3d 604, 616 (Miss. 2023); and the Hinds County District Attorney "shall be authorized to prosecute cases in the CCID inferior court," H.B. 1020, § 5(2).

It bears noting that the CCID Court is an *additional* court—not a *replacement* court. That is, the challenged law does not carve out an area of Jackson from control by its municipal courts and/or city leaders. Rather, the CCID Court will have concurrent jurisdiction with local and county courts. The United States does not dispute this point. *See* Dkt. #119 at 2 (acknowledging that the CCID Court will "serve concurrently with the Jackson Municipal Court within the CCID's boundaries").

As a final point in response to the United States' filing, Defendants submit that the State of Mississippi has both the authority and the duty to address crime problems in Jackson, the State's capital city—all of which lies within the State's jurisdiction. For the United States to claim otherwise would eviscerate any right the United States *itself* may have to address problems in Mississippi. Certainly, the United States has never taken the position that its own crime-fighting efforts in Jackson somehow stripped Jackson's citizens of "local control." To the contrary, the United States heralds such efforts when federal agencies are involved. *See, e.g.,* Press Release: U.S. Attorney's Office, Law Enforcement Partners, and Community Leaders Introduce PROJECT

7

EJECT to Combat Violent Crime in City of Jackson (Ex. "A"). For all these reasons, the United States' arguments on "local control" are unavailing.

The remaining arguments set forth in the United States' "Statement of Interest" have been addressed in detail in Defendants' response in opposition to Plaintiffs' motion for preliminary injunction. *See* Dkt. #122. Defendants accordingly adopt and incorporate their aforementioned oppositional response as if fully and completely set forth herein.

## CONCLUSION

For the reasons set forth herein, the Court should refuse to consider or, alternatively, disregard the United States' improper and meritless "Statement of Interest" and deny Plaintiffs' motion for preliminary injunction.

THIS the 15th day of December, 2023.

    Respectfully submitted,

    SEAN TINDELL, in his official capacity as Commissioner of the Mississippi Department of Public Safety; BO LUCKEY, in his official capacity as Chief of the Mississippi Department of Public Safety Office of Capitol Police; and LYNN FITCH, in her official capacity as Attorney General of the State of Mississippi, DEFENDANTS

    By:    LYNN FITCH, ATTORNEY GENERAL FOR THE STATE OF MISSISSIPPI

    By:    s/Rex M. Shannon III
             REX M. SHANNON III (MSB #102974)
             Special Assistant Attorney General

REX M. SHANNON III (MSB #102974)
GERALD L. KUCIA (MSB #8716)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi  39205-0220

Tel.: (601) 359-4184
Fax: (601) 359-2003
rex.shannon@ago.ms.gov
gerald.kucia@ago.ms.gov

ATTORNEYS FOR DEFENDANTS SEAN TINDELL,
in his official capacity as Commissioner of the Mississippi
Department of Public Safety; BO LUCKEY, in his
official capacity as Chief of the Mississippi Department
of Public Safety Office of Capitol Police; and LYNN FITCH,
in her official capacity as Attorney General of the State of Mississippi

## CERTIFICATE OF SERVICE

    I, Rex M. Shannon III, Special Assistant Attorney General and one of the attorneys for the above-named defendants, do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF filing system, which sent notification of such filing to all counsel of record.

    THIS the 15th day of December, 2023.

                                                                            s/Rex M. Shannon III
                                                                            REX M. SHANNON III