IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; JACKSON CITY BRANCH OF THE NAACP; DERRICK JOHNSON; FRANK FIGGERS; CHARLES TAYLOR; MARKYEL PITTMAN; CHARLES JONES; and NSOMBI LAMBRIGHT-HAYNES** | **PLAINTIFFS** |
| vs. | CIVIL ACTION No.: 3:23-CV-272-HTW-LGI |
| **TATE REEVES, in his official capacity as Governor of the State of Mississippi; SEAN TINDELL, in his official capacity as Commissioner of Public Safety; BO LUCKEY, in his official capacity as Chief of Mississippi Department Public Office of Capitol Police; MICHAEL K. RANDOLPH, in his official Capacity as Chief Justice of the Mississippi Supreme Court; and LYNN FITCH, in her official capacity as Attorney General of the State of Mississippi** | **DEFENDANTS** |

**ORDER**

Before this court is the *Motion for Preliminary Injunction* [Docket no. 110], filed by the following Plaintiffs: The National Association for the Advancement of Colored People ("NAACP"); Mississippi State Conference of the NAACP; Jackson City Branch of the NAACP; and six individuals who allege to be citizens of Jackson, Mississippi --- Derrick Johnson; Frank Figgers; Charles Taylor; Markyel Pittman; Charles Jones; and Nsombi Lambright-Haynes.

Defendants herein are Tate Reeves, in his official capacity as Governor of the State of

1

Mississippi[1]; Sean Tindell, in his official capacity as Commissioner of Public Safety; Bo Luckey, in his official capacity as Chief of the Mississippi Department of Public Safety Office of Capitol Police; Hon. Michael K. Randolph, in his official capacity as Chief Justice of the Mississippi Supreme Court[2]; and Lynn Fitch, in her official capacity as Attorney General of the State of Mississippi.

By their motion for injunctive relief, Plaintiffs seek judicial restraint on certain directives of Mississippi House Bill 1020 ("H.B. 1020"), set to become law in Mississippi on January 1, 2024. Specifically, Plaintiffs, aggrieved over H.B. 1020's proposed creation of a Capitol Complex Improvement District Court ("CCID Court"), with two concomitant prosecutors[3] and a judge with misdemeanor jurisdiction[4], ask this court, in this lawsuit attacking this entire scenario, to enjoin the ingrafting of this allegedly variant racially discriminatory schematic upon Jackson, Mississippi, with its majority Black population.

The Defendants, antagonistic to Plaintiffs' urging, and resistant to their charges of racial animus imbedded in H.B. 1020, challenge Plaintiffs' reasoning and conclusions, stating that: (1) Plaintiffs lack standing to obtain the injunctive relief that they demand; (2) Plaintiffs' claim fails on the merits; and (3) Plaintiffs fail to satisfy all remaining preliminary injunction requirements.

On the issue of standing, Defendants contend that none of the named Plaintiffs satisfies the jurisprudential requirements for such, a stance which requires this court to focus its "standing gaze" upon each of the Plaintiffs herein.

---

[1] The Plaintiffs voluntarily dismissed Defendant Tate Reeves from this lawsuit on May 31, 2023 [Docket no. 44].

[2] On June 1, 2023, this court held that Defendant Chief Justice Michael K. Randolph must be dismissed from this lawsuit under the Doctrine of Judicial Immunity [Docket no. 45]. This court, thereafter, filed an Order [Docket no. 126], effectively dismissing the Chief Justice, with prejudice, from this case.

[3] H.B. 1020 § 5 requires the Mississippi Attorney General to appoint two prosecuting attorneys, on January 1, 2024, to prosecute criminal actions in the CCID inferior court. H.B. 1020 §5(1).

[4] H.B. 1020 §4 requires the Chief Justice of the Mississippi Supreme Court to appoint, on January 1, 2024, an attorney who resides in the State of Mississippi as the CCID inferior court judge. H.B. 1020 §4(2).

## I.  STANDING

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases' and 'Controversies." *Soniat v. Texas Real Est. Comm'n,* 721 F. App'x 398, 399 (5th Cir. 2018) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014)). Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. *Id.* citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). To maintain any lawsuit in federal court, Plaintiffs must establish Article III standing by showing an injury in fact, traceability, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Plaintiffs, however, bear a heavier burden where they seek prospective injunctive relief. When prospective relief is sought, to establish standing, Plaintiffs must show an injury, traceable to the defendant's conduct, that is "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quotation marks omitted). When plaintiffs seek relief aimed at some future conduct, the alleged "threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury are not sufficient." *Id.* (quotation marks omitted; emphasis in original). See also *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (standing for prospective relief requires "a real and immediate threat" of future injury); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct.") (quotation marks omitted); *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019) ("For a threatened future injury to satisfy the imminence requirement, there must be at least a substantial risk that the injury will occur.") (quotation marks omitted); *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285-86 (5th Cir. 1992) (en banc) (applying *Lyons* to reject individual

3

juror and organization's challenge to a judge's jury instructions, e.g., because plaintiffs could not show real and immediate threat of appearing before the judge).

Plaintiffs have mentioned their arguments on standing in their injunctive motion, on pages 7, 8, footnote 5, where they state:

> Plaintiffs…easily satisfy their burden of showing that "standing is likely to obtain in the case at hand." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020). Plaintiffs include Black voters who regularly vote in Jackson and Hinds County elections, who live in Jackson and the CCID, who are threatened with prosecution and conviction by the CCID Inferior Court prosecutors and judge, and who stand to lose the benefits they enjoyed from having locally accountable prosecutors and judges. See Decl. of Markyel Pittman ("Pittman Decl."), Ex. 1 ¶¶ 1-2, 4-7, 9-10; Figgers Decl., Ex. 2 ¶¶ 1-2, 5-7, 9-10; Decl. of Charles Taylor ("Taylor Decl."), Ex. 3 ¶¶ 1-2, 7, 9, 13-14; see also Decl. of Jed Handelsman Shugerman ("Shugerman Decl."), Dkt. 40-4 ¶¶ 6, 11, 15 (describing benefits of local control). For substantially the same reasons discussed previously (Dkt. 41 at 5-9), unless Defendant Fitch is enjoined from appointing CCID Inferior Court prosecutors under H.B. 1020 § 5, and Defendant Randolph is enjoined from appointing the CCID Inferior Court judge under § 4 (or the substitute defendants proposed in Plaintiffs' motion for leave to amend the complaint are enjoined from taking steps to effectuate the appointment), Plaintiffs will imminently suffer injuries to their rights as voters and interests as residents.

[Docket no. 111 at pp. 7-8, n. 5].

Plaintiffs also mention it in passing in their Complaint, where they assert that "as…resident[s] of Jackson, [the individual Plaintiffs are] now subject to policing by Capitol Police and the jurisdiction of the new, unelected prosecutors and judges in Jackson." [Docket no. 1, ¶¶16-20]. The organizational Plaintiffs assert that this harm is directed at their members, thus inferring that the organizations also have standing to bring this lawsuit. The organizational Defendants further state that they are also bringing this lawsuit on their own behalf under the theory that their members will indubitably require training to navigate the new laws, which will divert "significant funds away from the ordinary work of the NAACP, the Mississippi NAACP, and the Jackson NAACP and will limit their advocacy." [Docket no. 1, ¶24].

Then, in oral argument, captured in the transcript of December 19, 2023 [Docket no. 133], Plaintiffs stated that "the standing test at this stage for a preliminary injunction is just that standing

is likely to obtain in the case, not that it is certain or that it has been definitively proven, just that it is likely to obtain. We haven't had discovery yet in this case. We are still in the early stages of it, so we believe that we have made more than an adequate showing that standing is likely to obtain" [Docket no. 133, p. 224:16-23]. Plaintiffs, during this oral argument, argued that they have identified three independent types of injury: "The first being that the HB. 1020 change of the system of local government here deprives plaintiffs of the benefit of having the system of local government and local governance enjoined by people across the state in all municipalities." *Id*. at p. 25:3-5. Second, argued the Plaintiffs, the new law will "dilute the voting power of plaintiffs and other voters in Jackson" *Id*. at p. 26:19-20. Lastly, Plaintiffs asserted that the law "stigmatizes plaintiffs and other Jackson voters by deeming them as unfit to have a say in their system of local governance". *Id*. at p. 27:12-14.

Defendants, nevertheless, yet maintain their opposition to Plaintiffs' arguments. Defendants still contend that Plaintiffs' entire lawsuit is built on erroneous "standing foundation", because not one of the named Plaintiffs can show an applicable factual basis for such.

## II. THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED [5] PEOPLE ("NAACP")

Plaintiffs have concluded that they have no factual or legal argument to support standing for any of the three named NAACP entities. During oral argument on December 19, 2023, Attorney Brenden Cline for the Plaintiffs admitted the following in answering this court's questions about any standing for the NAACP.

> THE COURT: What would give the NAACP standing here?
>
> MR. CLINE: What would give the NAACP standing?
>
> THE COURT: Yes.

---

[5] When this civil rights organization decided upon a name, the State of Mississippi, and various other States, statutorily distinguished the races into two categories: Whites and all others being "Colored".

5

> MR. CLINE: So it is any of these three bases, that you are changing the local system the way that the criminal justice system operates uniquely to the disadvantage of people who live in Jackson –
>
> THE COURT: How does that specifically affect the NAACP as an organization?
>
> MR. CLINE: Well, we are not claiming organizational standing here. We have the NAACP as a plaintiff. For purposes of this preliminary injunction motion, you cited to the individual plaintiffs who have attached declarations to our motion.
>
> THE COURT: So then -- excuse me. So then you are saying that the NAACP as an organization does not have standing?
>
> MR. CLINE: That's not our basis for standing here.
>
> THE COURT: So is that correct what I just said, that you are not claiming that the NAACP has standing?
>
> MR. CLINE: That is correct. The NAACP and individual plaintiffs are plaintiffs in this action, and for purposes of this motion, we are only relying on the individual plaintiffs.
>
> THE COURT: But now this case is styled National Association for the Advancement of Colored People, et al. So then you are saying that for this matter of standing, that the NAACP does not have standing?
>
> MR. CLINE: We don't hang our hat on the NAACP having standing. It's just about the individual plaintiffs for purposes of this motion.

[Docket no. 133, pp. 92-93].

Even if this court were to assume the role of a maverick and ignore Attorney Cline's admission, this court would still find itself at the same place as described by Attorney Cline. Associational standing requires an association to show that its members would independently meet Article III standing requirements. *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006). Organizational standing requires an organization to establish standing in its own name by meeting the same standing test that applies to individuals. *Tenth Street Residential Ass'n v. City of Dallas, Tex.*, 968 F.3d 492, 500 (5th Cir. 2020). The NAACP Plaintiffs fail to meet either requirement. Plaintiffs' Complaint sets out no standing facts describing the NAACP, nor does Plaintiffs' motion for injunctive relief on pages 7 and 8, which purport to speak about standing,

6

include any arguments on behalf of the NAACP's standing. Finally, the demands of caselaw here are not satisfied for NAACP standing on the facts herein.

### III. INDIVIDUAL PLAINTIFFS

This court next turns its gaze upon each of the individual Plaintiffs in the court's quest to answer the question of standing. This lawsuit, remember, features the three NAACP entities and six individuals. The following information concerning the individual Plaintiffs is extracted from the Plaintiffs' original Complaint [Docket no. 1].

1. Plaintiff Derrick Johnson is a resident of and registered voter in Jackson, Mississippi. Mr. Johnson is the President and CEO of the NAACP.

2. Plaintiff Frank Figgers is a resident of and registered voter in Jackson, Mississippi. Mr. Figgers is a member of the NAACP and allegedly has resided in Jackson for the entirety of his 73 years of life.

3. Plaintiff Charles Taylor is a resident of and registered voter in Jackson, Mississippi. Mr. Taylor is the Executive Director of the Mississippi NAACP.

4. Plaintiff Markyel Pittman is a resident of and registered voter in Jackson, Mississippi. Mr. Pittman is the president of the Mississippi State Youth and College Chapter of the NAACP and president of the Jackson State University College Chapter of the NAACP.

5. Plaintiff Charles Jones is a resident of and registered voter in Jackson, Mississippi. Mr. Jones is a member of the NAACP and previously has served on the Jackson Branch NAACP's executive committee.

6. Plaintiffs Nsombi Lambright-Haynes is a resident of and registered voter in Jackson, Mississippi. She is the president of the Jackson Branch of the NAACP.

This court first notes that although each one of the Plaintiffs has been named as a member or officer of the NAACP, this designation is of no moment in the discussion regarding standing. As

discussed above, Plaintiffs' attorney already has conceded that the presence of the NAACP does not provide any standing resolution; so now we investigate whether any circumstances of any individual Plaintiff manifest standing.

The Plaintiffs have submitted certain declarations on the topic. These declarations from Markyel Pittman, Frank Figgers, and Charles Taylor [Docket nos. 110-1 through 110-3] are quite similar. All of these declarations, for instance, point out the following:

1. Each declarant lives in Jackson, Mississippi.

2. Each declarant is a registered voter in Mississippi.

3. Each declarant is a member of the NAACP, with two being officers with the NAACP- Charles Taylor serves as Executive Director of the Mississippi State Conference of the NAACP, and Markyel Pittman is the State President of the NAACP's Mississippi Youth and College Division for the Jackson State Branch Unit 5843.

4. Charles Taylor specifically points out that he is an African American. While the others do not emphasize this identity, this court knows that Frank Figgers is also African American and has good reason to conclude that the other two declarants are, also.

This court is not persuaded that any of the four factors above support standing to bring this particular motion for injunctive relief., either individually, or collectively. This court is persuaded that neither the race and residence of the individual Plaintiffs; nor their status as registered voters; nor their membership in the NAACP has any bearing whatsoever on the question of standing in this litigation.

The jurisprudence on standing marches to the tune of a stable definition which courts have sung and played no matter the factual terrain or instrument of analysis. Some of these refrains bear repeating here.

As discussed above, "to establish standing, a plaintiff must show: (1) it has suffered or imminently will suffer, a concrete and particularized injury-in -fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." U.S.C.A. Con. Art. 3, §2, cl. 1; *Hous. Chronicle Publ'g Co. v. City of League City*, 48 F.3d 613, 617 (5th Cir. 2007).

To satisfy the injury-in-fact requirement for standing, Plaintiffs must allege an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical". *Lujan*, 504 U.S., at 560 (internal quotes omitted). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Ibid.,* n. 1. A "concrete" injury, on the other hand, must be "*de facto* "; that is, it must actually exist. *Spokeo, supra*, 578 U.S. 330 at 340 (referencing Black's Law Dictionary 479 (9th ed. 2009)).

Since these three affidavits all begin with the above four notes, the affidavit writers must have thought that these factors are significant to the question at hand. This court does not.

Plaintiffs already have admitted that the NAACP has no cogent argument in favor of standing; accordingly, whether one is a member of that organization, or even holds office in the organization is unimportant to the question of standing.

The individual Plaintiffs in the case *sub judice*, residents of and registered voters in Jackson, Mississippi, do not claim any specific anticipated future status as a party to any CCID Court proceeding; instead, they allege generally that they "are threatened with prosecution and conviction" by the CCID Court. [Docket no. 111 at 8, n.5]. None of the Plaintiffs has alleged that he or she is in actual or imminent danger of experiencing any **concrete and particularized** injury resulting from the establishment of the CCID Court or the challenged appointment of a judge or prosecutors for that court.

9

This court pauses here to underscore certain critical facts:

1. The CCID Court has not gone into operation nor construction.

2. No Plaintiff, nor anyone else has appeared before that court.

3. It follows that no one has been sentenced by that court.

4. Certain of the Plaintiffs contend that the presently-planned appointment scenario would affect "their ability to oversee those judges through [their] local elected officials". *See* Declaration of Frank Figgers, p. 1. Yet, Mr. Figgers who essentially complains that the present scenario would suffocate and extinguish his "right" to complain effectively to local officials about the operation of the CCID Court, has failed to show that he effectively complained to any local officials in the past. In fact, none of the Plaintiffs shows that he or she has effectively complained to the local officials in the past, or even that local elected officials have been open to listening to his or her complaints. Further, had the local officials been so obliging, this court is mystified why Jackson's system of criminal justice is in the deplorable shape it is in, with an overcrowded docket requiring defendants to jettison any notion of a speedy disposition.

5. The declarations of the individual parties are filled with speculated injuries, as shown below by excerpts from those declarations.

    a. <u>Frank Figgers</u>-

       The appointed judge will not be "well integrated into the community"; "they will not attend our churches and schools"; "[the] appointees may not be from Jackson and they will be unknown and unaccountable to residents"; defendants in the CCID Court will probably be exposed to increased criminal penalties and harsher sentences; "Jackson residents will be forced to appear in court in front of judges and prosecutors who do not understand our struggles and who are beholden to

10

politicians who are not elected by us and who have no need to account to us."

    b. <u>Markyel Pittman</u>-

"I can now be prosecuted by prosecutors designated by the Attorney General in cases heard by a municipal judge appointed by the Chief Justice"; "I believe that this is the purpose of H.B.1020: To deprive residents of Jacksons, like me, from being able to exercise control over or even influence the systems of law enforcement and the administration of justice to which we are subject"; "I fear the consequences that this purposeful denial of our political control will allow"; "I have heard from a number of friends who have had troubling run-ins with the Capitol Police"[6].

    c. <u>Charles Taylor</u>-

"I do not believe either the [Chief Justice or State Attorney General] will appoint judges or prosecutors whose political and law enforcement beliefs align with my own"; "I firmly believe that the circumstances surrounding the passage of H.B. 1020 demonstrate the Mississippi Legislature's intent to take power from our Black-elected and Black-led institutions and provide control instead to White, State Officials…"

Finally, Plaintiffs allege that the challenged law imposes upon them a stigmatizing injury sufficient for standing. The United States Court of Appeals for the Fifth Circuit has held that "stigmatic injury accords a basis for standing only to those persons who are ***personally*** denied equal treatment by the challenged discriminatory conduct". *Moore v. Bryant*, 853 F.3d 245, 249 (5th Cir. 2017) (emphasis added) (internal citations and quotations omitted). "Being subject to a racial classificat6ion differs materially from having personally been denied equal treatment," and

---

[6] This court notes that Mr. Pittman's last statement is hearsay.

"racial classification alone" does not "amount[] to a showing of individualized harm." *Id*. Where the plaintiff fails to plead that he was "personally subject to discriminatory treatment," he "fails to plead injury" and lacks "stigmatic-injury" standing. *See Id*. Plaintiffs have failed to show that they will be personally subjected to some discriminatory treatment by the challenged appointment; therefore, Plaintiffs cannot establish standing via the theory of "stigmatic injury".

In this court's eye, Plaintiffs have failed adequately to plead injury-in fact-and therefore failed to establish standing altogether. *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) (en banc) (finding that "if any one of [the] three elements [required for standing] is absent, plaintiffs have no standing in federal court[.]"). This court, accordingly, need not address the merits and requirements concerning Plaintiffs' motion for injunctive relief. That motion **[Docket no. 110]**, therefore, is **DENIED**.

Seeking to salvage various claims, especially their claims against the Chief Justice, Plaintiffs filed a motion to amend their complaint **[Docket no. 80].** This court, unpersuaded by any arguments in favor of such, hereby **DENIES** that motion to amend.

**SO ORDERED this the 31st day of December, 2023.**

**/s/HENRY T. WINGATE**
**UNITED STATES DISTRICT COURT JUDGE**