**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR THE**<br>**ADVANCEMENT OF COLORED PEOPLE, ET AL.** | **PLAINTIFFS** |
| **VS.** | **CASE NO. 3:23-cv-00272-HTW-LGI** |
| **TATE REEVES, in his official capacity**<br>**As Governor of the State of Mississippi, ET AL.** | **DEFENDANTS** |

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF STATE DEFENDANTS'**
**MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

**INTRODUCTION**

Plaintiffs' ill-conceived attack on two critical public-safety laws, H.B. 1020 and S.B. 2343, should be dismissed for lack of subject-matter jurisdiction because (1) Count II of Plaintiffs' Complaint is moot; and (2) Plaintiffs lack standing to pursue Counts I, III, and IV of their Complaint. Consistent with this Court's prior rulings, as endorsed in a unanimous published Fifth Circuit opinion, this action should be dismissed in its entirety.

Plaintiffs assert only four counts in their Complaint. Taking those counts in the order litigated to date, Count II challenges certain judicial appointments to the Hinds County Circuit Court contemplated by § 1 of H.B. 1020. Count II is mooted by the Mississippi Supreme Court's September 21, 2023, holding that § 1 of H.B. 1020 is unconstitutional under state law. *Saunders v. State*, 371 So. 3d 604, 623 (Miss. 2023). Consistent with this Court's December 21, 2023, Order "dismiss[ing] as moot all judicial appointment claims and related matters brought by the Plaintiffs under H.B. 1020 § 1," Order, Dkt. #127 at 3—and to the extent that Order was at all ambiguous on the point—Count II should be expressly dismissed as moot.

Counts III and IV challenge the appointment of a judge and the designation of two prosecutors, respectively, for the Capitol Complex Improvement District Court ("CCID Court") pursuant to §§ 4 and 5, respectively, of H.B. 1020. On December 31, 2023, this Court entered its Order finding that Plaintiffs lack standing to pursue these claims. Order, Dkt. #135. On January 4, 2024, a Fifth Circuit panel unanimously agreed that Plaintiffs lack standing to bring these claims. *See infra.* Consistent with these previous rulings of this Court and the Fifth Circuit, Counts III and IV should be dismissed for lack of standing.

Count I, Plaintiffs' only other claim, challenges the city-wide expansion of Capitol Police jurisdiction pursuant to S.B. 2343. Plaintiffs have no basis to seek relief—especially extraordinary injunctive relief—against the expansion of Capitol Police jurisdiction because they cannot establish that this law will ever harm them. None of the individual plaintiffs can show that he or she has experienced or will experience any real-world injury or harm as a result of the city-wide expansion of the Capitol Police jurisdiction, which took effect July 1, 2023. Nor have the NAACP plaintiffs shown that they or their members will suffer any actual injury from the expanded Capitol Police jurisdiction. Plaintiffs claim that expanding the Capitol Police jurisdiction is unlawful, but that does not establish their standing. They have not nor can they show that the city-wide expansion of the Capitol Police jurisdiction will harm *them* or affect *them* in any way that is different from how the law "affects" any other member of the public. For the same reasons that this Court and the Fifth Circuit rejected standing on Counts III and IV, Plaintiffs' failure to establish standing dooms their only remaining claim, and Count I should likewise be dismissed.

This Court denied Plaintiffs' motion to amend their Complaint, see Dkt. #135, and this case is ripe for dismissal. For these reasons and those set forth herein, Plaintiffs' Complaint should be

dismissed in its entirety for lack of subject-matter jurisdiction predicated on mootness and lack of standing.

## STATEMENT OF FACTS

**Factual Background.**  On April 21, 2023, H.B. 1020 and S.B. 2343 were signed into law. Dkt. #34-1 at 2193-2226; 2023 S.B. 2343 (Ex. 1).  H.B. 1020 "is aimed directly at the City of Jackson's 'crime cancer.'"  *Saunders v. State*, 371 So. 3d 604, 611 (Miss. 2023) (quoting this Court's Order herein, Dkt. #45 at 10).  S.B. 2343 is likewise directed at alleviating Jackson's crime problem, which this Court has characterized as "sweltering, undisputed and suffocating."  Dkt. #45 at 9.  *See also* S.B. 2343 (Ex. 1).

Section 1 of H.B. 1020 contemplated the appointment—by the Chief Justice of the Mississippi Supreme Court—of four temporary special circuit judges to the Hinds County Circuit Court to assist in alleviating a backlog of criminal cases.  On September 21, 2023, the Mississippi Supreme Court declared § 1—and only § 1—of H.B. 1020 to be unconstitutional under the Mississippi Constitution.  *See Saunders*, 371 So. 3d at 623.

Section 4 of H.B. 1020 requires the establishment of the CCID Court as an inferior criminal court to serve the Capitol Complex Improvement District ("CCID").  H.B. 1020, § 4(1)(a).  By providing additional capacity to adjudicate misdemeanor offenses and handle preliminary felony proceedings, the CCID Court will ensure that the ongoing expansion of the Capitol Police force is paired with a concomitant enlargement of judicial resources in the CCID.  *See* Dkt. #121-2 at 2-4, ¶¶ 3-5, 9-11.  Section 4 requires the Chief Justice of the Mississippi Supreme Court to appoint to the CCID Court a judge having all qualifications required by law for municipal court judges.  *Id.* § 4(2).  Section 5 of H.B. 1020 requires the Attorney General to designate two attorneys to serve

as prosecuting attorneys for the CCID court.  *Id.* § 5(1).  Sections 4 and 5 of H.B. 1020 became effective January 1, 2024.

S.B. 2343 provides for the city-wide expansion of the jurisdiction of the Mississippi Department of Public Safety's ("DPS") Capitol Police force, giving Capitol Police concurrent jurisdiction with the City of Jackson and Hinds County for "the enforcement of all laws of the State of Mississippi within the boundaries of the City of Jackson, Mississippi."  *See* S.B. 2343, § 1 (Ex. 1).  S.B. 2343 became effective July 1, 2023.  *Id.* § 2.  As this Court has recognized, the Jackson Police Department "is crying for reinforcement."  Dkt. #45 at 9.  While the City of Jackson once "boasted a force of approximately 400 sworn police officers . . . [now] the situation is markedly different," with the City mustering "a police force of approximately 258 sworn officers, with hardly any applicants."  *Id.* at 9-10.  The expanded jurisdictional boundaries of the Capitol Police brings to bear a force of approximately 160 additional officers, with plans to increase that number to as many as 230 officers in the foreseeable future.  Dkt. #121-2 at 2, ¶ 4.  These increased law enforcement resources can only be viewed as a boon to combatting crime in the State's capital city that—as recently as 2021—was reported to have "the highest per capita murder rate in the nation."  Dkt. #45 at 9 (quotation marks omitted).

**Procedural Background.**  On April 21, 2023, six alleged residents of Jackson and three NAACP entities filed *Plaintiffs' Complaint for Declaratory and Injunctive Relief* against Mississippi Governor Tate Reeves, Mississippi Department of Public Safety Commissioner Sean Tindell, Chief of the Mississippi Department of Public Safety Office of the Capitol Police Bo Luckey, Chief Justice of the Mississippi Supreme Court Michael K. Randolph, and Mississippi Attorney General Lynn Fitch, in their official capacities.  Dkt. #1.  (Plaintiffs later voluntarily

dismissed their claims against Governor Reeves.  Dkt. #44.  This Court dismissed all claims against Chief Justice Randolph with prejudice on December 20, 2023.  Dkt. #126.)

Plaintiffs claim that certain provisions of H.B. 1020 and S.B. 2343 violate the Fourteenth Amendment's Equal Protection Clause.  *Id.* at 46-50, ¶¶ 131-49.  Specifically, they assert four—and only four—counts against the remaining defendants, Commissioner Sean Tindell, Chief Bo Luckey, and Attorney General Lynn Fitch (collectively "Defendants"), all of which are predicated on 42 U.S.C. § 1983.  **Count I** of Plaintiffs' Complaint challenges "the expansion of the Capitol Police" pursuant to the provisions of S.B. 2343, which took effect July 1, 2023.  Dkt. #1 at 13, ¶ 33.  *See also* 2023 S.B. 2343, § 2 (Ex. 1).  **Count II** challenges "the appointment of additional judges to the Hinds County Circuit Court" as contemplated by § 1 of H.B. 1020.  Dkt. #1 at 47, ¶ 139.  **Count III** challenges "the appointment of a judge to the CCID court" pursuant to § 4 of H.B. 1020.  *Id.* at 48, ¶ 144.  Finally, **Count IV** challenges "the appointment of prosecutors for the CCID Court" pursuant to § 5 of H.B. 1020.  *Id.* at 50, ¶ 149.  Plaintiffs seek declaratory and injunctive relief as to all four counts.  *Id.* at 50-51, ¶¶ A-J.

Following the Mississippi Supreme Court's ruling in *Saunders* invalidating § 1 of H.B. 1020, this Court found that "Plaintiffs no longer face any alleged threatened harm from prospective judicial appointments to the Hinds County Circuit Court pursuant to H.B. 1020."  Order, Dkt. #127 at 2-3.  Accordingly, this Court on December 21, 2023, "dismisse[d] as moot all judicial appointment claims and related matters brought by the Plaintiffs under H.B. 1020 § 1."  Order, Dkt. #127 at 3.

Following a hearing on Plaintiffs' motion for preliminary injunction regarding §§ 4 and 5 of H.B. 1020, this Court on December 31, 2023, entered its Order denying Plaintiffs' motion for a preliminary injunction to block the CCID Court appointment provisions of §§ 4 and 5 of H.B.

1020, finding that none of the plaintiffs has Article III standing to pursue those claims. Order, Dkt. #135. In the same Order, this Court denied Plaintiffs' motion to amend their Complaint. *Id.* In a published opinion dated January 4, 2024, a three-judge panel of the U.S. Court of Appeals for the Fifth Circuit unanimously denied Plaintiffs' motions for injunctive relief pending appeal, agreeing with this Court that Plaintiffs lack standing to pursue their claims under §§ 4 and 5 of H.B. 1020. *See Nat'l Ass'n for the Advancement of Colored People v. Tindell*, No. 23-60647, 2024 WL 47681 (5th Cir. Jan. 4, 2024) (*per curiam*). In that same opinion, the Fifth Circuit vacated the temporary administrative stay that it issued while considering Plaintiffs' request for injunctive relief. *See id.*

Plaintiffs have appealed this Court's interlocutory denial of their motion for preliminary injunction as to Counts III and IV. But this action is <u>not</u> presently stayed by any court and remains pending and subject to dismissal by this Court during the pendency of Plaintiffs' interlocutory appeal. *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 233 (5th Cir. 2009) ("a district court can proceed to resolve the merits of a case during the pendency of an interlocutory appeal from the grant or denial of a preliminary injunction") (citing *Ry. Labor Executives' Ass'n v. City of Galveston, Tex.*, 898 F.2d 481, 481 (5th Cir. 1990)). Defendants file the instant motion to dismiss for lack of subject-matter jurisdiction predicated on mootness and lack of standing.

## STANDARD FOR DISMISSAL

Motions to dismiss for mootness are jurisdictional and are properly brought pursuant to FRCP 12(b)(1). *See Deutsch v. Travis County Shoe Hosp., Inc.*, 721 Fed. Appx. 336, 339 (5th Cir. 2018). *See also Hutcherson v. JPMorgan Chase Bank, N.A.*, Civil Action No. 2:11-CV-154-KS-MTP, 2012 WL 37393, at *1 (S.D. Miss. Jan. 6, 2012); *Treadwell v. La. Dep't of Corr.*, Civil Action No. 11-2096, 2012 WL 1135816, at *1 (E.D. La. Mar. 12, 2012).

Subject-matter jurisdiction fails where the plaintiffs lack Article III standing. *See Stallworth v. Bryant*, 936 F.3d 224, 232 (5th Cir. 2019). Motions to dismiss for lack of Constitutional standing are accordingly jurisdictional and are brought pursuant to FRCP 12(b)(1). *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017). "[A] lack of subject matter jurisdiction may be raised at any time." *In re McCloy*, 296 F.3d 370, 373 (5th Cir. 2002). Where the defendants have previously filed an answer to the plaintiffs' complaint, a motion to dismiss for lack of subject-matter jurisdiction is technically brought pursuant to FRCP 12(h)(3). *Wittner v. Schwartz*, No. 3:19-CV-3-DMB-JMV, 2020 WL 853543, at *1 n.2 (N.D. Miss. Feb. 20, 2020). However, because the standards for FRCP 12(b)(1) and 12(h)(3) motions are identical, "Rule 12(b)(1) standards [nevertheless] control the motion's disposition." *Id.*

"In analyzing a motion to dismiss under Rule 12(b)(1) or 12(h)(3), the court must accept as true the allegations set forth in the complaint." *Shields v. Metro. Prop. & Cas. Ins. Co.*, Civil Action No. 1:19-CV-00222-GHD-RP, 2020 WL 7338065, at *2 (N.D. Miss. Dec. 14, 2020). "Where, as here, the movant mounts a 'facial attack' on jurisdiction based only on the allegations in the complaint, the court simply considers 'the sufficiency of the allegations in the complaint because they are presumed to be true.'" *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). *See also Kendricks v. Nissan N. Am. Corp.*, Civil Action No. 3:20-CV-597-DPJ-LGI, 2021 WL 753919, at *1 (S.D. Miss. Jan. 25, 2021) (same).

## ARGUMENT

For ease of reference, this memorandum of authorities will discuss the four counts in Plaintiffs' Complaint in the order in which they have been adjudicated to date in this case, beginning with Count II (Hinds County circuit judge appointments), followed by Counts III and

IV (CCID Court appointments), and finally Count I (city-wide expansion of Capitol Police jurisdiction).  For the reasons that follow, all four counts—and hence Plaintiffs' Complaint in its entirety—are ripe for dismissal for lack of subject-matter jurisdiction.

## I.   COUNT II (HINDS COUNTY CIRCUIT JUDGE APPOINTMENTS) SHOULD BE DISMISSED AS MOOT BECAUSE THIS COURT PREVIOUSLY DISMISSED ALL H.B. 1020 § 1-RELATED CLAIMS AS MOOTED BY THE MISSISSIPPI SUPREME COURT'S HOLDING IN *SAUNDERS V. STATE.*

Count II of Plaintiffs' Complaint seeks "to enjoin the appointment of additional judges to the Hinds County Circuit Court" as contemplated by § 1 of H.B. 1020.  Dkt. #1 at 47, ¶ 139.  Count II is rendered moot by the Mississippi Supreme Court's subsequent determination that § 1 of H.B. 1020 violates the Mississippi Constitution.

Mootness applies when, as a result of intervening circumstances, "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," rendering the court "no longer capable of providing meaningful relief to the plaintiff."  *Ermuraki v. Renaud*, 987 F.3d 384, 386 (5th Cir. 2021).  If a claim is moot, "it 'presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents.'"  *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 344 (5th Cir. 2013).  "[A]ny set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot."  *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013).

It is well settled that "mootness is a threshold jurisdictional inquiry."  *Ermuraki*, 987 F.3d at 386.  The question of mootness "strike[s] at the very heart of federal subject matter jurisdiction" and "cannot be avoided."  *Matter of Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1180 (5th Cir. 1986).

In the case at bar, Count II of Plaintiffs' Complaint (Hinds County circuit judge appointments) is rendered moot by the Mississippi Supreme Court's subsequent invalidation of

§ 1 of H.B. 1020.  On September 21, 2023, the Mississippi Supreme Court "declare[d] [that] Section 1 [of H.B. 1020]—and Section 1 only—is unconstitutional and thus void." *Saunders*, 371 So. 3d at 623.  Acknowledging that "[t]he *Saunders* Court struck down Section 1 of H.B. 1020 as unconstitutional under the Mississippi Constitution," this Court in its Order entered December 21, 2023, found that "Plaintiffs no longer face any alleged threatened harm from prospective judicial appointments to the Hinds County Circuit Court pursuant to H.B. 1020."  Order, Dkt. #127 at 2-3. Accordingly, this Court "dismisse[d] as moot all judicial appointment claims and related matters brought by the Plaintiffs under H.B. 1020 § 1."  Order, Dkt. #127 at 3.  To the extent the Court's Order entered December 21, 2023, did not expressly dispose of Count II, that count should accordingly be dismissed as moot pursuant to *Saunders*.

## II. COUNTS III AND IV (CCID COURT APPOINTMENTS) SHOULD BE DISMISSED FOR LACK OF STANDING BECAUSE THIS COURT HAS ALREADY RULED THAT PLAINTIFFS LACK STANDING TO ASSERT THESE CLAIMS.

Count III of Plaintiffs' Complaint seeks "to enjoin the appointment of a judge to the CCID court" pursuant to § 4 of H.B. 1020.  Dkt. #1 at 48, ¶ 144.  Count IV of Plaintiffs' Complaint seeks "to enjoin the appointment of prosecutors for the CCID Court" pursuant to § 5 of H.B. 1020.  *Id.* at 50, ¶ 149.  On December 31, 2023, this Court entered its Order denying Plaintiffs' motion for a preliminary injunction blocking these provisions of §§ 4 and 5 of H.B. 1020, finding that none of the plaintiffs has Article III standing to pursue these claims.  Order, Dkt. #135.

As to the NAACP-entity plaintiffs, the Court found that Plaintiffs conceded that these plaintiffs lack standing.  *See* Order, Dkt. #135 at 6.  The Court further found that even without this concession, "the demands of caselaw here are not satisfied for NAACP standing on the facts herein."  *Id.* at 7.  As to the individual plaintiffs, this Court found that none of the individual plaintiffs "has alleged that he or she is in actual or imminent danger of experiencing any **concrete**

9

**and particularized** injury resulting from the establishment of the CCID Court or the challenged appointment of a judge or prosecutors for that court." *Id.* at 9 (emphasis in original).  This Court accordingly held that Plaintiffs have "failed to establish standing altogether." *Id.* at 12.

A three-judge panel of the Fifth Circuit unanimously agreed with that ruling.  In a published opinion denying Plaintiffs' motions for injunctive relief pending appeal of this Court's denial of a preliminary injunction regarding §§ 4 and 5 of H.B. 1020, the Fifth Circuit rejected all theories of standing advanced by Plaintiffs.  *See Nat'l Ass'n for the Advancement of Colored People v. Tindell*, No. 23-60647, 2024 WL 47681, at *2 (5th Cir. Jan. 4, 2024) ("Plaintiffs press four theories to establish standing.  All fail[.]").

As to Plaintiffs' argument that standing results from some purported loss of "benefits," the Fifth Circuit rejected that argument.  The Court found that Plaintiffs have no "legally protected interest in the CCID Court's accountability to the Jackson local governing authority," see *id.* at 5, and that even if they did, their alleged "injury is not particularized," as "the purported loss of benefits is one that 'will affect all Jackson residents,'" *id.* at 7.  The Fifth Circuit similarly rejected so-called "voter" standing, finding that Plaintiffs failed to show "any injury to a legally protected interest they hold as voters," *id.* at 7, nor did they "cite any authority for the proposition that Jackson's local governing authority has the exclusive power to appoint judges and prosecutors for the CCID court," *id.* at 8.  The Fifth Circuit further rejected any notion of "stigmatic harm" standing, as Plaintiffs failed to show any discriminatory treatment or any alleged "injury" beyond "mere offense at the message." *Id.* at 9.  Finally, the Fifth Circuit rejected Plaintiffs' argument that benefits from the CCID Court "will flow primarily to a 'disproportionately white population,'" finding that Plaintiffs failed to show that H.B. 1020 erects any so-called "barrier" that makes it more difficult for any one group to obtain a given benefit than any other group. *Id.*  In lockstep

with this Court, the Fifth Circuit panel thus held that "plaintiffs fail to plead a cognizable injury-in-fact and thus lack standing to assert their claims." *Id.* at 9.

Because this Court has already ruled that Plaintiffs lack standing to assert their claims challenging §§ 4 and 5 of H.B. 1020, this Court lacks subject-matter jurisdiction as to Counts III and IV, and both of these counts should be dismissed.

## III. COUNT I (CITY-WIDE EXPANSION OF CAPITOL POLICE JURISDICTION) SHOULD LIKEWISE BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION BECAUSE PLAINTIFFS LACK STANDING TO ASSERT THIS CLAIM.

Count I of Plaintiffs' Complaint seeks "to enjoin the expansion of the Capitol Police" pursuant to the provisions of S.B. 2343, which took effect July 1, 2023.  Dkt. #1 at 13, ¶ 33.  *See also* 2023 S.B. 2343, § 2 (Ex. 1).  S.B. 2343 "extend[ed] the jurisdiction of the Capitol Police to cover the entire City of Jackson," *id.* at 15, ¶ 41, "creat[ing] 'primary jurisdiction' for the Capitol Police within the CCID and 'concurrent jurisdiction' over the remainder of the entire City of Jackson," *id.* at 16, ¶ 42.[1]  *See also* S.B. 2343, § 1 (Ex. 1) ("The Department of Public Safety shall have jurisdiction relative to the enforcement of all laws of the State of Mississippi within the boundaries of the City of Jackson, Mississippi.").  For the reasons that follow, Plaintiffs cannot show any legally-cognizable injury conferring Article III standing on them in connection with the city-wide expansion of Capitol Police jurisdiction.

### A.  <u>Plaintiffs cannot show any actual or imminent, concrete and particularized injury.</u>

To maintain any lawsuit in federal court, plaintiffs must establish Article III standing by showing injury in fact, traceability, and redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  But plaintiffs bear a heavier burden where they seek prospective injunctive relief.  Plaintiffs must always show an injury, traceable to the defendant's conduct, that is

---

[1] Plaintiffs do not challenge S.B. 2343's putative "prior restraint provision."  *See* Dkt. #1 at 4-5, ¶ 10.

"concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quotation marks omitted).  But when plaintiffs seek relief aimed at future conduct, their "threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury are not sufficient."  *Id.* (quotation marks omitted; emphasis in original).[2]

Here, none of the individual plaintiffs has standing to seek injunctive relief because none can show any concrete, imminent injury flowing from the challenged city-wide expansion of Capitol Police jurisdiction.  The individual plaintiffs purport to be residents of and registered voters in Jackson. Dkt. #1 at 6-9, ¶¶ 16-21.  At the time they filed their Complaint on April 21, 2023, the July 1, 2023, city-wide expansion of the Capitol Police jurisdiction effectuated by S.B. 2343 had not yet taken effect.   At that time, Plaintiffs did not allege any specific, anticipated future interaction with Capitol Police occasioned by its expanded city-wide jurisdiction.  Plaintiffs allege generally that they "are subject to policing by Capitol Police," Dkt. #1 at 6, ¶ 16, 7, ¶¶ 17-18, 8, ¶ 20, 16, ¶ 44, and Plaintiff Markyel Pittman alleges, without plausible factual support, that "[he] and his classmates [were] followed and targeted by the Capitol Police" prior to the city-wide expansion of the Capitol Police jurisdiction pursuant to S.B. 2343, see *id.* at 8, ¶ 19.  But Plaintiffs have neither shown nor alleged that at the time they filed their Complaint—or at any time thereafter—any of them were in actual or imminent danger of experiencing any concrete and particularized *injury* that is *traceable to the city-wide expansion of the Capitol Police jurisdiction effectuated by S.B. 2343*.

---

[2] *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019); *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285-86 (5th Cir. 1992) (en banc).

None of the individual plaintiffs can show that he or she has experienced or will experience any real-world injury or harm whatsoever as a result of the city-wide expansion of the Capitol Police jurisdiction, which took effect July 1, 2023. Like the Fifth Circuit in considering Plaintiffs' CCID Court claims, *see supra*, this Court is "left to speculate as to the injuries [Plaintiffs] might suffer." *Tindell*, 2024 WL 47681 at *4. That is not a sufficient showing to establish standing. If anything, these plaintiffs stand to benefit from the increased police presence afforded to a larger number of Jackson residents by S.B. 2343. For this reason alone, this Court should dismiss Count I for lack of standing.

**B. <u>Plaintiffs' alleged status as voters does not confer standing.</u>**

Plaintiffs may contend that their status as registered voters in Jackson gives them standing, the argument being that voters elect the Hinds County Sheriff and the Mayor of Jackson, the latter of whom appoints the Jackson Police Chief. *See* Dkt. #1 at 18, ¶ 50. But that argument is baseless, as Plaintiffs' right to vote is not impaired or implicated <u>at all</u> in this matter.

First, S.B. 2343 does not alter the manner in which any law enforcement official in Jackson or Hinds County is selected—including the elected Hinds County Sheriff or the appointed Jackson Police Chief. Those officials continue to be selected the same way they aways have notwithstanding the Capitol Police's enlarged geographic jurisdiction. Thus, the notion that S.B. 2343 "takes democratic control way from Jackson's residents and Jackson's Black-elected [*sic*] officials," *id.* at 46, ¶ 134, has no basis in fact.

Second, S.B. 2343 makes the geographic jurisdiction of the Capitol Police concurrent with the City of Jackson, not the physical entirety of Hinds County. S.B. 2343, § 1. Jackson voters do not have a right to elect officials with the exclusive authority to select city police officials, nor does any alleged "stripping" of local power by the State confer standing. *Cf. Stallworth v. Bryant*,

936 F.3d 224, 231 (5th Cir. 2019) (rejecting theory of standing that "Jackson voters have a right to elect officials with the exclusive authority to select municipal airport commissioners").  As the Fifth Circuit recognized in its opinion in this case:  "A mere political subdivision, Jackson is but 'a subordinate unit of government created by the State to carry out delegated governmental functions,' with 'no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator.'"  *Tindell*, 2024 WL 47681 at \*4.  Plaintiffs thus have no legally-protected interest in electing local officials with exclusive appointment power for city police officials.

As this Court noted without qualification in its Order entered December 31, 2023, "This court is persuaded that neither the race and residence of the individual Plaintiffs; *nor their status as registered voters*; nor their membership in the NAACP *has any bearing whatsoever on the question of standing in this litigation*."  Order, Dkt. #135 at 8 (emphasis added).  Given the foregoing, and since Mississippi's Constitution does not provide for a right to elect city police officials, Plaintiffs' purported status as registered voters does not confer standing.

**C.  <u>Plaintiffs cannot establish "stigmatic-injury" standing or standing predicated on a purported loss of "benefits" by all citizens of Jackson.</u>**

Plaintiffs may argue that the city-wide expansion of the Capitol Police jurisdiction exposes them, as citizens of a predominantly black city, to a "second-class law enforcement . . . system[]," see Dkt. #1 at 9, ¶ 22, and that they are somehow the victims of so-called "stigmatic" injury.  But "to plead stigmatic injury standing," a plaintiff "must plead that he was personally subjected to discriminatory treatment."  *Moore v. Bryant*, 853 F.3d 245, 249 (5th Cir. 2017).  Defendants deny that the jurisdictional expansion of the Capitol Police subjects Plaintiffs to any racial classification as their Complaint may be read to allege.  Nevertheless, even if it did, "[b]eing subjected to a racial classification differs materially from having personally been denied equal treatment," and "racial

14

classification alone" does not "amount[] to a showing of individualized harm." *Id.* Where the plaintiff fails to plead that he was "personally subject to discriminatory treatment," he "fails to plead injury" and lacks "stigmatic-injury" standing. *See id.*

Here, Plaintiffs have neither shown nor alleged that any of them have been "personally subjected" to any "discriminatory treatment" as a result of the city-wide expansion of the Capitol Police jurisdiction. They allege only that "S.B. 2343 singles out the predominantly Black [*sic*] population of Jackson for policing in an unprecedented, unaccountable, and overly intrusive manner." Dkt. #1 at 46, ¶ 133. Having failed to show that they will be *personally* subjected to some discriminatory treatment via the city-wide expansion of the Capitol Police jurisdiction, Plaintiffs cannot establish standing via any alternative theory of "stigmatic injury."

Plaintiffs may further assert that they stand to lose some "benefits" they enjoyed from having locally "accountable" police officials. But in truth, Plaintiffs will continue to enjoy the same "benefits" of local control of Jackson's law enforcement system. The challenged law does not eliminate the position of a single law enforcement official in Jackson or Hinds County, including but not limited to the Jackson Police Chief and the Hinds County Sheriff. Neither the occupants of these offices nor the offices themselves are jeopardized by any provision of this law. In fact, S.B. 2343 requires the Capitol Police Chief to call "regular meetings" of himself (and/or the Commissioner of the Department of Public Safety), the Jackson Police Chief, and the Hinds County Sheriff "to address the concerns of the public." S.B. 2343, § 1 (Ex. 1).

Under settled federal standing law, none of the individual plaintiffs has experienced or will experience any actual or imminent, concrete and particularized harm as a result of the city-wide expansion of the Capitol Police jurisdiction. Therefore, the individual plaintiffs lack standing to assert this claim, and this Court lacks subject-matter jurisdiction as to Count I.

**D.** __Plaintiffs cannot establish associational or organizational standing.__

None of the three NAACP entity plaintiffs has associational or organizational standing to seek relief relative to Count I.  Plaintiffs allege that "[t]he organizational Plaintiffs . . . will be forced to divert resources from their routine activities" to "educate members on how to navigate the new application process for 'event' approvals from the DPS."  Dkt. #1 at 10, ¶ 24.  They further allege that the entity plaintiffs will need to "consult with attorneys to create accurate guidance materials for members" and "design[] new educational programs to ensure that residents of Jackson know and understand their rights in the new court system."  *Id.*  None of these alleged diversions of resources is aimed at mitigating any perceived harm caused by S.B. 2343's *jurisdictional expansion provisions* made the exclusive subject of Count I.  While Plaintiffs make the conclusory allegation that that will have "to train and educate their members and local residents about . . . the expanded police jurisdiction," *id.*, nowhere in their 52-page Complaint do they allege any specific, plausible facts explaining how any purported diversion of resources has or will be necessitated by the city-wide expansion of the Capitol Police jurisdiction.  The myth that some harm will come to the NAACP as a result of greater police presence in Jackson is not borne out by the allegations of Plaintiffs' Complaint.

Associational standing requires an association to show that its members would independently meet Article III standing requirements.  *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006).  Organizational standing requires an organization to establish standing in its own name by meeting the same standing test that applies to individuals.  *Tenth Street Residential Ass'n v. City of Dallas, Tex.*, 968 F.3d 492, 500 (5th Cir. 2020).  The NAACP plaintiffs do not make the showings required under either doctrine.  Because their members cannot independently establish standing, see *supra*, the NAACP plaintiffs lack associational standing.

Similarly, the NAACP plaintiffs have not shown any concrete, imminent injury arising from the city-wide expansion of the Capitol Police jurisdiction.  They have not explained how this law has caused or will cause them to undertake any actions that "differ from the [NAACP]'s routine lobbying activities," nor have they identified "any specific project that [they] had to put on hold or otherwise curtail in order to respond to" this law.  *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010).  Thus, the NAACP plaintiffs likewise lack organizational standing.

Having failed to show any concrete, imminent injury caused by the July 1, 2023, city-wide expansion of the Capitol Police jurisdiction, Plaintiffs lack standing to challenge those provisions of S.B. 2343.  This Court accordingly lacks subject-matter jurisdiction with regard to Count I, and that count should likewise be dismissed.

## CONCLUSION

For all these reasons, this Court lacks subject-matter jurisdiction to adjudicate any of the four counts identified in Plaintiffs' Complaint.  Thus, Plaintiffs' Complaint should be dismissed in its entirety for lack of subject-matter jurisdiction predicated on mootness and lack of standing.

THIS the 17th day of January, 2024.

Respectfully submitted,

SEAN TINDELL, in his official capacity as Commissioner of the Mississippi Department of Public Safety; BO LUCKEY, in his official capacity as Chief of the Mississippi Department of Public Safety Office of Capitol Police; and LYNN FITCH, in her official capacity as Attorney General of the State of Mississippi, DEFENDANTS

By:   LYNN FITCH, ATTORNEY GENERAL FOR THE STATE OF MISSISSIPPI

By:   s/Rex M. Shannon III
REX M. SHANNON III (MSB #102974)
Special Assistant Attorney General

REX M. SHANNON III (MSB #102974)
GERALD L. KUCIA (MSB #8716)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi  39205-0220
Tel.:  (601) 359-4184
Fax:  (601) 359-2003
rex.shannon@ago.ms.gov
gerald.kucia@ago.ms.gov

ATTORNEYS FOR DEFENDANTS SEAN TINDELL,
in his official capacity as Commissioner of the Mississippi
Department of Public Safety; BO LUCKEY, in his
official capacity as Chief of the Mississippi Department
of Public Safety Office of Capitol Police; and LYNN FITCH,
in her official capacity as Attorney General of the State of Mississippi

## <u>CERTIFICATE OF SERVICE</u>

I, Rex M. Shannon III, Special Assistant Attorney General and one of the attorneys for the above-named defendants, do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF filing system, which sent notification of such filing to all counsel of record.

THIS the 17th day of January, 2024.

<u>s/Rex M. Shannon III</u>
REX M. SHANNON III