# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
March 6, 2024
Lyle W. Cayce
Clerk

_____

No. 23-60647

_____

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, NAACP; MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, MISSISSIPPI NAACP; JACKSON CITY BRANCH OF THE NAACP, JACKSON NAACP; DERRICK JOHNSON; FRANK FIGGERS; CHARLES TAYLOR; MARKYEL PITTMAN; CHARLES JONES; NSOMBI LAMBRIGHT-HAYNES,

*Plaintiffs—Appellants*,

*versus*

SEAN TINDELL, *in his official capacity as Commissioner of Public Safety*; BO LUCKEY, *in his official capacity as Chief of the Mississippi Department of Public Safety Office of Capitol Police*; LYNN FITCH, *in her official capacity as Attorney General of the State of Mississippi*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:23-CV-272

_____

Before SMITH, ELROD, and ENGELHARDT, *Circuit Judges*.

PER CURIAM:

No. 23-60647

The opinion issued on January 4, 2024, 90 F.4th 419, is WITH-DRAWN, and the following opinion is SUBSTITUTED. The only change is a non-substantive amendment to part II:

\* \* \* \* \*

The NAACP and other individuals and interest groups (collectively "plaintiffs") sued several Mississippi public officials, seeking injunctive and declaratory relief. This appeal concerns plaintiffs' emergency motions for an injunction pending appeal of the district court's denial of a preliminary injunction. For the reasons that follow, both emergency motions are denied. Additionally, we vacate the temporary administrative stay issued by this administrative panel on December 31, 2023.

I.

On April 21, 2023, the Governor of Mississippi signed into law House Bill 1020 ("H.B. 1020"). *See* H.B. 1020, Reg. Sess., 2023 Miss. Laws ch. 546. This law, which became effective January 1, 2024, creates a new inferior court for Jackson's Capitol Complex Improvement District ("CCID"). The CCID is an administrative area within the City of Jackson, covering roughly nine square miles surrounding the State Capitol. The area allegedly contains a disproportionate share of Jackson's white residents.

As relevant here, H.B. 1020 both expands the size of the CCID and creates a new "CCID court." The judge of that new court has concurrent jurisdiction with Jackson's municipal court and is authorized to hear misdemeanor violations and violations of city ordinances and to handle preliminary matters in felony cases. But, unlike other municipal courts in Mississippi—whose judges and prosecutors are appointed by locally elected officials—the Chief Justice of the Mississippi Supreme Court will appoint the CCID court's judge, and the Mississippi Attorney General will appoint the court's prosecutors.

No. 23-60647

Feeling aggrieved by this scheme, plaintiffs sued under 42 U.S.C. § 1983. Relevant here, they claim that the appointments of the judge and prosecutors by the Chief Justice and State Attorney General, respectively, violate their Fourteenth Amendment rights to equal protection of the law. On November 13, 2023, plaintiffs filed a motion for preliminary injunction, seeking to enjoin the appointments. A complicated procedural history followed.

Plaintiffs wished to receive a ruling on their motion before H.B. 1020 went into effect on January 1, 2024. Receiving no such ruling by December 30, 2023, plaintiffs sought emergency relief from this court on December 31, claiming—with precedent—that the district court's inaction had the "practical effect" of denying a preliminary injunction. Several hours later, we granted plaintiffs' motion, styling it as a temporary stay, ordered the motion for an injunction pending appeal to be carried with the case, and directed the district court to issue a final, appealable order by noon on Wednesday, January 3, 2024.

Unbeknownst to this court and (apparently) plaintiffs, the district court did issue an order on December 31, 2023, denying plaintiffs' motion.[1] Though the state defendants had raised several defenses to plaintiffs' motion,[2] the district court found that plaintiffs were unlikely to succeed on the merits for want of standing. On January 3, 2024, plaintiffs filed an amended notice of appeal in light of the district court's order. Plaintiffs again

---

[1] The district court entered its order at approximately 7:42 p.m., or about four hours before the statute took effect.

[2] The Chief Justice of the Mississippi Supreme Court contended that he was entitled to judicial immunity. All state defendants contended that none of the preliminary-injunction factors were satisfied.

request an injunction pending appeal.[3]

We now vacate that temporary administrative stay and deny both motions for an injunction pending appeal.

II.

We consider four factors in deciding whether to grant an injunction pending appeal under Federal Rule of Appellate Procedure 8(a). The party seeking the injunction must show "(1) a strong likelihood of success on the merits; (2) irreparable injury in the absence of an injunction; (3) that the balance of hardships weighs in their favor if injunctive relief is granted; and (4) that the public interest favors such relief." *Whole Woman's Health v. Jackson*, 13 F.4th 434, 441 (5th Cir. 2021) (per curiam) (citation omitted).

We begin and end with the first factor: likelihood of success on the merits.

III.

"In the preliminary-injunction context, plaintiffs must make a clear showing of standing . . . ." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 178 (5th Cir. 2020). Article III limits us to deciding only actual "Cases" or "Controversies." U.S. CONST. art. III, § 2. Corollary to that, we require "that a litigant have standing to challenge the action sought to be adjudicated in the lawsuit." *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982) (internal quotation marks omitted)).

> The irreducible constitutional minimum of standing contains three elements. *First*, the plaintiff must have suffered an injury

---

[3] Plaintiffs also appeal the denial of a preliminary injunction. As we are just the motions panel, we do not rule on that request.

in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Second*, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Third*, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up).

The burden of establishing standing always rests with plaintiffs. *See id.* At this stage, "the plaintiffs must make a 'clear showing' that they have standing to maintain the preliminary injunction,"[4] for "an injunction is always improper if the district court lack[s] jurisdiction."[5]

Plaintiffs press four theories to establish standing. All fail:

*First*, plaintiffs theorize that H.B. 1020 causes them to lose "the benefits of their communities being served only by judges and prosecutors who are chosen locally." Pl.'s First Mot. at 9. In other words, plaintiffs are complaining that Jackson's local governing authority—which usually appoints judges and prosecutors to Jackson's municipal courts—will not get to do the same for the new CCID court. That, plaintiffs assert, will make the CCID court less accountable to the local community, "affect[ing] all Jackson residents." *Id.* at 10.

Plaintiffs utterly fail to demonstrate that they, as members of the Jack-

---

[4] *Barber*, 860 F.3d at 352.

[5] *All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 227 (5th Cir.) (citation omitted), *cert. granted sub nom. Danco Laboratories, L.L.C. v. All. for Hippocratic Med.*, 144 S. Ct. 537, and *cert. granted sub nom. FDA v. All. for Hippocratic Med.*, 144 S. Ct. 537, *and cert. denied*, 144 S. Ct. 537 (2023).

son community, have any legally protected interest in the CCID court's accountability to the Jackson local governing authority (of which they are not even a part). The only binding caselaw they cite in support is *LULAC v. Clements*, 999 F.2d 831 (5th Cir. 1993) (en banc). And for what proposition? That "[t]he state attempts to maintain the fact and appearance of judicial fairness that are central to the judicial task, in part, by insuring that judges remain accountable to the range of people within their jurisdiction." Pl.'s First Mot. at 9 (quoting *LULAC*, 999 F.2d at 869).[6]

As should be plain, *LULAC* is wholly inapposite. That case dealt with alleged vote dilution in violation of Section 2 of the Voting Rights Act. Information about "[t]he interests behind the existing court structure" might be relevant when determining, in the totality of the circumstances, whether a Section 2 violation has occurred. *LULAC*, 999 F.2d at 869. But it is of no relevance to the accountability of prosecutors and judges.

Possibly recognizing that weakness, plaintiffs, in their second motion, attempt to analogize their claims to vote dilution. *See* Pl.'s Second Mot. at 9–10. Claiming that they live within the district and therefore suffer from a "'district specific' dilution of voting rights," they mistake the difference between being able to vote on equal footing—which is what the Equal Protection Clause protects—and the substantive impact of their vote—i.e., what the politicians they vote for have the power to do. Pl.'s Second Mot. at 10 (quoting *Gill v. Whitford*, 138 S.Ct. 1916, 1920 (2018)). As discussed below, plaintiffs have failed to show that Jackson's local authorities have the power to appoint the CCID court's judge or prosecutors. *See infra* discussion of dilution.

---

[6] Never mind that this quotation comes not from any portion of that opinion's analysis but from a recap of Texas's argument.

Plaintiffs' assertion that they hold a legally protected interest in the CCID court's accountability to local officials arrives before us unsupported by law or reason. That the CCID court will (purportedly) be less accountable, relative to other municipal courts in Jackson, to the local governing authority does not "mean that plaintiffs have suffered a concrete and particularized, actual[,] and imminent injury to interests protected by the Equal Protection Clause." *Stallworth v. Bryant*, 936 F.3d 224, 231 (5th Cir. 2019) (finding Jackson voters lacked standing to sue over appointment of certain municipal airport commissioners).

Plaintiffs' first theory of standing still fails even assuming, *arguendo*, that they hold a legally protected interest in the CCID court's accountability. That injury is not particularized—as their own briefing admits, the purported loss of benefits is one that "will affect all Jackson residents." Pl.'s First Mot. at 10. Plaintiffs make only a weak attempt to demonstrate that the loss of benefits affects them in a "personal and individual way." *Spokeo Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation and internal quotation marks omitted); *see* Pl.'s Second Mot. at 12. The benefits of accountability are no more likely to accrue to "especially politically engaged" voters than to anyone else. *Id.* At most, the new prosecutors and court might, "conjecturally or hypothetically," bring a meritless prosecution, making one of the plaintiffs a party to a proceeding in the CCID court. *Defs. of Wildlife*, 504 U.S. at 560 (cleaned up). But plaintiffs have made no such showing. "Generalized and undifferentiated," plaintiffs' claimed injury "could occur to anyone who" lives in Jackson. *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 388 (5th Cir. 2017) (cleaned up).

*Second*, plaintiffs theorize they will be harmed as voters in two ways. They first assert H.B. 1020 will "take[] away" appointment power from locally elected officials. Pl.'s First Mot. at 10. Additionally, they speculate that the challenged legislation will "dilute the local government's control

over the enforcement of its own laws within the CCID's borders, a core government function." *Id.*

Plaintiffs' second theory similarly fails to establish standing. They have not shown any injury to a legally protected interest they hold as voters.

Their first assertion, that H.B. 1020 takes away power from local officials, has no basis in fact. The challenged legislation creates a new CCID court, staffed with a newly appointed judge and newly appointed prosecutors. Plaintiffs have not shown that H.B. 1020 alters or affects—in any way—the method of appointment for *any* municipal court in Jackson. Nothing has been taken away from Jackson's local governing authority.

The second assertion, that H.B. 1020 "dilute[s] the local government's control," is similarly unfounded. *Id.* Plaintiffs cite no authority for the proposition that Jackson's local governing authority has the exclusive power to appoint judges and prosecutors for the CCID court which, although "functional[ly] equivalent" to a municipal court, does not share "all features of municipal courts." *Saunders v. State*, 371 So. 3d 604, 616 (Miss. 2023).[7] A mere political subdivision, Jackson is but "a subordinate unit of government created by the State to carry out delegated governmental functions," with "no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator." *Ysura v. Pocatello Educ. Ass'n*, 555 U.S. 353, 363 (2009) (cleaned up). The legislature decided against giving Jackson's local officials a new grant of power over the new court. That is the right and prerogative of the legislature, not of Jackson's voters.

Thus, there is no support for plaintiffs' theory that the city's voters possess a legally protected interest in electing local officials with exclusive

---

[7] *See also id.* at 617 ("[T]he CCID does not *literally* have to be a municipal court to function like one . . . .").

appointment power for the CCID court. Their second theory fails to establish standing.

*Third*, plaintiffs theorize that H.B. 1020 causes stigmatic harm. They take offense at the legislature's decision to vest appointment power elsewhere, interpreting it as "infantilizing treatment" and an indication that black residents are "'innately inferior and therefore . . . less worthy participants in the political community.'" Pl.'s First Mot. at 10 (quoting *Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984)). Establishing standing based on stigmatic harm requires plaintiffs to allege discriminatory treatment—no matter how strongly plaintiffs feel about H.B. 1020's message. *Barber*, 860 F.3d at 357–58. But mere offense at the message is *all* that plaintiffs allege. There is no allegation that H.B. 1020 will alter any of plaintiffs' planned conduct, and we are left to speculate as to the injuries they might suffer. *See id.* at 357. So stigmatic injury does not establish plaintiffs' standing.

*Last*, plaintiffs theorize that benefits from the CCID court will flow primarily to a "disproportionately white population." Pl.'s First Mot. at 11. But, as the very authority plaintiffs cite mentions, that is an injury-in-fact only if "the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group . . . ." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993). And plaintiffs' briefing is silent as to what "barrier" H.B. 1020 erects beyond an *ipse dixit* claim that the claimed irregular borders are such a barrier.

\* \* \* \* \*

In sum, plaintiffs fail to plead a cognizable injury-in-fact and thus lack standing to assert their claims. Without standing, they cannot obtain an injunction. Both motions for an injunction pending appeal are DENIED.

No. 23-60647

The temporary administrative stay issued on December 31, 2023, is VACATED.